**PACHULSKI STANG ZIEHL & JONES LLP**
Richard M. Pachulski (State Bar No. 90073)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, California  90067-4003
Telephone: 310.277.6910/Facsimile: 310.201.0760
Email: rpachulski@pszjlaw.com

**RAINES FELDMAN LLP**
Hamid R. Rafatjoo (State Bar No. 181564)
1800 Avenue of the Stars, 12th Floor
Los Angeles, California  90067
Telephone: 310.440.4100/Facsimile: 310.691.1367
E-mail: hrafatjoo@raineslaw.com

Attorneys for Intervenors and Creditors
HAUSMAN HOLDINGS, LLC and
DAVID and PAMELA MOELLENHOFF

**WEILAND GOLDEN GOODRICH LLP**
Jeffrey I. Golden (State Bar No. 133040)
650 Town Center Drive, Suite 600
Costa Mesa, California  92626
Telephone:  714.966.1000/Facsimile: 714.966.1002
E-mail:  jgolden@wgllp.com

Attorneys for Chapter 7 Trustee and Plaintiff
THOMAS H. CASEY

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA, SANTA ANA DIVISION

| | |
|---|---|
| In re:<br><br>ANDREA S. DOWNS<br><br>　　　　　Debtor. | Case No.  8:16-bk-12589-SC<br><br>Chapter 7 |
| THOMAS H. CASEY, Chapter 7 Trustee,<br><br>　　　　　Plaintiff,<br>　v.<br><br>LORA RAE STEINMANN, HEINZ H. STEINMAN, ERIC STEINMANN, MARY (SYPKENS) STEINMANN, JOHN STEINMANN, TESSIE (STAPLETON) STEINMANN, KATY (BELKNAP) STEINMANN, HEINZ STEINMANN, JEFF STEINMANN, TOM STEINMANN, SUSIE (WILSON) STEINMANN.<br><br>　　　　　Defendants. | Adversary No. 8:18-ap-01168-SC<br><br>**INTERVENORS' AND TRUSTEE'S JOINT NOTICE OF MOTION AND MOTION FOR TERMINATING SANCTIONS; MEMORANDUM OF POINTS AND AUTHORITIES AND SUPPORTING DECLARATIONS OF JEFFREY I. GOLDEN AND HAMID R. RAFATJOO**<br><br>Date:　　October 21, 2020<br>Time:　　10:00 a.m.<br>Place:　　Courtroom 5B<br>　　　　　411 West Fourth Street<br>　　　　　Santa Ana, CA  92701-4593 |

2730759.3

1    **TO THE HONORABLE SCOTT E. CLARKSON, UNITED STATES BANKRUPTCY**

2    **JUDGE:**

3        **PLEASE TAKE NOTICE** that on October 21, 2020 at 10:00 a.m., in Courtroom 5B of the

4    United States Bankruptcy Court, Central District of California, Santa Ana Division, located at 411

5    West Fourth Street, Santa Ana, California  92701, Thomas H. Casey, the duly appointed, qualified

6    and acting Chapter 7 trustee (**"Trustee"**) for the bankruptcy estate (**"Estate"**) of Andrea Steinmann

7    Downs (**"Debtor"**), and Creditors and Intervenors Hausman Holdings, LLC (**"Hausman"**) and

8    David and Pamela Moellenhoff (the **"Moellenhoffs"**; collectively with Hausman, **"Intervenors,"**

9    and together with the Trustee, **"Plaintiffs"**), will and hereby do move for the issuance of terminating

10   sanctions and the corresponding entry of a default judgment against the above-named Defendants

11   (collectively, the **"Steinmann Defendants"**) pursuant to this Court's inherent authority to issue and

12   enter such relief in response to the pervasively abusive and deceptive litigation practices perpetrated

13   by the Steinmann Defendants (the **"Motion"**).

14       This Motion is based upon, and is necessitated and warranted by, the persistent lies made

15   by and on behalf of the Steinmann Defendants at creditors meetings, depositions, in open court,

16   and in their written responses to discovery requests, in a concerted effort to impede the discovery

17   and marshalling of assets available for distribution to the Estate's creditors.  To that end, the Debtor

18   first falsely denied the existence of any family trust and of her beneficial interests in or under any

19   or all such instruments.  The Debtor thereafter compounded her lies by admitting to Judge Catherine

20   Bauer of this Court that she made no inquiries as to the existence of such documents, and by

21   subsequently failing to produce any family trust in response to the Plaintiffs' requests for such

22   documents.  In confirmation of the Debtor's knowing and intentional lies, the Debtor's mother,

23   Lora Steinmann (**"L. Steinmann"**), testified at her deposition that not only did a multi-million

24   dollar family trust, in fact, exist (the **"Disclosed Steinmann Family Trust"**), but also that she

25   expressly advised the Debtor both of the Disclosed Steinmann Family Trust's existence and that its

26   trustees—L. Steinmann, the Debtor's father, Defendant Heinz Steinmann (**"H. Steinmann"**), and

27   the Debtor's brother, Defendant Eric Steinmann (**"E. Steinmann"**; together with L. and H.

28   Steinmann, the **"Steinmann Trustee Defendants"**)—had intentionally removed the Debtor as a

1

1  beneficiary of that trust weeks before her June 19, 2016 strategic filing of a voluntary bankruptcy

2  petition (the "**Petition Date**") specifically to impede her creditors' access to the Debtor's multi-

3  million dollar interests in the Disclosed Steinmann Family Trust.  Consistent with that pre-

4  bankruptcy scheme, L. and E. Steinmann thereafter falsely represented on multiple occasions that

5  the Disclosed Steinmann Family Trust was the only family trust in which the Debtor held any

6  interest when, *in truth*, the Debtor is *also* is the beneficiary of *another*, recently discovered multi-

7  million dollar family trust which, in addition to being *irrevocable*, is required to have the entirety

8  of its assets distributed to the Debtor and to her sibling Steinmann Defendants in equal shares upon

9  the elderly H. Steinmann's death (the **"Concealed Steinmann Family Trust"**).

10         As established in and by the attached Memorandum of Points and Authorities and

11  supporting evidence, the Steinmann Defendants' lies and open flouting of the judicial process and

12  the Court's Orders are as reprehensible as they are blatant, and warrant the issuance of the requested

13  terminating sanctions in the form of an Order striking the Steinmann Defendants' Answers and

14  entering a default judgment against them in this action.  Plaintiffs also request recovery of their

15  reasonable attorneys' fees incurred in connection with the preparation and prosecution of this

16  Motion from the Steinmann Defendants.

17         **PLEASE TAKE FURTHER NOTICE** that, pursuant to Local Bankruptcy Rule 9013-1(f),

18  any opposition to the Motion must be filed with the Clerk of the United States Bankruptcy Court

19  and served upon the Trustee, the United States Trustee, and counsel for Plaintiffs at each of the

20  addresses located in the upper left-hand corner of the caption page of this Motion, no later than

21  fourteen (14) days prior to the hearing date.  Pursuant to Local Bankruptcy Rule 9013-1(h), the

22  failure to file a timely opposition to the Motion may be deemed by the Court to be consent to the

23  granting of the relief requested in the Motion.

24

25

26

27

28

2730759.3

1       This Motion is based upon this Notice of Motion and Motion, the attached Memorandum of

2   Points and Authorities and Declarations of Hamid R. Rafatjoo and Jeffrey I Golden and supporting

3   exhibits thereto, all papers on file with the Court, and upon such other and further evidence and

4   argument as may be presented to the Court at or before the hearing on this Motion.

5   Dated: September 30, 2020              **PACHULSKI STANG ZIEHL & JONES LLP**

6
                                          By:    /s/ Richard M. Pachulski
7                                               _____
                                                Richard M. Pachulski
8                                               Attorneys for Intervenors and Creditors
                                                HAUSMAN HOLDINGS, LLC and
9                                               DAVID and PAMELA MOELLENHOFF

10  Dated: September 30, 2020              **RAINES FELDMAN LLP**

11
                                          By:   /s/ Hamid R. Rafatjoo
12                                              Hamid R. Rafatjoo
                                                Attorneys for Intervenors and Creditors
13                                              HAUSMAN HOLDINGS, LLC and
                                                DAVID and PAMELA MOELLENHOFF
14

15  Dated: September 30, 2020              **WEILAND GOLDEN GOODRICH LLP**

16
                                          By:   _____
17                                              Jeffrey I. Golden
                                                Attorneys for Chapter 7 Trustee and Plaintiff
18                                              THOMAS H. CASEY

19

20

21

22

23

24

25

26

27

28

1    This Motion is based upon this Notice of Motion and Motion, the attached Memorandum of

2 Points and Authorities and Declarations of Hamid R. Rafatjoo and Jeffrey I Golden and supporting

3 exhibits thereto, all papers on file with the Court, and upon such other and further evidence and

4 argument as may be presented to the Court at or before the hearing on this Motion.

5  Dated: September 30, 2020    **PACHULSKI STANG ZIEHL & JONES LLP**

6

7           By: _____
              Richard M. Pachulski

8              Attorneys for Intervenors and Creditors
              HAUSMAN HOLDINGS, LLC and

9              DAVID and PAMELA MOELLENHOFF

10  Dated: September 30, 2020    **RAINES FELDMAN LLP**

11

12          By: /s/ Hamid R. Rafatjoo_____
             Hamid R. Rafatjoo

13             Attorneys for Intervenors and Creditors
             HAUSMAN HOLDINGS, LLC and

14             DAVID and PAMELA MOELLENHOFF

15  Dated: September 30, 2020    **WEILAND GOLDEN GOODRICH LLP**

16

17          By: _____
             Jeffrey I. Golden

18             Attorneys for Chapter 7 Trustee and Plaintiff
             THOMAS H. CASEY

19

20

21

22

23

24

25

26

27

28

1

## TABLE OF CONTENTS

2

3   **MEMORANDUM OF POINTS AND AUTHORITIES**..............................................................**1**

4   **I.      INTRODUCTION**........................................................................................................**1**

5   **II.     FACTUAL and procedural BACKGROUND**...........................................................**3**

6       **A.      The Steinmann Defendants Prepare for and Facilitate the Debtor's Strategic
                  Bankruptcy Filing and Concealment of Estate Assets**.........................................**3**

7
        **B.      The State Court Action Trial and the Non-Dischargeable Judgment**..............**7**

8
        **C.      The Trustee's Initiation of this Adversary Action, and the Steinmann
9                 Defendants' Relentless Efforts to Shield and Conceal the Debtor's Assets**......**9**

10      **D.      The Steinmann Defendants' Concealment of the Irrevocable Trust**..............**12**

11  **III.    THE COURT SHOULD EXERCISE ITS INHERENT POWER TO ENTER
            TERMINATING SANCTIONS AGAINST THE STEINMANN DEFENDANTS**....**15**

12
        **A.      Terminating Sanctions are Both Warranted and Necessary** ..........................**15**

13
             **1.      The Steinmann Defendants' Bad Faith Litigation Conduct** ...............**16**

14
             **2.      The Public's Interest in the Expeditious Resolution of Litigation**.......**19**

15
             **3.      The Court's Need to Manage Its Docket**.................................................**19**

16
             **4.      Prejudice to the Trustee and Intervenors.** ............................................**20**

17
             **5.      Public Policy Favoring Disposition on the Merits**.................................**22**

18
             **6.      The Inefficacy of Lesser Sanctions** .......................................................**22**

19
                  **a.      The Feasibility of Lesser Sanctions** ............................................**23**

20
                  **b.      Imposition of Alternative Sanctions and Issuance of Warnings
21                        Prior to Ordering Terminating Sanctions** .................................**24**

22      **B.      Monetary Sanctions Are Similarly Warranted** .................................................**25**

23  **IV.     CONCLUSION**.........................................................................................................**26**

24  **DECLARATION OF JEFFREY I. GOLDEN** .........................................................................**27**

25  **DECLARATION OF HAMID R. RAFATJOO** .......................................................................**29**

26

27

28

2730759.3

1

# TABLE OF AUTHORITIES

2

3

## CASES

4

*Adriana Int'l Corp. v. Thoeren*,
    913 F.2d 1406 (9th Cir. 1990).................................................................................. 16, 24

5

*Allen v. Bayer (In re Phenylpropanolamine (PPA) Prods. Liab. Litig.)*,
    460 F.3d 1217, 1227 (9th Cir. 2008)................................................................................ 19

6

7

*Anheuser-Busch v. Natural Beverage Distribs.*,
    69 F.3d 337 (9th Cir. 1995)...............................................................................passim

8

*Arnold v. County of El Dorado*,
    No. 2:10-cv-3119 KJM, 2012 U.S. Dist. LEXIS 112398, *12-13 (E.D. Cal.
    Aug. 9, 2012) .................................................................................................................. 17

9

10

*Chambers v. NASCO, Inc.*,
    501 U.S. 32 (1991).......................................................................................................... 15

11

*Computer Task Grp., Inc.*,
    364 F.3d at 1115-1117.............................................................................................. 17, 23

12

*CrossFit, Inc. v. Nat'l Strength & Conditioning Ass'n*,
    Case No. 14-CV-1191 JLS, 2019 U.S. Dist. LEXIS 209319, *55-56 (S.D. Cal.
    Dec. 4, 2019)................................................................................................................... 21

13

*Fair Hous. v. Combs ("Combs")*,
    285 F.3d 899 (9th Cir. 2002).............................................................................. 17, 21

14

15

*Frederick v. Bonzelet*,
    963 F.2d 1258 (9th Cir. 1992)......................................................................................... 19

16

*In re Deville*,
    280 B.R. 483 (B.A.P. 9th Cir. 2002).............................................................................. 15

17

*In re Exxon Valdez*,
    102 F.3d 429 (9th Cir. 1996)..................................................................................... 18, 21

18

19

*In re Lebbos*,
    385 B.R. 737 (B.A.P. 9th Cir. 2008)......................................................................... 16, 23

20

*In re Rainbow Magazine*,
    77 F.3d 278 (9th Cir. 1996).......................................................................................... 15

21

*Leon v. IDX Sys. Corp.*,
    464 F.3d 951 (9th Cir. 2006)..................................................................................... 16, 24

22

*Payne v. Exxon Corp.*,
    121 F.3d 503 (9th Cir. 1997).......................................................................................... 18

23

24

*SEC v. Blockvest, LLC ("Blockvest")*,
    No. 18cv2287-GPC, 2020 U.S. Dist. LEXIS 68951, *40 (S.D. Cal. Apr. 20,
    2020) ................................................................................................ 19, 20, 21, 22

25

*Sun World, Inc. v. Olivarria*,
    144 F.R.D. 384 (E.D. Cal. 1992) ........................................................................... 15, 21

26

27

*Sunrider Corp. v. Bountiful Biotech Corp.*,
    No. SACV 08-1339 DOC (AJWx), 2010 U.S. Dist. LEXIS 117347, at *84, 97-
    99 (C.D. Cal. Oct. 8, 2010) ...............................................................................passim

28

*United States use of Wiltec Guam, Inc. v. Kahaluu Constr. Co.,*
   857 F.2d 600 (9th Cir. 1988)........................................................................................16

*Valley Eng'rs v. Electric Eng'g Co.,*
   158 F.3d 1051 (9th Cir. 1998).................................................................................passim

*Vogel v. Tulaphorn, Inc.,*
   No. CV 13-464 PSG, 2013 U.S. Dist. LEXIS 200563, *12 (C.D. Cal. Nov. 5,
   2013) ...............................................................................................................................17, 24

*Wyle v. R.J. Reynolds Industries, Inc.,*
   709 F.2d 585 (9th Cir. 1983)...................................................................................15, 18

*Yourish v. Cal. Amplifier,*
   191 F.3d 983 (9th Cir. 2002)..........................................................................................19

2730759.3

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

This Motion and its request for terminating sanctions are necessitated and warranted by the Steinmann Defendants' persistent abuse of the judicial process most recently manifest in their now exposed lies as to the existence of the Concealed Steinmann Family Trust, and admittedly committed for the sole purpose of attempting to insulate the Debtor from the legal and financial consequences of the (i) voluntary bankruptcy case she strategically filed on the literal eve of the June 20, 2016 trial of the Intervenors' then-pending Orange County Superior Court (the "**State Court**") intentional fraud action against her (the "**State Court Fraud Action**"); and the (ii) near $4.6 million, non-dischargeable judgment this Court subsequently entered against the Debtor in September 2018, as a result of the intentional and malicious fraud it found she perpetrated against Intervenors.  Specifically:

1. In June 19, 2016 at approximately 11:26 p.m., the Debtors filed a voluntary petition under Chapter 11 of the Bankruptcy Code less than 10 hours before the scheduled June 20, 2016. 9:00 a.m. commencement of the State Court Fraud Action trial.  After this Court granted the Intervenors' Motion for Relief from the Automatic Stay to resume their prosecution and the trial of the State Court Fraud Action against the Debtor in the State Court, the State Court jury rendered Special Verdicts on May 18 and May 23, 2017, respectively awarding Intervenors compensatory and punitive damages against the Debtor, and finding that she not only had committed three separate species of intentional fraud against Intervenors, but also had done so with malice (collectively, the **"Jury Verdicts"**).  Following the Jury Verdicts, and after a separate bench trial, the State Court entered a statement of decision on September 19, 2017, finding that the Debtor was the "alter ego" of her now-defunct company Happenstance Corporation that she used to defraud Intervenors ("**Happenstance**"), and consequently was personally subject to, and bound by, the prevailing party attorneys' fees provisions contained in Intervenors' respective loan agreements with Happenstance as if she was an individual signatory of those agreements (the **"State Court Alter Ego Decision"**).  Intervenors thereafter commenced a non-dischargeability adversary action against the Debtor arising from the debts reflected in the Jury Verdicts and the Alter Ego Decision,

1

which resulted in this Court conducting separate proceedings, and culminated in its entry of a non-dischargeable judgment against the Debtor in the amount of $4,594,473, representing, among other things, the loan proceeds the Intervenors were fraudulently induced to lend Happenstance, and the attorneys' fees and costs the Intervenors were required to incur to redress the Debtor's willful and malicious fraud (the "**Non-Dischargeable Judgment**").[1]

2.     To attempt to defraud the Estate's creditors, the Steinmann Trustee Defendants, on behalf of themselves and the Steinmann Defendants, admittedly created and implemented a scheme designed to enable the Debtor to evade responsibility for her fraud ordered to be redressed in the State Court's Jury Verdicts and Alter Ego Decision, and in this Court's Non-Dischargeable Judgment.   To that end, the Steinman Defendants have, among other things (a) fraudulently transferred and/or concealed the Debtor's *pro rata* interests in *two* separate, multi-million dollar family trusts; (b) consistently flouted their discovery obligations as well as the rules and Orders of this Court; and (c) purposely multiplied proceedings in a transparent effort to exponentially increase the costs of this litigation and impede the Trustee's ability to efficiently identify, marshal and distribute the Debtor's assets to the Estate's creditors.   Indeed, the Steinmann Defendants' purpose in engaging in such conduct could hardly be more clear where, among other things:

- Less than 8 weeks before the Debtor's bankruptcy filing, the Steinmann Trustee Defendants effectuated the strategic "disinheritance" of the Debtor from the Disclosed Steinmann Family Trust for the sole and admitted purpose of placing the Debtor's interests in that multi-million dollar asset beyond the reach of the Estate and its creditors; where

- After orchestrating the Debtor's purported "disinheritance," E. Steinmann admittedly arranged for two companies owned by his business associates, Norio, Inc. ("**Norio**") and Excelsior Properties, LLC (**"Excelsior"**), to provide loans intended to be secured by the Debtor's assets to repay the admitted *gift* of funds L. Steinmann gave the Debtor to finance her bankruptcy lawyer's retainer and the voluntary bankruptcy petition she strategically filed on the eve of the State Court Fraud Action trial to attempt to avoid being held accountable for her malicious fraud in the State Court; where

---

[1]   *See* Adversary Action No. 8:17-ap-01235-CB (**"Non-Dischargeability Adversary Action"**) at Dkt. Nos. 51, 56.

- After the commencement of the Debtor's bankruptcy case, the Steinmann Trustee Defendants: (i) unsuccessfully opposed, and sought protective orders to prevent, their respective Rule 2004 examinations and production of documents regarding the existence and scope of the Debtor's interests in the Steinmann-family assets; (ii) subsequently failed and refused to produce documents and provide testimony in violation of this Court's explicit Orders; and correspondingly (iii) required Plaintiffs to seek and obtain additional Orders from this Court compelling such discovery, and imposing monetary sanctions of more than $62,000 against L. Steinmann for such discovery abuse, obstructionism and violation of the Court's Orders (Downs Bankr. Dkt. No. 498, 502, 509, 510, 511, 512, 545, 546, 553, 554, 557, 558, 561, 562, 563, 564, 632, 634, 711, 712, 736, 737, 738, 745, 748, 759, 767, 794, 816, 824, and 848 and where

- The Steinmann Trustee Defendants, on behalf of themselves and the other Steinmann Defendants, have repeatedly lied—both under oath, and in their responses to Plaintiffs' Rule 2004 examination document requests—that the Disclosed Steinmann Family Trust is the only family trust in which the Debtor has ever held any interest when, *in reality*, the multi-million dollar Concealed Steinmann Family Trust in which the Debtor has an *irrevocable, pro-rata* interest and whose assets are required to be distributed upon H. Steinmann's death, not only has and, continues, to concurrently exist, but also has been continuously managed by E. Steinmann as its trustee.

Absent issuance of the requested relief, the Steinmann Defendants will continue to proceed in this Court on the basis of lies rather than facts, and to undermine the purpose, intent and integrity of the bankruptcy process to the detriment of the Estate and its creditors. The requested terminating sanctions and attorneys' fee award against the Steinmann Defendants, therefore, are warranted and should be entered to redress their repeated lies, bad faith actions and flouting of this Court's Orders, and to prevent the continuation of such misconduct.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

### A.  The Steinmann Defendants Prepare for and Facilitate the Debtor's Strategic Bankruptcy Filing and Concealment of Estate Assets

The Debtor's bankruptcy case and this adversary action each have their genesis in the Debtor (i) fraudulently inducing Intervenors to loan money to her alter ego corporation Happenstance in 2010 for the ostensible purpose of funding the development and production of an animated children's television series, and the Debtor's subsequent (ii) misappropriation of those funds for herself and her co-conspirator Michael Reynolds ("**Reynolds**"). Following the non-payment of any portion of the Intervenors' respective loans and the discovery of the Debtor's and

3

1    Reynolds' corresponding intentional fraud, Intervenors demanded repayment of their loans.  When

2    the Debtor and Reynolds refused to do so, Intervenors initiated the State Court Fraud Action on

3    January 28, 2013, asserting claims for promissory fraud, intentional misrepresentation and

4    concealment against the Debtor and Reynolds.[2]

5        On June 19, 2016, the Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy

6    Code in this Court, less than 10 hours before the scheduled June 20, 2016 commencement of the

7    trial of the State Court Fraud Action.  [Downs Bankr. Dkt. No. 1].  The Debtor did not, however,

8    conceive of this strategic bankruptcy filing on her own.  To the contrary, her plot to use the

9    bankruptcy process as a means to avoid trial and liability in the State Court Fraud Action was

10   formulated and implemented with the assistance of her family.  Specifically:

11       1.    E. Steinmann—the Debtor's brother—admittedly advised and encouraged the

12   Debtor to file her strategic bankruptcy petition for the express purposes of avoiding an adverse

13   outcome in the impending State Court Fraud Action trial and evading the consequences of her fraud

14   against Intervenors.  Thus, as conceded by E. Steinmann during his Rule 2004 examination:

15/16    Q    What did you say to Ms. Andrea Downs regarding whether or
              not she should file for bankruptcy?

17/18/19/20   A    **I think I summed it up in what I just said, you know, I mean,
              'I'm not trying to get too excited here, but, you** know, there
              no way you that you're going to be able to, you know, hold
              your own in this situation, where people have an unlimited
              checkbook and they're trying to oppress you in this way.  You
              know, **you need some help, and in my experience, that help
              should come from the Bankruptcy Court.'  It hasn't turned
              out that way**.

21                    *        *        *        *

22/23/24    A    You know, Annie just simply didn't have the money to afford
              that, and you know, in fact, they asked for and got some
              judgment for some 4.7million dollars, I think, at trial or
              something.  She didn't have any money at that time.  So I think
              I gave her the right advice, and, you know, 'You should not

25

26   [2]    The complete legal and factual background of the Debtor's fraud and the resulting State Court
27          Fraud Action are set forth in detail in the Intervenors' Complaint to Determine Non-
            Dischargeability of Debt filed against the Debtor in the Non-Dischargeability Adversary Action
28          [Dkt. No. 1].

4

fight. You should seek the protection of the Bankruptcy Court, and try and put this behind you.'

\*          \*          \*          \*

Q       And so that's why you told her she should file for bankruptcy?

A       **Yes, and I understood that if you filed for bankruptcy, there would be a stay on this court action,** and, you know, maybe you could put these things behind for it, and it's like rolling over and saying, "I don't have anything," and she didn't.

*See* attached Declaration of Hamid R. Rafatjoo ("**Rafatjoo Decl.**"), Ex. A [E. Steinmann Examination] at pp. 117:11-20, 122;17-23, 123:21-124:2 (emphasis added).

2.       To facilitate the Debtor's strategic bankruptcy filing, E. Steinmann also arranged for his business associate's company, Norio, to lend the Debtor $50,000 to ostensibly finance and cover the initial bankruptcy-related costs that her mother, L. Steinmann, had already *gifted* to the Debtor to pay in order to encumber the Debtor's assets.  To facilitate the Debtor's strategic bankruptcy filing, E. Steinmann also arranged for his business associate's company, Norio, to lend the Debtor $50,000 to ostensibly finance and cover the initial bankruptcy-related costs that her mother, L. Steinmann, had already *gifted* to the Debtor to pay in order to encumber the Debtor's assets. [Ex. B at pp. 13:15-14 - 16:19 [L. Steinmann 7/10/17 Examination].  As confirmed during his Rule 2004 examination, E. Steinmann further procured such third-party financing to create the false and misleading impression that he was not personally behind her bankruptcy petition, believing that his involvement not only "wouldn't look very good," but also could implicate him in the ensuing effort to identify and marshal the Debtor's assets for the benefit of her creditors:

Q       How did you choose them [Norio] to approach?

A       **Because I know them, I work with them a lot**, and I knew they had money.  **They've been involved in our business**. They've made money.  They had a lot in their pocket, and they did stuff like that.  You know, they would talk to me about the different investments they would make, and it seemed to be in line with what they did.

So it didn't - - you know, I wasn't going to go any farther than I had to.  I was trying to help my sister, who truly needed some protection in bankruptcy from some of these people that are going after her ruthlessly, to, you know, get some help.  I was

5

1        trying to accomplish that, and this was the quickest way to do it.

2

Q      Why didn't you loan her the money?

3

A      **Because I considered that it wouldn't look very good, and that I would get, possibly, drug into this in that way or something like that.** I think that's maybe a concern, or maybe Till said that he didn't think that was the right thing to do. I wouldn't be opposed to loaning her money, and the way it went about, it should have been a fully secured loan. It should have been a reasonable thing. **But somehow there was a discussion, and it wasn't something that made sense for me to do, but it made sense for Annie to do, and I helped her find somebody to lend her the money.**

*Id.*, Ex. A [E. Steinmann  Examination] at pp. 112:6-113:4 (emphasis added).

3.     In connection with the Debtor's bankruptcy filing, the Steinmann Trustee Defendants also collectively took steps to conceal and insulate the Debtor's assets from her forthcoming bankruptcy Estate and creditors; namely, the Intervenors. To that end, on May 2, 2016—less than eight weeks before the Debtor's bankruptcy filing—the Steinmann Trustee Defendants orchestrated the strategic "disinheritance" of the Debtor from the multi-million dollar Disclosed Steinmann Family Trust for the sole and admitted purpose of depriving her Estate and creditors of the Debtor's *pro rata* share of those assets:

Q      Why did you disown Andrea?

             *     *     *     *

A      In lieu of what was happening, we didn't want any of our assets to be given to anyone else, so we decided that we have a revocable trust, that we would exclude Andrea from receiving any of our assets.

*See* Rafatjoo Decl., Ex. B at pp. 47:8-16 [L. Steinmann 7/10/17 Examination].

Q      If that judgment never occurred, would Andrea Downs still be one of the beneficiaries under the trust?

A      Yes.

             *     *     *     *

Q      Okay. Is there any reason other than the existence of [the Intervenors'] judgment that you took Andrea out of the trust?

1  A  No.

2  Q  And do you have -- do you intend one day to share assets with
        Andrea?

3

   A  No.

4

   Q  Why?

5

   A  Because this judgment is going to be going on longer than I
6       am.

7  *See* Rafatjoo Decl., Ex. C at pp. 71:8-10, 72:23-25, 73:10-15 [L. Steinmann 9/3/19 Examination].

8  Q  You had a meeting with [your] parents [L. and H. Steinmann]
        to discuss whether or not you should have the first amendment
9       [to the Disclosed Steinmann Family Trust] or not?

10  A  There was a meeting.  We discussed that.

11  Q  About how long was the meeting?

12  A  I can't recall.

13  Q  Okay.  And at that meeting, what was discussed?

14  A  That there was this—Annie was in some litigation with some
        people that, you know, were not interested in anything other
15       than, you know, litigating her to death, and it's a fact.  You
        know, it's millions of dollars, over 4.7 million dollars, chasing
16       some 500,000 or 700,000 investment, and, you know, it would
        be a good idea to remove her from the trust and remove us
17       from this thing, because it's going to be a burden on
        everybody.

18

19  *See id.*, Ex. A [E. Steinmann Examination] at pp. 67:17-68:5; and Ex. D [First Amendment to

20  Disclosed Steinmann Family Trust].[3]

21     **B.**  **The State Court Action Trial and the Non-Dischargeable Judgment**

22     After the Debtor's bankruptcy filing, Intervenors immediately moved for and obtained an

23  Order from this Court granting them relief from the automatic stay to continue to prosecute their

24  fraud claims against the Debtor in the State Court and at the State Court Fraud Action trial.  [Downs

25  Bankr. Dkt. No. 73].

26  _____

27  [3]  Because the above-referenced document was designated as "Confidential" by the Steinmann
     Defendants under the Stipulated Protective Order entered in this action, Plaintiffs have
     concurrently filed a motion to submit that document under seal (the **"Motion to Seal"**), and
28    will submit that document following, and in accordance, with the Court's Order on that motion.

1    Following an extensive, two phase jury trial, and a subsequent bench trial in the State Court

2    sequentially conducted between April and June 2017, the (i) jury rendered the Jury Verdicts finding

3    the Debtor liable for intentional misrepresentation, promissory fraud, concealment, and her

4    commission of such fraud with malice, and collectively awarding Intervenors $1,180,000 in

5    compensatory and punitive damages against the Debtor; and the (ii) State Court issued the State

6    Court Alter Ego Decision which, in addition to reconfirming the Jury Verdicts, also found that the

7    Debtor was the "alter ego" of Happenstance and subsequently was personally subject to, and bound

8    by, the prevailing party attorneys' fees provisions contained in Intervenors' respective loan

9    agreements with Happenstance.  [Non-Dischargeability Adv. Action, Dkt. No. 34, Exs. 4- 6].

10    Following the Jury Verdicts and State Court Alter Ego Decision, Intervenors commenced

11    the Non-Dischargeability Adversary Action by filing a Complaint to Determine Non-

12    Dischargeability of Debt against the Debtor on December 8, 2017 (the "**Non-Dischargeability**

13    **Complaint**").  [*Id.,* Dkt. No. 1].  Thereafter, Intervenors filed a Motion for Entry of Non-

14    Dischargeable Judgment against the Debtor, which this Court granted after extensive briefing, and

15    after conducting contested oral proceedings on August 30, 2018.  [*Id.,* Dkt. Nos. 33, 51].  In

16    accordance with that ruling, on September 28, 2018, this Court entered the Non-Dischargeable

17    Judgment in favor of Intervenors, and against the Debtor, in the collective amount of $4,594,473,

18    representing the compensatory and punitive damages, attorneys' fees, costs and prejudgment

19    interest owed by the Debtor to Intervenors as a result of her intentional and malicious fraud.  [*Id.,*

20    Dkt. Nos. 51, 56].

21    By virtue of the Non-Dischargeable Judgment, Intervenors are by far the largest creditors

22    of the Debtor's Estate.

23

24

25

26

27

28

8

C.    **The Trustee's Initiation of this Adversary Action, and the Steinmann
Defendants' Relentless Efforts to Shield and Conceal the Debtor's Assets**

Shortly before this Court's entry of the Non-Dischargeable Judgment against the Debtor, the Trustee[4] commenced this adversary proceeding against the Steinmann Defendants on September 6, 2018, to restore and recover the Debtor's fraudulently transferred assets, including her beneficial interest in the Disclosed Steinmann Family Trust (the "**Steinmann Adversary Action**"). [Steinmann Adv. Dkt. No. 1].[5]  Since that time, the Steinmann Defendants have engaged in a relentless campaign of "scorched-earth" tactics designed to explode the costs of litigation, and to correspondingly frustrate and interfere with the Trustee's identification, marshalling and satisfaction of claims from the Debtor's Estate's assets, manifest from the following facts:

- On November 9, 2018, the Steinmann Defendants filed two separate, baseless Motions to Dismiss the Trustee's Complaint against them, each of which were denied by this Court in their entirety on January 15, 2019. [Steinmann Adv. Dkt. Nos. 25, 27, 49-50]. The Steinmann Defendants thereafter appealed each of this Court's rulings in violation of well-established Ninth Circuit law prohibiting review of interlocutory orders, each of which appeals the Bankruptcy Appellate Panel (**"BAP"**) subsequently dismissed on April 10, 2019. [Steinmann Adv. Dkt. Nos. 117, 118].

- On January 15, 2019, the Trustee filed, and Intervenors subsequently joined, Motions for Orders authorizing the Rule 2004 examinations of the Steinmann Trustee Defendants, and requiring their corresponding production of documents, including, without limitation, E. Steinmann's production of all "[d]ocuments evidencing any sort of interest(s) held" by the Debtor in "any trust or other property," and L. and H. Steinmanns' production of all "[d]ocuments evidencing any sort of future, contingent or equitable interest(s) held directly or indirectly by the Debtor in any trust or will" settled by them.  [Downs Bankr. Dkt. Nos. 498, 502, 515, 517].  Thereafter, the Steinmann Trustee Defendants unsuccessfully sought Protective Orders preventing the requested discovery, resulting in this Court: (i) entering orders requiring E. and L.

---

[4]    On September 7, 2017, this Court entered an order converting the Debtor's bankruptcy case to a Chapter 7 proceeding as a result of the Debtor's intransigence and obstructionism, resulting in the appointment of the Trustee.  [Downs Bankr. Dkt. Nos. 267, 292, 293]

[5]    Whereas the Debtor repeatedly testified, under oath, that she does not have any interest in any family trust whatsoever, both L. and E. Steinmann confirmed the patent falsity of the Debtor's sworn testimony by revealing the Steinmann Trustee Defendants' fraudulent transfer of the Debtor's interest in the Disclosed Steinmann Family Trust, resulting in the Trustee's initiation of the Steinmann Adversary Action.  *Compare* Rafatjoo Decl., Ex. K [State Court Action Trial Tr.] at p. 54:7-13 and Ex. L [12/19/16 Hearing Tr.] at pp. 14:24-15:8, *with* Ex. C [L. Steinmann 9/3/19 Examination] at pp. 71:8-10, 72:23-25, 73:10-15; and Ex. A [E. Steinmann Examination] at pp. 67:17-68:5.

9

Steinmann to appear for their respective Rule 2004 examinations and to produce documents responsive to the above-referenced requests by no later than May 2019 [Downs Bankr. Dkt. Nos. 545-546, 632, 634, 711-712, 728]; and (ii) admonishing the Steinmann Defendants that this Court *"want[ed] cooperation finally in this case" and would no longer tolerate the Steinmann [Defendants'] refusal "to be transparent" with respect to the Debtor's assets*.  *See* Rafatjoo Decl., Ex. E [2/26/19 Hearing Tr.] at pp. 42-43 (emphasis added).

- On September 3, 2019, L. Steinmann appeared for her Rule 2004 examination during which she not only failed to produce ***any*** documents whatsoever, but also refused to answer ***any*** questions asked by Intervenors' counsel, as well as similarly refused to answer basic questions posed by the Trustee's counsel.  In response to her open flouting of this Court's Orders, Plaintiffs jointly moved to compel L. Steinmann's further Rule 2004 examination and her previously ordered production of documents, [Downs Bankr. Dkt. Nos. 736-738], resulting in this Court's entry of a January 8, 2020 Memorandum of Decision ordering:  (i) L. Steinmann to re-appear for, and answer questions during, her Rule 2004 examination and to produce the previously ordered documents concerning the Debtor's interest in any family trust; and (ii) E. Steinmann to appear for his Rule 2004 examination before this Court to ensure his compliance with his discovery obligations.  [Downs Bankr. Dkt. No. 759].  Prior to issuing that decision, this Court expressly warned the Steinmann Defendants that it was *"tired" of their "game," and was correspondingly "fed up" with their refusal to produce documents and appear for their Rule 2004 examinations, particularly where "there seems to be some coordination" between the Steinmann [Defendants] and the Debtor to conceal assets*.  *See* Rafatjoo Decl., Ex. F [12/17/19 Hearing Tr.] at pp. 13-16 (emphasis added).

- On April 17, 2020, the Court awarded monetary sanctions in favor of the Intervenors, and against L. Steinmann, in the amount of ***$62,172.86*** in response to her foregoing violations of this Court's Orders and her discovery abuse committed in connection with her Court-ordered Rule 2004 examination and production of documents.  [Downs Bankr. Dkt. No. 848].

In addition to the foregoing obstructionism and misuse of the litigation process, the Steinmann Defendants also have embroiled the Trustee in a costly proxy war through Norio, the company which E. Steinmann admittedly used to procure financing for, and conceal his role in, the Debtor's strategic bankruptcy filing.  Indeed, Norio's "slash-and-burn" tactics—which are grossly disproportionate to its alleged $50,000 claim against the Debtor's Estate by several orders of magnitude and, therefore, represent nothing but a calculated effort to consume and deplete the Trustee's and the Estate's resources—have generated more than 200 collective docket entries in this Court, the District Court, the Bankruptcy Appellate Panel and the Ninth Circuit.  Specifically:

2730759.3

- On December 22, 2017, Norio filed a Proof of Claim against the Debtor's Estate in the amount of $50,000, which this Court subsequently disallowed as a secured claim on June 13, 2019, after extensive briefing and submission of evidence. The BAP thereafter affirmed that ruling, and Norio's appeal of this Court's and the BAP's respective decisions is now pending before the Ninth Circuit. [Downs Bankr. Dkt. at Claim 10 and Dkt. Nos. 476, 478, 482, 485, 508, 520, 534, 565, 580, 647; *see also* BAP No. CC-19-1160-TaSG at Dkt. No. 25; Ninth Circuit Case No. 19-60067 at Dkt. No. 13].

- On March 20, 2018 and April 16, 2019, the Trustee filed Motions for Orders Authorizing the Sale of Personal Property Assets of the Debtor, both of which Norio unsuccessfully opposed and is now challenging on appeal. [Dkt. Nos. 406, 408, 409, 413, 421, 605, 615, 687, 660, 689; *see also* BAP Case No. 19-1160].

- On August 13, 2019, Norio inexplicably and unsuccessfully objected to the Trustee's counsel's First Interim Fee Application. [Dkt. No. 696, 700, 702, 707].

- On February 25, 2020, Norio improperly moved for reconsideration of this Court's April 9, 2018 order approving the compromise by and between the Trustee, Intervenors and Reynolds to resolve (i) the Intervenor's claims against the Debtor; and (ii) the Debtor's and Reynolds' respective cross-claims against each other, in the State Court Fraud Action. [Downs Bankr. Dkt. No. 429, 781, 782, 852, 853]. This Court denied Norio's reconsideration Motion on May 18, 2020, and Norio appealed that ruling before the District Court which has since dismissed that appeal. [Downs Bankr. Dkt. No. 882, 890 and District Court Dkt. No. 11] *See* Rafatjoo Decl., Ex. O [Order Dismissing Norio Appeal].

- On March 17, 2020, Norio objected to the Trustee's Motion for Order Authorizing the Estate to Incur Debt which, if granted, would permit the Trustee to obtain a $250,000 loan from Intervenors to fund the Trustee's continued pursuit of the Debtor's assets through, *inter alia*, the prosecution of the Steinmann Adversary Action. [Downs Bankr. Dkt. Nos. 798, 822, 830, 836]. On April 13, 2020, the Court overruled Norio's objection and granted the Trustee's Motion. [Downs Bankr. Dkt. No. 845].

- On July 9, 2020, Norio filed a Motion for Allowance and Payment of Administrative Claim, requesting that the Court order the Trustee to pay Norio's $50,000 unsecured claim as an administrative claim, which Motion is currently pending before this Court. [Downs Bankr. Dkt. No. 917, 936].

- As a result of Norio's economically irrational and abusive litigation conduct, the Trustee has been required to needlessly incur more than $100,000 in attorneys' fees and costs. *See* attached Declaration of Jeffrey I Golden ("**Golden Decl.**"), ¶ 3.

In light of the Steinmann Defendants' and their proxy Norio's foregoing conduct, it is beyond credible dispute that the Steinmann Defendants not only intend to, but repeatedly have and continue, to undermine the integrity of the bankruptcy process, and frustrate Plaintiffs' ability to uncover the truth regarding the existence and location of the Debtor's Estate's assets.

11

2730759.3

### D.    The Steinmann Defendants' Concealment of the Irrevocable Trust

In a further effort to frustrate the bankruptcy process and prevent (or, at a minimum, significantly delay) the identify and marshalling of Estate assets, the Steinmann Defendants also purposely hid the truth about the Debtor's property interests for years.  To that end, *the Steinmann Defendants only recently disclosed—for the very first time—that, in addition to her strategically "disinherited" interest in the Disclosed Steinmann Family Trust, the Debtor <u>also</u> has and continues to possesses a 10 percent <u>irrevocable</u> beneficial interest in the multi-million dollar, previously undisclosed Concealed Steinmann Family Trust, the assets of which are payable upon H. Steinmann's death.*    The intentional, knowing and bad faith nature of the Steinmann Defendants' concealment of this significant, multi-million dollar Estate asset is manifest from the following indisputable facts:

*First,* as established in Section II.C, *supra,* both E. and L. Steinmann were explicitly ordered to produce all documents concerning the Debtor's assets in any family trust ***more than 16 months ago,*** and by no later than May 14, 2019.  [Downs Bankr. Dkt. Nos. 711-712].  Rather than do so, the Steinmann Defendants concealed the existence of the Concealed Steinmann Family Trust for years and, indeed, expressly denied the existence of any trust other than the Disclosed Steinmann Family Trust in their May 14, 2019 Responses to the Trustee's 2004 Document Requests in patent disregard and derogation of the truth.  *See* Rafatjoo Decl., Ex. G [E. Steinmann Response] at RFP No. 1; Ex. H [L. Steinmann Response] at RFP No. 2.

*Second,* in her sworn testimony in both State Court Fraud Action and this Steinmann Adversary Action, L. Steinmann repeatedly and unequivocally denied the existence of any family trust other than the Disclosed Steinmann Family Trust in concealment of the truth and the Concealed Steinmann Family Trust:

> Q    Was there some other vehicle other than your trust accounts that you made investments through at any time from 2006 to the present?
>
> A    Yes.  The trust account is fairly recent.
>
> Q    When was the trust set up?

2730759.3

| | | |
|---|---|---|
| 1 | A | Just in the last year because I'm 80 years old and it was a prudent thing to do. |
| 2 | | |
| 3 | Q | Okay.  **So that's the only trust account that either your or your husband have had assets in - -** |
| 4 | A | **Yes.** |
| 5 | Q | **- - the period 2006 to the present?** |
| 6 | A | **Yes.** |

*See* Rafatjoo Decl., Ex. I [L. Steinmann 6/16/16 Deposition] at p. 22:7-18 (emphasis added).

| | | |
|---|---|---|
| 8 | Q. | Prior to documents that you have produced, the trust and the statement of trust and the will – |
| 9 | | |
| 10 | A. | Uh-huh. |
| 11 | Q. | -- were there any other wills or trusts that you had that were in effect prior to the dates that you established the trust that you just handed me? |
| 12 | | |
| 13 | A. | **Just one.** |
| 14 | Q. | And you have not produced a copy of that? |
| 15 | | MR. GALLAGHER:  Well, first of all, just for clarification, was it a trust or a will? |
| 16 | | THE WITNESS:  It was a will, not a trust. |
| 17 | | *        *        *        * |
| 18 | Q. | This trust that you have provided, is this the one and only trust that you have established? |
| 19 | | |
| 20 | A. | Yes. |

*See id.*, Ex. B [L. Steinmann 7/10/17 2004 Examination] at pp. 42:17-43:4, 45:8-10 (emphasis added).

| | | |
|---|---|---|
| 23 | Q | **So you've done a trust document.  How many trusts have you done**? |
| 24 | | |
| 25 | A | **One.** |
| 26 | Q | Before you did a trust, did you have a will? |
| 27 | A | There was one maybe 30 years ago when we went on a trip.  I don't know where it is.  It just said who was going to take care of who and that sort of thing.  We were young then, and our children were young. |
| 28 | | |

13

\* \* \* \*

Q    Okay.  And years later, then, you formed a trust?

A    Yes.  And that supersedes anything that was done prior to that.

Q    **And prior to that, what else was done other than a will?**

A    **Nothing.**

\* \* \* \*

Q    **And you set up one trust?**
A    **Correct.**

*See id.,* Ex. C [L. Steinmann 9/3/19 Examination] at pp. 15:1-8, 15:23-16:3, 17:12-17.

Put simply, there is no conceivably innocent explanation for the Steinmann Defendants' denial, and corresponding concealment, of the Concealed Steinmann Family Trust until just recently, particularly where that trust:  (i) is a long-standing family asset that was settled by the Debtor's parents, L. and H. Steinmann in 2004; (ii) has continuously been controlled and managed by the Debtor's brother, E. Steinmann, as its trustee; (iii) names the Debtor and each of her siblings, including E. Steinmann, as equal beneficiaries; (iv) contains multi-millions of dollars in assets that will mature and be payable upon the death of the Debtor's father, H. Steinmann; and (v) has required the payment of significant annual insurance premiums for more than 15 consecutive years. *See id.* at Exs. J, M and N [Concealed Steinmann Family Trust, Policy Application, Life Insurance Policy].[6]

Finally, while the Steinmann Defendants have professed that the only alleged asset of the Concealed Steinmann Family Trust is a multi-million insurance policy, Plaintiffs not only have been unable to verify the accuracy of that claim, but also anticipate that their efforts to discover the truth as to that trust's historical and current assets will be met with vigorous opposition by the Steinmann Defendants who have already filed an "emergency" Motion to Quash Plaintiff's third

---

[6]    Because the above-referenced documents were designated as "Confidential" by the Steinmann Defendants under the Stipulated Protective Order entered in this action, Plaintiffs have concurrently filed the Motion to Seal, and will submit those documents following, and in accordance, with the Court's Order on that motion.

14

2730759.3

1    party subpoenas seeking to uncover that very information.  [*See* Adv. Action Dkt. Nos. 217, 218,

2    and 219].  Moreover, given their long history of lying and concealment as to the existence and

3    scope of the Debtor's property interests, the Steinmann Defendants neither can, nor should be,

4    trusted to provide truthful testimony or to produce all relevant documents regarding the very

5    Concealed Steinmann Family Trust they studiously hid from the parties and this Court for years.

6    **III.    THE COURT SHOULD EXERCISE ITS INHERENT POWER TO ENTER**
     **TERMINATING SANCTIONS AGAINST THE STEINMANN DEFENDANTS**
7

8        A.    <u>Terminating Sanctions are Both Warranted and Necessary</u>

9        Federal courts, including bankruptcy courts, enjoy broad inherent power "to manage their

10   own affairs so as to achieve the orderly and expeditious disposition of cases," including by

11   sanctioning the "full range of litigation abuses."  *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 43-

12   46, 50 (1991); *see also In re Rainbow Magazine*, 77 F.3d 278, 284 (9th Cir. 1996) ("By providing

13   that bankruptcy courts could issue orders necessary 'to prevent an abuse of process,' Congress

14   impliedly recognized that bankruptcy courts have the inherent power to sanction that *Chambers*

15   recognized exists within Article III courts.").  Thus, "if in the informed discretion of the court,

16   neither [a] [federal] statute nor the Rules are up to the task [of adequately sanctioning bad-faith

17   litigation conduct], the court may safely rely on its inherent power" to do so.  *Chambers*, 501 U.S.

18   at 50; *see also In re Deville*, 280 B.R. 483, 495 (B.A.P. 9th Cir. 2002) (recognizing "[t]he inherent

19   power to sanction bad-faith conduct is a separate and distinct source of authority, which is not

20   displaced by the federal statutes and rules").

21       To that end, it is well-established that courts enjoy inherent power to issue terminating

22   sanctions and to enter default judgments in response to pervasively abusive litigation practices such

23   as those committed by the Steinmann Defendants in this case. *See, e.g., Wyle v. R.J. Reynolds*

24   *Industries, Inc.,* 709 F.2d 585, 589 (9th Cir. 1983) ("[C]ourts have inherent power to dismiss an

25   action when a party has willfully deceived the court and engaged in conduct utterly inconsistent

26   with the orderly administration of justice."); *Sun World, Inc. v. Olivarria*, 144 F.R.D. 384, 390

27   (E.D. Cal. 1992) ("The court may impose the sanction of dismissal or default judgement pursuant

28   to its inherent powers.").  While "harsh," terminating sanctions are manifestly appropriate and

2730759.3

awardable where, as here, "a party has engaged deliberately in deceptive practices that undermine the integrity of the judicial proceeding or has willfully deceived the court and engaged in conduct utterly inconsistent with the orderly administration of justice." *See Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958 (9th Cir. 2006) (internal quotations omitted). Indeed, "[t]here is no point to a lawsuit, if it merely applies law to lies" because "[t]rue facts must be the foundation for any just result." *Valley Eng'rs v. Electric Eng'g Co.*, 158 F.3d 1051, 1058 (9th Cir. 1998). Put simply, terminating sanctions are warranted when "a party's discovery violations make it impossible for a court to be confident that the parties will ever have access to the true facts." *Id.*[7]

To determine whether to impose terminating sanctions in response to a party's bad faith litigation conduct, courts in the Ninth Circuit weigh the following factors: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on the merits; and (5) the availability of less drastic sanctions." *See Anheuser-Busch v. Natural Beverage Distribs.*, 69 F.3d 337, 348 (9th Cir. 1995). Although a court "need not make explicit findings regarding each of these factors, a finding of willfulness, fault or bad faith is required" for terminating sanctions to be proper. *See Leon*, 464 F.3d at 958 (internal citations and quotations omitted).

Applying these factors, it is clear the Steinmann Defendants' repeated, continuous and willfully obstructive litigation conduct, and their corresponding disregard for the truth and the integrity of the bankruptcy process, mandate the issuance of terminating sanctions here.

### 1.    The Steinmann Defendants' Bad Faith Litigation Conduct

Terminating sanctions are both available and "proper" if "the conduct to be sanctioned [is] due to willfulness, fault, or bad faith." *Leon*, 464 F.3d at 958. When a party's "[d]isobedient conduct" is within its "control," a finding of "willfulness, bad faith, or fault" is warranted. *See In*

---

[7] While *Valley Eng'rs* involved the propriety of terminating sanctions under Rule 37, Ninth Circuit law is clear that "dismissal sanctions under Rule 37 are subject to much the same considerations as those under a Court's inherent powers, [which] therefore use both types of cases interchangeably." *United States use of Wiltec Guam, Inc. v. Kahaluu Constr. Co.*, 857 F.2d 600, 603 n.5 (9th Cir. 1988); *see also Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406, 1412 n. 4 (9th Cir. 1990) (recognizing the similarity between Rule 37 and inherent power sanctions).

16

1    *re Lebbos*, 385 B.R. 737, 743, 750 (B.A.P. 9th Cir. 2008) (internal quotations omitted) (defendant's

2    failure to attend his deposition and produce required documents "reflect[ed] an intention to prevent

3    the Trustee from acquiring information about the issues raised in her complaint, and to prevent a

4    trial on the merits after the timely completion of legitimate discovery[,]" and therefore constituted

5    willful and bad conduct sufficient to justify terminating sanctions).

6        Unsurprisingly, therefore, when a party actively conceals or "falsifies evidence of central

7    importance to a case, this shows bad faith, willfulness, or fault, and thus supports the Court's

8    exercise of its inherent power to dismiss a case." *Vogel v. Tulaphorn, Inc.*, No. CV 13-464 PSG,

9    2013 U.S. Dist. LEXIS 200563, *12 (C.D. Cal. Nov. 5, 2013); *see also Fair Hous. v. Combs

10   ("Combs")*, 285 F.3d 899, 905-906 (9th Cir. 2002) (affirming entry of default judgment where

11   defendant "misrepresented to both counsel and to the district court that the documents did not

12   exist."); *Arnold v. County of El Dorado*, No. 2:10-cv-3119 KJM, 2012 U.S. Dist. LEXIS 112398,

13   *12-13 (E.D. Cal. Aug. 9, 2012) ("Clearly, committing perjury is acting in 'bad faith.'  Dismissal

14   is an appropriate sanction for falsifying a deposition.  The court's inherent powers can be called

15   upon to redress such mendacity.") (internal quotations omitted).

16       Relatedly, terminating sanctions are similarly justified where, as here, a party's

17   obstructionism, frivolous conduct, or willful disobedience of the law result in the undue expansion

18   of litigation, and otherwise interfere with the truth-seeking process.  *See, e.g., Computer Task Grp.,

19   Inc.*, 364 F.3d at 1115-1117 (affirming terminating sanctions where defendant "engaged in a

20   consistent, intentional, and prejudicial practice of obstructing discovery," including by "making

21   frivolous objections [and] filing frivolous motions . . . ."); *Valley Eng'rs*, 158 F.3d at 1057-1058

22   (affirming terminating sanctions where "[i]t took years to shake loose" critical discovery); *Sunrider

23   Corp. v. Bountiful Biotech Corp.*, No. SACV 08-1339 DOC (AJWx), 2010 U.S. Dist. LEXIS

24   117347, at *84, 97-99 (C.D. Cal. Oct. 8, 2010) (terminating sanctions proper where plaintiffs were

25   "forced to repeatedly litigate issues relating to . . . discovery misconduct and noncompliance with

26   orders for almost a year[,]" and defendant "needlessly congested the court's docket, consumed

27   scarce judicial resources, and multiplied the proceedings in the case.").

28

2730759.3

In evaluating whether a party's malfeasance rises to the level of willful bad faith justifying terminating sanctions, a court can and should "properly consider all" of a party's misconduct, "including conduct which has been the subject of earlier sanctions." *Payne v. Exxon Corp.*, 121 F.3d 503, 508 (9th Cir. 1997).

Applying this law, the Steinmann Defendants' previously detailed conduct leading up to, and in connection with, the Debtor's bankruptcy, has smacked of intentional bad faith, manifest in their relentless campaigns to conceal and prevent the marshalling of the Debtor's assets by:

- Facilitating and financing the Debtor's strategic bankruptcy filing for the admitted purpose of avoiding liability in the State Court Fraud Action, and simultaneously arranging for the equally strategic, purported "disinheritance" of the Debtor from the Disclosed Steinmann Family Trust;

- Repeatedly and unsuccessfully opposing the Trustee's and Intervenors' requests for Rule 2004 examinations and production of documents, thereby requiring the Trustee and Intervenors to file Motions to Compel, and to seek and obtain more than $62,000 in monetary sanctions;

- Waging an economically irrational and substantively meritless proxy battle against the Trustee through Norio, resulting in the needless multiplication of proceedings before this Court, the District Court, the BAP and the Ninth Circuit, all of which have, to date, uniformly resulted in adverse rulings against Norio; and

- Intentionally hiding and denying the existence of the Debtor's interest in the Concealed Steinmann Family Trust by repeatedly providing demonstrably false written discovery responses and sworn testimony, and not disclosing the existence of the Concealed Steinmann Family Trust until just recently—***more than 4 years <u>after</u> the Debtor initiated her bankruptcy case, nearly 2 years <u>after</u> the Trustee initiated the Adversary Action, and more than a year after being ordered to do so by this Court***.

*See discussion and evidence, supra, at Sections II.A-C.*

Viewed in their totality, the Steinmann Defendants' disdain for, and bad faith attempts to undermine, the bankruptcy process could hardly be more clear under governing law. *See, e.g., Wyle*, 709 F.2d at 590 (plaintiff acted in bad faith where it knowingly and falsely denied incriminating facts in response to discovery requests); *Anheuser-Busch, Inc.*, 69 F.3d at 349-352 (defendant acted in bad faith where it was aware that relevant records survived warehouse fire in legible form, falsely testified about their existence and condition, and made no efforts to retrieve

18

1   the documents until shortly before trial); *Sunrider Corp.*, 2010 U.S. Dist. LEXIS 117347, at *81,

2   84-87 (recognizing that "[b]ad faith encompasses a broad range of willful improper conduct," and

3   holding that defendant engaged in willful misconduct where he "knowingly and repeatedly gave

4   perjurious testimony," "failed to produce, or belatedly and incompletely produced, responsive

5   documents" and "left plaintiffs with little choice but to bring successive, meritorious motions

6   seeking to compel his compliance and deter further noncompliance.").

**2.    The Public's Interest in the Expeditious Resolution of Litigation**

8       "The public's interest in expeditious resolution of litigation always favors dismissal[,]"

9   *Yourish v. Cal. Amplifier*, 191 F.3d 983, 990 (9th Cir. 2002), including when considering the

10  propriety of terminating sanctions.  *See, e.g., See SEC v. Blockvest, LLC ("Blockvest")*, No.

11  18cv2287-GPC, 2020 U.S. Dist. LEXIS 68951, *40 (S.D. Cal. Apr. 20, 2020) (recognizing the

12  public "has an overriding interest in securing the just, speedy and inexpensive determination of

13  every action" which "always favors dismissal"); *Sunrider*, 2010 U.S. Dist. LEXIS 117347 at *83-

14  4 (same).  This case should be no exception, particularly where the Steinmann Defendants'

15  gamesmanship has delayed and frustrated the Trustee's prosecution of this Steinmann Adversary

16  Action, and more broadly, has infected and interfered with the efficient administration of the

17  Debtor's long-pending bankruptcy case.  *See, e.g., Blockvest*, 2020 U.S. Dist. LEXIS 68951, at *40

18  ("This action has been pending since October 3, 2018, and Plaintiff SEC and the Court dedicated

19  substantial public resources to the case.  Defendants' misconduct caused unnecessary delay and

20  expense for Plaintiff, and the public it seeks to protect.  The Court thus finds that this factor weighs

21  in favor of imposing terminating sanctions.").

**3.    The Court's Need to Manage Its Docket**

23      Ninth Circuit law is clear that "courts have [the] inherent power to control their dockets,"

24  and that "dismissal must [therefore] be available to [them] in appropriate cases not merely to

25  penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who

26  might be tempted to such conduct in the absence of such a deterrent."  *See Allen v. Bayer (In re

27  Phenylpropanolamine (PPA) Prods. Liab. Litig.)*, 460 F.3d 1217, 1227 (9th Cir. 2008) (internal

28  quotations omitted).  Indeed, it is "incumbent upon [courts] to [be able to] . . . manage their dockets

19

1    without being subject to the endless vexatious noncompliance of litigants[,]" *Frederick v. Bonzelet*,

2    963 F.2d 1258, 1261 (9th Cir. 1992), and it is thus unsurprising that efficient docket management

3    weighs squarely in favor of terminating sanctions when a party's "conduct needlessly congest[s]

4    the court's docket, consume[s] scarce judicial resources, and multiple[s] the proceedings in th[e]

5    case." *Sunrider Corp.*, 2010 U.S. Dist. LEXIS 117347, at *84; *see also, e.g., Blockvest,* 2020 U.S.

6    Dist. LEXIS 68951 at *42-43 (defendants' misconduct threatened court's docket where "a

7    tremendous amount of resources on this litigation that could have been devoted to other cases on

8    its docket[,]" and defendants had "greatly impeded the resolution of the case by obscuring critical

9    facts[.]").

10        Here, the Steinmann Defendants—in their own capacity and through their litigation proxy

11    Norio—have not only (i) flooded this Court's, the District Court's, the BAP's and the Ninth

12    Circuit's dockets with meritless and uniformly unsuccessful filings; but also have (ii) left Plaintiffs

13    with "little choice but to bring [their own] successive, meritorious motions to obtain [the Steinmann

14    Defendants'] compliance, [to] deter further noncompliance[,]" and to ensure the proper

15    administration of the Debtor's Estate. *See Sunrider Corp.*, 2010 U.S. Dist. LEXIS 117347, at *84;

16    *see also discussion and evidence cited, supra, at Section II.C-D.* Because the Steinmann

17    Defendants have needlessly multiplied the proceedings and consumed judicial and litigant

18    resources in order to frustrate the effective administration of the Debtor's Estate, this factor

19    militates strongly in favor of the issuance of terminating sanctions.

20              **4.        Prejudice to the Trustee and Intervenors.**

21        "A defendant suffers prejudice if the plaintiff's actions impair the defendant's ability to go

22    to trial or threaten to interfere with the rightful decision of the case." *See Anheuser-Busch*, 69 F.3d

23    at 353-54 (internal quotations omitted). In assessing whether prejudice exists, a court should

24    consider a party's entire course of conduct, *Adriana Int'l Corp.*, 913 F.2d at 1412, and prejudice

25    may arise from a variety of abusive litigation tactics, including, without limitation: (i) the failure

26    to produce documents; (ii) the concealment of relevant facts; (iii) the provision of false testimony;

27    and (iv) the needless multiplication of proceedings. *See, e.g., Valley Eng'rs*, 158 F.3d at 1058

28    (affirming terminating sanctions where defendant intentionally failed to produce "smoking gun"

20

document for years, such that "it was a reasonable inference that if there was other discoverable

material harmful to its case that its adversaries did not know about, it would be hidden forever[,]"

and there could "never be assurance of proceeding on the true facts[.]");*In re Exxon Valdez*, 102

F.3d 429, 433 (9th Cir. 1996) ("The appellants' total failure to respond to discovery and the time

consumed by attempting to secure compliance prejudiced appellees."); *Sun World*, 144 F.R.D. at

391 ("There is no doubt that [plaintiff] has been prejudiced by [defendant's] actions.  It has been

forced to litigate against an opponent who admittedly and intentionally committed a fraud on this

court, who has perjured himself on at least two occasions, who has exercised delay tactics, who has

shown complete disregard for the jurisdiction of this court, and who has instigated duplicative,

concurrent litigation in Mexico.").[8]

Here, the Steinmann Defendants have engaged in a cocktail of misconduct, each aspect of

which is associated with and gives rise to prejudice.  Indeed, by virtue of their obstructionism and

concealment of Estate assets, there is  now "a pall upon the [Steinmann Defendants'] integrity"

such that it cannot reasonably be "expect[ed] that this case is capable of a fair and just resolution

on the merits." *Valley Eng'rs*, 158 F.3d at 1059 (internal quotations omitted).  Accordingly, this is

a paradigm case of prejudice, both to the judicial process itself, and to the Trustee and Intervenors.[9]

---

[8]  *See also, e.g., Blockvest,* 2020 U.S. Dist. LEXIS 68951 at *44 (finding prejudice where "[t]he
false evidence produced by Defendants precluded Plaintiff from timely ascertaining evidence
central to its claims, and forced Plaintiff to engage in extensive, costly, and lengthy discovery
to uncover key facts and the extent of Defendants' deceit[,]" thereby "threaten[ing] to interfere
with the rightful decision of the case" and potentially "forc[ing] Plaintiff to rely on incomplete
and spotty evidence at trial."); *CrossFit, Inc. v. Nat'l Strength & Conditioning Ass'n*, Case No.
14-CV-1191 JLS, 2019 U.S. Dist. LEXIS 209319, *55-56 (S.D. Cal. Dec. 4, 2019) ("The Court
shares [plaintiff's] concerns that, 'give the extensive perjury to date, the evidence supplied by
[defendant] will also be inherently untrustworthy' . . . Neither [plaintiff] nor the Court nor the
public can trust the veracity of further discovery collected by [defendant].  The Court therefore
concludes that [plaintiff] has established that it will suffer prejudice absent termination."); 
*Sunrider Corp.*, 2010 U.S. Dist. LEXIS 117347, at *84-92, 97-98 (finding prejudice where
defendant "knowingly and repeatedly gave perjurious testimony" and "fail[ed] to comply with
discovery rules and discovery orders[,]" thus "forc[ing] [Plaintiffs] to repeatedly litigate issues
relating to [his] discovery misconduct and noncompliance with orders for almost a year.").

[9]  Contrary to what they may claim in opposition to this Motion, the Steinmann Defendants' long
delayed and belated disclosure of the Concealed Steinmann Family hardly obviates the years
of litigation misconduct they have perpetrated in this Court, much less immunizes them from
terminating sanctions.  *See, e.g., Combs*, 285 F.3d at 906 ("Combs argues that the sanctions
were inappropriately entered against him because he eventually produced the documents. ***The***

21

1

2          **5.    Public Policy Favoring Disposition on the Merits**

3          Although "[t]he public policy in favor of disposition of cases on their merits always weighs

4  against dismissal . . , this factor lends little support to a party whose conduct impede[s] progress

5  toward disposition on the merits."  Indeed, this factor is considered "neutral" where, as here,

6  litigants engage in "extensive misconduct and deception concerning [the] key issues" in a case. *See*

7  *Blockvest,* 2020 U.S. Dist. LEXIS 68951 at *45-6 (internal citation and quotations omitted).

8          Because the Steinmann Defendants have perpetrated a multi-year campaign in this Court to

9  (i) impede progress in the Debtor's bankruptcy case, and (ii) interfere with the Trustee's ability to

10 identify, marshal and satisfy claims from the Debtor's Estate's assets, this factor is unable to defeat

11 the propriety of terminating sanctions.  *See e.g., Arnold*, 2012 U.S. Dist. LEXIS 112398 at *45 ("In

12 this case, even the 'merits' factor favors dismissal as one cannot reach the true merits of a case if

13 false or evasive testimony is given and other discovery obligations are ignored.").

14         **6.    The Inefficacy of Lesser Sanctions**

15         In reviewing an award of terminating sanctions, the Ninth Circuit considers whether the

16 lower court (1) "explicitly discussed the feasibility of less drastic sanctions and explained why such

17 alternative sanctions would be inappropriate"; (2) "implemented alternative sanctions before

18 ordering dismissal"; and (3) "warned the party of the possibility of dismissal before ordering

19 dismissal."  *See Anheuser-Busch*, 69 F.3d at 352.  These factors are not, however, "conditions

20 precedent for sanctions or a script that the [lower] court must follow."  To the contrary, courts can

21 and do impose terminating sanctions without first resorting to less severe options or explicitly

22 warning the offending party that dismissal may be forthcoming.  *See In re Lebbos*, 385 B.R. at 752.

23         Here, the Steinmann Defendants have proved impervious to less severe sanctions, and have

24 likewise ignored this Court's repeated warnings that it is losing patience with their "hide-the-ball,"

25

26  _____

27         ***district court properly considered and rejected this argument . . . [because] [the] [l]ast-minute
   tender of documents does <u>not</u> cure the prejudice to opponents***[.]") (emphasis added).

28

2730759.3

1    evasive tactics.  Accordingly, terminating sanctions not only are manifestly appropriate in this case,

2    but also required to redress and finally put an end to the Steinmann Defendants' circus.

3                          **a.      The Feasibility of Lesser Sanctions**

4          "[D]ismissal is appropriate where a pattern of deception and discovery abuse ma[k]e it

5    impossible for the [] court to conduct a trial with any reasonable assurance that the truth [will] be

6    available." *Valley Eng'rs*, 158 F.3d at 1057 (internal quotations omitted); *see also Sun World,* 144

7    F.R.D. at 391 (imposing terminating sanctions where plaintiff's track record indicated that any

8    lesser sanction would be futile); *In re Lebbos*, 385 B.R. at 755 ("A terminating sanction is

9    appropriate where a party's discovery violations make it impossible for a court to be confident that

10   the parties will ever have access to the true facts.  In such a situation, the court is justified in

11   concluding that no lesser sanction would be effective.").  Relatedly, "it is appropriate to reject lesser

12   sanctions where the court anticipates continued deceptive conduct." *Computer Task Grp., Inc.*, 364

13   F.3d at 1116-1117.

14         Put simply, there is no reason to expect the Steinmann Defendants' abusive litigation tactics

15   will abate going forward, or that a trial on the full merits is possible.  To the contrary, like the

16   defendant in *In re Lebbos*, the Steinmann Defendants effectively have appointed themselves "as

17   the arbiter of what discovery should be permitted[,]" and when relevant facts should be disclosed,

18   if at all.  *See* 385 B.R. at 755.  Indeed, the Steinmann Defendants' view of litigation not only is

19   manifest in their (i) patent disregard of this Court's orders; but also in their (ii) intentional and

20   knowing concealment of the Debtor's assets, including by repeatedly perjuring themselves under

21   oath.  Clearly, neither this Court's rulings, nor its myriad of admonitions, are capable of deterring

22   the Steinmann Defendants, particularly given their (and their proxy Norio's) self-evident

23   willingness to incur unlimited attorneys' fees and costs, and to subject themselves to significant

24   monetary sanctions, to achieve their malicious goals.[10]  *See e.g., Anheuser-Busch*, 69 F.3d at 353-

25   _____

26   [10]   As confirmed on the life insurance policy admittedly owned by the Concealed Steinmann
         Family Trust itself, H. Steinmann's net worth alone is considerable, and Intervenors have no
27       reason to believe that it has diminished at all, much less to any material degree.  *See* Rafatjoo
         Decl., Ex. M [Policy Application] at p. 3 (which exhibit will be submitted following the Court's
28       Order on the Motion to Seal).  Rather, the facts indicate that the Steinmann Defendants' family

55 (affirming sanctions and concluding that "dismissal was the only real alternative" where defendants' "behavior illustrated . . . an abiding contempt and continuing disregard for this court's orders[,]" and involved the "conceal[ment] of material documents for three years, [the] continuous[] deni[al] [of] their existence under oath, and [the failure] [to] produce the documents" such that "[t]here was no reason to be confident that the whole truth would be revealed  . . , and every reason to infer from her conduct, that [defendant] would continue to deceive with regard to every matter on which she had not been caught."); *Vogel*, 2013 U.S. Dist. LEXIS 200563 at *36 ("When a party repeatedly lies under oath, this constitutes a pattern of deception sufficient to impose terminating sanctions rather than lesser sanctions.").

### b.    Imposition of Alternative Sanctions and Issuance of Warnings Prior to Ordering Terminating Sanctions

An "explicit warning is not always necessary" to justify an award of terminating sanctions, particularly where "dismissal should not [be] [a] surprise[]" in light of the offending party's misconduct and a court's prior issuance of less severe sanctions. *See Adriana Int'l Corp.*, 913 F.2d at 1413. It is indisputable the Steinmann Defendants are, or reasonably should be, aware of the risk of terminating sanctions, particularly where the Court has already imposed sanctions in excess of $62,000 against L. Steinmann for discovery abuse, and has expressly and repeatedly communicated its dissatisfaction with Steinmann Defendants' "game[s]" and intransigent refusal to "cooperate" with discovery.  *See* Rafatjoo Decl., Ex. E [2/26/19 Hearing Tr.] at pp. 42-43; Ex. F [12/17/19 Hearing Tr.] at pp. 13-16.  Terminating sanctions, therefore, clearly are available under governing law. *See Anheuser-Busch, Inc. v. Nat'l Beverage Distribs.*, 151 F.R.D. 346, 354 (N.D. Cal., 1993) (determining less severe sanctions would not be effective where "the court ha[d] repeatedly warned" defendant "about her [inappropriate litigation] conduct" and concluded that she did "not take her oath to tell the truth seriously and [would] say anything at any time in order to prevail in

---

wealth has, and continues to, render them openly dismissive of, and effectively immune from, the consequences of, monetary sanctions.

1    th[e] litigation" such that "[t]here [was] little guarantee that if the court were to impose lesser

2    sanctions [her] misconduct would cease."), *aff'd* 69 F.3d at 348-355.

3            **B.        Monetary Sanctions Are Similarly Warranted**

4            "Under its 'inherent powers' a district court may also award sanctions in the form of

5    attorneys' fees against a party or counsel who acts in bad faith, vexatiously, wantonly, or for

6    oppressive reasons." *Leon*, 464 F.3d at 961 (internal quotations omitted). "A party demonstrates

7    bad faith by delaying or disrupting the litigation or hampering enforcement of a court order." *Id.*

8    (internal quotations omitted). Consistent with the Steinmann Defendants' pattern of bad faith

9    conduct justifying the entry of terminating sanctions, the Court should likewise award the Trustee

10   and Intervenors the attorneys' fees they incurred in connection with the preparation and prosecution

11   of this Motion. *See id.* (affirming award of monetary sanctions associated with terminating

12   sanctions). In the event the Court determines that such fees should be awarded, the Trustee and

13   Intervenors respectfully request that they be permitted to submit Declarations, or such other

14   documentation that the Court deems necessary, to substantiate the amount of their respective fees.

15   ///

16   ///

17   ///

18   ///

19   ///

20   ///

21   ///

22   ///

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

25

## IV.    CONCLUSION

Based on the foregoing, the Trustee and Intervenors respectfully request that the Court enter an Order (1) striking the Steinmann Defendants' Answer in the Steinmann Adversary Action; (2) entering a default judgment against the Steinmann Defendants, and in favor of the Trustee and Intervenors, in the Steinmann Adversary Action; and (3) awarding the Trustee and Intervenors their reasonable attorneys' fees respectively incurred in connection with the preparation and prosecution of this Motion.

Dated: September 30, 2020                    **PACHULSKI STANG ZIEHL & JONES LLP**

By:    /s/ Richard M. Pachulski
Richard M. Pachulski
Attorneys for Intervenors and Creditors
HAUSMAN HOLDINGS, LLC and
DAVID and PAMELA MOELLENHOFF

Dated: September 30, 2020                    **RAINES FELDMAN LLP**

By:    /s/ Hamid R. Rafatjoo
Hamid R. Rafatjoo
Attorneys for Intervenors and Creditors
HAUSMAN HOLDINGS, LLC and
DAVID and PAMELA MOELLENHOFF

Dated: September 30, 2020                    **WEILAND GOLDEN GOODRICH LLP**

By:
Jeffrey I. Golden
Attorneys for Chapter 7 Trustee and Plaintiff
THOMAS H. CASEY

26

2730759.3

1

## DECLARATION OF JEFFREY I. GOLDEN

2

I, Jeffrey I. Golden, declare as follows:

3      1.      I am a partner of Weiland Golden Goodrich LLP ("**Firm**"), counsel for Thomas H.

4   Casey, the duly appointed, qualified and acting Chapter 7 trustee (**"Trustee")** for the bankruptcy

5   estate (**"Estate"**) of Andrea Steinmann Downs (**"Debtor"**).  I know each of the following facts to

6   be true of my own personal knowledge or information and belief, and if called as a witness, I could

7   and would competently testify with respect thereto.

8      2.      I am submitting this Declaration in support of the *Joint Motion for Terminating*

9   *Sanctions* ("**Motion**") filed by the Trustee, and by Creditors and Intervenors Hausman Holdings,

10   LLC and David and Pamela Moellenhoff (**"Intervenors"**).  Any term not specifically defined herein

11   shall have the meaning set forth in the Motion.

12      3.      The Firm has incurred $109,080.00 in fees representing the Trustee as a result of

13   Norio Inc.'s ("**Norio**") litigation conduct in connection with its purported secured claim against the

14   Debtor's Estate the amount of $50,000, as Claim No. 10-1 ( "**Claim**").

15      4.      The fees incurred due to Norio and the Claim are extensive and continue to accrue.

16   Norio has engaged in litigation tactics that are grossly disproportionate to its Claim, and has generated

17   more than 200 collective docket entries in this Court, the District Court, the Bankruptcy Appellate

18   Panel and the Ninth Circuit.  Specifically:

19         a.      On December 22, 2017, Norio filed a Proof of Claim against the Debtor's

20   Estate in the amount of $50,000, which this Court subsequently disallowed as a secured claim on

21   June 13, 2019, after extensive briefing and submission of evidence.  The BAP thereafter affirmed that

22   ruling, and Norio's appeal of this Court's and the BAP's respective decisions is now pending before

23   the Ninth Circuit.  [Downs Bankr. Dkt. at Claim 10 and Dkt. Nos. 476, 478, 482, 485, 508, 520, 534,

24   565, 580, 647; *see also* BAP No. CC-19-1160-TaSG at Dkt. No. 25; Ninth Circuit Case No. 19-60067

25   at Dkt. No. 13].

26         b.      On March 20, 2018 and April 16, 2019, the Trustee filed Motions for Orders

27   Authorizing the Sale of Personal Property Assets of the Debtor, both of which Norio unsuccessfully

28

2730759.3

1  opposed and is now challenging on appeal. [Dkt. Nos. 406, 408, 409, 413, 421, 605, 615, 687, 660,

2  689; *see also* BAP Case No. 19-1160].

3          c.      On August 13, 2019, Norio inexplicably and unsuccessfully objected to the

4  Trustee's counsel's First Interim Fee Application. [Dkt. No. 696, 700, 702, 707].

5          d.      On February 25, 2020, Norio improperly moved for reconsideration of this

6  Court's April 9, 2018 order approving the compromise by and between the Trustee, Intervenors and

7  Reynolds to resolve (i) the Intervenor's claims against the Debtor; and (ii) the Debtor's and Reynolds'

8  respective cross-claims against each other, in the State Court Action. [Downs Bankr. Dkt. No. 429,

9  781, 782, 852, 853]. This Court denied Norio's reconsideration Motion on May 18, 2020, and Norio

10  appealed that ruling before the District Court which has since dismissed that appeal. [Downs Bankr.

11  Dkt. No. 882, 890 and Disrict Court Dkt. No. 11].

12          e.      On March 17, 2020, Norio objected to the Trustee's Motion for Order

13  Authorizing the Estate to Incur Debt which, if granted, would permit the Trustee to obtain a $250,000

14  loan from Intervenors to fund the Trustee's continued pursuit of the Debtor's assets through, *inter*

15  *alia*, the prosecution of the Steinmann Adversary Action. [Downs Bankr. Dkt. Nos. 798, 822, 830,

16  836]. On April 13, 2020, the Court  overruled Norio's objection and granted the Trustee's Motion.

17  [Downs Bankr. Dkt. No. 845].

18          f.      On July 9, 2020, Norio filed a Motion for Allowance and Payment of

19  Administrative Claim, requesting that the Court order the Trustee to pay Norio's $50,000 unsecured

20  claim as an administrative claim, which Motion is currently pending before this Court. [Downs

21  Bankr. Dkt. No. 917, 936].

22      5.      In light of the foregoing, the Firm's fees incurred as a result of Norio and the Claim

23  are both necessary and reasonable.

24      I declare under penalty of perjury that the foregoing is true and correct.

25      Executed on September 30, 2020 at Los Angeles, California.

26

27

28                              JEFFREY I. GOLDEN

28

### DECLARATION OF HAMID R. RAFATJOO

I, Hamid R. Rafatjoo, declare as follows:

1.     I am an attorney duly authorized to practice before the United States Bankruptcy Court for the Central District of California.  I am a Partner of Raines Feldman LLP located at 1800 Avenue of the Stars, Suite 1200, Los Angeles, California, co-counsel of record for Creditors and Intervenors Hausman Holdings, LLC and David and Pamela Moellehnoff ("**Intervenors**") in the above-captioned adversary action, and in the bankruptcy case captioned as *In re Andrea S. Downs*, Case No. 8:16-bk-12589-SC.

2.     I make this Declaration in support of the *Joint Motion for Terminating Sanctions* ("**Motion**") filed by Intervenors and by Thomas H. Casey, the duly appointed, qualified and acting Chapter 7 trustee ("**Trustee**"; together with Intervenors, "**Plaintiffs**") for the bankruptcy estate ("**Estate**") of Andrea Steinmann Downs ("**Debtor**").  I know each of the following facts to be true of my own personal knowledge or information and belief, and if called as a witness, I could and would competently testify with respect thereto.

3.     Attached to this Declaration as **Exhibit A** are true and correct copies of excerpts of the transcript of the January 29, 2020 Rule 2004 examination of Eric Steinmann.

4.     Attached to this Declaration as **Exhibit B** are true and correct copies of excerpts of the transcript of the July 10, 2017 Rule 2004 examination of Lora Steinmann.

5.     Attached to this Declaration as **Exhibit C** are true and correct copies of excerpts of the transcript of the September 3, 2019 Rule 2004 examination of Lora Steinmann.

6.     **Exhibit D** to this Declaration consists of the First Amendment to a multi-million dollar revocable Steinmann family trust (the "**Disclosed Steinmann Family Trust**").  Because this document was designated as "Confidential" by the above-listed Defendants (the "**Steinmann Defendants**") under the Stipulated Protective Order entered in this action, Plaintiffs have concurrently filed a motion to submit that document under seal (the "**Motion to Seal**"), and will submit that document following, and in accordance, with the Court's Order on that motion.

7.     Attached to this Declaration as **Exhibit E** are true and correct copies of excerpts from the transcript of the February 26, 2019 proceedings before this Court.

29

2730759.3

8.      Attached to this Declaration as **Exhibit F** are true and correct copies of excerpts of the transcript of the December 17, 2019 proceedings before this Court.

9.      Attached to this Declaration as **Exhibit G** is a true and correct copy of Eric Steinmann's May 14, 2019 Response to Order for Rule 2004 Production of Documents.

10.     Attached to this Declaration as **Exhibit H** is a true and correct copy of Lora Steinmann's May 14, 2019 Response to Order for Rule 2004 Production of Documents.

11.     Attached to this Declaration as **Exhibit I** are true and correct copies of excerpts of the transcript of Lora Steinmann's June 16, 2016 deposition taken in the Intervenors' Orange County Superior Court action against the Debtor and her co-defendant Michael Reynolds, captioned as *Hausman Holdings, LLC, et al. v. Reynolds, et al.*, Case No. 30-2013-00627272-CU-BC-NJC ("**State Court Action**").  Because counsel of record for Intervenors in the State Court Action, Alan J. Kessel, is, and at all times has been, my co-counsel in this adversary proceeding and in the Debtor's bankruptcy case, I am personally familiar with the files, records, and pleadings related to the State Court Action.

12.     **Exhibit J** to this Declaration consists of a multi-million dollar irrevocable Steinmann family trust (the "**Concealed Steinmann Family Trust**").  Because this document was designated as "Confidential" by the Steinmann Defendants under the Stipulated Protective Order entered in this action, Plaintiffs have concurrently filed a motion to submit that document under seal, and will submit that document following, and in accordance, with the Court's Order on that Motion to Seal.

13.     Attached to this Declaration as **Exhibit K** are true and correct copies of excerpts of the transcript of the May 23, 2017 trial proceedings in the State Court Action.

14.     Attached to this Declaration as **Exhibit L** are true and correct copies of excerpts of the transcript of the December 19, 2016 proceedings in this Court.

15.     **Exhibit M** to this Declaration consists of a life insurance policy application relating to the Concealed Steinmann Family Trust.  Because this document was designated as "Confidential" by the Steinmann Defendants under the Stipulated Protective Order entered in this action, Plaintiffs have concurrently filed a motion to submit that document under seal, and will submit that document following, and in accordance, with the Court's Order on that Motion to Seal.

2730759.3

1      16.    **Exhibit N** to this Declaration consists of a life insurance policy relating to the Concealed Steinmann Family Trust.  Because this document was designated as "Confidential" by the Steinmann Defendants under the Stipulated Protective Order entered in this action, Plaintiffs have concurrently filed a motion to submit that document under seal, and will submit that document following, and in accordance, with the Court's Order on that Motion to Seal.

      17.    Attached to this Declaration as **Exhibit O** is a true and correct copy of the District Court's August 11, 2020 Order dismissing Norio, Inc.'s ("**Norio**") appeal of this Court's May 18, 2020 Order denying Norio's motion for reconsideration.

      I declare under penalty of perjury that the foregoing is true and correct.

      Executed on September 30, 2020 at Los Angeles, California.

/s/ Hamid R. Rafatjoo
_____
Hamid R. Rafatjoo

2730759.3

# EXHIBIT A

1                 UNITED STATES BANKRUPTCY COURT

2                 CENTRAL DISTRICT OF CALIFORNIA

3                          --oOo--

4  In Re:                        )  Case No. 8:16-bk-12589-CB
                                 )
5  ANDREA STEINMANN DOWNS,       )  Chapter 7
                                 )
6          Debtor.               )  Santa Ana, California
   _____)  Wednesday, January 29, 2020
7                                )  1:00 p.m.
                                 )
8  CASEY,                        )  Adv. No. 8:18-ap-01168-CB
                                 )
9          Plaintiff,            )
                                 )
10      vs.                      )
                                 )
11 STEINMANN, et al.,            )
                                 )
12          Defendants.          )
   _____)
13

14                             CONT STATUS CONFERENCE RE:
                               COMPLAINT: (1) TO AVOID AND
15                             RECOVER FRAUDULENT TRANSFERS
                               PURSUANT TO 11 U.S.C. SECTIONS
16                             548(A)(1)(A), 544(B) AND 550;
                               (2) FOR IMPOSITION OF A
17                             RESULTING TRUST; (3) FOR
                               DECLARATORY RELIEF; (4) FOR
18                             PRESERVATION OF THE TRANSFER
                               FOR THE BENEFIT OF THE ESTATE;
19                             (5) FOR ATTORNEYS' FEES AND
                               COSTS
20

21                 TRANSCRIPT OF PROCEEDINGS
              BEFORE THE HONORABLE CATHERINE BAUER
22               UNITED STATES BANKRUPTCY JUDGE

23

24
   Proceedings produced by electronic sound recording;
25 transcript produced by transcription service.

ii

1 | APPEARANCES:

2 | For the Trustee:              JEFFREY I. GOLDEN, ESQ.
                                  Weiland, Golden & Goodrich
3 |                              650 Town Center Drive
                                  Suite 600
4 |                              Costa Mesa, California 92626
                                  (714) 966-1000
5 |

6 | For the Hausman and           HAMID R. RAFATJOO, ESQ.
    Moellenhoff Creditors:        Raines Feldman, LLP
7 |                              1800 Avenue of the Stars
                                  Twelfth Floor
8 |                              Los Angeles, California 90067
                                  (310) 440-4100
9 |
                                  ALAN J. KESSEL, ESQ.
10 |                             TAMBRY L. BRADFORD, ESQ.
                                  Pepper Hamilton, LLP
11 |                             Four Park Plaza
                                  Suite 1200
12 |                             Irvine, California 92614
                                  (949) 567-3500
13 |

14 | For the Defendants:           D. EDWARD HAYS, ESQ.
                                  Marshack Hays, LLP
15 |                             870 Roosevelt
                                  Irvine, California 92620
16 |                             (949) 333-7777

17 | For Eric Steinmann:           STEPHEN LARSON, ESQ.

18 | For Teresa Steinmann          E. SCOTT PALMER, ESQ.
    Stapleton, Katy               Palmer Hunter
19 | Steinmann Belknap,            One Wilshire Building
    Jeffrey D. Steinmann,         624 South Grand Avenue
20 | and Heinz J. Steinmann:       Suite 2200
                                  Los Angeles, California 90017
21 |                             (213) 629-8704

22 | For Susanna Steinmann,        GERALD P. KENNEDY, ESQ.
    Thomas Steinmann,             525 B Street
23 | John Steinmann, and           Suite 2200
    Mary Sypkens Steinmann:       San Diego, California 92101
24 |                             (619) 238-1900

25 |

*Briggs Reporting Company, Inc.*

Exhibit A, Page 33

                                                                    iii

 1  Court Recorder:              Audrey McCall
                                 United States Bankruptcy Court
 2                               411 West Fourth Street
                                 Suite 2030
 3                               Santa Ana, California 92701

 4  Transcriber:                 Briggs Reporting Company, Inc.
                                 2160 Fletcher Parkway
 5                               Suite 209
                                 El Cajon, California 92020
 6                               (310) 410-4151

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

iv

1                           I N D E X

2    WITNESSES                    DIRECT    CROSS    REDIRECT    RECROSS

3    Eric Steinmann                 18       --        --          --

4

5    EXHIBITS                                 IDENTIFIED    RECEIVED

6    Plaintiff's:

7    (None.)

8

9    Defendant's:

10   (None.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**Briggs Reporting Company, Inc.**

Exhibit A, Page 35

67

BY MR. GOLDEN:

1  Q    So who made the decision on the first amendment?

2  A    The trustees in the trust, which would be both of my

3  parents and myself.

4  Q    Were the other family members involved in those

5  discussions?

6  A    Not to my knowledge.

7  Q    And what was the thought process being doing that first

8  amendment?

9          MR. LARSON:  I'll just object to foundation.  As

10 to this witness, certainly he can describe his thought

11 processes.  I think to ask about the thought processes of

12 his parents is beyond the pale.

13         MR. KESSEL:  Unless it's communicated in meetings,

14 unless they express their thought process.

15 BY MR. GOLDEN:

16 Q    You had a meeting with the parents to discuss whether

17 or not you should have the first amendment or not?

18 A    There was a meeting.  We discussed that.

19 Q    About how long was the meeting?

20 A    I can't recall.

21 Q    Okay.  And at the meeting, what was discussed?

22 A    That there was this -- Annie was in some litigation

23 with some people that, you know, were not interested in

24 anything other than, you know, litigating her to death, and

*Briggs Reporting Company, Inc.*

Exhibit A, Page 36

68

1  it's a fact.  You know, it's millions of dollars, over 4.7

2  million dollars, chasing some 500,000 or $700,000

3  investment, and, you know, it would be a good idea to remove

4  her from the trust and remove us from this thing, because

5  it's going to be a burden on everybody.

6  Q    Were the other -- and were there any conversations at

7  all with the other siblings about this?

8  A    What?

9  Q    Were there any conversations with the other siblings

10 about this?

11 A    About removing Annie?

12 Q    Yes.

13 A    Not that I can recall.

14 Q    What was Andrea Downs' reaction to this?

15 A    I don't believe I told Annie this, or discussed it with

16 her, until after she had discussed it with maybe my parents,

17 and I believe, from whatever I understood, she was not --

18 didn't maybe understand it, or the reasons why at first,

19 but, you know, she came to accept it.

20 Q    And did she get financial support after that from the

21 other siblings at all?

22 A    I don't know, but I don't believe so.

23 Q    Did she get any financial support from you?

24 A    You know, nothing of significance.  I can't think of

25 anything, maybe a gift or something of that, but, you know,

1  said that they needed somebody who would lend on a secured

2  basis, and I knew that both of them had some money and, you

3  know, were looking for investments.  I said, "I think this

4  would be reasonable for you guys to do," and I'm sorry that

5  I did that at this point.

6  Q    How did you choose them to approach?

7  A    Because I know them, I work with them a lot, and I knew

8  they had money.  They've been involved in our business.

9  They've made money.  They had a lot in their pocket, and

10 they did stuff like that.  You know, they would talk to me

11 about the different investments they would make, and it

12 seemed to be in line with what they did.

13       So it didn't -- you know, I wasn't going to go any

14 further than I had to.  I was trying to help my sister, who

15 truly needed some protection in bankruptcy from some of

16 these people that are going after her ruthlessly, to, you

17 know, get some help.  I was trying to help accomplish that,

18 and this was the quickest way to do it.

19 Q    Why didn't you loan her the money?

20 A    Because I considered that it wouldn't look very good,

21 and that I would get, possibly, drug into this in that way

22 or something like that.  I think that's maybe a concern, or

23 maybe Till said that he didn't think that was the right

24 thing to do.  I wouldn't be opposed to loaning her money,

25 and the way it went about, it should have been a fully

113

1  secured loan.  It should have been a reasonable thing.  But

2  somehow there was a discussion, and it wasn't something that

3  made sense for me to do, but it made sense for Annie to do,

4  and I helped her find somebody to lend her the money.

5  Q    And your mother had already paid 25,000 to Mr. Till,

6  correct?

7  A    Yes.

8  Q    And so part of that 75,000 loan was paying your mother

9  back?

10  A    That's correct.

11  Q    Why was your mother paid back?

12  A    She didn't enter in any agreement yet, to my knowledge

13  or anything.  She just put the money in because Annie went

14  and located Till, and then Till said, "Look.  I need a

15  $25,000 retainer," initially, and then that changed to a

16  $50,000 retainer, and we need people who are willing to put

17  that in, and they can do so on a secured basis.

18      So, when Glenn and Mike came in there, it said 50.  It

19  was 75, pay my mom back, and that seemed to be the prudent

20  thing, and it was done with the advice of James Till, who

21  was the bankruptcy counsel that my sister found that seemed

22  reasonable, and that was his advice.

23  Q    Did your mother ever ask to be repaid back?

24  A    I don't remember the exact circumstances regarding

25  that, if it was -- if she was asking, or someone was saying

117

1 legal advice.  I think this has probably been asked in the

2 vernacular, of whether or not there was advice given, but I

3 think this should be clearer, because I think this could

4 lead to problems down the road.  So my objection basically

5 is vague as to "advice."

6           THE COURT:  Can you clarify?

7           MR. KESSEL:  No one is going claim there's an

8 attorney-client privilege between Mr. Steinmann and Ms.

9 Downs.

10 BY MS. BRADFORD:

11 Q    What did you say to Ms. Andrea Downs regarding whether

12 or not she should file for bankruptcy?

13 A    I think I summed it up in what I just said, you know, I

14 mean, "I'm not trying to get too excited here, but, you

15 know, there is no way that you're going to be able to, you

16 know, hold your own in this situation, where people have an

17 unlimited checkbook and they're trying to oppress you in

18 this way.  You know, you need some help, and in my

19 experience, that help should come from the Bankruptcy

20 Court."  It hasn't turned out that way.

21 Q    When did you have that conversation with Ms. Downs?

22 A    Probably prior to her going and seeking out James Till,

23 but probably after she approached my dad for maybe another

24 loan, and my dad maybe said, "Hey.  What's really going on

25 here?" and "Why don't you talk to Annie" or something, and I

122

1  person that was representing her, some guy, I think.  If I

2  recall, he was down in South Orange County, maybe even San

3  Diego way or something like that, and he was representing

4  her at the time, and, you know, I think I talked to him to

5  get a feel of it, whether there was a way of this thing

6  getting settled, or just what the big problem was, or what

7  was going on here.

8  Q    And what were you told?

9  A    I was told that -- what was I told by him?  He told me

10 that he -- I think he told me he thought it could get

11 settled for an amount well in excess of what Annie had, and

12 I think he said that, you know, that here's where he saw the

13 strengths of the case, and not strengths of the case, and,

14 you know, I think he told me what he estimated it would cost

15 to continue this on, and that it was going to go to trial,

16 and these costs were going to ratchet up quite a bit.

17     You know, Annie just simply didn't have the money to

18 afford that, and you know, in fact, they asked for and got

19 some judgment for some 4.7 million dollars, I think, at

20 trial or something.  She didn't have any money at that time.

21 So I think I gave her the right advice, and, you know, "You

22 should not fight.  You should seek the protection of the

23 Bankruptcy Court, and try and put this behind you."

24 Q    Let's go back to the conversation that you had with

25 Andrea Downs' attorney.  After you had that conversation --

123

1  or at the time you had that conversation, the case had not

2  yet gone to trial, right?

3  A    The case had not yet gone to trial.

4  Q    Did you come away from that conversation with an

5  understanding that Andrea Downs did not have a good chance

6  of prevailing?

7  A    I didn't know.  I know what she did wasn't wrong.  I

8  know that she got, you know, some guy to stand up on the eve

9  of trial and say, "Hey.  I did this.  I did it

10 intentionally, and Annie was with me," and they've never

11 gone after that guy for one dime, and he's running around,

12 you know, not being involved in this, or his family involved

13 in this at all.

14     I didn't have any confidence that she could -- where

15 was she going to get the representation to go to trial and

16 do that?  She just didn't have the money to do it.  So, as

17 far as you asked me, did I understood she could prevail, it

18 wasn't a matter of her position.  It was a matter of her not

19 being able to lay out that kind of money. She just didn't

20 have it.  She was out of money.

21 Q    And so that's why you told her she should file for

22 bankruptcy?

23 A    Yes, and I understood that if you filed for bankruptcy,

24 there would be a stay on this court action, and, you know,

25 maybe you could put these things behind for it, and it's

124

1  like rolling over and saying, "I don't have anything," and

2  she didn't.

3  Q    So let's talk a little bit about Brown Rudnick.  That

4  was the firm that actually represented her at trial.  Is

5  that right?

6  A    That's correct.

7  Q    And your mother, I believe, was a party to the

8  engagement letter between Ms. Downs and Brown Rudnick?

9  A    Yes.

10 Q    And your mother agreed to cover all of the defense

11 costs.  Is that right?

12 A    My mother agreed to pay them the amount where they

13 agreed to cover all the defense costs and everything,

14 including through appeal, for that amount of money and no

15 more.

16 Q    And so that amount of money was $250,000?

17 A    That's correct.

18 Q    And your mother paid that amount?

19 A    That's what she paid.

20 Q    Was that money paid from the trust?

21 A    And, again, I believe I answered this already, but that

22 money was paid from accounts that she controls.  I was not

23 asked to sign on to anything.  So I believe that she paid

24 that out of accounts that she had, that was her controlled

25 money, before she transferred those accounts into the trust.

# EXHIBIT B

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA, SANTA ANA DIVISION


In re:                              )
                                    )
ANDREA S. DOWNS,                    ) CASE NO.
                                    ) 8:16-bk-12589-CB
_____)




DEPOSITION OF:  LORA STEINMANN

TAKEN ON:       July 10, 2017



37755                    Amy L. Horn

                         CSR No. 7919

1          DEPOSITION of LORA STEINMANN, was taken on behalf

2    of the Movants at 4 Park Plaza, Suite 1200, Irvine,

3    California, commencing on Monday, July 10, 2017, at the

4    hour of 10:04 a.m. before Amy L. Horn, CSR No. 7919,

5    Certified Shorthand Reporter for the State of California,

6    with principal office in the County of Los Angeles.

7

8    APPEARANCES OF COUNSEL:

9          FOR THE MOVANTS:

10              RAINES FELDMAN, LLP

                BY:  HAMID RAFATJOO, ESQ.

11              18401 Von Karman Avenue

                Suite 360

12              Irvine, California  92612

                (310)440-4100

13              hrafatjoo@rainesfeldman.com

14

          FOR THE DEBTOR:

15

                LAW OFFICES OF SHANNON GALLAGHER

16              BY:  SHANNON GALLAGHER, ESQ.

                507 East First Street

17              Suite E

                Tustin, California  92780

18              (949)955-2880

19

20        ALSO PRESENT:

21          MARY SYPKENS

            ANDREA DOWNS

22          JILL LINDSAY

23

24

25

                                                              2

1

2                              I N D E X

3   WITNESS                    EXAMINATION BY              PAGE

4   LORA STEINMANN

                               MR. RAFATJOO                  04

5

6

7

8

9                         E X H I B I T S

10  A  -  Notice of Deposition                              05

11  B  -  Application for Approval of Employment of

           Bosley, Till, Neue & Talerico                    12

12

    C  -  Application to Employ Brown Rudnick               16

13

    D  -  Declaration of Lora Steinmann                     18

14

15

16

17

18

19          QUESTIONS WITNESS INSTRUCTED NOT TO ANSWER

20                      PAGE    LINE

21                       50      11

                         51      09

22

23

24

25

                                                               3

1      Q.    Just, if you haven't seen it before, yes.

2   (Discussion between Ms. Downs & Counsel off the record.)

3              THE WITNESS:  Can I talk with you about this?

4              MR. GALLAGHER:  Well, you should respond to

5   the question.

6              MR. RAFATJOO:  I just want you to get to the

7   bottom of page 5.  Not the whole thing.

8              THE WITNESS:  Okay.

9              MS. DOWNS:  You can say that you want to go

10  off the record, Mom.

11             (Discussion held off the record.)

12  BY MR. RAFATJOO:

13      Q.    Have you read to the bottom of page 5?

14      A.    Yes, I have.

15      Q.    You saw that footnote 2 on page 5 makes

16  reference to a $25,000 payment that you made to the

17  Bosley, Till, Neue, Talerico Law Firm; is that correct?

18      A.    Yes, that's correct.

19      Q.    And you made that payment?

20      A.    Yes.

21      Q.    And they paid you back that money?

22      A.    Yes.

23      Q.    So that was a loan to Andrea?

24             MR. GALLAGHER:  Well, objection.  Calls for a

25  legal conclusion.

13

1    BY MR. RAFATJOO:

2          Q.      What was the reason for that payment?

3          A.      So she would be represented.

4          Q.      And when you made that payment, did you have

5    any request that you get repaid?

6          A.      No.  There was -- other arrangements were

7    made.

8                  MR. GALLAGHER:   Listen to what the question

9    was.  Read back the question.

10                      (Record read.)

11                 THE WITNESS:   No.

12   BY MR. RAFATJOO:

13         Q.      So you had written the $25,000 check without

14   any agreement that you would be repaid that money?

15         A.      No.  Yes.  Yes.  Yes.

16         Q.      So why did you get repaid that money?

17                 MR. GALLAGHER:   If you can answer.

18                 THE WITNESS:   Because another person in the

19   family helped her out and they -- and I was out of it.

20   BY MR. RAFATJOO:

21         Q.      Who was the other person in the family that

22   helped her out?

23         A.      My son, Eric.

24         Q.      What did he do?

25         A.      He paid -- he paid them.

14

1      Q.     He paid them the 25,000?

2      A.     He just -- he just paid me back and I was out

3  of that particular transaction.

4      Q.     Okay.  Earlier you made the statement --

5      A.     I'm not sure what happened.

6      Q.     You said that there were other arrangements

7  that were made with respect to this 25,000.

8      A.     The other arrangement was paying me back.

9  That's what I meant.

10     Q.     So even though earlier you said that you had

11 no agreements to get repaid, you said the other

12 arrangement was so that you would get repaid?

13     A.     I don't exactly know what you're asking.

14     Q.     I'm asking, you wrote a $25,000 check to this

15 law firm?

16     A.     Uh-huh.

17     Q.     And your testimony was that you had no

18 agreements that you would be repaid that money?

19     A.     Uh-huh.

20     Q.     That is what you have testified; correct?

21     A.     That's right.

22     Q.     Then you said there were other arrangements

23 that were made; correct?

24     A.     For her legal defense.  There were other

25 arrangements that were made that I'm not a party to, so I

15

1   was out of it then.

2       Q.    So when you got --

3       A.    So if you understand that.

4       Q.    So when you got your money back, the

5   $25,000 --

6       A.    I wasn't a party to this anymore.

7       Q.    Were you surprised that you got your $25,000

8   back?

9       A.    What do you mean by surprised?

10      Q.    You weren't expecting to get that money back,

11  correct, and then you got the money back?

12      A.    That is what happened.

13      Q.    Okay.  When you wrote the check to Bosley,

14  Till, Neue & Talerico --

15      A.    Uh-huh.

16      Q.    -- did you consider that a gift --

17      A.    Yes.

18      Q.    -- to Andrea.  You did?

19      A.    Yes.

20      Q.    I'm going to give you a document which we

21  will mark Exhibit C.  This is the application to employ

22  Brown Rudnick.

23      A.    I've read that.

24            (Exhibit C was marked for

25            identification.)

16

1    BY MR. RAFATJOO:

2          Q.    And what was the name of that attorney?

3          A.    Is that Bill Farrell?

4                MR. GALLAGHER:  This is you on your own.

5                THE WITNESS:  I don't know.  I don't know.

6    BY MR. RAFATJOO:

7          Q.    You don't remember the name of the attorney?

8          A.    I think I do, but I'm not sure.

9          Q.    What do you think the name of the attorney --

10         A.    I think it was Bill Farrell.

11         Q.    Bill Farrell.  And if you remember that name,

12   will you let us know?

13         A.    Yes.  He's passed on.

14         Q.    He's passed on.

15               MR. GALLAGHER:  Don't --

16               THE WITNESS:  Okay.  Sorry.

17   BY MR. RAFATJOO:

18         Q.    Prior to the documents that you have

19   produced, the trust and the statement of trust and the

20   will --

21         A.    Uh-huh.

22         Q.    -- were there any other wills or trusts that

23   you had that were in effect prior to the dates that you

24   established the trust that you handed me?

25         A.    Just one.  The one I just told you about.

42

1      Q.    And you have not produced a copy of that?

2            MR. GALLAGHER:  Well, first of all, just for

3    clarification, was it a trust or a will?

4            THE WITNESS:  It was a will, not a trust.

5            MR. RAFATJOO:  But you have not produced a

6    copy of that?

7            MR. GALLAGHER:  We have not produced a copy

8    of some antecedent will from some prior date, that I'm

9    aware of.

10           MR. RAFATJOO:  But the request went back five

11   years.

12           THE WITNESS:  This would be farther than

13   that.

14           MR. RAFATJOO:  But it was in existence five

15   years ago?  It may have been dated prior to that, but it

16   was in existence five years ago?

17           THE WITNESS:  What should I --

18           MR. GALLAGHER:  Well, I'm not sure I agree

19   with your characterization, but I'll agree that I did not

20   produce any will other than the ones that I gave you

21   today.

22           MR. RAFATJOO:  Are you going to produce it?

23           MR. GALLAGHER:  I don't know.  I'd have to

24   look at the request and see what she has and if it's

25   responsive to your request.

43

1    Q.    With respect to the Brown Rudnick Law Firm,

2    have any of your entities made any payments to them?

3    A.    No.

4    Q.    With respect to the Brown Rudnick Law Firm,

5    are you aware of any other payments other than the

6    $250,000 having been paid to them?

7    A.    No, I'm not aware of any.

8    Q.    This trust that you have provided, is this

9    the one and only trust that you have established?

10   A.    Yes.

11   Q.    For the entities that you have an interest

12   in, do your children have interests in those entities?

13   A.    No.

14   MR. GALLAGHER:   Objection.   Vague and

15   ambiguous.

16   BY MR. RAFATJOO:

17   Q.    Do you make any distributions, any payments

18   to your children?

19   MR. GALLAGHER:   Well, I'm going to object,

20   because this gets into her confidential information.   If

21   you have a question about Andrea Downs and the deponent,

22   she'll answer it.   But what she does with respect to her

23   entities and her other children and who may be involved

24   in them is not relevant to this proceeding.

25   MR. RAFATJOO:   Well, I disagree with that,

45

Exhibit B, Page 53

1          MR. RAFATJOO:  That's what the document says.

2     The document says she's disowned.  I'm asking why did you

3     amend your trust to disown Andrea?

4          MR. GALLAGHER:  Objection.  The document

5     speaks for itself.

6          MR. RAFATJOO:  It does not.

7     BY MR. RAFATJOO:

8          Q.    Why did you disown Andrea?

9               MR. GALLAGHER:  Same objection.

10    BY MR. RAFATJOO:

11         Q.    You can answer the question.

12              MR. GALLAGHER:  You can answer.

13              THE WITNESS:  In lieu of what was happening,

14    we didn't want any of our assets to be given to anyone

15    else, so we decided that we have a revocable trust, that

16    we would exclude Andrea from receiving any of our assets.

17    BY MR. RAFATJOO:

18         Q.    So if heaven forbid something should happen

19    to you now, what would happen to Andrea?

20         A.    She would receive nothing.

21         Q.    Was Andrea aware of that?

22         A.    Yes.

23         Q.    When did she become aware of that?

24              MR. GALLAGHER:  Well, objection.  Calls for

25    speculation as to what Andrea's knowledge is or was.

47

# EXHIBIT C

```
 1                 UNITED STATES BANKRUPTCY COURT

 2         CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION

 3

 4     _____
                                     )
 5     In re:                        ) No. 8:16-bk-12589-CB
                                     )
 6     ANDREA S. DOWNS               ) Chapter 7
                                     )
 7                    Debtor.        )
       _____)
 8     THOMAS H. CASEY, Chapter 7    )  Adversary No. 8:18-ap-
       Trustee,                      )  01167-CB
 9                                   )
                Plaintiff,           )
10                                   )
           vs.                       )
11                                   )
       LORA RAE STEINMANN, HEINZ H.  )
12     STEINMANN, ERIC STEINMANN,    )
       MARY (SYPKENS) STEINMANN,     )
13     JOHN STEINMANN, TESSIE        )
       (STAPLETON) STEINMANN, KATY   )
14     (BELKNAP) STEINMANN, HEINZ    )
       STEINMANN, JEFF STEINMANN,    )
15     TOM STEINMANN, SUSIE (WILSON))
       STEINMANN,                    )
16                                   )
                Defendant.           )
17     _____)
18              DEPOSITION OF LORA RAE STEINMANN
19                  Wrightwood, California
20               Tuesday, September 3, 2019
21                        Volume I
22     Reported by:
       VALERIE D. GRANILLO
23     CSR No. 11469
       Job No. 3512642
24
25     PAGES 1 - 80
```

Page 1

Exhibit C, 48

<pre>
 1                UNITED STATES BANKRUPTCY COURT
 2        CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION
 3
 4     _____
                                     )
 5     In re:                        ) No. 8:16-bk-12589-CB
                                     )
 6     ANDREA S. DOWNS               ) Chapter 7
                                     )
 7                     Debtor.       )
       _____)
 8     THOMAS H. CASEY, Chapter 7    )  Adversary No. 8:18-ap-
       Trustee,                      )  01167-CB
 9                                   )
              Plaintiff,             )
10                                   )
          vs.                        )
11                                   )
       LORA RAE STEINMANN, HEINZ H.  )
12     STEINMANN, ERIC STEINMANN,    )
       MARY (SYPKENS) STEINMANN,     )
13     JOHN STEINMANN, TESSIE        )
       (STAPLETON) STEINMANN, KATY   )
14     (BELKNAP) STEINMANN, HEINZ    )
       STEINMANN, JEFF STEINMANN,    )
15     TOM STEINMANN, SUSIE (WILSON))
       STEINMANN,                    )
16                                   )
              Defendant.             )
17     _____)
18
19            Deposition of LORA RAE STEINMANN, Volume I,
20     taken on behalf of Petitioner, at 997 Rivera Drive,
21     Wrightwood, California, beginning at 12:00 p.m. and ending
22     at 1:35 p.m., on Tuesday, September 3, 2019, before
23     VALERIE D. GRANILLO, Certified Shorthand Reporter No.
24     11469.
25
</pre>

Page 2

Exhibit C, 49

```
 1    APPEARANCES:

 2

 3    For Petitioner:

 4         WEILAND GOLDEN GOODRICH

 5         BY:  JEFFREY GOLDEN

 6         Attorney at Law

 7         650 Town Center Drive, Suite 600

 8         Costa Mesa, California 92626

 9         (714) 966-1000

10         jgolden@wgllp.com

11

12    For Respondent:

13         MARSHACK HAYS

14         BY:  D. EDWARD HAYS

15         Attorney at Law

16         870 Roosevelt Avenue

17         Irvine, California 92620

18         (949) 333-7777

19         ehays@marshackhays.com

20

21

22

23

24

25
                                          Page 3
```

Exhibit C, 50

```
1   APPEARANCES (continued):

2

3   For Hausman Holdings, LLC and David and
    Pamela Moellenhoff:

4

        RAINES FELDMAN

5

        BY:  HAMID R. RAFATJOO

6

        1800 Avenue of the Stars, 12th Floor

7

        Los Angeles, California 90067

8

        (310) 440-4100

9

        hrafatjoo@raines.law.com

10

11  Also Present:

12      HEINZ J. STEINMANN

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Page 4

1      Q      So you've done a trust document.   How many trusts

2    have you done?

3      A      One.

4      Q      Before you did a trust, did you have a will?

5      A      There was one maybe 30 years ago when we went on

6    a trip.   I don't know where it is.   It just said who was

7    going to take care of who and that sort of thing.   We were

8    young then, and our children were young.

9      Q      Do you have a copy of that will?

10     A      Not anymore.

11     Q      You destroyed it?

12     A      I couldn't find it.

13     Q      Did you have a lawyer involved with it?

14     A      I think it was maybe Richard Anderson was our

15   lawyer at the time.

16     Q      Okay.   And where does Richard Anderson work?

17     A      Let me think.   Like Rancho area.   Rancho

18   Cucamonga area or something like that or Upland.

19     Q      And were all of your assets in the will at that

20   time?

21     A      Yeah.   We didn't have very much, but it was our

22   home and that sort of thing.

23     Q      Okay.   And years later, then, you formed a trust?

24     A      Yes.   And that supersedes anything that was done

25   prior to that.

Page 15

Exhibit C, 52

1      Q    And prior to that, what else was done other than

2   the will?

3      A    Nothing.

4      Q    And why did you do a trust?

5      A    Because it was -- it was prudent to do a trust.

6   We didn't want to have to go to probate when we die.  We

7   figured this was the right thing to do.

8      Q    Did someone advise you of that?

9           MR. HAYS:  Objection.  And let me caution you if

10  you had a conversation with an attorney, do not reveal the

11  communication between you and the attorney.

12          THE WITNESS:  I don't know.  I think we just

13  decided to do that, and I had an attorney do it for me.

14  BY MR. GOLDEN:

15     Q    Okay.  What attorney did you have do it for you?

16     A    Am I allowed to tell him that?

17          MR. HAYS:  You can give him the name.

18          THE WITNESS:  Dan Holden.

19  BY MR. GOLDEN:

20     Q    Could you spell that?

21     A    Dan Holden, H-o-l-d-e-n.

22     Q    And where does he work?

23     A    In San Bernardino.

24     Q    And when was the last time you've spoken with Dan

25  Holden?

Page 16

Exhibit C, 53

1    A    I see him all the time.

2    Q    Okay.

3    A    They're friends of ours.  But he has a serious

4  problem with Alzheimer's right now, so he won't --

5  wouldn't be able to talk about this with you.  His firm

6  could.  I think they have.

7    Q    What's his firm's name?

8    A    I think it's Lemon and something, L-e-m-o-n.  I'm

9  not sure.

10    Q    And you met with him to set up the trust?

11    A    Correct.

12    Q    And you set up one trust?

13    A    Correct.

14    Q    Were there any amendments to the trust?

15    A    Yes.

16    Q    How many amendments?

17    A    One.

18    Q    And how long after the trust was set up was the

19  amendment done?

20    A    I think four months.

21    Q    And did he give you any advice -- you don't have

22  to tell me what the advice is, but did he give you any

23  advice as to why a trust should be set up?

24    A    No.

25    Q    Okay.  Did you explain to him how you wanted your

                                              Page 17

Exhibit C, 54

```
 1      Q     Did that impact your feelings about her or your

 2   decisions regarding what to do with her end of the trust?

 3      A     Explain what you mean by "impact my feelings."

 4      Q     You tell me.

 5      A     I don't feel any differently about my daughter.

 6      Q     Okay.  And if that judgment went away -- well,

 7   let me take it back.

 8            If that judgment never occurred, would Andrea

 9   Downs still be one of the beneficiaries under the trust?

10      A     Yes.

11      Q     If that judgment went away, would you make her a

12   beneficiary of the trust again?

13            MR. HAYS:  Objection; calls for speculation.

14            THE WITNESS:  Yeah.  I won't answer.

15   BY MR. GOLDEN:

16      Q     You can answer the question.

17            MR. HAYS:  You can answer if you know, but it's

18   asking you to speculate a hypothetical.

19            THE WITNESS:  I don't know.  I don't know.

20   BY MR. GOLDEN:

21      Q     What?

22      A     I don't know what people do in the future, you

23   know.  I'm not going to answer that question.

24      Q     I'm asking about you, not other people.

25      A     I don't know what I would do in the future.
```

Page 71

1      Q     What would you do today if that happened?

2      A     I would do nothing today.

3      Q     So if that judgment went away, you would not add

4  her in as a beneficiary?

5      A     Not today.

6      Q     Why?

7      A     I'm not going to answer that.

8      Q     Okay.  Just to be clear, you know what you would

9  do, but you're not going to answer that.  Is that correct?

10  That's all I'm asking?

11      A     You're supposing something.  I don't know.  I

12  don't know.  First of all, we both know that's not going

13  to happen, so this just seems silly.

14      Q     All I'm asking you is when you said I'm not going

15  to answer that, I'm not here to badger you.  I don't want

16  to badger you in any way.  You said, "I'm not going to

17  answer that."  I'm just clarifying that you're not

18  going -- you know what considerations there would be, and

19  you know what you might do.  But you don't want to answer

20  that; is that correct?

21      A     I have never thought of it, and I don't know.

22  And I answered you already.

23      Q     Okay.  Is there any reason other than the

24  existence of the judgment that you took Andrea out of the

25  trust?

                                            Page 72

Exhibit C, 56

```
 1        A    I think that's our business why we would do that.

 2   We are free to move -- do that, anything with any of our

 3   children if we want to in the way our trust is written.

 4             MR. GOLDEN:  Move to strike as nonresponsive.

 5        Q    Is there any other reason?

 6             You can repeat the last question, actually.

 7             (Record Read.)

 8             THE WITNESS:  No.

 9   BY MR. GOLDEN:

10        Q    And do you have -- do you intend one day to share

11   assets with Andrea?

12        A    No.

13        Q    Why?

14        A    Because this judgment is going to be going on

15   longer than I am.

16        Q    But -- understood.  Understood.

17        A    I think that's clear.

18        Q    Understood.  Understood.  Other than the

19   judgment, she would have some interest in those assets?

20        A    What are you getting at?

21        Q    Well, if the judgment wasn't there, she would

22   have been still there as a beneficiary.

23        A    Yes.  I already answered that.

24        Q    Right.  Yes, you did.  Yes, you did.  And as a

25   beneficiary, she would have an entitlement to assets
```

Page 73

Exhibit C, 57

# EXHIBIT D

Intentionally Omitted

Motion for Entry of Order Authorizing Intervenors and Trustee to File under Seal Exhibits D, J and M to the Declaration of Hamid R. Rafatjoo in support of Their Motion for Terminating Sanctions filed concurrently herewith.

# EXHIBIT E

1                    UNITED STATES BANKRUPTCY COURT

2                    CENTRAL DISTRICT OF CALIFORNIA

3                              --oOo--

4   In Re:                      ) Case No. 8:16-bk-12589-CB
                                )
5   ANDREA STEINMANN DOWNS,     ) Chapter 7
                                )
6            Debtor.            ) Santa Ana, California
    _____ ) Tuesday, February 26, 2019
7                               ) 1:30 p.m.
    CASEY,                      )
8                               ) Adv. No. 8:18-ap-01168-CB
             Plaintiff,         )
9                               )
        vs.                     )
10                              )
    STEINMANN, ET AL.,          )
11                              )
             Defendants.        )
12  _____ )

13                              MOTION FOR STAY PENDING APPEAL

14                              MOTION FOR STAY PENDING APPEAL
                                FROM ORDER DENYING MOTION TO
15                              DISMISS PLAINTIFF THOMAS H.
                                CASEY'S COMPLAINT
16
                                CONT MOTION FOR ORDER
17                              AUTHORIZING THE EXAMINATION OF
                                JAMES TILL AND THE PRODUCTION
18                              OF DOCUMENTS PURSUANT TO
                                FEDERAL RULE OF BANKRUPTCY
19                              PROCEDURE 2004

20                              CONT MOTION FOR ORDER
                                AUTHORIZING THE EXAMINATION OF
21                              ERIC STEINMANN AND THE
                                PRODUCTION OF DOCUMENTS
22                              PURSUANT TO FEDERAL RULE OF
                                BANKRUPTCY PROCEDURE 2004
23

24
    Proceedings recorded by electronic sound recording;
25  transcript produced by transcription service.

**Briggs Reporting Company, Inc.**

Exhibit D, Page 58

ii

1        CONT MOTION FOR ORDER
         AUTHORIZING THE EXAMINATION OF
2        ERIC STEINMANN AS PMK OF:
         (1) NTCH, INC.
3        (2) ALLY FINANCIAL CORPORATION
         (3) PTA-FLA AND
4        (4) DAREDEVIL, INC. AND
         PRODUCTION OF DOCUMENTS
5        PURSUANT TO FEDERAL RULE OF
         BANKRUPTCY PROCEDURE 2004
6
         CONT MOTION FOR ORDER
7        AUTHORIZING THE EXAMINATION OF
         LORA R. STEINMANN AND HEINZ Z.
8        STEINMANN AND PRODUCTION OF
         DOCUMENTS PURSUANT TO FEDERAL
9        RULE OF BANKRUPTCY PROCEDURE
         2004
10
         MOTION FOR PROTECTIVE ORDER
11       RE: EXAMINATIONS OF LORA R.
         STEINMANN AND HEINZ H.
12       STEINMANN AND THE PRODUCTION
         OF DOCUMENTS PURSUANT TO FRBP
13       2004

14       OMNIBUS MOTION FOR PROTECTIVE
         ORDER RE:
15       (1) MOTION FOR ORDER
         AUTHORIZING THE EXAMINATION OF
16       ERIC STEINMANN AND THE
         PRODUCTION OF DOCUMENTS
17       PURSUANT TO FRBP 2004; AND
         (2) MOTION FOR ORDER
18       AUTHORIZING THE EXAMINATION OF
         ERIC STEINMANN AS PMK OF:
19       (A) NTCH, INC.,
         (B) ALLY FINANCE CORPORATION;
20       (C) PTA-FLA; AND
         (D) DAREDEVIL, INC.
21
         CONT CHAPTER 7 TRUSTEE'S
22       MOTION FOR ORDER DISALLOWING
         CLAIM 10-1 FILED BY NORIO,
23       INC., PURSUANT TO 11 U.S.C.
         SECTION 502(b)(9)
24

25

iii

1                    TRANSCRIPT OF PROCEEDINGS
              BEFORE THE HONORABLE CATHERINE BAUER
2                 UNITED STATES BANKRUPTCY JUDGE

3   APPEARANCES:

4   For the Debtor:              ANDREA STEINMANN DOWNS, IN PRO
                                    PER
5

6   For the Hausman and          HAMID R. RAFATJOO, ESQ.
      Moellenhoff Creditors:     Raines Feldman, LLP
7                                1800 Avenue of the Stars
                                 12th Floor
8                                Los Angeles, California 90067
                                 (310) 440-4100
9

10  For Tessie Stapleton, Katy   ARAM ORDUBEGIAN, ESQ.
      Belknap, Jeff Steinmann,   Arent Fox, LLP
11    and Heinz J. Steinman:     555 West 5th Street
                                 48th Floor
12                               Los Angeles, California 90013
                                 (213) 629-7410
13

14  For Susanna Steinman-Wilson, GERALD P. KENNEDY, ESQ.
      Thomas Steinman, John      Procopio, Cory, Hargreaves &
15    Steinmann and Mary           Savitch, LLP
      Steinmann-Sypkens:         525 B Street, Suite 2200
16                               San Diego, California 92101
                                 (619) 238-1900
17

18  For Lora Rae Steinmann,      D. EDWARD HAYS, ESQ.
      Heinz H. Steinmann and     Marshack Hays, LLP
19    Eric Steinmann:            870 Roosevelt
                                 Irvine, California 92620
20                               (949) 333-7777

21  For the Chapter 7 Trustee:   JEFFREY I. GOLDEN, ESQ.
                                 Weiland, Golden & Goodrich,
22                                 LLP
                                 650 Town Center Drive
23                               Suite 950
                                 Costa Mesa, California 92626
24                               (714) 966-1000

25

**Briggs Reporting Company, Inc.**

iv

1  APPEARANCES:  (cont'd.)

2  For James Till and              MICHAEL B. REYNOLDS, ESQ.
      Bosley Till, LLP:            Snell & Wilmer, LLP
3                                  600 Anton Boulevard
                                   Suite 1400
4                                  Costa Mesa, California 92626
                                   (714) 427-7414
5

6  Court Recorder:                 Sally Daniels
                                   United States Bankruptcy Court
7                                  411 West Fourth Street
                                   Suite 2030
8                                  Santa Ana, California 92701

9  Transcriber:                    Briggs Reporting Company, Inc.
                                   2160 Fletcher Parkway
10                                 Suite P
                                   El Cajon, California 92020
11                                 (310) 410-4151

12

13

14

15

16

17

18

19

20

21

22

23

24

25

42

1  to appeal my denying a motion to dismiss.

2          MR. HAYS:  Understood.

3          THE COURT:  That is just -- I mean, those are

4  usually nonstarters.

5          MR. HAYS:  And it's probably the first time I've

6  done it in 27 years, your Honor, but this is --

7          THE COURT:  And I've never had one where I had any

8  problems.  It's like, what are you talking about?  No, we

9  don't overturn those.  It's -- if I granted it, sure.

10         MR. HAYS:  Understood, your Honor.

11         THE COURT:  I haven't had that problem.

12         MR. HAYS:  And this is a pretty unique case.  And

13 your Honor even said at oral argument the first time around,

14 there was a lot of interesting things here.

15         THE COURT:  There are a lot of interesting things,

16 a lot of interesting people.  And I'm inclined just to cut

17 to the chase, to grant the motion for stay.  However, I want

18 the 2004's to go forward.  I want cooperation finally in

19 this case.

20         I mean, people who -- I understand a lot of people

21 have been dragged in, but there have been problems with

22 documentation for a long, long time.  And I feel like people

23 are doing it again.  We don't want to be transparent.

24         I'm giving the motion for stay pending appeal

25 reluctantly, but with the understanding documents are going

43

1 to come out.  People are going to be deposed.  No one of

2 this, I don't live anywhere near.  I can't possibly do this.

3 I want discovery to take place on some level.  And if you're

4 not going to cooperate, maybe I appoint somebody to step in

5 an deal with it, because this has been doing on for way too

6 long.  How's that?

7           MR. RAFATJOO:  Thank you, your Honor.

8           THE COURT:  Yeah.  Okay.

9           MR. HAYS:  Thank you, your Honor.

10          THE COURT:  So, you're getting your motion for

11 stay pending appeal.  I guess that's both 31 and 32?

12          MR. HAYS:  Yes.

13          THE COURT:  And I'm cautioning you, I want

14 discovery, 2004's to go forward in good faith.  And anymore

15 games, I'm going to be a very unhappy camper.  So, that's 31

16 and 32.

17          Then we get to 49, 50, 51, 52, 53, 54 -- 55 is off

18 calendar, so that's good.

19          So when we come to number 49, that's the motion to

20 examine Mr. Till, who apparently is okay with it.

21          MR. HAYS:  Your Honor, if I can interrupt real

22 quick?

23          THE COURT:  Sure.  Sorry.

24          MR. HAYS:  Do we -- I just understood you to have

25 ruled on the 2004's, which are --

# EXHIBIT F

```
 1                UNITED STATES BANKRUPTCY COURT

 2                CENTRAL DISTRICT OF CALIFORNIA

 3                         --oOo--

 4  In Re:                    ) Case No. 8:16-bk-12589-CB
                              )
 5  ANDREA STEINMANN DOWNS,   ) Chapter 7
                              )
 6         Debtor.            ) Santa Ana, California
    _____) Tuesday, December 17, 2019
 7                            ) 10:00 a.m.
    CASEY,                    )
 8                            ) Adv. No. 8:18-ap-01168-CB
           Plaintiff,         )
 9                            )
        vs.                   )
10                            )
    STEINMANN, ET AL.,        )
11                            )
           Defendants.        )
12  _____)

13                            MOTION FOR ENTRY OF ORDER:
                              (1) COMPELLING TESTIMONY OF
14                            LORA RAE STEINMANN AT COURT
                              ORDERED 2004 EXAMINATION;
15                            (2) IMPOSING MONETARY
                              SANCTIONS;
16                            (3) FINDING CIVIL CONTEMPT;
                              AND
17                            (4) AWARDING ATTORNEYS' FEES
                              AND COSTS
18
                              TRUSTEE'S MOTION RE: JOINT
19                            STIPULATION ON DISPUTED ISSUES
                              REGARDING COMPELLING TESTIMONY
20                            OF LORA RAE STEINMANN AT COURT
                              ORDERED 2004 AND COMBINED
21                            DEPOSITION AND EXAMINATION AND
                              PRODUCTION OF DOCUMENTS
22

23

24
    Proceedings recorded by electronic sound recording;
25  transcript produced by transcription service.
```

*Briggs Reporting Company, Inc.*

ii

1                                CONT STATUS CONFERENCE RE:
                                 COMPLAINT:
2                                (1) TO AVOID AND RECOVER
                                 FRAUDULENT TRANSFERS PURSUANT
3                                TO 11 U.S.C. SECTIONS
                                 548(a)(1)(A), 544(b) and 550;
4                                (2) FOR IMPOSITION OF A
                                 RESULTING TRUST;
5                                (3) FOR DECLARATORY RELIEF;
                                 (4) FOR PRESERVATION OF THE
6                                TRANSFER FOR THE BENEFIT OF
                                 THE ESTATE;
7                                (5) FOR ATTORNEYS' FEES AND
                                 COSTS
8

9                      TRANSCRIPT OF PROCEEDINGS
                BEFORE THE HONORABLE CATHERINE BAUER
10                  UNITED STATES BANKRUPTCY JUDGE

11 APPEARANCES:

12 For the Hausman and          HAMID R. RAFATJOO, ESQ.
      Moellenhoff Creditors:    Raines Feldman, LLP
13                              1800 Avenue of the Stars
                                12th Floor
14                              Los Angeles, California 90067
                                (310) 440-4100
15
                                ALAN J. KESSEL, ESQ.
16                              Pepper Hamilton, LLP
                                4 Park Plaza, Suite 1200
17                              Irvine, California 92614
                                (949) 567-3500
18

19 For Lora Rae Steinmann,      D. EDWARD HAYS, ESQ.
      Heinz H. Steinmann and    Marshack Hays, LLP
20    Eric Steinmann:           870 Roosevelt
                                Irvine, California 92620
21                              (949) 333-7777

22 For the Chapter 7 Trustee:   JEFFREY I. GOLDEN, ESQ.
                                Weiland, Golden & Goodrich,
23                                 LLP
                                650 Town Center Drive
24                              Suite 950
                                Costa Mesa, California 92626
25                              (714) 966-1000

*Briggs Reporting Company, Inc.*

Exhibit F, Page 65

                                                                            iii

 1  APPEARANCES:  (cont'd.)

 2  For Jeffrey D. Steinmann,        E. SCOTT PALMER, ESQ.
      Teresa Steinmann-Stapleton,   Law Office of E. Scott Palmer
 3    Katy Steinmann-Belknap,       624 South Grand Avenue
      and Heinz J. Steinmann:       Los Angeles, California 90017
 4                                  (213) 629-8704

 5  For Susanna Steinman-Wilson,    GERALD P. KENNEDY, ESQ.
      Thomas Steinmann, John        Procopio, Cory, Hargreaves &
 6    Steinmann and Mary              Savitch, LLP
      Steinmann-Sypkens:            525 B Street, Suite 2200
 7                                  San Diego, California 92101
                                    (619) 238-1900
 8

 9  Court Recorder:                 Sally Daniels
                                    United States Bankruptcy Court
10                                  411 West Fourth Street
                                    Suite 2030
11                                  Santa Ana, California 92701

12  Transcriber:                    Briggs Reporting Company, Inc.
                                    2160 Fletcher Parkway
13                                  Suite 209
                                    El Cajon, California 92020
14                                  (310) 410-4151

15

16

17

18

19

20

21

22

23

24

25

13

1  How would you like to proceed?

2          THE COURT:  Well, I have a question.  What's going

3  on with Eric's exam?  I mean, I know you want documents.  I

4  mean, I'm fed up, frankly.  I want to order here, for the

5  exam to take place here in this courtroom, and he is to

6  bring documents.  He seems to be the lynchpin here, and I'm

7  tired of this game.

8          MR. RAFATJOO:  I know, your Honor.  I know that we

9  have been -- since the Court's ruling on intervention,

10 there's a lot of 2004 subpoenas and discovery that have been

11 prepared and is ready to go out.  So, we should be able to

12 get those out before the end of the year, and ready to set

13 his -- you know, as soon as they produce documents, give us

14 time to review the documents --

15         THE COURT:  Well, what if I just say, he has to be

16 here by a date certain, we're going to do it here in the

17 courtroom, and he is to bring documents?  I'm just, I want

18 to short-circuit this.

19         MR. RAFATJOO:  It's fine --

20         THE COURT:  This is just, it's such a game with

21 them.

22         MR. RAFATJOO:  Your Honor, listen, that's fine,

23 too.  My concern with that is going to be the following.

24 For us, they going to, they're either going to show up with

25 two pages, or they going to say, you want documents?

14

1 They're going to fill up the room, and then we do not have

2 time to get through the documents.

3        So, if you want to order that, I'm perfectly

4 happy, and I would appreciate that.  But let's have the

5 document production be before he shows up here, if possible.

6 I know mister -- well --

7        THE COURT:  I'm trying to think of ways to make

8 sure that it happens --

9        MR. RAFATJOO:  I understand.

10        THE COURT:  -- because I don't believe it will

11 happen.  And then they'll say, delay, delay.

12        MR. RAFATJOO:  Mr. Golden --

13        THE COURT:  Mr. Golden, any ideas?

14        MR. GOLDEN:  If I could offer a suggestion.  I

15 don't want to -- okay.  Just a suggestion on the point that

16 the Court made specifically just now, might be to issue a

17 date for Eric's examination that works for everyone.  And

18 then some period before that, a date for a hearing in this

19 court by which the production of was to occur, so we can

20 just discuss that.

21        In other -- so, rather than have a situation where

22 -- lots of times it happens, too, it's like, you know, a

23 deponent, a deponent says, there's other documents. In this

24 particular case, you note in the transcript Ms. Diamond

25 said, I never checked my e-mails even though I was asked to

15

1  look for all the documents.  So, these have only been six or

2  seven or eight pages, but she said, I never went through my

3  e-mails, I never -- you know, so you want people to have

4  acknowledge that they've looked for what they can and they

5  found what they have.  So that would be the ideal situation.

6          And we just, we didn't want to ink Eric's

7  examination without the Court being able to rule on the

8  matters before the Court, because otherwise we felt, I felt

9  we're going to be in the same situation again.

10          THE COURT:  I want there to be some teeth here.  I

11  was just -- I mean, Eric needs to come here.  I'm just so

12  tired of this.  He's in the background actively doing

13  things.  He needs to be here.

14          MR. RAFATJOO:  I agree, your Honor.

15          THE COURT:  And my -- I'm not holding my breath

16  for him to give up any docs, really I'm not.

17          All right.  I'm open to suggestions.  I'm going to

18  let Mr. Hays -- I'm just tried, Mr. Hays, of these people.

19  I'm really tired.  I understand they don't like being sued,

20  but the Trustee has an obligation here, and we need answers

21  to questions.  Is there a side deal here?

22          What -- you know, she was cut out of the trust

23  right before she filed bankruptcy, right after a major

24  judgment.  Yeah, there seems to be some coordination if you

25  just look at the surface.  But since we're getting no

16

1  cooperation from them whatsoever --

2          MR. RAFATJOO:  Your Honor --

3          THE COURT:  -- you would think if there wasn't

4  anything, we would be getting cooperation.

5          MR. RAFATJOO:  One of the questions that Mr.

6  Golden asked was, have you given Andrea any money?

7          THE COURT:  Yeah, I'm --

8          MR. RAFATJOO:  We're not answering that.

9          THE COURT:  Yeah, that's ridiculous.  I'm sorry.

10          MR. GOLDEN:  Or what interest did she have -- you

11  know, what was her interest in the trust at one point in

12  time?  What was the interest in -- what was her interest in

13  the trust at the time it was gone?

14          I mean, even from her -- even from a very narrow

15  perspective, without even context or anything else like

16  that, those are -- you know, as the Trustee, Mr. Casey

17  should be in a position to know that.

18          And I'll tell you, too -- and I don't want to

19  interrupt the flow of communication, but, you know, my --

20  there is a lot of communication about -- comments about how,

21  you know, we're not moving fast enough.

22          I will put on the record, Mr. Casey's admonition

23  to me in this case is, get this case resolved as quickly as

24  possible for the creditors, for cost, for the Court, because

25  many courts, especially this Court, doesn't like adversaries

# EXHIBIT G

1 | D. EDWARD HAYS, #162507
ehays@marshackhays.com
2 | LAILA MASUD, #311731
lmasud@marshackhays.com
3 | MARSHACK HAYS LLP
870 Roosevelt
4 | Irvine, California 92620
Telephone: (949) 333-7777
5 | Facsimile: (949) 333-7778

6 | Attorneys for Respondent,
ERIC STEINMANN
7

8 | UNITED STATES BANKRUPTCY COURT

9 | CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION

10

11 | In re

12

13 | ANDREA STEINMANN DOWNS,

14 | Debtor.

15

16

Case No. 8:16-bk-12589-CB

Chapter 7

ERIC STEINMANN'S RESPONSE TO THE
MOTION FOR ORDER AUTHORIZING
THE EXAMINATION AND PRODUCTION
OF DOCUMENTS PURSUANT TO
FEDERAL RULE OF BANKRUPTCY
PROCEDURE 2004

17

18

19 | Respondent, Eric Steinmann ("Eric" and/or "Responding Party"), hereby objects to and/or

20 | otherwise responds to the Order for 2004 Production of Documents propounded by Chapter 7

21 | Trustee, Thomas H. Casey ("Trustee" and/or "Requesting Party") as follows:

22 | **Preliminary Statement**

23 | These responses are made solely for the purpose of this action. No incidental or implied

24 | admissions are intended by the responses. The fact that Responding Party responds to any of the

25 | requests should not be taken as an admission that Responding Party accepts or admits the existence

26 | of any facts assumed by such requests or that such response constitutes admissible evidence as to

27 | any such assumed facts. The fact that Responding Party responds to part or all of any request is not

28 | intended to and shall not be construed to be a waiver by Responding Party of any objection to any

1

ERIC STEINMANN'S RESPONSE TO 2004 PRODUCTION REQUEST

Exhibit G, Page 71

4828-6916-5974, v. 1

1 request. Furthermore, Responding Party's responses herein are made without waiving, and expressly

2 reserving, the right: (a) to object to any effort to use any documents produced in any step or

3 proceeding in this action or any other action, and (b) to object on any ground to other discovery

4 requests regarding the subject matter of any request herein.

5      Responding Party's responses herein are based on and reflect the current state of its

6 knowledge. Responding Party expressly reserves the right to supplement its responses at a later time

7 should it deem such supplementation necessary or appropriate.

8      In particular, Responding Party anticipates that depositions will produce additional facts and

9 the need for additional investigation regarding the information in these responses.

10      The inadvertent production of a document that is privileged, constitutes work-product, or is

11 protected from disclosure by any other applicable doctrine or rule of law, shall not be deemed to

12 waive the applicable privilege, doctrine, or rule of law with respect to that document, any other

13 document, or the subject matter or context of any such document.

14      Documents produced in response to these Requests for Production will be made available to

15 Requesting Party for inspection and photocopying at the office of Marshack Hays LLP, located at

16 870 Roosevelt, Irvine, California 92620. Requesting Party must propose a time and date for

17 production. The Requesting Party bears the cost of any photocopying. Neither Responding Party nor

18 his counsel of record will make copies for Requesting Party.

19 **General Objections**

20      1.    Responding Party objects generally to the requests on the following grounds, each of

21 which is incorporated by reference in the responses to each and every demand below:

22      2.    Responding Party objects to each request to the extent that the request(s) seek the

23 disclosure of attorney-client privileged information, and Responding Party asserts the attorney-

24 client privilege with respect to each such document.

25      3.    Responding Party objects to each request to the extent that the request(s) seek the

26 discovery of documents protected by the attorney work-product doctrine, and asserts the attorney

27 work-product doctrine with respect to each such document.

28

2

4.    Responding Party objects to each request to the extent that the request(s) seek documents which are equally available to the Requesting Party. There is not a duty to search out matters of public record. The Responding Party has no duty to make inquiry from independent witnesses in order to respond to discovery.

5.    Responding Party objects to each request to the extent the request(s) exceed the scope of necessary and appropriate discovery, and/or are not reasonably calculated to lead to the discovery of admissible evidence.

6.    Responding Party objects to each request to the extent that the request(s) seek documents which contain proprietary information, trade secrets, and/or other confidential information.

7.    Responding Party objects to the extent that the request(s) is/are not tailored to achieve the examination purpose as described in the Trustee's 2004 Motion and instead seeks to invade the rights of Eric Steinmann, Parents and Siblings by asking for privileged personal financial information within the "zone of privacy" protected by the California Constitution, article I, section I, and other Federal and State laws.

8.    Responding Party objects to each request to the extent the request(s) seek the production of documents and information that is publicly available to, previously provided to, otherwise within the possession, custody or control of, or readily obtainable by, the possession, custody or control of, or reasonably obtainable by, the Requesting Party, its agents and/or counsel, such that the requested disclosure is inconvenient, burdensome, unduly expensive to Responding Party.

9.    Responding Party objects to the production specifications set forth in the request(s) as unduly burdensome. To the extent that it exists, Responding Party will produce, nonprivileged, responsive documents only within the parameters established under Rule 34 of the Federal Rules of Civil Procedure.

Without waiving any of the foregoing objections, Responding Party responds to Responding Party's requests below:

ERIC STEINMANN'S RESPONSE TO 2004 PRODUCTION REQUEST

4828-6916-5974, v. 1

## OBJECTIONS AND RESPONSES TO REQUEST FOR PRODUCTION

**DOCUMENT PRODUCTION REQUEST NO. 1:**

Documents evidencing any sort of interest(s) held directly or directly by the Debtor, including, but not limited to, financial, future, equitable or contingent interest(s) in any Person, any bank account, retirement account, or other account, and/or in any trust or will.

**RESPONSE TO DOCUMENT PRODUCTION REQUEST NO. 1:**

Subject to the objections noted above and without waiving said objections, Responding Party has conducted a diligent search and made a reasonable inquiry and has determined that there are no responsive documents in its possession, custody or control aside from the Trust and Trust Amendment which have previously been provided and are in the Requesting Party's possession.

**DOCUMENT PRODUCTION REQUEST NO. 2:**

Documents evidencing any sort of interest(s) ever held directly or indirectly by the Debtor, or the Siblings, or the Parents in Daredevil, Inc., including, but not limited to, financial, future, equitable or contingent interests.

**RESPONSE TO DOCUMENT PRODUCTION REQUEST NO. 2:**

<u>With respect to Debtor</u>: Subject to the objections noted above and without waiving said objections, Responding Party has conducted a diligent search and made a reasonable inquiry and has determined that there are no responsive documents in its possession.

<u>With respect to Siblings and Parents</u>: Subject to the objections noted above and without waiving said objections, Responding Party objects because the request: (1) is overbroad; (2) is not proportional to the needs of the Trustee's 2004 Motion; (3) is vague and ambiguous, (4) seeks documents and/or information that are neither relevant nor material to the issues concerning Debtor in the bankruptcy case, and (5) are not likely to lead to the discovery of admissible evidence.

Trustee's 2004 Motion was premised on the need for information as to Debtor's financial affairs or potential assets Debtor may have an interest in. Responding Party has conducted a diligent search and made a reasonable inquiry and has determined that there are no responsive

4

1   documents in its possession, custody or control that relate to Debtor and Daredevil, Inc. Simply

2   stated, Responding Party is informed and on that basis alleges that Debtor does not have an interest

3   -directly or indirectly - in DareDevil, Inc. Lastly, this request is not tailored to achieve the

4   examination purpose as described in the Trustee's 2004 Motion and instead seeks to invade the

5   rights of Eric Steinmann, Parents and Siblings by asking for privileged personal financial

6   information within the "zone of privacy" protected by the California Constitution, article I, section

7   I, and other Federal and State laws.

8   **DOCUMENT PRODUCTION REQUEST NO. 3:**

9         Documents evidencing any sort of interest(s) ever held directly or indirectly by the Debtor,

10   or the Siblings, or the Parents in NTCH, Inc., a Delaware corporation, including, but not limited to,

11   financial, future, equitable or contingent interests.

12   **RESPONSE TO DOCUMENT PRODUCTION REQUEST NO. 3:**

13         <u>With respect to Debtor</u>: Subject to the objections noted above and without waiving said

14   objections, following Respondent's reasonable search, the following redacted, non-privileged

15   documents response to these Requests are produced and attached to this Response: Stock Purchase

16   Agreement between Andrea and Timothy Downs and NTCH, Inc. Responding further objects to

17   this request because it seeks documents and/or information that are neither relevant nor material to

18   the issues in the action, and are not likely to lead to the discovery of admissible evidence.

19         <u>With respect to Siblings and Parents</u>: Trustee's 2004 Motion was premised on the need for

20   information as to Debtor's financial affairs or potential assets Debtor may have an interest in.

21   Responding Party has conducted a diligent search and made a reasonable inquiry and has provided

22   the responsive documents in its possession, custody or control that relate to Debtor and NTCH,

23   Inc.

24         Subject to the objections noted above and without waiving said objections, Responding

25   Party objects, with respect to the portion of the request directed to Parents and Siblings because the

26   request: (1) is overbroad; (2) is not proportional to the needs of the Trustee's 2004 Motion; (3) is

27   vague and ambiguous, (4) seeks documents and/or information that are neither relevant nor

28

ERIC STEINMANN'S RESPONSE TO 2004 PRODUCTION REQUEST

Exhibit G, Page 75

4828-6916-5974, v. 1

1  material to the issues concerning Debtor in the bankruptcy case, and (5) are not likely to lead to the

2  discovery of admissible evidence. Lastly, this request is not tailored to achieve the examination

3  purpose as described in the Trustee's 2004 Motion and instead seeks to invade the rights of Eric

4  Steinmann, Parents and Siblings by asking for privileged personal financial information within the

5  "zone of privacy" protected by the California Constitution, article I, section I, and other Federal

6  and State laws.

7  **DOCUMENT PRODUCTION REQUEST NO. 4:**

8      Documents evidencing any sort of interest(s) ever held directly or indirectly by the Debtor,

9  or the Siblings, or the Parents in Ally Finance Corporation, including, but not limited to, financial,

10  future, equitable or contingent interests.

11  **RESPONSE TO DOCUMENT PRODUCTION REQUEST NO. 4:**

12      With respect to Debtor: Subject to the objections noted above and without waiving said

13  objections, Responding Party has conducted a diligent search and made a reasonable inquiry and

14  has determined that there are no responsive documents in its possession.

15      With respect to Siblings and Parents: Trustee's 2004 Motion was premised on the need for

16  information as to Debtor's financial affairs or potential assets Debtor may have an interest in.

17  Responding Party has conducted a diligent search and made a reasonable inquiry and has

18  determined that there are no responsive documents in its possession, custody or control that relate

19  to Debtor and Ally Finance Corporation. Simply stated, Responding Party is informed and on that

20  basis alleges that Debtor does not have an interest -directly or indirectly - in Ally Finance

21  Corporation.

22      Subject to the objections noted above and without waiving said objections, Responding

23  Party objects, with respect to the portion of the request directed to Parents and Siblings because the

24  request: (1) is overbroad; (2) is not proportional to the needs of the Trustee's 2004 Motion; (3) is

25  vague and ambiguous, (4) seeks documents and/or information that are neither relevant nor

26  material to the issues concerning Debtor in the bankruptcy case, and (5) are not likely to lead to the

27  discovery of admissible evidence. Lastly, this request is not tailored to achieve the examination

28

1  purpose as described in the Trustee's 2004 Motion and instead seeks to invade the rights of Eric

2  Steinmann, Parents and Siblings by asking for privileged personal financial information within the

3  "zone of privacy" protected by the California Constitution, article I, section I, and other Federal

4  and State laws.

5  **DOCUMENT PRODUCTION REQUEST NO. 5:**

6      Documents evidencing any sort of interest ever held directly or indirectly by the Debtor, or

7  or the Siblings, or the Parents in NTCH-COLORADO, Inc., a Colorado corporation, including, but

8  not limited to, financial, future, equitable or contingent interests.

9  **RESPONSE TO DOCUMENT PRODUCTION REQUEST NO. 5:**

10     Subject to the objections noted above and without waiving said objections, Responding

11 Party objects because the Request is overbroad and not proportional to the needs of the Trustee's

12 2004 Motion. Responding further objects to this request because it seeks documents and/or

13 information that are neither relevant nor material to the issues in the action, and are not likely to

14 lead to the discovery of admissible evidence. Responding Party has conducted a diligent search

15 and made a reasonable inquiry and has determined that there are no responsive documents in its

16 possession, custody or control.

17 **DOCUMENT PRODUCTION REQUEST NO. 6:**

18     Documents evidencing any sort of interest(s) ever held directly or indirectly by the Debtor

19 or the Siblings, or the Parents in NTCH-IDAHO, Inc., an Idaho corporation, including, but not

20 limited to, financial, future, equitable or contingent interests.

21 **RESPONSE TO DOCUMENT PRODUCTION REQUEST NO. 6:**

22     Subject to the objections noted above and without waiving said objections, Responding

23 Party objects because the Request is overbroad and not proportional to the needs of the Trustee's

24 2004 Motion. Responding further objects to this request because it seeks documents and/or

25 information that are neither relevant nor material to the issues in the action, and are not likely to

26 lead to the discovery of admissible evidence. Responding Party has conducted a diligent search

27 and made a reasonable inquiry and has determined that there are no responsive documents in its

28

1  possession, custody or control.

2  **DOCUMENT PRODUCTION REQUEST NO. 7:**

3       Documents evidencing any sort of interest(s) ever held directly or indirectly by the Debtor,

4  or the Siblings, or the Parents in NTCH-CALIFORNIA, Inc., a California corporation, including,

5  but not limited to, financial, future, equitable or contingent interests.

6  **RESPONSE TO DOCUMENT PRODUCTION REQUEST NO. 7:**

7       Subject to the objections noted above and without waiving said objections, Responding

8  Party objects because the Request is overbroad and not proportional to the needs of the Trustee's

9  2004 Motion. Responding further objects to this request because it seeks documents and/or

10  information that are neither relevant nor material to the issues in the action, and are not likely to

11  lead to the discovery of admissible evidence. Responding Party has conducted a diligent search

12  and made a reasonable inquiry and has determined that there are no responsive documents in its

13  possession, custody or control.

14  **DOCUMENT PRODUCTION REQUEST NO. 8:**

15       Documents evidencing any sort of interest(s) ever held directly or indirectly by the Debtor, or

16  the Siblings, or the Parents in RIO-TEL, Inc., a Texas corporation, including, but not limited to,

17  financial, future, equitable or contingent interests.

18  **RESPONSE TO DOCUMENT PRODUCTION REQUEST NO. 8:**

19       Subject to the objections noted above and without waiving said objections, Responding

20  Party objects because the Request is overbroad and not proportional to the needs of the Trustee's

21  2004 Motion. Responding further objects to this request because it seeks documents and/or

22  information that are neither relevant nor material to the issues in the action, and are not likely to

23  lead to the discovery of admissible evidence. Responding Party has conducted a diligent search

24  and made a reasonable inquiry and has determined that there are no responsive documents in its

25  possession, custody or control.

26  / / /

27  / / /

28

ERIC STEINMANN'S RESPONSE TO 2004 PRODUCTION REQUEST

Exhibit G, Page 78

4828-6916-5974, v. 1

1 **DOCUMENT PRODUCTION REQUEST NO. 9:**

2      Documents evidencing any sort of interest(s) ever held directly or indirectly by the Debtor, or

3 the Siblings, or the Parents directly or indirectly in NTCH-TEXAS, INC., a Texas corporation,

4 including, but not limited to, financial, future, equitable or contingent interests.

5 **RESPONSE TO DOCUMENT PRODUCTION REQUEST NO. 9:**

6      Subject to the objections noted above and without waiving said objections, Responding

7 Party objects because the Request is overbroad and not proportional to the needs of the Trustee's

8 2004 Motion. Responding further objects to this request because it seeks documents and/or

9 information that are neither relevant nor material to the issues in the action, and are not likely to

10 lead to the discovery of admissible evidence. Responding Party has conducted a diligent search

11 and made a reasonable inquiry and has determined that there are no responsive documents in its

12 possession, custody or control.

13 **DOCUMENT PRODUCTION REQUEST NO. 10:**

14      Documents evidencing any sort of interest(s) ever held directly or indirectly by the Debtor, or

15 the Siblings, or the Parents directly or indirectly in CLEAR TALK Holdings, Inc. a Delaware

16 corporation, including, but not limited to, financial, future, equitable or contingent interests.

17 **RESPONSE TO DOCUMENT PRODUCTION REQUEST NO. 10:**

18      Subject to the objections noted above and without waiving said objections, Responding

19 Party objects because the Request is overbroad and not proportional to the needs of the Trustee's

20 2004 Motion. Responding further objects to this request because it seeks documents and/or

21 information that are neither relevant nor material to the issues in the action, and are not likely to

22 lead to the discovery of admissible evidence. Responding Party has conducted a diligent search

23 and made a reasonable inquiry and has determined that there are no responsive documents in its

24 possession, custody or control.

25 **DOCUMENT PRODUCTION REQUEST NO. 11:**

26      Documents evidencing any sort of interest(s) ever held directly or indirectly by the Debtor, or

27 the Siblings, or the Parents directly or indirectly in Jacamo, Inc., including, but not limited to,

28

1  financial, future, equitable or contingent interests.

2  **RESPONSE TO DOCUMENT PRODUCTION REQUEST NO. 11:**

3  Subject to the objections noted above and without waiving said objections, Responding

4  Party objects because the Request is overbroad and not proportional to the needs of the Trustee's

5  2004 Motion. Responding further objects to this request because it seeks documents and/or

6  information that are neither relevant nor material to the issues in the action, and are not likely to

7  lead to the discovery of admissible evidence. Responding Party has conducted a diligent search

8  and made a reasonable inquiry and has determined that there are no responsive documents in its

9  possession, custody or control.

10  **DOCUMENT PRODUCTION REQUEST NO. 12:**

11  Documents evidencing any sort of direct or indirect relationship between the Debtor (and

12  any entity in which the Debtor, or the Siblings, or the Parents hold a direct or indirect financial,

13  future, equitable or contingent interest), Nordic Telephone Company Ap5, and NTCH.

14  **RESPONSE TO DOCUMENT PRODUCTION REQUEST NO. 12:**

15  **With respect to NTCH**

16  *With respect to Debtor*: Subject to the objections noted above and without waiving said

17  objections, following Respondent's reasonable search, the following redacted, non-privileged

18  documents response to these Requests are produced and attached to this Response: Stock Purchase

19  Agreement between Andrea and Timothy Downs and NTCH, Inc. Responding further objects to

20  this request because it seeks documents and/or information that are duplicative of requests earlier

21  made and are neither relevant nor material to the issues in the action, and are not likely to lead to

22  the discovery of admissible evidence.

23  *With respect to Siblings and Parents:* Trustee's 2004 Motion was premised on the need for

24  information as to Debtor's financial affairs or potential assets Debtor may have an interest in.

25  Responding Party has conducted a diligent search and made a reasonable inquiry and has provided

26  the responsive documents in its possession, custody or control that relate to Debtor and NTCH,

27  Inc.

28

10

1    Subject to the objections noted above and without waiving said objections, Responding

2  Party objects, with respect to the portion of the request directed to Parents and Siblings because the

3  request: (1) is overbroad; (2) is not proportional to the needs of the Trustee's 2004 Motion; (3) is

4  vague and ambiguous, (4) seeks documents and/or information that are neither relevant nor

5  material to the issues concerning Debtor in the bankruptcy case, and (5) are not likely to lead to the

6  discovery of admissible evidence. Lastly, this request is not tailored to achieve the examination

7  purpose as described in the Trustee's 2004 Motion and instead seeks to invade the rights of Eric

8  Steinmann, Parents and Siblings by asking for privileged personal financial information within the

9  "zone of privacy" protected by the California Constitution, article I, section I, and other Federal

10  and State laws.

11    **With respect to Nordic Telephone Company Ap5**

12    Subject to the objections noted above and without waiving said objections, Responding

13  Party objects because the Request is overbroad and not proportional to the needs of the Trustee's

14  2004 Motion. Responding further objects to this request because it seeks documents and/or

15  information that are neither relevant nor material to the issues in the action, and are not likely to

16  lead to the discovery of admissible evidence. Responding Party has conducted a diligent search

17  and made a reasonable inquiry and has determined that there are no responsive documents in its

18  possession, custody or control.

19  **DOCUMENT PRODUCTION REQUEST NO. 13:**

20    Documents evidencing any sort of direct or indirect relationship between the Debtor (and

21  any entity in which the Debtor, or the Siblings, or the Parents hold a direct or indirect financial,

22  future, equitable or contingent interest), NTCH, Inc. and Glenn Ishihara.

23  **RESPONSE TO DOCUMENT PRODUCTION REQUEST NO. 13:**

24    Subject to the objections noted above and without waiving said objections, Responding

25  Party objects because the Request is overbroad and not proportional to the needs of the Trustee's

26  2004 Motion. Responding further objects to this request because it seeks documents and/or

27  information that are neither relevant nor material to the issues in the action, and are not likely to

28

1  lead to the discovery of admissible evidence. Responding Party has conducted a diligent search

2  and made a reasonable inquiry and has determined that there are no responsive documents in its

3  possession, custody or control.

4  **DOCUMENT PRODUCTION REQUEST NO. 14:**

5        Documents evidencing any sort of direct or indirect relationship between the Debtor (and

6  any entity in which the Debtor, or the Siblings, or the Parents hold a direct or indirect financial,

7  future, equitable or contingent interest), NTCH, Inc. and Adilia Aguilar.

8  **RESPONSE TO DOCUMENT PRODUCTION REQUEST NO. 14:**

9        <u>With respect to Debtor</u>: Subject to the objections noted above and without waiving said

10  objections, Responding Party has conducted a diligent search and made a reasonable inquiry and

11  has determined that there are no responsive documents in its possession aside from the following

12  redacted, non-privileged documents that will be produced and attached to this Response: Stock

13  Purchase Agreement between Andrea and Timothy Downs and NTCH, Inc.

14        <u>With respect to Siblings and Parents</u> Subject to the objections noted above and without

15  waiving said objections, Responding Party objects because the request: (1) is overbroad; (2) is not

16  proportional to the needs of the Trustee's 2004 Motion; (3) is vague and ambiguous, (4) seeks

17  documents and/or information that are neither relevant nor material to the issues concerning

18  Debtor in the bankruptcy case, and (5) are not likely to lead to the discovery of admissible

19  evidence.

20        Trustee's 2004 Motion was premised on the need for information as to Debtor's financial

21  affairs or potential assets Debtor may have an interest in. Responding Party has conducted a

22  diligent search and made a reasonable inquiry and has determined that there are no responsive

23  documents in its possession, custody or control that relate to Debtor, NTCH, Inc. and Adilia

24  Aguilar aside from the following: Stock Purchase Agreement between Andrea and Timothy

25  Downs and NTCH, Inc. Lastly, this request is not tailored to achieve the examination purpose as

26  described in the Trustee's 2004 Motion and instead seeks to invade the rights of Eric Steinmann,

27  Parents and Siblings by asking for privileged personal financial information within the "zone of

28

ERIC STEINMANN'S RESPONSE TO 2004 PRODUCTION REQUEST

4828-6916-5974, v. 1

1  privacy" protected by the California Constitution, article I, section I, and other Federal and State

2  laws.

3  **DOCUMENT PRODUCTION REQUEST NO. 15:**

4      Documents evidencing any sort of direct or indirect relationship between the Debtor (and

5  any entity in which the Debtor, or the Siblings, or the Parents hold a direct or indirect financial,

6  future, equitable or contingent interest), NTCH, Inc. and Mike Feigenbaum.

7  **RESPONSE TO DOCUMENT PRODUCTION REQUEST NO. 15:**

8      <u>With respect to Debtor:</u> Subject to the objections noted above and without waiving said

9  objections, Responding Party has conducted a diligent search and made a reasonable inquiry and

10 has determined that there are no responsive documents in its possession aside from the following

11 redacted, non-privileged documents that will be produced and attached to this Response: Stock

12 Purchase Agreement between Andrea and Timothy Downs and NTCH, Inc.

13     <u>With respect to Siblings and Parents</u> Subject to the objections noted above and without

14 waiving said objections, Responding Party objects because the request: (1) is overbroad; (2) is not

15 proportional to the needs of the Trustee's 2004 Motion; (3) is vague and ambiguous, (4) seeks

16 documents and/or information that are neither relevant nor material to the issues concerning

17 Debtor in the bankruptcy case, and (5) are not likely to lead to the discovery of admissible

18 evidence.

19     Trustee's 2004 Motion was premised on the need for information as to Debtor's financial

20 affairs or potential assets Debtor may have an interest in. Responding Party has conducted a

21 diligent search and made a reasonable inquiry and has determined that there are no responsive

22 documents in its possession, custody or control that relate to Debtor, NTCH, Inc. and Mike

23 Feigenbaum aside from the following: Stock Purchase Agreement between Andrea and Timothy

24 Downs and NTCH, Inc. Lastly, this request is not tailored to achieve the examination purpose as

25 described in the Trustee's 2004 Motion and instead seeks to invade the rights of Eric Steinmann,

26 Parents and Siblings by asking for privileged personal financial information within the "zone of

27 privacy" protected by the California Constitution, article I, section I, and other Federal and State

28

1  laws.

2  **DOCUMENT PRODUCTION REQUEST NO. 16:**

3      Documents evidencing any sort of direct or indirect relationship between the Debtor (and

4  any entity in which the Debtor, or the Siblings, or the Parents hold a direct or indirect financial,

5  future, equitable or contingent interest), NTCH, Inc. and Anthony Sabatino.

6  **RESPONSE TO DOCUMENT PRODUCTION REQUEST NO. 16:**

7      <u>With respect to Debtor</u>: Subject to the objections noted above and without waiving said

8  objections, Responding Party has conducted a diligent search and made a reasonable inquiry and

9  has determined that there are no responsive documents in its possession aside from the following

10  redacted, non-privileged documents that will be produced and attached to this Response: Stock

11  Purchase Agreement between Andrea and Timothy Downs and NTCH, Inc.

12      <u>With respect to Siblings and Parents</u> Subject to the objections noted above and without

13  waiving said objections, Responding Party objects because the request: (1) is overbroad; (2) is not

14  proportional to the needs of the Trustee's 2004 Motion; (3) is vague and ambiguous, (4) seeks

15  documents and/or information that are neither relevant nor material to the issues concerning

16  Debtor in the bankruptcy case, and (5) are not likely to lead to the discovery of admissible

17  evidence.

18      Trustee's 2004 Motion was premised on the need for information as to Debtor's financial

19  affairs or potential assets Debtor may have an interest in. Responding Party has conducted a

20  diligent search and made a reasonable inquiry and has determined that there are no responsive

21  documents in its possession, custody or control that relate to Debtor, NTCH, Inc. and Anthony

22  Sabatino aside from the following: Stock Purchase Agreement between Andrea and Timothy

23  Downs and NTCH, Inc. Lastly, this request is not tailored to achieve the examination purpose as

24  described in the Trustee's 2004 Motion and instead seeks to invade the rights of Eric Steinmann,

25  Parents and Siblings by asking for privileged personal financial information within the "zone of

26  privacy" protected by the California Constitution, article I, section I, and other Federal and State

27  laws.

28

1  **DOCUMENT PRODUCTION REQUEST NO. 17:**

2       Documents evidencing any sort of direct or indirect relationship between the Debtor (and

3  any entity in which the Debtor, or the Siblings, or the Parents hold a direct or indirect financial,

4  future, equitable or contingent interest), NTCH, Inc., CLEAR TALK Holdings, Inc. a Delaware

5  corporation and/or Clear Talk Wireless.

6  **RESPONSE TO DOCUMENT PRODUCTION REQUEST NO. 17:**

7       <u>With respect to Debtor</u>: Subject to the objections noted above and without waiving said

8  objections, following Respondent's reasonable search, the following redacted, non-privileged

9  documents response to these Requests are produced and attached to this Response: Stock Purchase

10 Agreement between Andrea and Timothy Downs and NTCH, Inc. Responding further objects to

11 this request because it seeks documents and/or information that are duplicative and neither relevant

12 nor material to the issues in the action, and are not likely to lead to the discovery of admissible

13 evidence.

14      <u>With respect to Siblings and Parents</u> Trustee's 2004 Motion was premised on the need for

15 information as to Debtor's financial affairs or potential assets Debtor may have an interest in.

16 Responding Party has conducted a diligent search and made a reasonable inquiry and has provided

17 the responsive documents in its possession, custody or control that relate to Debtor and NTCH, Inc.,

18 CLEAR TALK Holdings, Inc. a Delaware corporation and/or Clear Talk Wireless.

19      Subject to the objections noted above and without waiving said objections, Responding

20 Party objects, with respect to the portion of the request directed to Parents and Siblings because the

21 request: (1) is overbroad; (2) is not proportional to the needs of the Trustee's 2004 Motion; (3) is

22 vague and ambiguous, (4) seeks documents and/or information that are neither relevant nor

23 material to the issues concerning Debtor in the bankruptcy case, and (5) are not likely to lead to the

24 discovery of admissible evidence. Lastly, this request is not tailored to achieve the examination

25 purpose as described in the Trustee's 2004 Motion and instead seeks to invade the rights of Eric

26 Steinmann, Parents and Siblings by asking for privileged personal financial information within the

27 "zone of privacy" protected by the California Constitution, article I, section I, and other Federal

28

ERIC STEINMANN'S RESPONSE TO 2004 PRODUCTION REQUEST

4828-6916-5974, v. 1

1  and State laws.

2  **DOCUMENT PRODUCTION REQUEST NO. 18:**

3      Documents evidencing any sort of direct or indirect relationship between the Debtor (and

4  any entity in which the Debtor, or the Siblings, or the Parents hold a direct or indirect financial,

5  future, equitable or contingent interest), NTCH-IAT Communications dba NTCH-Idaho, Inc., and

6  Glenn Ishihara.

7  **RESPONSE TO DOCUMENT PRODUCTION REQUEST NO. 18:**

8      Subject to the objections noted above and without waiving said objections, Responding

9  Party objects because the Request is overbroad and not proportional to the needs of the Trustee's

10  2004 Motion. Responding further objects to this request because it seeks documents and/or

11  information that are duplicative and neither relevant nor material to the issues in the action, and are

12  not likely to lead to the discovery of admissible evidence. Responding Party has conducted a

13  diligent search and made a reasonable inquiry and has determined that there are no responsive

14  documents in its possession, custody or control.

15  **DOCUMENT PRODUCTION REQUEST NO. 19:**

16      Documents evidencing any sort of direct or indirect relationship between the Debtor (and

17  any entity in which the Debtor, or the Siblings, or the Parents hold a direct or indirect financial,

18  future, equitable or contingent interest) and NTCH- North Carolina.

19  **RESPONSE TO DOCUMENT PRODUCTION REQUEST NO. 19:**

20      Subject to the objections noted above and without waiving said objections, Responding

21  Party objects because the Request is overbroad and not proportional to the needs of the Trustee's

22  2004 Motion. Responding further objects to this request because it seeks documents and/or

23  information that are neither relevant nor material to the issues in the action, and are not likely to

24  lead to the discovery of admissible evidence. Responding Party has conducted a diligent search

25  and made a reasonable inquiry and has determined that there are no responsive documents in its

26  possession, custody or control.

27  / / /

28

ERIC STEINMANN'S RESPONSE TO 2004 PRODUCTION REQUEST

Exhibit G, Page 86

4828-6916-5974, v. 1

**DOCUMENT PRODUCTION REQUEST NO. 20:**

Documents evidencing any sort of interest(s) ever held directly or indirectly by the Debtor, or the Siblings, or the Parents in NTCI-NM, LLC including, but not limited to, financial, future, equitable or contingent interests.

**RESPONSE TO DOCUMENT PRODUCTION REQUEST NO. 20:**

Subject to the objections noted above and without waiving said objections, Responding Party objects because the Request is overbroad and not proportional to the needs of the Trustee's 2004 Motion. Responding further objects to this request because it seeks documents and/or information that are neither relevant nor material to the issues in the action, and are not likely to lead to the discovery of admissible evidence. Responding Party has conducted a diligent search and made a reasonable inquiry and has determined that there are no responsive documents in its possession, custody or control.

**DOCUMENT PRODUCTION REQUEST NO. 21:**

Documents evidencing any sort of interest(s) ever held directly or indirectly by the Debtor, or the Siblings, or the Parents in Craver Ranch, LLC., including, but not limited to, financial, future, equitable or contingent interests.

**RESPONSE TO DOCUMENT PRODUCTION REQUEST NO. 21:**

With respect to Debtor: Subject to the objections noted above and without waiving said objections, Responding Party has conducted a diligent search and made a reasonable inquiry and has determined that there are no responsive documents in its possession.

With respect to Siblings and Parents Subject to the objections noted above and without waiving said objections, Responding Party objects because the request: (1) is overbroad; (2) is not proportional to the needs of the Trustee's 2004 Motion; (3) is vague and ambiguous, (4) seeks documents and/or information that are neither relevant nor material to the issues concerning Debtor in the bankruptcy case, and (5) are not likely to lead to the discovery of admissible evidence.

ERIC STEINMANN'S RESPONSE TO 2004 PRODUCTION REQUEST

4828-6916-5974, v. 1

1  Trustee's 2004 Motion was premised on the need for information as to Debtor's financial

2  affairs or potential assets Debtor may have an interest in. Responding Party has conducted a

3  diligent search and made a reasonable inquiry and has determined that there are no responsive

4  documents in its possession, custody or control that relate to Debtor and Craver Ranch, LLC.

5  Simply stated, Responding Party is informed and on that basis alleges that Debtor does not have an

6  interest -directly or indirectly - in Craver Ranch, LLC. Lastly, this request is not tailored to achieve

7  the examination purpose as described in the Trustee's 2004 Motion and instead seeks to invade the

8  rights of Eric Steinmann, Parents and Siblings by asking for privileged personal financial

9  information within the "zone of privacy" protected by the California Constitution, article I, section

10  I, and other Federal and State laws.

11  **DOCUMENT PRODUCTION REQUEST NO. 22:**

12  Documents evidencing any sort of interest ever held directly or indirectly by the Debtor, or

13  the Siblings, or the Parents in NTCH, ET, LLC, including, but not limited to, financial, future,

14  equitable or contingent interests.

15  **RESPONSE TO DOCUMENT PRODUCTION REQUEST NO. 22:**

16  Subject to the objections noted above and without waiving said objections, Responding

17  Party objects because the Request is overbroad and not proportional to the needs of the Trustee's

18  2004 Motion. Responding further objects to this request because it seeks documents and/or

19  information that are neither relevant nor material to the issues in the action, and are not likely to

20  lead to the discovery of admissible evidence. Responding Party has conducted a diligent search

21  and made a reasonable inquiry and has determined that there are no responsive documents in its

22  possession, custody or control.

23  **DOCUMENT PRODUCTION REQUEST NO. 23:**

24  Documents evidencing any sort of interest(s) ever held directly or indirectly by the Debtor,

25  or the Siblings, or the Parents in NTCH, West Tenn, Inc., including, but not limited to, financial,

26  future, equitable or contingent interests.

27  / / /

28

ERIC STEINMANN'S RESPONSE TO 2004 PRODUCTION REQUEST

Exhibit G, Page 88

4828-6916-5974, v. 1

1 | **RESPONSE TO DOCUMENT PRODUCTION REQUEST NO. 23:**

2 |     <u>With respect to Debtor</u>: Subject to the objections noted above and without waiving said

3 | objections, Responding Party has conducted a diligent search and made a reasonable inquiry and

4 | has determined that there are no responsive documents in its possession.

5 |     <u>With respect to Siblings and Parents</u> Subject to the objections noted above and without

6 | waiving said objections, Responding Party objects because the request: (1) is overbroad; (2) is not

7 | proportional to the needs of the Trustee's 2004 Motion; (3) is vague and ambiguous, (4) seeks

8 | documents and/or information that are neither relevant nor material to the issues concerning

9 | Debtor in the bankruptcy case, and (5) are not likely to lead to the discovery of admissible

10 | evidence.

11 |     Trustee's 2004 Motion was premised on the need for information as to Debtor's financial

12 | affairs or potential assets Debtor may have an interest in. Responding Party has conducted a

13 | diligent search and made a reasonable inquiry and has determined that there are no responsive

14 | documents in its possession, custody or control that relate to Debtor and NTCH, West Tenn, Inc.

15 | Simply stated, Responding Party is informed and on that basis alleges that Debtor does not have an

16 | interest -directly or indirectly - in NTCH, West Tenn, Inc. Lastly, this request is not tailored to

17 | achieve the examination purpose as described in the Trustee's 2004 Motion and instead seeks to

18 | invade the rights of Eric Steinmann, Parents and Siblings by asking for privileged personal

19 | financial information within the "zone of privacy" protected by the California Constitution, article

20 | I, section I, and other Federal and State laws.

21 | **DOCUMENT PRODUCTION REQUEST NO. 24:**

22 |     Documents evidencing any sort of interest ever held directly or indirectly by the Debtor or

23 | the Siblings in GLH Communications, Inc., including, but not limited to, financial, future, equitable

24 | or contingent interests.

25 | **RESPONSE TO DOCUMENT PRODUCTION REQUEST NO. 24:**

26 |     Subject to the objections noted above and without waiving said objections, Responding

27 | Party objects because the Request is overbroad and not proportional to the needs of the Trustee's

28 |

ERIC STEINMANN'S RESPONSE TO 2004 PRODUCTION REQUEST

Exhibit G, Page 89

4828-6916-5974, v. 1

1  2004 Motion. Responding further objects to this request because it seeks documents and/or

2  information that are neither relevant nor material to the issues in the action, and are not likely to

3  lead to the discovery of admissible evidence. Responding Party has conducted a diligent search

4  and made a reasonable inquiry and has determined that there are no responsive documents in its

5  possession, custody or control.

6  **DOCUMENT PRODUCTION REQUEST NO. 25:**

7  Documents evidencing any sort of interest(s) ever held directly or indirectly by the Debtor,

8  or the Siblings, or the Parents in WGH Communications, including, but not limited to, financial,

9  future, equitable or contingent interests.

10  **RESPONSE TO DOCUMENT PRODUCTION REQUEST NO. 25:**

11  Subject to the objections noted above and without waiving said objections, Responding

12  Party objects because the Request is overbroad and not proportional to the needs of the Trustee's

13  2004 Motion. Responding further objects to this request because it seeks documents and/or

14  information that are neither relevant nor material to the issues in the action, and are not likely to

15  lead to the discovery of admissible evidence. Responding Party has conducted a diligent search

16  and made a reasonable inquiry and has determined that there are no responsive documents in its

17  possession, custody or control.

18  **DOCUMENT PRODUCTION REQUEST NO. 26:**

19  Documents evidencing any sort of interest(s) ever held directly or indirectly by the Debtor,

20  or the Siblings, or the Parents in Daredevil Communications of Saint Louis, including, but not

21  limited to, financial, future, equitable or contingent interests.

22  **RESPONSE TO DOCUMENT PRODUCTION REQUEST NO. 26:**

23  With respect to Debtor: Subject to the objections noted above and without waiving said

24  objections, Responding Party has conducted a diligent search and made a reasonable inquiry and

25  has determined that there are no responsive documents in its possession.

26  With respect to Siblings and Parents Subject to the objections noted above and without

27  waiving said objections, Responding Party objects because the request: (1) is overbroad; (2) is not

28

ERIC STEINMANN'S RESPONSE TO 2004 PRODUCTION REQUEST
Exhibit G, Page 90

4828-6916-5974, v. 1

1  proportional to the needs of the Trustee's 2004 Motion; (3) is vague and ambiguous, (4) seeks

2  documents and/or information that are neither relevant nor material to the issues concerning

3  Debtor in the bankruptcy case, and (5) are not likely to lead to the discovery of admissible

4  evidence.

5      Trustee's 2004 Motion was premised on the need for information as to Debtor's financial

6  affairs or potential assets Debtor may have an interest in. Responding Party has conducted a

7  diligent search and made a reasonable inquiry and has determined that there are no responsive

8  documents in its possession, custody or control that relate to Debtor and Daredevil

9  Communications of Saint Louis. Simply stated, Responding Party is informed and on that basis

10  alleges that Debtor does not have an interest -directly or indirectly - in Daredevil Communications

11  of Saint Louis. Lastly, this request is not tailored to achieve the examination purpose as described

12  in the Trustee's 2004 Motion and instead seeks to invade the rights of Eric Steinmann, Parents and

13  Siblings by asking for privileged personal financial information within the "zone of privacy"

14  protected by the California Constitution, article I, section I, and other Federal and State laws.

15  **DOCUMENT PRODUCTION REQUEST NO. 27:**

16      Documents evidencing any sort of interest(s) ever held directly or indirectly by the Debtor,

17  or the Siblings, or the Parents in Green Flag Wireless, LLC, including, but not limited to, financial,

18  future, equitable or contingent interests.

19  **RESPONSE TO DOCUMENT PRODUCTION REQUEST NO. 27:**

20      With respect to Debtor: Subject to the objections noted above and without waiving said

21  objections, Responding Party has conducted a diligent search and made a reasonable inquiry and

22  has determined that there are no responsive documents in its possession.

23      With respect to Siblings and Parents Subject to the objections noted above and without

24  waiving said objections, Responding Party objects because the request: (1) is overbroad; (2) is not

25  proportional to the needs of the Trustee's 2004 Motion; (3) is vague and ambiguous, (4) seeks

26  documents and/or information that are neither relevant nor material to the issues concerning

27  Debtor in the bankruptcy case, and (5) are not likely to lead to the discovery of admissible

28

ERIC STEINMANN'S RESPONSE TO 2004 PRODUCTION REQUEST
Exhibit G, Page 91

4828-6916-5974, v. 1

1  evidence.

2      Trustee's 2004 Motion was premised on the need for information as to Debtor's financial

3  affairs or potential assets Debtor may have an interest in. Responding Party has conducted a

4  diligent search and made a reasonable inquiry and has determined that there are no responsive

5  documents in its possession, custody or control that relate to Debtor and Green Flag Wireless,

6  LLC. Simply stated, Responding Party is informed and on that basis alleges that Debtor does not

7  have an interest -directly or indirectly - in Green Flag Wireless, LLC. Lastly, this request is not

8  tailored to achieve the examination purpose as described in the Trustee's 2004 Motion and instead

9  seeks to invade the rights of Eric Steinmann, Parents and Siblings by asking for privileged

10  personal financial information within the "zone of privacy" protected by the California

11  Constitution, article I, section I, and other Federal and State laws.

12  **DOCUMENT PRODUCTION REQUEST NO. 28:**

13      Documents evidencing any sort of interest(s) ever held directly or indirectly by the Debtor,

14  or the Siblings, or the Parents in Flat Wireless LLC aka Flat West Wireless, including, but not

15  limited to, financial, future, equitable or contingent interests.

16  **RESPONSE TO DOCUMENT PRODUCTION REQUEST NO. 28:**

17      With respect to Debtor: Subject to the objections noted above and without waiving said

18  objections, Responding Party has conducted a diligent search and made a reasonable inquiry and

19  has determined that there are no responsive documents in its possession.

20      With respect to Siblings and Parents Subject to the objections noted above and without

21  waiving said objections, Responding Party objects because the request: (1) is overbroad; (2) is not

22  proportional to the needs of the Trustee's 2004 Motion; (3) is vague and ambiguous, (4) seeks

23  documents and/or information that are neither relevant nor material to the issues concerning

24  Debtor in the bankruptcy case, and (5) are not likely to lead to the discovery of admissible

25  evidence.

26      Trustee's 2004 Motion was premised on the need for information as to Debtor's financial

27  affairs or potential assets Debtor may have an interest in. Responding Party has conducted a

28

---

22

ERIC STEINMANN'S RESPONSE TO 2004 PRODUCTION REQUEST

Exhibit G, Page 92

4828-6916-5974, v. 1

1  diligent search and made a reasonable inquiry and has determined that there are no responsive

2  documents in its possession, custody or control that relate to Debtor and Flat Wireless LLC aka

3  Flat West Wireless. Simply stated, Responding Party is informed and on that basis alleges that

4  Debtor does not have an interest -directly or indirectly - in Flat Wireless LLC aka Flat West

5  Wireless. Lastly, this request is not tailored to achieve the examination purpose as described in the

6  Trustee's 2004 Motion and instead seeks to invade the rights of Eric Steinmann, Parents and

7  Siblings by asking for privileged personal financial information within the "zone of privacy"

8  protected by the California Constitution, article I, section I, and other Federal and State laws.

9  **DOCUMENT PRODUCTION REQUEST NO. 29:**

10        Documents evidencing any sort of interest(s) ever held directly or indirectly by the Debtor,

11  or the Siblings, or the Parents in Clear 9 Communications, including, but not limited to, financial,

12  future, equitable or contingent interests.

13  **RESPONSE TO DOCUMENT PRODUCTION REQUEST NO. 29:**

14        <u>With respect to Debtor:</u> Subject to the objections noted above and without waiving said

15  objections, Responding Party has conducted a diligent search and made a reasonable inquiry and

16  has determined that there are no responsive documents in its possession.

17        <u>With respect to Siblings and Parents</u> Subject to the objections noted above and without

18  waiving said objections, Responding Party objects because the request: (1) is overbroad; (2) is not

19  proportional to the needs of the Trustee's 2004 Motion; (3) is vague and ambiguous, (4) seeks

20  documents and/or information that are neither relevant nor material to the issues concerning

21  Debtor in the bankruptcy case, and (5) are not likely to lead to the discovery of admissible

22  evidence.

23        Trustee's 2004 Motion was premised on the need for information as to Debtor's financial

24  affairs or potential assets Debtor may have an interest in. Responding Party has conducted a

25  diligent search and made a reasonable inquiry and has determined that there are no responsive

26  documents in its possession, custody or control that relate to Debtor and Clear 9 Communications.

27  Simply stated, Responding Party is informed and on that basis alleges that Debtor does not have an

28

ERIC STEINMANN'S RESPONSE TO 2004 PRODUCTION REQUEST

Exhibit G, Page 93

4828-6916-5974, v. 1

1  interest -directly or indirectly - in Clear 9 Communications. Lastly, this request is not tailored to

2  achieve the examination purpose as described in the Trustee's 2004 Motion and instead seeks to

3  invade the rights of Eric Steinmann, Parents and Siblings by asking for privileged personal

4  financial information within the "zone of privacy" protected by the California Constitution, article

5  I, section I, and other Federal and State laws.

6  **DOCUMENT PRODUCTION REQUEST NO. 30:**

7      Documents evidencing any sort of interest(s) ever held directly or indirectly by the Debtor,

8  or the Siblings, or the Parents in Wireless Radio Networks, including, but not limited to, financial,

9  future, equitable or contingent interests.

10  **RESPONSE TO DOCUMENT PRODUCTION REQUEST NO. 30:**

11      <u>With respect to Debtor</u>: Subject to the objections noted above and without waiving said

12  objections, Responding Party has conducted a diligent search and made a reasonable inquiry and

13  has determined that there are no responsive documents in its possession.

14      <u>With respect to Siblings and Parents</u> Subject to the objections noted above and without

15  waiving said objections, Responding Party objects because the request: (1) is overbroad; (2) is not

16  proportional to the needs of the Trustee's 2004 Motion; (3) is vague and ambiguous, (4) seeks

17  documents and/or information that are neither relevant nor material to the issues concerning

18  Debtor in the bankruptcy case, and (5) are not likely to lead to the discovery of admissible

19  evidence.

20      Trustee's 2004 Motion was premised on the need for information as to Debtor's financial

21  affairs or potential assets Debtor may have an interest in. Responding Party has conducted a

22  diligent search and made a reasonable inquiry and has determined that there are no responsive

23  documents in its possession, custody or control that relate to Debtor and Wireless Radio Networks.

24  Simply stated, Responding Party is informed and on that basis alleges that Debtor does not have an

25  interest -directly or indirectly - in Wireless Radio Networks. Lastly, this request is not tailored to

26  achieve the examination purpose as described in the Trustee's 2004 Motion and instead seeks to

27  invade the rights of Eric Steinmann, Parents and Siblings by asking for privileged personal

28

24

1  financial information within the "zone of privacy" protected by the California Constitution, article

2  I, section I, and other Federal and State laws.

3  **DOCUMENT PRODUCTION REQUEST NO. 31:**

4       Documents evidencing any sort of interest(s) ever held directly or indirectly by the Debtor,

5  or the Siblings, or the Parents in IAT Communications, DBA NTCH Idaho, Inc., including, but not

6  limited to, financial, future, equitable or contingent interests.

7  **RESPONSE TO DOCUMENT PRODUCTION REQUEST NO. 31:**

8       Subject to the objections noted above and without waiving said objections, Responding

9  Party objects because the Request is overbroad and not proportional to the needs of the Trustee's

10  2004 Motion. Responding further objects to this request because it seeks documents and/or

11  information that are neither relevant nor material to the issues in the action, and are not likely to

12  lead to the discovery of admissible evidence. Responding Party has conducted a diligent search

13  and made a reasonable inquiry and has determined that there are no responsive documents in its

14  possession, custody or control.

15  **DOCUMENT PRODUCTION REQUEST NO. 32:**

16       Documents evidencing any sort of interests(s) ever held directly or indirectly by the Debtor,

17  or the Siblings, or the Parents directly or indirectly in NTCH-WA, including, but not limited to,

18  financial, future, equitable or contingent interests.

19  **RESPONSE TO DOCUMENT PRODUCTION REQUEST NO. 32:**

20       Subject to the objections noted above and without waiving said objections, Responding

21  Party objects because the Request is overbroad and not proportional to the needs of the Trustee's

22  2004 Motion. Responding further objects to this request because it seeks documents and/or

23  information that are duplicative and neither relevant nor material to the issues in the action, and are

24  not likely to lead to the discovery of admissible evidence. Responding Party has conducted a

25  diligent search and made a reasonable inquiry and has determined that there are no responsive

26  documents in its possession, custody or control.

27  / / /

28

**DOCUMENT PRODUCTION REQUEST NO. 33:**

Documents evidencing any sort of interest(s) ever held directly or indirectly by the Debtor, or the Siblings, or the Parents in Norio, Inc., including, but not limited to, financial, future, equitable or contingent interests.

**RESPONSE TO DOCUMENT PRODUCTION REQUEST NO. 33:**

Subject to the objections noted above and without waiving said objections, Responding Party objects because the Request is overbroad and not proportional to the needs of the Trustee's 2004 Motion. Responding further objects to this request because it seeks documents and/or information that are neither relevant nor material to the issues in the action, and are not likely to lead to the discovery of admissible evidence. Responding Party has conducted a diligent search and made a reasonable inquiry and has determined that there are no responsive documents in its possession, custody or control.

**DOCUMENT PRODUCTION REQUEST NO. 34:**

Documents evidencing any sort of interest(s) ever held directly or indirectly by, or for the benefit of, the Debtor, in any other entity or Person, or in any accounts, including without limitation, any bank accounts, investment accounts, or any other such financial depository institution.

**RESPONSE TO DOCUMENT PRODUCTION REQUEST NO. 34:**

Subject to the objections noted above and without waiving said objections, Responding Party objects because the Request is overbroad and not proportional to the needs of the Trustee's 2004 Motion. Responding further objects to this request because it seeks documents and/or information that are neither relevant nor material to the issues in the action, and are not likely to lead to the discovery of admissible evidence. Responding Party has conducted a diligent search and made a reasonable inquiry and has determined that there are no responsive documents in its possession, custody or control.

**DOCUMENT PRODUCTION REQUEST NO. 35:**

Documents evidencing any engagement agreement between You, or any entities in which

4828-6916-5974, v. 1

1  You have any direct or indirect financial or equitable interest(s), and Brown Rudnick LLP.

2  **RESPONSE TO DOCUMENT PRODUCTION REQUEST NO. 35:**

3      Subject to the objections noted above and without waiving said objections, Responding

4  Party objects because the Request is overbroad and not proportional to the needs of the Trustee's

5  2004 Motion. Responding further objects to this request because it seeks documents and/or

6  information that are neither relevant nor material to the issues in the action, and are not likely to

7  lead to the discovery of admissible evidence. Responding Party has conducted a diligent search

8  and made a reasonable inquiry and has determined that there are no responsive documents in its

9  possession, custody or control.

10  **DOCUMENT PRODUCTION REQUEST NO. 36:**

11      Documents evidencing any payments made by YOU, or any entities in which You have any

12  direct or indirect financial or equitable interest(s), to Brown Rudnick LLP.

13  **RESPONSE TO DOCUMENT PRODUCTION REQUEST NO. 36:**

14      Subject to the objections noted above and without waiving said objections, Responding

15  Party objects because the Request is overbroad and not proportional to the needs of the Trustee's

16  2004 Motion. Responding further objects to this request because it seeks documents and/or

17  information that are neither relevant nor material to the issues in the action, and are not likely to

18  lead to the discovery of admissible evidence. Responding Party has conducted a diligent search

19  and made a reasonable inquiry and has determined that there are no responsive documents in its

20  possession, custody or control.

21

22  Dated:  May 14, 2019                      MARSHACK HAYS LLP

23

24                                           By: */s/ Laila Masud*
25                                                D. EDWARD HAYS
                                                  LAILA MASUD
                                                  Attorneys for Respondent,
26                                                ERIC STEINMANN

27

28

4828-6916-5974, v. 1

## PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
870 Roosevelt, Irvine, CA 92620

A true and correct copy of the foregoing document entitled (*specify*): **ERIC STEINMANN'S RESPONSE TO THE MOTION
FOR ORDER AUTHORIZING THE EXAMINATION AND PRODUCTION OF DOCUMENTS PURSUANT TO FEDERAL
RULE OF BANKRUPTCY PROCEDURE 2004** will be served or was served **(a)** on the judge in chambers in the form and
manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General
Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **May 14,
2019**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following
persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) **May 14, 2019**, I served the following persons and/or entities at the last known addresses in this bankruptcy
case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail,
first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the
judge <u>will be completed</u> no later than 24 hours after the document is filed.

*Trustee's Counsel*
**Jeffrey I. Golden**
650 Town Center Dr., Suite 600
Costa Mesa, CA 92626

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method
for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **May 14, 2019**, I served the
following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to
such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration
that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is
filed.

**VIA EMAIL:**
Faye Rasch, fraschlaw@gmail.com;
Jeffrey Golden, jgolden@lgwfllp.com

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| May 14, 2019 | Layla Buchanan | /s/ Layla Buchanan |
| *Date* | *Printed Name* | *Signature* |

RECEIVED
MAY 17 REC'D
By

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

4828-6916-5974, v. 1

**F 9013-3.1.PROOF.SERVICE**

# EXHIBIT H

1  D. EDWARD HAYS, #162507
   ehays@marshackhays.com
2  LAILA MASUD, #311731
   lmasud@marshackhays.com
3  MARSHACK HAYS LLP
   870 Roosevelt
4  Irvine, California 92620
   Telephone: (949) 333-7777
5  Facsimile: (949) 333-7778

6  Attorneys for Respondent,
   LORA RAE STEINMANN
7

8              UNITED STATES BANKRUPTCY COURT

9        CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION

10

11 In re                              Case No. 8:16-bk-12589-CB

12                                    Chapter 7
   ANDREA STEINMANN DOWNS,
13                                    LORA STEINMANN'S RESPONSE TO
                                      MOTION FOR ORDER AUTHORIZING
14          Debtor.                   THE EXAMINATION OF LORA
                                      STEINMANN AND PRODUCTION OF
15                                    DOCUMENTS PURSUANT TO FEDERAL
                                      RULE OF BANKRUPTCY PROCEDURE
16                                    2004

17

18         Respondent, Lora Rae Steinmann ("Ms. Steinmann" and/or "Responding Party"), hereby

19 objects to and/or otherwise responds to the Order for 2004 Production of Documents propounded by

20 Chapter 7 Trustee, Thomas H. Casey ("Trustee" and/or "Requesting Party") as follows:

21                          **Preliminary Statement**

22         These responses are made solely for the purpose of this action. No incidental or implied

23 admissions are intended by the responses. The fact that Responding Party responds to any of the

24 requests should not be taken as an admission that Responding Party accepts or admits the existence

25 of any facts assumed by such requests or that such response constitutes admissible evidence as to

26 any such assumed facts. The fact that Responding Party responds to part or all of any request is not

27 intended to and shall not be construed to be a waiver by Responding Party of any objection to any

28 request. Furthermore, Responding Party's responses herein are made without waiving, and expressly

                                      1
          LORA STEINMANN'S RESPONSE TO 2004 PRODUCTION REQUEST
                                              Exhibit H, Page 99
   4841-2680-1814, v. 1

1  reserving, the right: (a) to object to any effort to use any documents produced in any step or

2  proceeding in this action or any other action, and (b) to object on any ground to other discovery

3  requests regarding the subject matter of any request herein.

4      Responding Party's responses herein are based on, and reflect the current state of its

5  knowledge. Responding Party expressly reserves the right to supplement its responses at a later time

6  should it deem such supplementation necessary or appropriate.

7      In particular, Responding Party anticipates that depositions will produce additional facts and

8  the need for additional investigation regarding the information in these responses.

9      The inadvertent production of a document that is privileged, constitutes work-product, or is

10  protected from disclosure by any other applicable doctrine or rule of law, shall not be deemed to

11  waive the applicable privilege, doctrine, or rule of law with respect to that document, any other

12  document, or the subject matter or context of any such document.

13      Documents produced in response to these Requests for Production will be made available to

14  Requesting Party for inspection and photocopying at the office of Marshack Hays LLP, located at

15  870 Roosevelt, Irvine, California 92620. Requesting Party must propose a time and date for

16  production. The Requesting Party bears the cost of any photocopying. Neither Responding Party nor

17  his counsel of record will make copies for Requesting Party.

18                          **General Objections**

19  1.      Responding Party objects generally to the requests on the following grounds, each of

20  which is incorporated by reference in the responses to each and every demand below:

21  2.      Responding Party objects to each request to the extent that the request(s) seek the

22  disclosure of attorney-client privileged information, and Responding Party asserts the attorney-

23  client privilege with respect to each such document.

24  3.      Responding Party objects to each request to the extent that the request(s) seek the

25  discovery of documents protected by the attorney work-product doctrine, and asserts the attorney

26  work-product doctrine with respect to each such document.

27  4.      Responding Party objects to each request to the extent that the request(s) seek

28

1  documents which are equally available to the Requesting Party. There is not a duty to search out

2  matters of public record. The Responding Party has no duty to make inquiry from independent

3  witnesses in order to respond to discovery.

4       5.      Responding Party objects to each request to the extent the request(s) exceed the scope

5  of necessary and appropriate discovery, and/or are not reasonably calculated to lead to the discovery

6  of admissible evidence.

7       6.      Responding Party objects to each request to the extent that the request(s) seek

8  documents which contain proprietary information, trade secrets, and/or other confidential

9  information.

10      7.      Responding Party objects to the extent that the request(s) is/are not tailored to achieve

11 the examination purpose as described in the Trustee's 2004 Motion and instead seeks to invade the

12 rights of Eric Steinmann, Parents and Siblings by asking for privileged personal financial

13 information within the "zone of privacy" protected by the California Constitution, article I, section

14 I, and other Federal and State laws.

15      8.      Responding Party objects to each request to the extent the request(s) seek the

16 production of documents and information that is publicly available to, previously provided to,

17 otherwise within the possession, custody or control of, or readily obtainable by, the possession,

18 custody or control of, or reasonably obtainable by, the Requesting Party, its agents and/or counsel,

19 such that the requested disclosure is inconvenient, burdensome, unduly expensive to Responding

20 Party.

21      9.      Responding Party objects to the production specifications set forth in the request(s) as

22 unduly burdensome. To the extent that it exists, Responding Party will produce, nonprivileged,

23 responsive documents only within the parameters established under Rule 34 of the Federal Rules of

24 Civil Procedure.

25      Without waiving any of the foregoing objections, Responding Party responds to Responding

26 Party's requests below:

27      **OBJECTIONS AND RESPONSES TO REQUEST FOR PRODUCTION**

28

LORA STEINMANN'S RESPONSE TO 2004 PRODUCTION REQUEST
Exhibit H, Page 101
4841-2680-1814, v. 1

**DOCUMENT PRODUCTION REQUEST NO. 1:**

Documents evidencing any sort of future, contingent or equitable interest(s) held directly or indirectly by the Debtor in the Steinmann Family Trust, including, but not limited to financial, future, equitable or contingent interests, for the period of June 19, 2012 through the Petition Date.

**RESPONSE TO DOCUMENT PRODUCTION REQUEST NO. 1:**

Subject to the objections noted above and without waiving said objections, Responding Party has conducted a diligent search and made a reasonable inquiry and has determined that there are no responsive documents in its possession, custody or control aside from the Trust and Trust Amendment which have previously been provided and are in the Requesting Party's possession.

**DOCUMENT PRODUCTION REQUEST NO. 2:**

Documents evidencing any sort of future, contingent or equitable interest(s) held directly or indirectly by the Debtor in any trust or will that You may have settled or established for any or all of Your children before You settled the Steinmann Family Trust, including, but not limited to financial, future, equitable or contingent interests, for the period of June 19, 2012 through the Petition Date.

**RESPONSE TO DOCUMENT PRODUCTION REQUEST NO. 2:**

Subject to the objections noted above and without waiving said objections, Responding Party has conducted a diligent search and made a reasonable inquiry and has determined that no responsive documents are in its possession, custody or control.

**DOCUMENT PRODUCTION REQUEST NO. 3:**

Documents evidencing any sort of transfer(s) of any future, contingent or equitable interest(s) held directly or indirectly by the Debtor in the Steinmann Family Trust, including, but not limited to, financial, future, equitable or contingent interests, for the period of June 19, 2012 through the Petition Date.

**RESPONSE TO DOCUMENT PRODUCTION REQUEST NO. 3:**

Subject to the objections noted above and without waiving said objections, Responding Party has conducted a diligent search and made a reasonable inquiry and has determined that there

LORA STEINMANN'S RESPONSE TO 2004 PRODUCTION REQUEST

Exhibit H, Page 102

4841-2680-1814, v. 1

1  are no responsive documents in its possession, custody or control aside from the Trust and Trust

2  Amendment which have previously been provided and are in the Requesting Party's possession.

3  **DOCUMENT PRODUCTION REQUEST NO. 4:**

4      Documents evidencing any sort of transfer(s) of any future, contingent or equitable

5  interest(s) held directly or indirectly by the Debtor in any trust or will that You may have settled or

6  established for any or all of Your children before You settled the Steinmann Family Trust,

7  including, but not limited to financial, future, equitable or contingent interests, for the period of

8  June 19, 2012 through the Petition Date.

9  **RESPONSE TO DOCUMENT PRODUCTION REQUEST NO. 4:**

10      Subject to the objections noted above and without waiving said objections, Responding

11  Party has conducted a diligent search and made a reasonable inquiry and has determined that there

12  are no responsive documents in its possession.

13  **DOCUMENT PRODUCTION REQUEST NO. 5:**

14      Documents evidencing any and all assets held directly or indirectly by the Steinmann

15  Family Trust, including, but not limited to, financial, future, equitable or contingent interests, for

16  the period of June 19, 2012 through the Petition Date.

17  **RESPONSE TO DOCUMENT PRODUCTION REQUEST NO. 5:**

18      Subject to the objections noted above and without waiving said objections, Responding

19  Party objects because the request: (1) is overbroad; (2) is not proportional to the needs of the

20  Trustee's 2004 Motion; (3) is vague and ambiguous, (4) seeks documents and/or information that

21  are neither relevant nor material to the issues concerning Debtor in the bankruptcy case, and (5) are

22  not likely to lead to the discovery of admissible evidence.

23      Trustee's 2004 Motion was premised on the need for information as to Debtor's financial

24  affairs or potential assets Debtor may have an interest in. As Debtor is not a beneficiary and does

25  not hold any interest in the *res* of the Steinmann Trust, the information requested is outside the

26  scope of the Trustee's 2004 Motion. Simply stated, this request is not tailored to achieve the

27  examination purpose as described in the Trustee's 2004 Motion and instead seeks to invade the

28

LORA STEINMANN'S RESPONSE TO 2004 PRODUCTION REQUEST
4841-2680-1814, v. 1

1 | rights of Mrs. Steinmann by asking for privileged personal financial information within the "zone

2 | of privacy" protected by the California Constitution, article I, section I, and other Federal and State

3 | laws.

4 | **DOCUMENT PRODUCTION REQUEST NO. 6:**

5 |     Documents evidencing any and all assets held directly or indirectly by the any trust or will

6 | that You may have settled or established for any or all of Your children before You settled the

7 | Steinmann Family Trust, including, but not limited to, financial, future, equitable or contingent

8 | interests, for the period of June 19, 2012 through the Petition Date.

9 | **RESPONSE TO DOCUMENT PRODUCTION REQUEST NO. 6:**

10 |     Subject to the objections noted above and without waiving said objections, Responding

11 | Party objects because the request: (1) is overbroad; (2) is not proportional to the needs of the

12 | Trustee's 2004 Motion; (3) is vague and ambiguous, (4) seeks documents and/or information that

13 | are neither relevant nor material to the issues concerning Debtor in the bankruptcy case, and (5) are

14 | not likely to lead to the discovery of admissible evidence.

15 |     Trustee's 2004 Motion was premised on the need for information as to Debtor's financial

16 | affairs or potential assets Debtor may have an interest in. As Debtor is not a beneficiary and does

17 | not hold any interest in the res of the Steinmann Trust, the information requested is outside the

18 | scope of the Trustee's 2004 Motion. Simply stated, this request is not tailored to achieve the

19 | examination purpose as described in the Trustee's 2004 Motion and instead seeks to invade the

20 | rights of Mrs. Steinmann by asking for privileged personal financial information within the "zone

21 | of privacy" protected by the California Constitution, article I, section I, and other Federal and State

22 | laws. The request functions to seek discovery in connection with the Adversary and upon that basis

23 | Responding Party objects.

24 | **DOCUMENT PRODUCTION REQUEST NO. 7:**

25 |     Documents evidencing any sort of future, contingent or equitable interest(s) held directly

26 | or indirectly by the Siblings in the Steinmann Family Trust, including, but not limited to any future,

27 | contingent or equitable financial interests, for the period of June 19, 2012 through the Petition

28 |

LORA STEINMANN'S RESPONSE TO 2004 PRODUCTION REQUEST

4841-2680-1814, v. 1

1  Date.

2  **RESPONSE TO DOCUMENT PRODUCTION REQUEST NO. 7:**

3      Subject to the objections noted above and without waiving said objections, Responding

4  Party objects because the request: (1) is overbroad; (2) is not proportional to the needs of the

5  Trustee's 2004 Motion; (3) is vague and ambiguous, (4) seeks documents and/or information that

6  are neither relevant nor material to the issues concerning Debtor in the bankruptcy case, and (5) are

7  not likely to lead to the discovery of admissible evidence.

8      Trustee's 2004 Motion was premised on the need for information as to Debtor's financial

9  affairs or potential assets Debtor may have an interest in. As Debtor is not a beneficiary and does

10  not hold any interest in the *res* of the Steinmann Trust, the information requested is outside the

11  scope of the Trustee's 2004 Motion. Simply stated, this request is not tailored to achieve the

12  examination purpose as described in the Trustee's 2004 Motion and instead seeks to invade the

13  rights of Mrs. Steinmann by asking for privileged personal financial information within the "zone

14  of privacy" protected by the California Constitution, article I, section I, and other Federal and State

15  laws. The request functions to seek discovery in connection with the Adversary and upon that basis

16  Responding Party objects.

17  **DOCUMENT PRODUCTION REQUEST NO. 8:**

18      Documents evidencing any sort of future, contingent or equitable interest(s) held directly or

19  indirectly by the Siblings in any trust the Steinmann Family Trust or will that You may have settled

20  or established for any or all of Your children before You settled the Steinmann Family Trust,

21  including, but not limited to, any future, contingent or equitable financial interests, for the period of

22  June 19, 2012 through the Petition Date.

23  **RESPONSE TO DOCUMENT PRODUCTION REQUEST NO. 8:**

24      Subject to the objections noted above and without waiving said objections, Responding

25  Party objects because the request: (1) is overbroad; (2) is not proportional to the needs of the

26  Trustee's 2004 Motion; (3) is vague and ambiguous, (4) seeks documents and/or information that

27  are neither relevant nor material to the issues concerning Debtor in the bankruptcy case, and (5) are

28

1  not likely to lead to the discovery of admissible evidence.

2        Trustee's 2004 Motion was premised on the need for information as to Debtor's financial

3  affairs or potential assets Debtor may have an interest in. As Debtor is not a beneficiary and does

4  not hold any interest in the *res* of the Steinmann Trust, the information requested is outside the

5  scope of the Trustee's 2004 Motion. Simply stated, this request is not tailored to achieve the

6  examination purpose as described in the Trustee's 2004 Motion and instead seeks to invade the

7  rights of Mrs. Steinmann by asking for privileged personal financial information within the "zone

8  of privacy" protected by the California Constitution, article I, section I, and other Federal and State

9  laws. The request functions to seek discovery in connection with the Adversary and upon that basis

10  Responding Party objects.

11  **DOCUMENT PRODUCTION REQUEST NO. 9:**

12        Documents evidencing any payments or transfers of any assets or money made by You, or

13  pursuant to Your direct or indirect request, direction or instruction, to the Debtor, or for the benefit

14  of the Debtor, to any Person or entity.

15  **RESPONSE TO DOCUMENT PRODUCTION REQUEST NO. 9:**

16       Subject to the objections noted above and without waiving said objections, Responding

17  Party specifically objects because the request is overbroad, and unlimited in time, scope or manner.

18  Responding Party further objects on the basis that this information is equally available to the

19  Requesting Party due to the document production provided in connection with the 2004

20  examination held by creditor Hausman Holdings. Responding further objects to this request

21  because it seeks documents and/or information that are neither relevant nor material to the issues in

22  the action, and are not likely to lead to the discovery of admissible evidence.

23  Dated:  May 14, 2019           MARSHACK HAYS LLP

24

25                 By: */s/ Laila Masud*
                 D. EDWARD HAYS

26                   LAILA MASUD
                 Attorneys for Respondent,

27                   LORA RAE STIENMANN

28

LORA STEINMANN'S RESPONSE TO 2004 PRODUCTION REQUEST
Exhibit H, Page 106

4841-2680-1814, v. 1

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
870 Roosevelt, Irvine, CA 92620

A true and correct copy of the foregoing document entitled: **LORA STEINMANN'S RESPONSE TO MOTION FOR ORDER AUTHORIZING THE EXAMINATION OF LORA STEINMANN AND PRODUCTION OF DOCUMENTS PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 2004** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **May 14, 2019**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On **May 14, 2019**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

***Trustee's Counsel***
**Jeffrey I. Golden**
650 Town Center Dr., Suite 600
Costa Mesa, CA 92626

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **May 14, 2019**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

**VIA EMAIL:**
Faye Rasch, fraschlaw@gmail.com;
Jeffrey Golden, jgolden@lgwfllp.com

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| May 14, 2019 | Layla Buchanan | | /s/ Layla Buchanan |
|---|---|---|---|
| *Date* | *Printed Name* | | *Signature* |

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

**F 9013-3.1.PROOF.SERVICE**

4841-2680-1814, v. 1

Exhibit H, Page 107



# EXHIBIT I

**LORA STEINMANN  6/16/2016**

---

SUPERIOR COURT OF THE STATE OF CALIFORNIA
FOR THE COUNTY OF ORANGE - CENTRAL JUSTICE CENTER

HAUSMAN HOLDINGS, LLC, a )
California limited liability )
company, DAVID MOELLENHOFF, )
an individual, and PAMELA )
MOELLENHOFF and individual, )
)
        Plaintiffs, )
)
    vs. ) No.
) 30-2013-00627272-
MICHAEL REYNOLDS, an ) CU-BC-CJC
individual, ANDREA DOWNS, an )
individual, HAPPENSTANCE )
CORPORATION, a California )
corporation, and DOES 1 )
through 50, inclusive, )
)
        Defendants. )
)

VIDEOTAPED DEPOSITION OF LORA STEINMANN
Thursday, June 16, 2016, at 11:10 a.m.

Reported By:
Christine Mesquit
CSR No. 13481

---

**Page 3**

```
 1                    INDEX
 2   WITNESS:
 3   Lora Steinmann
 4   EXAMINATION                          PAGE
 5
     Mr. Crisp ------------------------------  5
 6
 7           E X H I B I T S
 8        (Exhibits attached hereto.)
 9   PLAINTIFFS'      DESCRIPTION           PAGE
10      2000      Notice of Taking Deposition;   7
                  11 pages
11
        2001      Notice of Ruling; seven pages  7
12
        2002      Computer printout; five pages  26
13
        2003      Document titled "About Us";    37
14                three pages
15
16
17          QUESTIONS NOT ANSWERED
18              PAGE   LINE
19               23     5
20
21          INFORMATION REQUESTED
22
                 (None.)
23
24
25
```

---

**Page 2**

```
 1        VIDEOTAPED DEPOSITION OF LORA STEINMANN,
 2   taken on behalf of Plaintiffs, 5797 Cedar Street,
 3   Wrightwood, California, commencing at 11:10 a.m., on
 4   Thursday, June 16, 2016, before Christine Mesquit, a
 5   Certified Shorthand Reporter, CSR No. 13481, in and
 6   for the State of California, principal office being
 7   in County of Orange.
 8
 9   APPEARANCES:
10
11      FOR THE PLAINTIFFS:
12          PEPPER HAMILTON, LLP
            4 Park Plaza
13          Suite 1200
            Irvine, California  92614
14          (949) 567-3500
        BY: KEVIN CRISP, ESQ.
15          crispk@pepperlaw.com
16
17      FOR THE DEPONENT:
18          FULLERTON, LEMANN, SCHAEFER & DOMINICK
            215 North D Street
19          1st Floor
            San Bernardino, California  92401
20          (909) 889-3691
        BY: DANIEL W. HOLDEN, ESQ.
21          dholden@inlandbusinesslaw.com
22
23
        ALSO PRESENT:
24          ROEDY WIBOWO, Videographer
25
```

---

**Page 4**

```
 1   WRIGHTWOOD, CALIFORNIA; THURSDAY, JUNE 16, 2016
 2                  11:10 A.M.
 3
 4        THE VIDEOGRAPHER:  I'm Roedy Wibowo, your
 5   videographer, and I represent I Witness Video in   11:10:19AM
 6   Tustin.  I'm a notary public.  I'm not financially
 7   interested in this action, nor am I a relative or
 8   employee of any attorney or any of the parties.
 9        The date is June 16, 2016.  The time is
10   11:10 a.m.  This deposition is taking place at 5797  11:10:40AM
11   Cedar Street, Wrightwood, California 92397.
12        The case number is 30-2013-00627272 in the
13   Superior Court of the State of California for the
14   County of Orange, Central Justice Center, and title,
15   Holding -- Hausman Holdings, LLC, et al., versus   11:11:17AM
16   Michael Reynolds, Andrea Downs, et al.
17        This deposition is being taken on behalf of
18   the plaintiff.  This begins tape number 1, volume 1
19   of the videotaped deposition of Lora Steinmann.  The
20   court reporter is Christine Mesquit.            11:11:35AM
21        Would counsel please give their appearances
22   for the record.
23        MR. CRISP:  Kevin Crisp of Pepper Hamilton
24   on behalf of the plaintiffs, Hausman Holdings, David
25   Moellenhoff and Pamela Moellenhoff.            11:11:50AM
```

---

**1 (Pages 1 to 4)**

**LORA STEINMANN  6/16/2016**

---

**Page 21**

1    A    Yes.

2    Q    Okay.  Can we just call those, all those

3  together, your trust accounts --

4    A    Yes.

5    Q    -- just for purposes of this deposition?    11:28:52AM

6    A    Yes.

7    Q    That way we can move through.  Okay.  From

8  2006 to the present, who controls investment

9  decisions for your trust accounts?

10    A    My husband, myself, and my son Eric    11:29:13AM

11  (phonetic) Steinmann are the trustees.

12    Q    Okay.  Does Eric have background in finance

13  or investments?

14    A    Yes.

15    Q    Okay.  What is that background?    11:29:41AM

16    A    Well, he -- he invests a lot.  He's a

17  businessman.  He is also a lawyer.

18    Q    He's also a lawyer and a businessman?

19    A    Yes.

20    Q    And obviously he helps with the investment    11:29:54AM

21  decisions for your trust accounts?

22    A    Yes.

23    Q    Has he ever made investment decisions or

24  helped make investment decisions for any other

25  vehicles?    11:30:09AM

---

**Page 22**

1    A    Prior to the trust account, he has advised

2  us.

3    Q    Okay.  You said "prior to the trust

4  account."  I just want to make sure that our timing

5  isn't off here from 2006 to the present.    11:30:17AM

6    A    Yeah.

7    Q    Was there some other vehicle other than your

8  trust accounts that you made investments through at

9  any time from 2006 to the present?

10    A    Yes.  The trust account is fairly recent.    11:30:31AM

11    Q    When was the trust account set up?

12    A    Just in the last year because I'm 80 years

13  old and it was a prudent thing to do.

14    Q    Okay.  So that's the only trust account that

15  either you or your husband have had assets in --    11:30:50AM

16    A    Yes.

17    Q    -- the period 2006 to the present?

18    A    Yes.

19    Q    Okay.  And I just want to make sure I'm

20  sure -- I don't have the transcript in front of me --    11:30:59AM

21  you said that was within the past year or two?

22    A    That's -- yes.

23    Q    Okay.  So up until the time that trust

24  account was set up, 2006, so that time, you and/or

25  your husband had assets that were available for    11:31:25AM

---

**Page 23**

1  investing that were not in trust accounts but were

2  held directly in you and/or your husband's name,

3  correct?

4    A    Correct.

5    Q    Okay.  Okay.  Well, that makes it easy then.    11:31:40AM

6  Is Annie a beneficiary of the trust account that was

7  recently set up?

8    MR. HOLDEN:  Objection; that's a privacy

9  matter.  You do not need to answer that question.

10  It's speculative.  It can change at any day or not    11:32:05AM

11  change at any day, but that's not an appropriate

12  question.  It's a violation of her right to privacy.

13  BY MR. CRISP:

14    Q    From 2006 to present, have you or your

15  husband loaned any money to Annie?    11:32:30AM

16    A    I have never loaned money to Annie.

17    Q    Has your husband ever loaned any money to

18  Annie?

19    A    Yes.

20    Q    When?    11:32:41AM

21    A    I don't know.  We have two separate -- we

22  are completely separate with our businesses.

23    Q    Okay.

24    A    My husband and myself.

25    Q    Bear in mind, we're not deposing your    11:32:51AM

---

**Page 24**

1  husband because we were told that we could get all

2  the answers from you.

3    A    Yeah, that's true.  But if -- I don't know

4  what you're asking.

5    Q    Okay.    11:33:00AM

6    A    He has -- he has, at different times, given

7  distributions to all our children the same over the

8  years, and --

9    Q    Okay.

10    A    And loaned money for their businesses to all    11:33:09AM

11  our children.

12    Q    Okay.  And again, you know, to keep it

13  within our time frame --

14    A    Right.

15    Q    -- let's just talk about 2006 to the    11:33:20AM

16  present.

17    A    Right.

18    Q    Do you know how much --

19    A    No, I don't.

20    Q    -- roughly?  I do the same thing.  I jump    11:33:26AM

21  in.  Right?  I'm gonna ask the question again and you

22  can give the same answer if you want, but just so we

23  have it on the record and we know what question you

24  were answering.

25    A    Mm-hmm.    11:33:40AM

---

6 (Pages 21 to 24)

# EXHIBIT J

Intentionally Omitted

Motion for Entry of Order Authorizing Intervenors and Trustee to File under Seal Exhibits D, J and M to the Declaration of Hamid R. Rafatjoo in support of Their Motion for Terminating Sanctions filed concurrently herewith.

# EXHIBIT K

1          SUPERIOR COURT OF THE STATE OF CALIFORNIA

2          COUNTY OF ORANGE - CENTRAL JUSTICE CENTER

3                       DEPARTMENT C17

4

5    HAUSMAN HOLDINS, LLC, A CALIFORNIA      )
     LIMITED LIABILITY COMPANY, DAVID        )
6    MOELLENHOFF, AN INDIVIDUAL, AND PAMELA  )
     MOELLENHOFF, AN INDIVIDUAL,             )
7                                            )
                    PLAINTIFFS,              )
8                                            )
        VS.                                  ) NO.  30-2013-
9                                            ) 00627272-CU-
                                             ) BC-CJC
10                                           )
     MICHAEL REYNOLDS, AN INDIVIDUAL, ANDREA )
11   DOWNS, AN INDIVIDUAL, HAPPENSTANCE      )
     CORPORATION, A CALIFORNIA CORPORATION,  )
12   AND DOES 1 THROUGH 50, INCLUSIVE,       )
                                             )
13                  DEFENDANTS.              )
     _____)

14

15

16        HONORABLE CRAIG GRIFFIN, JUDGE PRESIDING

17        REPORTER'S TRANSCRIPT OF PROCEEDINGS

18                   MAY 23, 2017

19

20

21

22

23

24

25

26            AMBER HOGATE, CSR NO. 13525
              OFFICIAL COURT REPORTER

1

2    APPEARANCES OF COUNSEL:

3

4    FOR THE PLAINTIFFS:

5

6            LANE POWELL PC
             BY:  PAUL B. GEORGE, ESQ.

7            PEPPER HAMILTON LLP
             BY:  ALAN KESSEL, ESQ.
8
     FOR DEFENDANT ANDREA DOWNS:
9
             BROWN RUDNICK
10           BY:  RONALD RUS, ESQ.
                  RANDALL A. SMITH, ESQ.
11

12   FOR DEFENDANT MICHAEL REYNOLDS:

13           MICHAEL REYNOLDS, IN PRO PER

14

15

16

17

18

19

20

21

22

23

24

25

26

```
1                          WITNESS INDEX

2

3    PLAINTIFFS':              DIRECT   CROSS  REDIRECT  RECROSS

4    ANDREA DOWNS

5    BY MR. GEORGE               40               88

6    BY MR. SMITH                        59               96

7

8    MICHAEL REYNOLDS

9    BY MR. GEORGE              100

10

11

12   DEFENDANT'S:              DIRECT   CROSS  REDIRECT  RECROSS

13

14                   (NONE)

15

16

17

18

19

20

21

22

23

24

25

26
```

54

```
1       A    I DO NOT.

2       Q    THERE'S ACTUALLY SOME STOCK HELD IN TRUST FOR

3   YOU, ISN'T THAT CORRECT?

4       A    STOCK HELD IN TRUST FOR ME?

5       Q    YES.

6       A    NOT THAT I'M AWARE OF, NO.

7       Q    YOU'RE THE BENEFICIARY OF TRUST ESTABLISHED BY

8   YOUR MOTHER AND FATHER; ISN'T THAT CORRECT?

9       A    THAT'S NOT CORRECT.

10      Q    IS IT YOUR TESTIMONY YOU DON'T HAVE ANY TRUST

11  MADE PAYABLE OR LISTING YOU AS A BENEFICIARY FROM YOUR

12  PARENTS?

13      A    THAT'S MY TESTIMONY.

14      Q    SO ALL THE MONEY THAT THEY GAVE YOU IS JUST

15  LOANS.  IS THAT YOUR TESTIMONY?

16      A    MOSTLY, YES.

17      Q    NOW WOULD YOU LOOK AT EXHIBIT 385, PLEASE.

18  AND WOULD YOU LOOK AT 385.2.  DO YOU HAVE THAT,

19  MS. DOWNS?

20      A    YES, I DO.

21      Q    NOW THAT'S A SERIES OF CHECKS, 2 THROUGH 22.

22  THEY TOTAL $17,641.24 TO NATIONAL EQUESTRIAN.  THAT'S

23  MONEY YOU PAID IN 2014 RELATED TO YOUR HORSES; IS THAT

24  CORRECT?

25          MR. SMITH:  COUNSEL, WHAT PAGE ARE YOU ON

26  AGAIN?
```

# EXHIBIT L

```
 1                UNITED STATES BANKRUPTCY COURT

 2                CENTRAL DISTRICT OF CALIFORNIA

 3                          --oOo--

 4   In Re:                      ) Case No. 8:16-bk-12589-CB
                                 )
 5   ANDREA STEINMANN DOWNS,     ) Chapter 11
                                 )
 6          Debtor.             ) Santa Ana, California
     _____) Monday, December 19, 2016
 7                                 10:00 a.m.

 8                                 CONT SCHEDULING AND CASE
                                   MANAGEMENT CONFERENCE
 9
                                   CONT APPLICATION FOR APPROVAL
10                                 OF EMPLOYMENT OF BOSLEY, TILL,
                                   NEUE & TALERICO, LLP AS
11                                 COUNSEL FOR DEBTOR FOR THE
                                   LIMITED PERIOD FROM THE
12                                 PETITION DATE THROUGH
                                   SEPTEMBER 6, 2016
13
                                   CONT MOTION OF HAUSMAN
14                                 HOLDINGS, LLC AND DAVID AND
                                   PAMELA MOELLENHOFF TO COMPEL
15                                 DEBTOR'S COMPLIANCE WITH COURT
                                   ORDER FOR PRODUCTION OF
16                                 DOCUMENTS

17                                 CONT MOTION FOR AN ORDER
                                   AUTHORIZING EXTENSION OF
18                                 EXCLUSIVITY PERIODS

19                                 APPLICATION FOR APPROVAL OF
                                   EMPLOYMENT OF BOSLEY, TILL,
20                                 NEUE & TALERICO, LLP AS
                                   COUNSEL FOR THE DEBTOR AND
21                                 DEBTOR-IN-POSSESSION

22                  TRANSCRIPT OF PROCEEDINGS
              BEFORE THE HONORABLE CATHERINE BAUER
23              UNITED STATES BANKRUPTCY JUDGE

24
     Proceedings recorded by electronic sound recording;
25   transcript produced by transcription service.
```

ii

```
 1  APPEARANCES:

 2  For the Debtor:                    JAMES E. TILL, ESQ.
                                       Bosley, Till, Neue & Talerico,
 3                                       LLP
                                       840 Newport Center Drive
 4                                     Suite 750
                                       Newport Beach, California
 5                                       92660
                                       (949) 999-2868
 6

 7  For Hausman Holdings, LLC,         HAMID RAFATJOO, ESQ.
      and David and Pamela            Venable, LLP
 8    Moellenhoff:                     2049 Century Park East
                                       Suite 2300
 9                                     Los Angeles, California 90067
                                       (310) 229-0308
10

11  For the United States             MICHAEL J. HAUSER, ESQ.
      Trustee:                        Offices of the United States
12                                       Trustee
                                       411 West Fourth Street
13                                     Suite 7160
                                       Santa Ana, California 92701
14                                     (714) 338-3400

15  Court Recorder:                    James Le
                                       United States Bankruptcy Court
16                                     411 West Fourth Street
                                       Suite 2030
17                                     Santa Ana, California 92701

18  Transcriber:                       Briggs Reporting Company, Inc.
                                       4455 Morena Boulevard
19                                     Suite 104
                                       San Diego, California 92117
20                                     (310) 410-4151

21

22

23

24

25
```

iii

1                           I N D E X

2  WITNESSES:                    DIRECT  CROSS  REDIRECT  RECROSS

3  Andrea Steinmann Downs          10     --      --        --

4

5  EXHIBITS                              IDENTIFIED   RECEIVED

6  1   Amended schedules                    11          --

7  2   Amended Statements of Financial      11          --
       Affairs
8
9  3   Original statement of schedules      24          --
       of assets and liabilities

10 4   Schedule of assets filed in          50          --
       the family law case
11
12 5   Judgement for dissolution, dated     46          --
       March 24, 2009

13 6   Brown Rudnick employment application 68          --

14

15

16

17

18

19

20

21

22

23

24

25

14

1          MR. TILL:  Right.

2          MR. RAFATJOO:  So --

3          MR. TILL:  Well --

4          MR. RAFATJOO:  But there are --

5          MR. TILL:  -- there's, I will say that there was a

6  duck.  The -- one of the federal judges I clerked for, we

7  were at his home, and it looked like a door stop.  And it

8  turned out it was some collector duck that was work like

9  $20,000.  And I just thought it was a wood piece of block

10  carved into duck.  I would have thought it was $10 at

11  Walmart.  So, I --

12          MR. RAFATJOO:  Well, if Ms. Downs has a duck

13  that's worth $20,000, that should be disclosed.

14          THE WITNESS:  Right.

15          MR. TILL:  Well, one of the things that Ms. Downs

16  has offered to me is to take photographs of the belongings

17  that are in, for example, storage, and produce those.  I

18  don't know if that would be helpful.  I just --

19          MR. RAFATJOO:  That's fine.

20          MR. TILL:  We're not trying to hide anything as --

21  you know, so if you would like them, we can do that.

22          MR. RAFATJOO:  Sure.

23          MR. TILL:  Okay.

24  BY MR. RAFATJOO:

25  Q    But, Ms. Downs, the emphasis is more on material

15

1  assets, interests that you have in companies that you are

2  not running, that you're not involved with on a daily basis.

3  If there are family assets that, you know, you have a

4  membership interest in --

5  A    Right.

6  Q    -- those are the things that we are looking for.

7  A    I don't have a -- I'm not involved in a trust or will

8  or anything involved in a family asset.

9  Q    Okay.  Do you have any retirement accounts?

10 A    No.

11 Q    Have you gifted or otherwise transferred any assets,

12 regardless of value, to anyone in the last four years?

13 A    I gifted, I think it was $20,000 to each of my kids.  I

14 don't -- I think it was early in 2012.  So I guess that

15 would be in the five years.  It could have been -- I think

16 it was 2012, yeah.

17     And they -- that was for them to have after college and

18 sort of get to know how to invest.  And,  you know, kind of

19 help them through their colleges, but mostly for after

20 college.

21 Q    Okay.  Have you sold any assets in the last four years?

22 A    Yes.  I sold my Mercedes -- is that an asset?

23 Q    It's an asset.

24 A    I sold a horse for $1,500.  I sold -- I liquidated

25 stocks and bonds from my Oppenheimer account.

# EXHIBIT M

Intentionally Omitted

Motion for Entry of Order Authorizing Intervenors and Trustee to File under Seal Exhibits D, J and M to the Declaration of Hamid R. Rafatjoo in support of Their Motion for Terminating Sanctions filed concurrently herewith.

# EXHIBIT N

Intentionally Omitted

Motion for Entry of Order Authorizing Intervenors and Trustee to File under Seal Exhibits D, J and M to the Declaration of Hamid R. Rafatjoo in support of Their Motion for Terminating Sanctions filed concurrently herewith.

# EXHIBIT O

JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| In Re: Andrea S. Downs, | ) | Case No. 8:20-cv-01002-RGK |
| | ) | |
| | ) | ORDER DISMISSING ACTION FOR |
| | ) | LACK OF PROSECUTION |
| | ) | |

On August 5, 2020, the Court issued an Order to Show Cause re Dismissal for Lack of Prosecution [10].  Appellant's response to the Order to Show Cause was due by August 10, 2020.  As of this date, no response has been filed to the Order to Show Cause, therefore, the Court orders the matter dismissed for lack of prosecution.

**IT IS SO ORDERED.**

Dated: August 11, 2020

R. GARY KLAUSNER
UNITED STATES DISTRICT JUDGE

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
1800 Avenue of the Stars, 12th Floor, Los Angeles, CA 90067

A true and correct copy of the foregoing document entitled (*specify*):
**INTERVENORS' AND TRUSTEE'S JOINT NOTICE OF MOTION AND MOTION FOR
TERMINATING SANCTIONS; MEMORANDUM OF POINTS AND AUTHORITIES AND
SUPPORTING DECLARATIONS OF HAMID R. RAFATJOO AND JEFFREY I. GOLDEN**
will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in
the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General
Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*)
September 30, 2020, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that
the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated
below:

- Ryan W Beall    rbeall@lwgfllp.com, vrosales@wgllp.com;kadele@wgllp.com
- Thomas H Casey (TR)    msilva@tomcaseylaw.com, thc@trustesolutions.net
- Jeffrey I Golden    jgolden@wgllp.com,
  kadele@wgllp.com;vrosales@lwgfllp.com;cbmeeker@gmail.com
- D Edward Hays    ehays@marshackhays.com, 8649808420@filings.docketbird.com
- Gerald P Kennedy    gerald.kennedy@procopio.com,
  angela.stevens@procopio.com;calendaring@procopio.com;efile-bank@procopio.com
- Laila Masud    lmasud@marshackhays.com, 8649808420@filings.docketbird.com
- Aram Ordubegian    ordubegian.aram@arentfox.com
- Hamid R Rafatjoo    hrafatjoo@raineslaw.com, bclark@raineslaw.com;cwilliams@raineslaw.com
- Faye C Rasch    frasch@wgllp.com, kadele@wgllp.com;vrosales@wgllp.com
- Annie Y Stoops    annie.stoops@arentfox.com, yvonne.li@arentfox.com
- United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) _____  I served the following persons and/or entities at the last known addresses in this bankruptcy case or
adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class,
postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will
be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

**F 9013-3.1.PROOF.SERVICE**

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) September 30, 2020, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

VIA PERSONAL DELIVERY

The Honorable Scott C. Clarkson
United States Bankruptcy Judge
411 West Fourth Street
Suite 5130
Santa Ana, CA 92701-4393


VIA EMAIL:

| Counsel | Represents |
|---|---|
| **D Edward Hays**<br>**Laila Masud**<br>**Marshack Hays LLP**<br>ehays@marshackhays.com<br>lmasud@marshackhays.com | Eric Stienmann<br>Heinz H. Steinmann<br>Lora Rae Steinmann |
| **Gerald P Kennedy**<br>**Procopio, Cory, Hargraves & Savitch, LLP**<br>gerald.kennedy@procopio.com | John Steinmann<br>Mary (Sypkens) Steinmann<br>Susie (Wilson) Steinmann<br>Tom Steinmann |
| **E. Scott Palmer**<br>**Palmer Hunter**<br>scott@palmerhunter.com | Teresa Steinmann Stapleton<br>Katy Steinmann Belknap<br>Jeffrey D. Steinmann<br>Heinz J. Steinmann |

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 9/30/2020 | Bambi Clark | /s/ Bambi Clark |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*
1991916.1

**F 9013-3.1.PROOF.SERVICE**