Justin S. Draa, SBN 253688
DiBENEDETTO, LAPCEVIC & DRAA LLP
1101 Pacific Ave., suite 320
Santa Cruz, California 95060
Telephone: (831) 325-2674
Facsimile: (831) 477-7617
jdraa@dld-law.com

Attorneys for Defendants
Lora Rae Steinmann, Heinz H. Steinmann,
Eric Steinmann, Susanna Steinmann Wilson,
Thomas Steinmann, John Steinmann, and Mary
Steinmann Sypkens, Teresa Steinmann
Stapleton, Katy Steinmann Belknap, Jeff
Steinmann, and Heinz J. Steinmann

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION

| | |
|---|---|
| In re<br><br>ANDREA STEINMANN DOWNS,<br><br>Debtor. | Case No. 8:16-bk-12589-SC<br><br>Chapter 7<br><br>Adv. No. 8:18-ap-01168-SC |
| THOMAS H. CASEY, Chapter 7 Trustee for the bankruptcy estate of Andrea Steinmann Downs,<br><br>Plaintiff,<br>v.<br><br>LORA RAE STEINMANN, HEINZ H. STEINMANN, ERIC STEINMANN, MARY (SYPKENS) STEINMANN, JOHN STEINMANN, TESSIE (STAPLETON) STEINMANN, KATY (BELKNAP) STEINMANN, HEINZ STEINMANN, JEFF STEINMANN, TOM STEINMANN, AND SUSIE (WILSON) STEINMANN,<br><br>Defendants. | NOTICE OF MOTION AND MOTION FOR SANCTIONS UNDER RULE 9011 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATIONS OF ERIC STEINMANN AND JUSTIN S. DRAA IN SUPPORT<br><br>Date:  August 11, 2021<br>Time: 11:00a.m.<br>Ctrm: 5C, Ronald Reagan Federal Building and United States Courthouse<br>411 West Fourth Street<br>Santa Ana, California 92701 |

1 **TO THE HONORABLE SCOTT C. CLARKSON, UNITED STATES BANKRUPTCY**

2 **JUDGE, THOMAS H. CASEY, CHAPTER 7 TRUSTEE, AND ALL INTERESTED**

3 **PARTIES:**

4     **PLEASE TAKE NOTICE** that at 11:00 a.m. on August 11, 2021, before the Honorable Scott

5 C. Clarkson, in Courtroom 5C, 411 West Fourth Street, Santa Ana, California 92701- 4593, the

6 above-captioned defendants, Lora Rae Steinmann, Heinz H. Steinmann,  Eric Steinmann, Susanna

7 Steinmann Wilson, Thomas Steinmann, John Steinmann, and Mary Steinmann Sypkens, Teresa

8 Steinmann Stapleton, Katy Steinmann Belknap, Jeff Steinmann, and Heinz J. Steinmann

9 (collectively, "Steinmann"), by and through their undersigned attorneys, will and hereby do move the

10 Court for sanctions pursuant to Rule 9011 of the Federal Rules of Bankruptcy Procedure because the

11 complaint ("Complaint") filed in this adversary action ("Action") by Thomas H. Casey, in his

12 capacity as the Chapter 7 trustee ("Trustee") for the bankruptcy estate ("Estate") of Debtor Andrea

13 Steinmann Downs ("Debtor"), and in which creditors, HAUSMAN HOLDINGS, LLC, DAVID

14 MOELLENHOFF, and PAMELA MOELLENHOFF intervened and financed ("Creditors," and

15 collectively with Trustee, "Plaintiffs"), was neither well-grounded in fact nor supported by existing

16 law.

17     **PLEASE TAKE FURTHER NOTICE THAT** this motion is based on this written notice;

18 the accompanying memorandum of points and authorities, Declarations of Eric Steinmann and Justin

19 S. Draa, with exhibits; the Court's files and records in this case and the related bankruptcy case; and

20 on such other evidence and argument as may properly come before the Court at the hearing of this

21 matter.

22

23 Dated:  June 16, 2021                DIBENEDETTO, LAPCEVIC & DRAA LLP

24

25                             By:_____/S/_____
                            JUSTIN S. DRAA

26                             Attorneys for Defendants Lora Rae Steinmann, Heinz
                            H. Steinmann, Eric Steinmann, Susanna Steinmann

27                             Wilson, Thomas Steinmann, John Steinmann, and
                            Mary Steinmann Sypkens, Teresa Steinmann

28                             Stapleton, Katy Steinmann Belknap, Jeff Steinmann,
                            and Heinz J. Steinman

# TABLE OF CONTENTS

1.     Summary of Argument ................................................................2

2.     Relevant Factual Background ........................................................4

     A.     Non-Dischargeable Judgment Against Debtor Due to a Failed Business Venture Involving an Animated Children's TV Series................................4

     B.     This Unmeritorious Adversary Against 11 Members of Debtor's Family Including Debtor's 80+ Year Old Parents ................................6

     C.     The Motions to Dismiss and BAP Ruling That the Bankruptcy Court Did Not Make a Determination of a Crucial Fact.................................11

     D.     Trustee and Creditors Have Conducted Extensive Discovery ....................12

3.     Legal Argument ................................................................15

     A.     Sanctions are appropriate under FRBP 9011 ................................15

         i.     The "safe harbor" has been provided.................................15

         ii.     Sanctions should be imposed for claims presented for an improper purpose under FRBP 9011(b)(1)...........................................16

         iii.     Sanctions should be imposed for assertion of claims unwarranted by existing law under FRBP 9011(b)(2) ....................................16

            a)     As a matter of California and Ninth Circuit law, it is frivolous to assert that an unvested interest in a revocable *inter vivos* trust constitutes a property interest. ...............................17

            b)     The Claim for Imposition of a Resulting Trust Likewise Fails ..........20

         iv.     Sanctions should be imposed for assertion of a frivolous argument for modification or extension of law under FRBP 9011(b)(2) ..........................................21

         v.     If the Court is inclined to award monetary sanctions, Defendants request the award be payable as a super-priority administrative claim against the Estate.................................21

     B.     Sanctions are Appropriate Under the Local Bankruptcy Rules ..................22

4.     Conclusion ................................................................24

MOTION FOR SANCTIONS

# TABLE OF AUTHORITIES

**Cases**

*Anwar v. Johnson,*

   720 F.3d 1183, 1189 (9th Cir. 2013) ................................................................23

*Arluk Medical Center Industrial Group, Inc. v. Dobler,*

   116 Cal.App.4th 1324, 1331-32 (2004)......................................................9, 18

*Burton v. Ulrich (In re Schmitt),*

   215 B.R. 417, 422 (B.A.P. 9th Cir. 1997) ....................................................18

*Butner v. United States,*

   440 U.S. at 54 ................................................................................................6, 9

*Chambers v. NASCO, Inc.,*

   501 U.S. 32, 43-45 (1991) ..............................................................................22

*Christian v. Mattel, Inc.,*

   286 F.3d 1118, 1127 (9th Cir. 2002) ............................................................17

*Crook v. Contreras,*

   116 Cal.Rptr.2d 319, 330 (Cal. Ct. App. 2002)............................................10

*Cutter v. Seror (In re Cutter),*

   398 B.R. 6, 20-21 (B.A.P. 9th Cir. 2008) ....................................................19

*De Dios v. International Realty & RC Investments,*

   641 F.3d 1071, 1076-77 (9th Cir. 2011)........................................................16

*Drye v. United States,*

   528 U.S. 49, 120 S. Ct. 474 (1999) .................................................................8

Estate of Giraldin,

   55 Cal. 4th 1058, 1062 (2012)....................................................................9, 19

*Estate of Giraldin,*

   55 Cal.4th 1058, 1065-66 (2012)...................................................................18

*Giebelhaus v. Spindrift Yachts,*

   938 F.2d 962, 965 (9th Cir. 1991) ................................................................17

MOTION FOR SANCTIONS

1 | *Heifetz v. Bank of America Nat'l Trust & Savings Ass'n,*

2 |    305 P.2d 979, 983 (Cal. Ct. App. 1957) ...................................................9

3 | *Hoeft v. Supreme Lodge Knights of Honor*, et al..,

4 |    113 Cal. 91 (1896) .......................................................................19

5 | *In re Cedar Funding, Inc.*,

6 |    408 B.R. 299, 314 (2009) ..........................................................10, 20

7 | *In re Debs*,

8 |    158 U.S. 564, 594, 15 S. Ct. 900, 910, 39 L. Ed. 1092 (1895) .......................14

9 | *In re Giordano*,

10 |    212 B.R. 617, 622 (9th Cir. BAP 1997) .........................................15

11 | *In re Golden Triangle Capital, Inc*.,

12 |    171 B.R. 79, 83 (9th Cir. BAP 1994) ...........................................10

13 | *In re Golden Triangle Capital, Inc*.,

14 |    171 B.R. 79, 83 (9th Cir. BAP 1994) ...........................................20

15 | *In re Grantham Bros.*,

16 |    922 F.2d 1438, 1443 (9th Cir. 1991) ...........................................16

17 | *In re Schmitt,*

18 |    215 B.R. 417, 422 (9th Cir. BAP 1997) .........................................9

19 | *Johnson v. Kotyck*,

20 |    76 Cal.App.4th 83, 88 (1999) ..................................................18

21 | *Kadjevich v. Kadjevich (In re Kadjevich),*

22 |    220 F.3d 1016, 1020 (9th Cir. 2000) ...........................................22

23 | *Kosmala v. Cook (In re Cook),*

24 |    2008 Bankr. LEXIS 4728 (B.A.P. 9th Cir. 2008) (no. CC-08-1091-HMoD) ...........8, 21

25 | *Laycock v. Hammer,*

26 |    44 Cal. Rptr. 3d 921, 924 (Cal. Ct. App. 2006)................................9, 12

27 | *Lloyds Bank California v. Wells Fargo Bank,*

28 |    187 Cal.App.3d 1038, 1042-43, 232 Cal.Rptr. 339 (1986) ........................10

*Mazzera v. Wolf,*

    30 Cal. 2d 531, 537 (1947) ............................................................................................. 10

*MC Asset Recovery LLC v. Commerzbank A.G. (In re Mirant Corp.),*

    675 F.3d 530 (5th Cir. 2012) ............................................................................................ 7

*Moultrie v. Wright,*

    154 Cal. 520, 98 P. 257 (1908) ................................................................................. 11, 20

*Reading Co. v. Brown,*

    391 U.S. 471, 483-85 (1968) .......................................................................................... 22

*Smyth v. City of Oakland (In re Brooks-Hamilton),*

    271 Fed.Appx. 654 (9th Cir. 2008) ................................................................................ 17

*Steinhart v. County of Los Angeles,*

    47 Cal.4th 1298, 1319-20 (2010) .............................................................................. 18, 19

Steinhart v. Cty. of L.A.,

    47 Cal. 4th 1298, 104 Cal. Rptr. 3d 195, 223 P.3d 57 (2010) .......................................... 9

*Stern v. Marshall,*

    564 U.S. 462, 496 (2011) ............................................................................................... 18

*Tepper v. Wilkins,*

    10 Cal.App.5th 1198, 1206 (2017) ................................................................................ 18

*Townsend v. Holman Consulting Corp.,*

    914 F.2d 1136, 1140 (9th Cir. 1990) ............................................................................. 16

*Truesdell v. S. Cal. Permanente Medical Group,*

    293 F.3d 1146, 1152-53 (9th Cir. 2002) ........................................................................ 15

*United States Small Business Admin. v. Bensal,*

    853 F.3d 992, 1000 (9th Cir. 2017) ...................................................................... 8, 9, 18

*United States v. Harris,*

    854 F.3d 1053, 1055 (9th Cir. 2017) ............................................................................. 18

*Weilert v Gwartz,*

    2016 Bankr. LEXIS 2538 (B.A.P. 9th Cir. July 8, 2016) ................................................ 9

MOTION FOR SANCTIONS

*Westinghouse Elec. Corp. v. Newman & Holtzinger, P.C.,*

  992 F.2d 932, 934-35 (9th Cir. 1993) ............................................................. 14

*Winterrowd v. American General Annuity Insurance Co.,*

  556 F.3d 815, 826 (9th Cir. 2009) ................................................................. 15

*Winterton v. Humitech of Northern California, LLC (In re Blue Pine Group, Inc.),*

  457 B.R. 64, 75 (B.A.P. 9th Cir. 2011) .......................................................... 17

*Wolf v. Collins (In re Collins),*

  2014 Bankr. LEXIS 4395, at *7-8 (Bankr. S.D. Cal. 2014) ...................... 11, 20

*Zaldivar v. City of Los Angeles,*

  780 F.2d 823, 829 (9th Cir. 1986) ................................................................. 16

*Zimmermann v. Spencer,*

  306 B.R. 328 (Bankr. C.D. Cal. 2004) ........................................................... 6, 9

**Statutes**

11 U.S.C. § 503(b)(1)(A) ................................................................................. 22

11 U.S.C. § 544 ............................................................................................... 17

11 U.S.C. §§ 544, 548 ....................................................................................... 6

11 U.S.C. §544(b)(1) ......................................................................................... 7

11 U.S.C. §548 ................................................................................................. 7

28 U.S.C. § 3002(12) ....................................................................................... 18

28 U.S.C. § 3304(a) ......................................................................................... 17

28 U.S.C. § 3305(4) .................................................................................... 17, 19

28 U.S.C. § 3306(a)(1) ..................................................................................... 17

28 U.S.C. §§3001-3308 ...................................................................................... 7

28 U.S.C. §3302(12) .......................................................................................... 7

28 U.S.C. §3306 ................................................................................................. 7

Cal. Prob. Code § 15400 ............................................................................... 9, 12

MOTION FOR SANCTIONS

Cal. Prob. Code §§ 16069, 18200 ........................................................................... 11

Cal. Prob. Code § 16069 ........................................................................................ 19

Cal. Prob. Code § 18200 .......................................................................................... 9

California Civil Code § 3439 .................................................................................... 7

California Civil Code § 700 ...................................................................................... 6

**Other Authorities**

Federal Debt Collection Procedures Act, 28 U.S.C. §§ 3301 ................................ 17

**Rules**

Fed. R. Bank. Proc. 2004 ...................................................................................... 12

Fed. R. Bank. Proc. 9011(c)(1)(A) ....................................................................... 14

Fed. R. Bankr. Proc. 9011 ..................................................................................... 22

Fed. R. Bankr. Proc. 9011(b)(1) ........................................................................... 16

Fed. R. Bankr. Proc. 9011(b)(1)-(2) ..................................................................... 15

Fed. R. Bankr. Proc. 9011(b)(2) ........................................................................... 16

Fed. R. Bankr. Proc. 9011(c) ................................................................................ 15

Fed. R. Bankr. Proc. 9011(c)(1)(A) ...................................................................... 15

Fed. R. Bankr. Proc. 9011(c)(2) ........................................................................... 21

Fed. R. Civ. P. 37(b)(2) ......................................................................................... 14

LBR 1001-1(f) ....................................................................................................... 22

LBR 9011-3(a) ....................................................................................................... 23

MOTION FOR SANCTIONS

1  TO THE HONORABLE SCOTT C. CLARKSON, UNITED STATES BANKRUPTCY JUDGE,

2  PLAINTIFF, AND ALL INTERESTED PARTIES

3         Defendants Lora Rae Steinmann ("Mrs. Steinmann"), Heinz H. Steinmann ("Mr. Steinmann"

4  and with Mrs. Steinmann, collectively "Parents"), and Eric Steinmann ("E. Steinmann," and with

5  Mrs. Steinmann and Mr. Steinmann the "Steinmann Defendants"),  and Teresa Steinmann Stapleton,

6  Katy Steinmann Belknap, Jeff Steinmann, Heinz J. Steinmann, Susanna Steinmann Wilson, Thomas

7  Steinmann, John Steinmann and Mary Sypkens (collectively the "Sibling Defendants," and with the

8  Steinmann Defendants, collectively "Defendants" or the "Steinmann Family"), move the Court for

9  sanctions pursuant to Rule 9011 of the Federal Rules of Bankruptcy Procedure because the complaint

10 ("Complaint") filed in this adversary action ("Action") by Thomas H. Casey, in his capacity as the

11 Chapter 7 trustee ("Trustee") for the bankruptcy estate ("Estate") of Debtor Andrea Steinmann

12 Downs ("Debtor"), and in which creditors, HAUSMAN HOLDINGS, LLC, DAVID

13 MOELLENHOFF, and PAMELA MOELLENHOFF have intervened and financed ("Creditors," and

14 collectively with Trustee, "Plaintiffs"), is neither well-grounded in fact nor supported by existing law.

15 **1.    Summary of Argument**

16        The Court may impose sanctions if it determines that a party has failed to dismiss a frivolous

17 and legally unwarranted pleading. In this case, prior to bankruptcy, Debtor's parents amended their

18 revocable *inter vivos* trust[1] ("Trust") and removed Debtor as a beneficiary.[2] Debtor's parents, as the

19 settlors of their *inter vivos* Tust, had an unconditional right to remove revocable beneficiaries. Even

20 though Debtor never had property rights in the revocable Trust, the Trustee through counsel filed the

21 Complaint to "avoid" Debtor's termination as a revocable beneficiary. Binding Ninth Circuit and

22 California cases, however, have unanimously held that a beneficiary of a revocable *inter vivos* Trust

23 never acquires rights in property while the settlors are still living. As such, the fraudulent transfer and

24 resulting trust claims in the Complaint are neither well-grounded in fact nor supported by existing

25 law.

26 _____

27 [1] The Trust is clear on its face that it is revocable. *See*, Exhibit "1" to the Declaration of Eric
   Steinmann.

28 [2] The Trust Amendment is attached as Exhibit "2" to the Declaration of Eric Steinmann.

1    This Action has been pending for more than two years. During this time, Plaintiffs have failed

2    to identify any facts or law supporting the claims in the Complaint. As such, not only was the

3    Complaint completely unwarranted when filed, it remains even more sanctionable now that Plaintiffs

4    have had years to research and conduct discovery. Instead of accepting that this Action has no merit,

5    Creditors have funded the Trustee's continued prosecution of what is effectively a "shake-down" by

6    loaning money to the Estate to pay Chapter 7 administrative claims. Even after Defendants engaged

7    in multiple sessions of mediation in a good faith effort to resolve this matter, no settlement of the

8    Estate's alleged claims could be reached.[3]

9    Rather than seeking to discover any facts to support the alleged claims in the Complaint,

10   Plaintiffs have instead focused the voluminous discovery over the past two years on intrusive efforts

11   to identify all of Debtor's Parents' assets (which never constituted Debtor's property) for the purpose

12   of harassing and attempting to extort a settlement. Despite raising financial privacy and relevance

13   objections regarding the identification and value of Debtor's parents' wealth, including citation to

14   California law that trustors of a revocable trust have no duty to account for property to a beneficiary

15   (let alone a former beneficiary), the Court required the parents' financial information to be produced

16   but protected the acknowledged rights of privacy by requiring such financial information be filed

17   under seal pursuant to a protective order. Yet, on September 18, 2020, Creditors filed documents in

18   the Action that were clearly marked "confidential" and which included balance sheets detailing the

19   identification and value of all of the Parents' assets.[4] Publicly disclosing the assets including bank

20   account numbers of an elderly couple endangers their personal safety and financial security. Through

21   PACER, this information, detailing all assets, balances, and accounts was available for the public to

22   view.

23   ///

24

25   _____

26   [3] The Hon. Mitchel R. Goldberg (Ret.) presided over multiple mediation sessions in the spring and summer of 2020.

27   [4] After demand was made by Defendants' counsel on September 18, 2020, Creditors filed an
28   emergency motion on September 21, 2020, seeking to restrict public access to this detailed financial
     information. On September 21, 2020, the Court granted the emergency motion. Unfortunately, by this
     point the information had been publically available for approximately 72 hours.

DOCS 127019-000001/4210006.2

1    To fund this assault on Debtor's family, Creditors have also made a non-recourse loan of

2    $250,000 to the Estate and have allegedly promised to make additional loans.[5] To date, Creditors

3    have irrationally spent more than $5 million seeking to enforce payment of their original $750,000

4    investment. The Estate, however, is not excused from liability for malicious prosecution solely

5    because Creditors are abusing process by paying them. The Steinmann Family has already incurred

6    substantial damage because of this meritless action including attorneys' fees, costs, and the risk to

7    their safety caused by the public disclosure of a roadmap detailing the location and amount of their

8    assets. The time has come for this Action to be dismissed by Plaintiffs or ordered dismissed by the

9    Court for violating Rule 9011.

10    If Plaintiffs fail to take advantage of the "safe harbor" provided by the service of this Motion

11    prior to its filing, Defendants respectfully request that the Court issue an order (i) dismissing the

12    Complaint; and (ii) imposing monetary sanctions against the Estate and Creditors in the amount of all

13    attorneys' fees and costs incurred from and after the expiration of the safe harbor until this action is

14    dismissed and all personal financial information is returned or destroyed by Plaintiffs and their

15    attorneys. The sanctions against the Estate should be in the form of a super-priority Chapter 7

16    administrative expense claim. The sanctions should also be imposed jointly and severally against

17    Creditors.

18    **2.    Relevant Factual Background**

19    **A.    Non-Dischargeable Judgment Against Debtor Due to a Failed**

20    **Business Venture Involving an Animated Children's TV Series**

21    To understand why this action is being pursued, the Court must first understand the Creditors'

22    role and their relentless pursuit of a claim against Debtor for an investment of $750,000, that they

23    have since spent upwards of $5 million dollars to collect (with no end in sight).[6] This defies all

---

25    [5] Trustee's counsel filed its first interim fee application on August 6, 2019, as Dk. No. 696,
requesting fees in excess of $423,000 for services rendered through July 31, 2019. In a motion

26    seeking payment of previously allowed but unpaid fees filed on March 17, 2020, as Dk. No. 795,
Trustee's counsel represented to the Court that it would "file its second interim fee application in the

27    next few weeks." Because no second interim application has yet to be filed, the amount of fees
incurred by Trustee's counsel on and after August 1, 2019, remains unknown.

28    [6] These facts can be found in filings by Creditors in the bankruptcy, Dk No. 376, Case No. 8:16-
12589-SC, as well as Dk. No. 1 in their non-dischargeability action, Adversary Case No. 8:17-ap-
01235 ("Dischargeability Action").

DOCS 127019-000001/4210006.2

1   rational explanation except that they want to inflict harm on Debtor and her family by misusing the

2   bankruptcy court as a weapon.

3        In 2010, Creditors made a $750,000 investment ("Funds") in a company called Happenstance

4   ("Company"). The purpose of the Funds was to create an animated children's television series called

5   Bug Rangers. It was through Debtor, who was one of the managers of the Company, that Creditors

6   contributed the Funds. Due to a variety of reasons, the television series never made it to air. In

7   January 2013, Creditors filed an action against the Company and its managers including Debtor and

8   proceeded to aggressively litigate to the point that Debtor had no more funds to defend herself.

9        In June 2016, Debtor filed for Chapter 11 bankruptcy. Ultimately, in May 2017, a judgment

10   was entered in state court against the Company and its managers, including Debtor, for (i) $900,000

11   in compensatory damages; and (ii) $280,000 in punitive damages. Thereafter, in September 2017, the

12   state court held that Debtor was also subject to the prevailing party attorneys' fee provision in the

13   loan agreements.

14        In December 2017, Creditors filed their complaint against Debtor in the Dischargeability

15   Action, seeking to have all amounts owed to them excepted from discharge. In September 2018, the

16   bankruptcy court entered a non-dischargeable judgment against Debtor in the amount of $4,594,473

17   ("523 Judgment").

18        During the two years that have passed since entry of the 523 Judgment, Creditors have

19   continued to incur attorneys' fees and costs by either filing suit, encouraging suit, or intervening in

20   suit against anyone and everyone with the last name Steinmann. In their irrational pursuit, Creditors

21   (i) contributed $250,000 to the Estate for the Trustee to prosecute this meritless action, (ii) allegedly

22   offered to loan the Estate more; and (iii) and sought allowance of administrative priority claims

23   against the Estate of additional attorneys' fees and costs fees in the amount of $531,645.08, along

24   with a prior sanctions award against Debtor (for actions taken by her counsel) in the amount of

25   $74,772. (Dk Nos. 243, and 924, Case No. 8:16-12589-SC).

26        Lastly, even though Debtor was represented by the well-regarded firm of Brown Rudnick

27   LLP in her appeal of the state court judgment pursuant to a flat fee agreement that was not paid from

28   estate property, Creditors convinced the Trustee to settle the appeal for a *de minimis* discount. *See*,

1   Dk. No. 399, pp. 9-10 which provided creditors with allowed claims totaling in excess of $4.5 million

2   after the "discount." By settling the appeal, the Estate lost any chance of minimizing or eliminating

3   the judgment even though the cost of prosecuting the appeal had already been paid by Debtor's

4   mother.

5       **B.     This Unmeritorious Adversary Against 11 Members of Debtor's**

6              **Family Including Debtor's 80+ Year Old Parents**

7          In bankruptcy, a Chapter 7 trustee can avoid a transfer of an interest of the debtor in property.

8   11 U.S.C. §§ 544, 548. Whether a debtor has an interest in property is determined by state law.

9   *Butner v. United States, infra.* Under California law, the interest of a beneficiary in a revocable living

10  trust does not constitute property – rather it's a ***mere expectancy*** that does not become property of a

11  bankruptcy estate. *Zimmermann v. Spencer (In re Spencer)*, 306 B.R. 328, 332 (Bankr. C.D. Cal.

12  2004, J. Goldberg) ["***because at the time of the Petition, the Trust was fully revocable by the***

13  ***Trustor and 'neither [Debtor's] creditors nor transferees had any right to rely upon***

14  ***the Trust for the satisfaction of their claims.'***" (Emphasis added.)]. *See also*, Civil Code § 700 ("A

15  mere possibility, such as the expectancy of an heir apparent, is not to be deemed an interest of any

16  kind").

17         In this case, prior to bankruptcy, Debtor's parents, Defendants Mr. Steinmann and Mrs.

18  Steinman ("Parents"), -- <u>not Debtor</u> -- removed Debtor as an unvested revocable beneficiary from

19  their revocable living Trust.  After Debtor's Chapter 11 case was converted to Chapter 7, and almost

20  on the very last day an avoidance action could be filed, the Trustee at the urging of Creditors, filed

21  this adversary action ("Adversary"). The named Defendants are Debtor's Parents, her brother Eric

22  Steinmann who was the other named trustee of the Trust, and all of her siblings who remained

23  revocable beneficiaries under the Trust (collectively, "Sibling Defendants").

24         In the Complaint, Plaintiffs seek to (a) avoid what they claim was an alleged ***"transfer"*** of

25  ***"property"*** when Debtor was removed as a revocable beneficiary or the revocable Trust, and

26  (b) impress a ***"resulting trust"*** on the claimed increased revocable beneficial interests purportedly

27  received by the Sibling Defendants who remained revocable beneficiaries.

28  / / /

MOTION FOR SANCTIONS

1    Because the Parents retained (and still retain) all beneficial interests in their property because

2    it was held in a revocable Trust, there was never a transfer of property as required for the Trustee to

3    rely on Section 544(b)(1) ["the trustee may avoid any transfer of an interest of the debtor in

4    property…that is voidable under applicable law by a creditor holding an unsecured claim that is

5    allowable under section 502 of this title."]. Debtor, however, never had any property rights in her

6    parents' assets because her parents were still alive (and they are still alive today).

7    In fact, had Debtor's parents not terminated her interest, the courts in the Ninth Circuit have

8    **unanimously** held that a debtor's interest on the petition date as a beneficiary of a revocable trust

9    does not become property of a bankruptcy estate even if the trustors die within 180 days after the

10    petition date. *Spencer, supra*. As such, no purpose is being served in this case by avoiding and

11    recovering an interest that would nevertheless still not constitute property of the estate.

12    In a tacit admission that Debtor had no property rights that could be transferred, the complaint

13    did not assert any claim based on 11 U.S.C. § 548 or California Civil Code § 3439 *et seq*. The Trustee

14    and Creditors instead attempted to invoke the provisions of the Federal Debt Collection Procedures

15    Act ("FDCPA") codified in 28 U.S.C. §§ 3001-3308. Under 28 U.S.C. § 3306, the federal

16    government can avoid a debtor's transfer of an interest in property to the extent necessary to satisfy

17    its claim. The term "property" means "any present or future interest, whether legal or equitable, in

18    real, personal (including choses in action), or mixed property, tangible or intangible, vested or

19    contingent, wherever located and however held…" 28 U.S.C. § 3302(12).

20    First, it's important to note that the federal government's triggering claim was a $200 proof of

21    claim filed by the IRS that has since been paid and no longer remains a claim against the estate. As

22    such, there is no longer a federal government claim that that can serve as the basis for the Trustee to

23    rely on the FDCPA.

24    Second, it is an unsettled issue of law whether a bankruptcy trustee can even use the federal

25    government's powers to avoid transfers under the FDCPA. The only Circuit Court which has

26    considered the issue held that a bankruptcy trustee may not do what Trustee is purporting to do in this

27    case. *See, MC Asset Recovery LLC v. Commerzbank A.G. (In re Mirant Corp.)*, 675 F.3d 530 (5th

28    Cir. 2012).

1    Lastly, even if the FDCPA remains applicable non-bankruptcy law after the government's

2  claim has been paid, the definition of property under Section 3302(12) would still not extend to an

3  interest in a revocable trust because the Ninth Circuit has held that state law defines property rights

4  for purposes of the FDCPA. In *United States Small Business Admin. v. Bensal*, 853 F.3d 992, 1000

5  (9th Cir. 2017).

6    In *Bensal*, the Ninth Circuit adopted the standards articulated by the United States Supreme

7  Court in *Drye v. United States*, 528 U.S. 49, 120 S. Ct. 474 (1999) for determining whether "state-

8  delineated rights" constitute property for purposes of avoiding transfers of "property" under the

9  FDCPA.

10    "Applying the analytical framework set forth in *Drye*, we look 'to state law to
    determine what rights the [debtor] has in the property the Government seeks to reach,

11    then to federal law to determine whether the [debtor's] state-delineated rights qualify
    as 'property' or 'rights to property' within the compass of the [FDCPA].'"

12

13  *United States Small Business Admin. v. Bensal*, 853 F.3d 992, 1000 (9th Cir. 2017).

14    In *Bensal* and *Drye*, disclaimers of inheritances were set aside as fraudulent transfers under

15  the FDCPA notwithstanding state laws that provided that such disclaimers were not transfers for

16  fraudulent transfer purposes. The Courts found that once a right to receive an inheritance <u>vested</u>, the

17  obligors had rights in property under state law. When they disclaimed such <u>vested</u> rights, it

18  constituted a transfer of rights in property under federal law that was avoidable notwithstanding

19  contrary state law.

20    In this case, however, Debtor had <u>no vested rights in property</u> because under California law,

21  until the settlors die, a beneficiary of a revocable trust does not have <u>any</u> property rights. In *Cook*, the

22  Ninth Circuit BAP rejected a bankruptcy trustee's argument, that a debtor's interest in a revocable

23  trust at the time debtor filed for bankruptcy was property of the estate. *See, Kosmala v. Cook (In re*

24  *Cook*), 2008 Bankr. LEXIS 4728 (9th Cir. BAP 2008).[7]

25    In rejecting the argument, the BAP held that debtor's interest in the trust, at the time of his

26  bankruptcy filing, was a contingent beneficial interest in a revocable *inter vivos* trust and **<u>was not</u>**

27  _____

28  [7] Counsel for the Trustee in this case, Jeffrey I. Golden, was also counsel for the trustee in *Cook* who
    lost this very issue.

MOTION FOR SANCTIONS

1  **property of the bankruptcy estate**. *Id*. at \*16. Emphasis added. Citing *Schmitt*[8] and *Spencer*[9] the

2  BAP determined debtor's interest in a **revocable trust**[10] is **not** a vested property right until the

3  settlors die and the beneficial interest vests:

> "The Trustee tries to maneuver around this outcome by arguing for the adoption of a
> federal law definition of bequest, devise, or inheritance so that an inheritance includes
> all property transfers upon death. However, as we noted above, there is no bankruptcy
> case which supports the Trustee's argument. *We conclude that no compelling*
> *rationale has been provided in this case to depart from the general Butner principle*
> *that the interest of a bankruptcy estate with respect to particular property is*
> *determined under applicable state law*. *Butner v. United States*, 440 U.S. at 54. There
> is no basis to apply anything other than the general state law definitions of bequest,
> devise or inheritance in interpreting § 541(a)(5)."

9  *Id*. at \*15. Emphasis added.

10  Again, a revocable beneficiary has no property rights. Instead, the interest of a revocable

11  beneficiary is "merely potential" and can "evaporate in a moment at the whim of the [settlor]."[11]

12  Because Debtor never had any "state-delineated" rights in property as a revocable beneficiary of her

13  parents' trust (as required by the Ninth Circuit in *Bensal*), the lawsuit fails as a matter of law.[12] ***This***

---

15  [8] *See, In re Schmitt,* 215 B.R. 417, 422 (9th Cir. BAP 1997).

16  [9] *See, Zimmermann v. Spencer (In re Spencer)*, 306 B.R. 328 (Bankr. C.D. Cal. 2004).

17  [10] California Probate Code § 18200 makes clear that ownership of property held in a revocable trust
18  remains with the settlors: "If the settlor retains the power to revoke the trust in whole or in part, the
trust property is subject to the claims of creditors of the settlor to the extent of the power of
19  revocation during the lifetime of the settlor." *See also*, *Weilert v. Gwartz (In re Weilert)*, 2016 Bankr.
LEXIS 2538 (B.A.P. 9th Cir. July 8, 2016) [debtor could claim exemption in property transferred to
revocable trust since she retained ownership of such property].

21  [11] *Steinhart v. Cty. of L.A.*, 47 Cal. 4th 1298, 104 Cal. Rptr. 3d 195, 223 P.3d 57 (2010); *See also,*
*Arluk Medical Center Industrial Group, Inc. v. Dobler*, 116 Cal. 4th 1324, 1331-32 (2004)
22  ("[A] settlor with the power to revoke a living trust…retains full ownership and control over any
property transferred to the trust."); *Estate of Giraldin*, 55 Cal. 4th 1058, 1062 (2012) ("The
23  beneficiaries' interest in the [revocable] trust is contingent only, and the settlor can eliminate that
interest at any time"); and *In re Schmitt*, 215 B.R. 417, 422 (9th Cir. BAP 1997) ("[w]hen a trust
24  expressly reserves the power to change the beneficiaries, no one acquires any right under the trust
instrument, except the settlor[s] to administer the trust in accordance with its terms.").

25  [12] California Probate Code § 15400 creates a presumption of revocability in trusts, and expressly
provides that "[u]nless a trust is expressly made irrevocable by the trust instrument, the trust is
26  revocable by the settlor." Indeed, to determine if the Trust is instead irrevocable (or even ambiguous)
as the Trustee has argued, a court must look to the "**four corners**" of the Trust itself, and **not** any
27  alleged undisclosed intent of the Settlors. *Laycock v. Hammer*, 44 Cal. Rptr. 3d 921, 924 (Cal. Ct.
App. 2006) ("California courts that have considered [whether a trust is revocable or irrevocable] have
28  looked to the express terms of the trust instrument"); *Heifetz v. Bank of America Nat'l Trust &*
*Savings Ass'n*, 305 P.2d 979, 983 (Cal. Ct. App. 1957) ("[t]he nature and extent of the rights retained
by the trustor are to [be] measured by the four corners of the instrument"); and *Crook v. Contreras,*

9

DOCS 127019-000001/4210006.2

1  *issue is literally dispositive of this entire action. Plaintiffs cannot identify any state-delineated rights*
2  *in property that Debtor ever held. As such, there is nothing to avoid.*

3       Even if Debtor's Parents had never terminated her as a beneficiary, her revocable interest in the
4  Trust would not have become property of the estate. Thus, the Trustee cannot avoid and recover
5  something that never rose to the level of property and that would have never been property of the
6  estate under any circumstances.

7       The Complaint also includes a resulting trust claim against the Sibling Defendants that likewise
8  fails as a matter of law because a transfer of "property" is also a necessary element of such a claim
9  (e.g. a resulting trust arises after a transfer of property to another). Although Trustee has argued that
10 property interest determinations are not dispositive for a resulting trust claim, the law is to the
11 contrary. A resulting trust arises only when ownership of "property" is at issue. *In re Cedar Funding,*
12 *Inc.*, 408 B.R. 299, 314 (2009). It follows that a resulting trust cannot arise where, as here, "the
13 [D]ebtor never had rights in the [property]" in the first place. *See also*, *In re Golden Triangle Capital,*
14 *Inc.*, 171 B.R. 79, 83 (9th Cir. BAP 1994).

15      Under California law, "[a] resulting trust arises by operation of law *from a transfer of*
16 *pro**perty** under circumstances showing that the transferee was not intended to take the beneficial
17 interest.... Ordinarily a resulting trust arises in favor of the payor of the purchase price of the property
18 where the purchase price, or a part thereof, is paid by one person and the title is taken in the name of
19 another." *Lloyds Bank California v. Wells Fargo Bank*, 187 Cal.App.3d 1038, 1042-43, 232 Cal.Rptr.
20 339 (1986) (emphasis added). "A resulting trust, or "intent-enforcing trust," may arise where the
21 purchase price is paid by one person, in whole or in part, and the title is taken in the name of another."
22 *Mazzera v. Wolf*, 30 Cal. 2d 531, 537 (1947).

23      In rejecting a claim to impose a resulting trust in the absence of an underlying transfer of
24 property, the United States District Court for the Southern District of California recently stated:

25      "Defendants have cited no case, and the Court has found none, in which a resulting
        trust was upheld where there was no initial transfer of title.
26

27 116 Cal.Rptr.2d 319, 330 (Cal. Ct. App. 2002) ("Under California law, the existence or nonexistence
   of a right to revoke must be determined by examining the trust instrument and determining from
28 language used in the instrument whether the settlors intended . . . a right to revoke [the trust]"). A
   review of the Trust in this case reveals that it clearly states that it is revocable and there is absolutely
   no evidence to the contrary.

10

1   As noted above, state law determines property interests. The resulting trust cases
    date back at least to 1908. *See Moultrie v. Wright*, 154 Cal. 520, 98 P. 257 (1908). ***In***
2   ***the 105 years since, no California court has publicly imposed a resulting trust***
    ***where there was no transfer of title***. This Court is not willing [*8] to extend this
3   California state law beyond where the state courts have seen fit."

4   *Wolf v. Collins (In re Collins)*, 2014 Bankr. LEXIS 4395, at *7-8 (Bankr. S.D. Cal. 2014) (emphasis

5   added).

6       Plaintiffs allege that the Sibling Defendants are holding Debtor's "property" because their pro

7   rata interest as beneficiaries increased after Debtor was removed as a revocable beneficiary of the

8   revocable Trust.  There is absolutely no facts or law, however, to support a finding that an interest of

9   the Debtor in property was transferred. Moreover, there is no evidence that anyone intended for

10  Defendants to hold any of Debtor's property. In fact, all the Sibling Defendants will testify to the lack

11  of any alleged side agreement in declarations or depositions.

12      **C.    The Motions to Dismiss and BAP Ruling That the Bankruptcy Court**

13          **Did Not Make a Determination of a Crucial Fact.**

14      Because there was no transfer of property in which Debtor ever had an interest, and the claims

15  in this Adversary fail as a matter of law, Defendants filed motions to dismiss the complaint for failure

16  to state a claim because Debtor's unvested interest as a revocable beneficiary did not rise to the level

17  of property. Specifically, that Debtor's Parents' termination of her status as a revocable beneficiary

18  did not constitute a transfer of an interest in property. *See*, Cal. Prob. Code §§ 16069, 18200.

19      Although Trustee's complaint failed to state a plausible or cognizable claim, the bankruptcy

20  court denied Defendants' motions to dismiss. In making its ruling, the Court did not articulate any

21  findings or conclusions - which fact was recognized by the Bankruptcy Appellate Panel ("BAP") in

22  denying motions for leave to pursue interlocutory appeals.[13] Defendants have therefore been required

23  to expend substantial fees and costs defending this Adversary where the Trustee and Creditors have no

24  chance of prevailing.

25

26  _____

27  [13] *See*, Dk. No. 118, in the Adversary, *Order Dismissing Appeals*, p. 2. ("Since **the bankruptcy court**
    **has not made a determination of crucial factual issues**, including the character of the trust, and
28  whether the trust is estate property under applicable state and federal law, the interests of judicial
    economy would not be served by granting leave to appeal.")

MOTION FOR SANCTIONS

1   In the more than two years since this Action was filed, there has been zero evidence to

2   overcome the presumption that a trust is deemed revocable unless expressly made irrevocable.

3   California Probate Code § 15400 ["[u]nless a trust is expressly made irrevocable by the trust

4   instrument, the trust is revocable by the settlor"]. *Laycock v. Hammer*, 44 Cal. Rptr. 3d 921, 924 (Cal.

5   Ct. App. 2006) ("California courts that have considered [whether a trust is revocable or irrevocable]

6   have looked to the express terms of the trust instrument"). Again, the Trust is clear on its face that it is

7   revocable. *See*, Exhibit "1."

## D.   Trustee and Creditors Have Conducted Extensive Discovery

9   During the two years this Adversary has been pending, and in particular, the almost **year and**

10  **half** since the ruling by the BAP, the Trustee and Creditors have conducted substantial discovery.

11  Because the discovery cut-off will not expire until October 30, 2020, Plaintiffs continue to propound

12  discovery. Yet, none of this discovery has led or will lead to any evidence in support of the alleged

13  claims.

14  Premised on the need to examine Mrs. Steinmann with regard to her knowledge of Debtor's

15  assets and financial affairs, the Trustee obtained a 2004 order[14] from the Court. Despite the pending

16  proceeding rule, Mrs. Steinmann was ordered to submit to examination both as to her knowledge (or

17  lack thereof) of Debtor's financial affairs as well as questions relating to the subject of the Adversary

18  - i.e. the Trust and its revocable nature.

19  During the examination, Trustee's counsel instead began asking questions relating to Mrs.

20  Steinmann's personal financial affairs and assets including the assets in the Trust. Counsel for Mrs.

21  Steinmann objected asserting rights to financial privacy and relevance. Based on well-established

22  law, a beneficiary, which is what Trustee seeks to become by way of the Complaint, does not have;

23  (1) the right to know the trust res; (2) the right to know the terms of the trust; (3) the right to sue

24  _____

25  [14] In the 2004 Motion, Trustee claimed a need to depose two elderly individuals over 80 miles from
their home: (1) Mr. Steinmann, an 86-year-old man, homebound due to Parkinson's disease and;

26  (2) Mrs. Steinmann, an 82-year-old woman unable to sit for more than thirty minutes due to risk of
deep venous blood clots and who was already been examined in the case by Intervenors pursuant to

27  FRBP 2004. *See*, Dk. Nos. 502 in Case No. 8:16-bk-12589-SC. Needless to say, the court ruled Mr.
Steinmann was prohibited from being examined and that Mrs. Steinmann would be only examined for

28  up to 4 hours in one sitting with liberal breaks to be provided as needed. *See*, Dk. No. 712, in Case
No. 8:16-bk-12589-SC.

1    while the trust is revocable; and (4) the right to challenge the settlor's disposition of the trust assets.[15]

2    All signs, guideposts, and authorities dictated that the Trustee did not have the right to invade Mrs.

3    Steinmann's financial right to privacy and provide details of her assets.

4         Later, after Trustee and Creditors filed a motion to compel, the bankruptcy court recognized

5    this right to privacy and ordered that Mrs. Steinmann's financial documents be produced under seal

6    and her examination be subject to a protective order to not be made public. Notwithstanding finding

7    that Mrs. Steinmann's personal finances should be protected by a protective order from becoming

8    public, the Court found her refusal to disclose her personal finances to not be substantially justified.

9    As such, the Court imposed sanctions against her. This order imposing sanctions was determined

10   interlocutory but will be appealed after it becomes final. The sanctions were timely paid.

11        In compliance with the Court's order, Defendants produced detailed personal financial

12   information despite the fact that it has no relevancy or bearing on the issues in this case. In fact, to

13   date, Defendants have produced approximately 2,500 pages of documents detailing Debtor's parents'

14   assets and financial information which should not be required under California Probate Code

15   § 16069.

16        Despite having been provided with documents spanning decades including the 15-year period

17   prior to the creation of the revocable Trust that is the subject of the Adversary,[16] on September 20,

18   2020, Creditors filed six more notices of service of subpoena[17] upon various financial institutions and

19   third parties ("Subpoenas"). *See*, Dk Nos. 202-209. These public filings divulged the confidential

20   information that was subject to a stipulated protective order entered in April 2020 including:[18]

21

22   _____

[15] *See*, Dk. No. 745 in Case No. 8:16-bk-12589-SC for full arguments and legal citations.

[16] This number does not include documents produced by the other Sibling Defendants not represented by Marshack Hays LLP.

[17] Movants would like to note that some of the Subpoenas served on September 20, 2020 were in fact the **second** subpoenas be directed to a **previously subpoenaed entity**. Further, Movants are informed that Creditors and Trustee have served more almost a dozen additional subpoenas to various third-party entities, including entities that Mr. Eric Steinmann is associated with – but have nothing to do with this case. This is further evidence that this sanctionable lawsuit was only brought to further harass the Steinmann Family.

[18] *See*, Dk. No. 168, in the Adversary.

DOCS 127019-000001/4210006.2

1  (i) financial statements detailing the assets and values of the parents' property; (ii) accounts numbers

2  for banking institutions; (iii) policy numbers for various life insurance policies; and (iv) details of real

3  property holdings. Three days later, Creditors filed an emergency motion to restrict public access

4  which was immediately granted by the Court.

5      The public disclosure of the Steinmann Family's confidential financial information

6  demonstrates the continued damage this sanctionable lawsuit has caused. ("The power of a court to

7  make an order carries with it the equal power to punish for a disobedience of that order, and the

8  inquiry as to the question of disobedience has been, from time immemorial, the special function of

9  the court." *In re Debs*, 158 U.S. 564, 594, 15 S. Ct. 900, 910, 39 L. Ed. 1092 (1895); *see also* Fed. R.

10 Civ. P. 37(b)(2) (providing federal courts with the authority to apply sanctions, including contempt,

11 for the failure to comply with discovery orders); *Id.* Advisory Committee Note, 1970 Amendment,

12 subdivision (b) ("Rule 37(b)(2) should provide comprehensively for enforcement of all [discovery]

13 orders," including Rule 26(c) protective orders.); *see*, *Westinghouse Elec. Corp. v. Newman &*

14 *Holtzinger, P.C.*, 992 F.2d 932, 934-35 (9th Cir. 1993)).

15     Overall, this meritless crusade against the Steinmann Family has not only cost them

16 substantial amounts of money to defend, but resulted in the public disclosure of highly confidential

17 financial information. Further, the repeated attempts at assassinating the character of the Steinmann

18 Family in numerous filings with the court has continued despite that fact that they have done nothing

19 wrong and are not the Debtor in this bankruptcy case.

20     On September 23, 2020, almost two years after the Complaint was filed, the Defendants

21 served this Motion on Plaintiffs in accordance with Rule 9011(c)(1)(A) of the Federal Rule of

22 Bankruptcy Procedure ("FRBP"). If this Motion has to be filed with the Court, it will be because

23 Plaintiffs did not dismiss the Complaint during the 21-day safe harbor period. Accordingly, this Court

24 must now decide which sanctions are appropriate to bring an end to the invasive, unmeritorious and

25 irrational saga.

26 / / /

27 / / /

28

## 3.    Legal Argument

### A.    Sanctions are appropriate under FRBP 9011

The filing of a pleading is an act "certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances – (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation," and "(2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law." Fed. R. Bankr. Proc. 9011(b)(1)-(2). "If, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court may, subject to the conditions stated below, impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation." Fed. R. Bankr. Proc. 9011(c). Determining what sanctions to impose for filing a complaint in violation of Rule 9011 is a matter of wide discretion for the bankruptcy court. *In re Giordano*, 212 B.R. 617, 622 (9th Cir. BAP 1997), aff'd in part, rev'd in part on other grounds, 202 F.3d 277 (9th Cir. 1999).

As explained above and below, the filing of the Complaint violated both subsection (b)(1) and (b)(2) of Rule 9011, and Plaintiffs should be sanctioned.

#### i.    The "safe harbor" has been provided.

A motion for sanctions under FRBP 9011(c) "may not be filed with or presented to the court unless, within 21 days after service of the motion… the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected." Fed. R. Bankr. Proc. 9011(c)(1)(A). This 21-day "safe harbor period is mandatory." *Truesdell v. S. Cal. Permanente Medical Group*, 293 F.3d 1146, 1152-53 (9th Cir. 2002). "Failure to provide the required notice precludes an award of Rule 11 sanctions." *Winterrowd v. American General Annuity Insurance Co.*, 556 F.3d 815, 826 (9th Cir. 2009).

On September 22, 2020, Plaintiffs and their counsel were served with a copy of this motion. If this Motion is filed with the Court, it will be because they have failed to dismiss the Complaint. If the

1  mandatory "safe harbor" period expires without Plaintiffs dismissing the Complaint, they should be

2  sanctioned.

### ii.    Sanctions should be imposed for claims presented for an improper purpose under FRBP 9011(b)(1)

5       The court may impose appropriate sanctions if a cause of action is "presented for any

6  improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of

7  litigation." Fed. R. Bankr. Proc. 9011(b)(1); *see, e.g., De Dios v. International Realty & RC*

8  *Investments*, 641 F.3d 1071, 1076-77 (9th Cir. 2011) (attorney sanctioned for filing duplicative

9  litigation without justification). "The frivolous and improper purpose prongs of Rule 11 overlap, and

10  'evidence bearing on frivolousness … will often be highly probative of purpose.'" *In re Grantham*

11  *Bros.*, 922 F.2d 1438, 1443 (9th Cir. 1991) (quoting *Townsend v. Holman Consulting Corp.*, 914 F.2d

12  1136, 1140 (9th Cir. 1990) (*en banc*)). The standard for an improper purpose inquiry is "objective."

13  *Townsend*, 914 F.2d at 1140 (citing *Zaldivar v. City of Los Angeles*, 780 F.2d 823, 829 (9th Cir.

14  1986)). Regarding the filing of complaints, "subjective evidence of the signer's purpose is to be

15  disregarded," and "the improper purpose inquiry subsumes the frivolousness inquiry in this class of

16  cases." *Id.*

17       As explained below, the causes of action alleged in the Complaint are ***objectively*** frivolous

18  and unwarranted by existing law. Because the causes of action in the Complaint are objectively

19  frivolous, the Complaint was presented for an improper purpose, to harass Defendants. Although

20  Defendants acknowledge that the relevant standard for an improper purpose as to the filing of a

21  complaint is an objective one, Defendants firmly believe that the Complaint was filed principally

22  because Debtor's parents and siblings are wealthy individuals who would have the financial ability to

23  pay a substantial settlement *even for* claims that have no legal merit.

### iii.    Sanctions should be imposed for assertion of claims unwarranted by existing law under FRBP 9011(b)(2)

26       The court may impose appropriate sanctions if "the claims, defenses, and other legal

27  contentions therein" are not "warranted by existing law or by a nonfrivolous argument for the

28  extension, modification, or reversal of existing law or the establishment of new law." *See* Fed. R.

DOCS 127019-000001/4210006.2

1   Bankr. Proc. 9011(b)(2). "A filing is frivolous if it is 'both baseless and made without a reasonable

2   and competent inquiry.'" *Smyth v. City of Oakland (In re Brooks-Hamilton)*, 271 Fed.Appx. 654

3   (9th Cir. 2008) (quoting *Townsend*); *see, e.g., Winterton v. Humitech of Northern California, LLC*

4   *(In re Blue Pine Group, Inc.)*, 457 B.R. 64, 75 (B.A.P. 9th Cir. 2011). "An attorney has a duty to

5   conduct a reasonable factual investigation as well as to perform adequate legal research that

6   confirms his position is warranted by existing law (or by a good faith argument for a modification

7   or extension of existing law). *Winterton*, 457 B.R. at 75 (citing *Christian v. Mattel, Inc.*, 286 F.3d

8   1118, 1127 (9th Cir. 2002)). "In considering sanctions under Rule 9011, the bankruptcy court must

9   measure the attorney's conduct 'objectively against a reasonable standard, which consists of a

10  competent attorney admitted to practice before the involved court.'" *Id.* Indeed, "an attorney may

11  not delegate his duty to validate the truth and legal reasonableness of papers filed with the court."

12  *Id.* at 77 (citing *Giebelhaus v. Spindrift Yachts*, 938 F.2d 962, 965 (9th Cir. 1991)).

13      The Complaint alleges that the Debtor's prepetition termination as a revocable beneficiary of

14  her parents' *inter vivos* trust, is an avoidable fraudulent transfer under the FDCPA. The Ninth Circuit

15  in *Bensal,* however, has held that in order for the FDCPA to be used to avoid a fraudulent transfer,

16  the debtor must first have rights in property as defined by state law. Under California law, there is no

17  authority for the proposition that a revocable beneficiary has rights in property.

18          a)      **As a matter of California and Ninth Circuit law, it is**

19                  **frivolous to assert that an unvested interest in a revocable**

20                  ***inter vivos* trust constitutes a property interest.**

21      The Complaint seeks to avoid the alleged transfer of property which occurred when Debtor

22  was disinherited from the Trust by Trustors, relying on 11 U.S.C. § 544 and the Federal Debt

23  Collection Procedures Act, 28 U.S.C. §§ 3301 *et seq.* ("FDCPA"). Specifically, "a transfer made or

24  obligation incurred by a debtor is fraudulent as to a debt to the United States…" 28 U.S.C. § 3304(a),

25  and "the United States, subject to section 3307 and to applicable principles of equity and in

26  accordance with the Federal Rules of Civil Procedure, may obtain – (1) avoidance of the transfer or

27  obligation to the extent necessary to satisfy the debt to the United States." 28 U.S.C. § 3306(a)(1).

28

DOCS 127019-000001/4210006.2

1    However, "[a] transfer is not made until the debtor has acquired rights in the asset transferred." 28

2    U.S.C. § 3305(4).

3        "Property interests are created and defined by state law, and unless some federal interest

4    requires a different result, there is no reason why such interests should be analyzed differently simply

5    because an interested party is involved in a bankruptcy proceeding." *Stern v. Marshall*, 564 U.S. 462,

6    496 (2011) (internal brackets and quotation marks omitted). The definition of "property" for the

7    purposes of the FDCPA is fixed by 28 U.S.C. § 3002(12). However, "in determining whether a

8    property right falls within [the definition of 28 U.S.C. § 3002(12)], 'the important consideration is the

9    breadth of the control the taxpayer could exercise over the property.,' which [is assessed] with

10    reference to the state law governing the right." *United States v. Harris*, 854 F.3d 1053, 1055 (9th Cir.

11    2017) (per curiam).

12        To determine whether a party's interest in a trust constitutes "property" under the FDCPA, the

13    Ninth Circuit has held that state law determines what rights the debtor has in property and then

14    whether such state-delineated rights qualify as property under the FDCPA.

15        "Applying the analytical framework set forth [by the US Supreme Court] in Drye, we
    look 'to state law to determine what rights the [debtor] has in the property the

16    Government seeks to reach, then to federal law to determine whether the [debtor's]
    state-delineated rights qualify as 'property' or 'rights to property' within the compass

17    of the [FDCPA].'"

18    *United States Small Business Admin. v. Bensal*, 853 F.3d 992, 1000 (9th Cir. 2017).

19        California law could not be clearer that a revocable beneficiary has no property rights. "Any

20    interest that beneficiaries of a revocable trust have in trust property is 'merely potential' and can

21    'evaporate in a moment at the whim of the [settlor].'" *Steinhart v. County of Los Angeles*, 47 Cal.4th

22    1298, 1319-20 (2010) (quoting *Johnson v. Kotyck*, 76 Cal.App.4th 83, 88 (1999)) (brackets in

23    original); *Estate of Giraldin*, 55 Cal.4th 1058, 1065-66 (2012) ("Property transferred into a revocable

24    inter vivos trust is considered the property of the settlor for the settlor's lifetime... the beneficiaries'

25    interest in that property is 'merely potential' and can 'evaporate in a moment at the whim of the

26    [settlor].'"); *Tepper v. Wilkins*, 10 Cal.App.5th 1198, 1206 (2017) ("Tepper does not claim to have any

27    legally cognizable interest in her mother's revocable living trust; and, even if she were named a

28    beneficiary, she would not have one."); *see also, Arluk Medical Center Industrial Group, Inc. v.*

1   *Dobler*, 116 Cal.App.4th 1324, 1331-32 (2004); *Burton v. Ulrich (In re Schmitt)*, 215 B.R. 417, 422

2 (B.A.P. 9th Cir. 1997) ("when a trust expressly reserves the power to change the beneficiaries, no one

3 acquires any right under the trust instrument, except the settlor to administer the trust in accordance

4 with its terms."); *see also Cutter v. Seror (In re Cutter)*, 398 B.R. 6, 20-21 (B.A.P. 9th Cir. 2008) (a

5 self-settled spendthrift trust is treated as property of the settlor). A vested right is property while a

6 mere expectancy is not property. *Hoeft v. Supreme Lodge Knights of Honor*, et al., 113 Cal. 91 (1896).

7        The California Supreme Court has repeatedly stated in no uncertain terms that a beneficiary of

8 a revocable *inter vivos* trust **has no property right whatsoever** because the settlor retains the power

9 to unilaterally, at their "whim," divest the beneficiary of any right in the revocable trust (including

10 revoking the trust). Moreover, Probate Code § 16069 provides that the settlors of a revocable trust are

11 not required to account to a beneficiary or even to provide a copy of the trust while it may still be

12 revoked. Yet, notwithstanding the absence of claims well-grounded in fact or supported by law,

13 Plaintiffs conducted voluminous discovery into the financial affairs of the Steinmann Family. Again,

14 Debtor's parents were alive when they revoked the trust as to Debtor and remain alive today. Thus,

15 when Debtor was removed from her parents' revocable *inter vivos* trust, no transfer of property

16 occurred.

17        As explained above, California's highest court has repeatedly held that a beneficiary of a

18 revocable living trust acquires no ownership or property rights in the trust or its corpus during the life

19 of the settlors. *Steinhart*, 47 Cal.4th at 1319-20 (2010); *Giraldin*, 55 Cal.4th at 1065-66 (2012)

20 ("Property transferred into a revocable inter vivos trust is considered the property of the settlor for the

21 settlor's lifetime... the beneficiaries' interest in that property is 'merely potential' and can 'evaporate

22 in a moment at the whim of the [settlor].'") (brackets in original). ***In other words, Debtor never***

23 ***acquired any state-delineated rights in property merely because she was once a revocable***

24 ***beneficiary of her parents' trust***.

25        As such, Plaintiffs' claim to avoid the termination of Debtor's interest in the revocable trust as

26 a fraudulent transfer under the FDCPA or otherwise is unwarranted by law. First, no transfer can

27 occur until "until the debtor has acquired rights in the asset transferred." 28 U.S.C. § 3305(4). As

28 explained above, federal courts are compelled to follow state law to determine property interests in

DOCS 127019-000001/4210006.2

1    bankruptcy and for the purposes of the FDCPA. Under California law, the beneficiary of a revocable

2    *inter vivos* trust has no property rights in such a trust. Thus, under the plain language of the FDCPA,

3    no transfer of property occurred.

### b)    The Claim for Imposition of a Resulting Trust Likewise Fails

6    A resulting trust is the creation of an implied trust by operation of law, where property is

7    transferred to someone who pays nothing for it. In other words, a resulting trust arises only when

8    ownership of "property" is at issue. *In re Cedar Funding, Inc.*, 408 B.R. 299, 314 (2009). It follows

9    that a resulting trust cannot arise where, as here, "the [D]ebtor never had rights in the [property]" in

10   the first place. *In re Golden Triangle Capital, Inc.*, 171 B.R. 79, 83 (9th Cir. BAP 1994).

> "Defendants have cited no case, and the Court has found none, in which a resulting
>
> trust was upheld where there was no initial transfer of title.
>
> As noted above, state law determines property interests. The resulting trust cases
>
> date back at least to 1908. *See Moultrie v. Wright*, 154 Cal. 520, 98 P. 257 (1908). ***In***
>
> ***the 105 years since, no California court has publicly imposed a resulting trust***
>
> ***where there was no transfer of title***. This Court is not willing [*8] to extend this
>
> California state law beyond where the state courts have seen fit."

18   *Wolf v. Collins (In re Collins)*, 2014 Bankr. LEXIS 4395, at *7-8 (Bankr. S.D. Cal. 2014) (emphasis

19   added).

20    Again, in this case, Debtor never had any rights to property as a beneficiary of her parents'

21   revocable trust. As such, when she was terminated by her parents (who are still alive), there was no

22   transfer of any property. Just because the siblings' interest in the revocable trust increased slightly

23   because the one of the ten beneficiaries was removed doesn't mean that any property transferred to

24   them. In fact, because Debtors' parents are still living, any of the siblings could have their interest in

25   the trust revoked at any time. In other words, all of the parents' property remains their property until

26   their deaths.

27

28

MOTION FOR SANCTIONS

DOCS 127019-000001/4210006.2

### iv. Sanctions should be imposed for assertion of a frivolous argument for modification or extension of law under FRBP 9011(b)(2)

Astonishingly, Trustee's counsel is familiar with the California law outlining why a beneficiary of a revocable trust does not have any property rights. Indeed, he has previously argued and lost an appeal before the Ninth Circuit BAP of an order by the United States Bankruptcy Court for the Central District of California finding that debtor's contingent beneficial interest in a revocable *inter vivos* trust was not property of the estate. *See Kosmala v. Cook (In re Cook)*, 2008 Bankr. LEXIS 4728 (B.A.P. 9th Cir. 2008) (no. CC-08-1091-HMoD).

In the *Cook* case, Trustee's counsel represented another bankruptcy trustee and made the argument that although the debtor held only a contingent beneficial interest in a trust as of the petition date, debtor's interest became property of the estate when the settlor died within 180 days after the petition date. The BAP disagreed, holding that it was plain as a matter of law that the debtor's contingent beneficial interest in an *inter vivos* trust was not property of the estate. *See* Cook, 2008 Bankr. LEXIS 4728 at *16. Additionally, the BAP noted that the Trustee tried to "maneuver around this outcome by arguing for adoption of a federal law definition of bequest, devise, or inheritance." *Id.* at *15. Similarly here, Trustee and his counsel are making an argument which is contrary to binding Ninth Circuit precedent in *Bensal* (i.e. that the definition of property under the FDCPA should control even though the dispositive issue is whether Debtor ever had any "state-delineated" rights in property).

### v. If the Court is inclined to award monetary sanctions, Defendants request the award be payable as a super-priority administrative claim against the Estate.

Under FRBP 9011(c)(2), the Court has discretion in determining the amount of sanctions to be awarded to the prevailing party. FRBP 9011(c)(2) states:

> A sanction imposed for violation of this rule shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated. Subject to the limitations in subparagraphs (A) and (B), the sanction may consist of, or include, **directives of a nonmonetary nature**, an order to pay a penalty into court, or, **if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation**.

21

1  Fed. R. Bankr. Proc. 9011(c)(2).

2    Defendants seek monetary sanctions against the Trustee in the form of a super-priority

3  Chapter 7 administrative claim against the Estate for all attorneys' fees and costs incurred after

4  expiration of the Rule 9011 safe harbor period. Because any such claim against the Trustee was

5  incurred post-petition and in furtherance of his attempts to recover money, they should be afforded

6  administrative priority as a claim against the Estate pursuant to 11 U.S.C. § 503(b)(1)(A). Because

7  the improper conduct of Trustee and Creditors led the award, their claims and rights to payment

8  should be subordinated by 11 U.S.C. §510.

9    Post-petition tort damages against a bankruptcy estate or its representatives for conduct in the

10  course of the administration of the estate are allowable as administrative expenses of the estate.

11  *Reading Co. v. Brown*, 391 U.S. 471, 483-85 (1968); *Kadjevich v. Kadjevich (In re Kadjevich)*, 220

12  F.3d 1016, 1020 (9th Cir. 2000) ("In addition to those kinds of 'standard' administrative expenses,

13  tort claims based on a trustee's post-petition negligence are granted administrative-expense priority…

14  Such claims are deemed 'ordinarily incident to the operation of a business…'").

15    The Defendants recognize that Trustee has a fiduciary duty to the Estate to maximize returns

16  for creditors, and may have filed the Complaint in an overzealous attempt to generate a return for the

17  Estate. As explained in this Motion, however, the claims alleged in the Complaint are wholly

18  frivolous and Trustee has had more than two years to research, conduct discovery, and conclude that

19  the action is neither well-grounded in fact nor supported by existing law. If (1) the Complaint is not

20  withdrawn during the safe harbor period; and (2) this Motion is filed and set for hearing, Movants

21  will file evidence regarding the amount of their damages arising from this frivolous and harassing

22  lawsuit.

23  **B.    Sanctions are Appropriate Under the Local Bankruptcy Rules**

24    Bankruptcy courts have the inherent authority to regulate the practice of attorneys who appear

25  before them. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43-45 (1991) (federal courts are vested with

26  inherent power powers to manage their cases and courtrooms and to maintain the integrity of the

27  judicial system). Bankruptcy courts have express authority under the code to sanction attorneys, *See*

28

DOCS 127019-000001/4210006.2

1  LBR 1001-1(f), FRBP 9011. Specifically, Rule 1001-1(f) of the Local Bankruptcy Rules for the

2  Central District of California ("LBR") provides:

3       "**Sanctions for Noncompliance with Rules**. The failure of counsel of a party to
        comply with these Local Bankruptcy Rules, with the F.R.Civ.P. or the FRBP, or with
4       any order of the court may be grounds for the imposition of sanctions pursuant to
        applicable law, including the Bankruptcy Code, the F.R.Civ.P., the FRBP, and the
5       inherent powers of the court."

6  LBR 1001-1(f).

7       Further, LBR 9011-3(a) provides:

8       **Violation of Rules**: The violation of, or failure to conform to, the FRBP or these

9       rules may subject the offending party or counsel to penalties, including monetary

10      sanctions, the imposition of costs and attorneys' fees payable to opposing counsel,

11      **and/or dismissal of the case or proceeding**.

12 LBR 9011-3(a).

13      A local rule of bankruptcy procedure cannot be applied in a manner that conflicts with the

14 federal rules; it must be consistent with the Code, the Rules and the Civil Rules. *Anwar v. Johnson*,

15 720 F.3d 1183, 1189 (9th Cir. 2013). Local bankruptcy rules may not "enlarge, abridge, or modify

16 any substantive right." *Id.*

17      Here, as set forth above, Plaintiffs have violated FRBP 9011(b) and (c) by filing a frivolous

18 complaint for claims unwarranted by existing law and for an improper purpose. Here, the Court,

19 consistent with Local Rule 1001-1 and LBR 9011-3, can impose appropriate disciplinary sanctions

20 against Plaintiffs for their violations of FRBP 9011. Defendants respectfully request that the Court

21 sanction Plaintiffs for violations of LBR 1001 and LBR 9011-3 in the form of and order (i)

22 dismissing the Adversary Proceeding; and (ii) monetary sanctions against the Estate in the form of a

23 super-priority administrative claim; and (iii) jointly and severally against Creditors.

24 / / /

25 / / /

26

27

28

MOTION FOR SANCTIONS

DOCS 127019-000001/4210006.2

**4.    Conclusion**

The claims alleged in the Complaint are wholly meritless and unwarranted by existing law. In fact, California Supreme Court and Ninth Circuit Court of Appeal plainly state that the claims alleged in the Complaint fail as a matter of law. As such, the Complaint violates FRBP 9011(b)(1) and (b)(2), and sanctions should issue in the form of monetary damages according to proof and dismissal of the Complaint *with prejudice*.

Dated:  July 8, 2021                                    DIBENEDETTO, LAPCEVIC & DRAA LLP

                                                        By:_____/S/_____
                                                        JUSTIN S. DRAA
                                                        Attorneys for Defendants Lora Rae Steinmann, Heinz
                                                        H. Steinmann, Eric Steinmann, Susanna Steinmann
                                                        Wilson, Thomas Steinmann, John Steinmann, and
                                                        Mary Steinmann Sypkens, Teresa Steinmann
                                                        Stapleton, Katy Steinmann Belknap, Jeff Steinmann,
                                                        and Heinz J. Steinmann

MOTION FOR SANCTIONS
DOCS 127019-000001/4210006.2

# Declaration of Eric Steinmann

I, ERIC STEINMANN, declare as follows:

1.  I am an individual over 18 years of age and competent to make this Declaration.

2.  If called upon to do so, I could and would competently testify as to the facts set forth in this Declaration. The facts set forth below are true of my personal knowledge.

3.  I make this Declaration in support of the motion for sanctions against Plaintiff, Creditors and their counsel under FRBP 901, the Local Bankruptcy Rules of the Central District of California for the presentation of a meritless complaint, filed with improper purpose, unwarranted by existing law, and supported only by a frivolous argument lacking good faith for extending or modifying existing law.

4.  On January 8, 2016, my parents, Lora Rae Steinmann and Heinz H. Steinmann ("Trustors") settled a revocable trust ("Trust"). A true and correct copy of the Trust is attached hereto as Exhibit "1."

5.  On May 2, 2016, Trustors amended the Trust to remove their daughter, Andrea Steinmann Downs, as a beneficiary. A true and correct copy of the Trust Amendment is attached as Exhibit "2."

6.  On June 19, 2016, Andrea Steinmann Downs ("Debtor") filed a voluntary petition under Chapter 11 of Title 11 of the United States Code ("Petition Date").

7.  On September 6, 2018, Trustee filed a complaint to avoid and recover fraudulent transfers Pursuant to 11 U.S.C. §§548(a)(1)(A), 544(b) and 550. Trustee is attempting to avoid as a fraudulent transfer my sister Andrea Steinmann Down's removal as a beneficiary from my parents' revocable trust.

8.  I am a named Defendant along with my parents, brothers, and sisters in Adversary Proceeding No. 8:18-ap-01168.

I declare under penalty of perjury that the foregoing is true and correct. Executed on July 8th, 2021.

DocuSigned by:

*Eric Steinmann*

E6CB6638AF8A4D6...

ERIC STEINMANN

DECLARATION OF ERIC STEINMANN

# EXHIBIT 1

# DECLARATION OF TRUST

2016 This Declaration of Trust is entered into on the $\underline{8}$ day of $\underline{January}$ ,
~~2015~~, by and between HEINZ H. STEINMANN and LORA R. STEINMANN, husband
and wife, as Trustors, and the parties set forth in Article VI, as Trustees.

## RECITALS

The Trustors desire to establish a trust initially funded with assets set forth on
Schedule A hereof and intend to transfer to this trust additional assets, all of which
transfers shall constitute and fund this Declaration of Trust. The Trustees acknowledge
receipt of the initial assets and any subsequent assets designated as trust assets.

## ARTICLE I
### Trust Assets

The Trustors have transferred, without consideration, certain properties or other
assets to this trust as set forth on Schedule A hereto. Property transferred to this trust
is sometimes referred to as trust estate. All assets in the name of the Trust, whether or
not listed on Schedule A, are to be included herein.

The Trustors or the surviving Trustor shall have the right at any time, either
during his or her lifetime or at his or her death, to add to this trust other property, which
additional property shall become a part of the trust estate. It is understood and agreed
by the Trustors that all property transferred to the trust by them is community property
unless specifically designated otherwise and shall continue to retain its community
property status; likewise, during their lifetime all distributions of principal or income, on
revocation or otherwise, will be community property.

To the extent reasonable and practical for management purposes, the assets
generally considered under Trustor HEINZ H. STEINMANN's control during his lifetime
shall be allocated to his community share of the trust estate, and the assets generally
considered under Trustor LORA R. STEINMANN's control during her lifetime shall be
allocated to her community share of the trust estate. The Trustors request that their
son, ERIC STEINMANN, assist with the management of HEINZ H. STEINMANN's
share and that their daughter, MARY SYPKENS, assist with the management of LORA
R. STEINMANN's share.

## ARTICLE II
### Certain Rights of Trustors

The Trustors while both shall live have the right at any time to alter, revoke or amend any of the provisions of this Declaration of Trust, or of any amendment thereto in whole or in part by a writing directed to the Trustee and executed by the Trustors jointly or by either Trustor as to his or her share of the community property. Upon the death of either Trustor, this trust shall become irrevocable as to the decedent's share, also referred to as the Decedent's Trust. The surviving Trustor shall continue to have the right to revoke, alter or amend the trust as to the survivor's share, also referred to as the Survivor's Trust. Upon the death of the survivor, the entire Decedent's Trust shall become irrevocable.

## ARTICLE III
### Distribution of Income and Principal

The Trustee shall apply and distribute the net income and principal of the trust estate in the following manner:

A.    During the lifetime of the Trustors, the Trustee shall make the following payments from the trust estate:

1.    The Trustee shall pay to or apply for the benefit of the Trustors all of the net income from the trust estate, unless the Trustee is otherwise directed in writing by the Trustors, together with any principal so requested.

2.    If at any time either Trustor should be determined to be physically or mentally incapacitated such that a Trustor is unable to effectively manage his or her own property of financial affairs, the Trustee may pay to or apply for the benefit of such Trustor such amounts from the income and principal of the trust estate, up to the whole thereof, as the Trustee may from time to time deem necessary for his or her proper health, support, business endeavors and maintenance. The determination of incapacity for the purposes hereof shall be made by Trustors' children, namely by JOHN STEINMANN, TERESA STAPLETON and THOMAS STEINMANN, who shall act by a majority thereof and shall issue a written certification.

B.    Upon the death of either Trustor, the Trustee shall divide the trust estate, including any additions made to the trust by reason of the death such as life insurance or from the decedent's will, into two separate shares as follows:  one referred to as the "Survivor's Trust," consisting of the surviving Trustor's share of the community property

(2)

of the trust estate; and one to be referred to as the "Decedent's Trust," consisting of the deceased Trustor's share of the community property of the trust estate. The Trustee is specifically authorized to allocate to the Survivor's Trust any residential property or tangible personal property selected by the surviving Trustor. The Trustors have executed a Community Property Agreement and do not anticipate having any separate property. If, for any reason, separate property is acquired, it shall be divided equally between the trusts herein created.

ARTICLE IV
Survivor's Trust

The Trustee shall apply and distribute the net income and principal of the Survivor's Trust as follows:

A.    The Trustee shall pay to or apply for the benefit of the surviving Trustor all of the net income from the Survivor's Trust in monthly or convenient installments, but in no event less frequently than in annual installments, during his or her lifetime.

B.    If at any time during the lifetime of the said surviving Trustor, he or she should for any reason be in need of funds for his or her proper care, maintenance, reasonable comfort and support, the Trustee may pay to or apply for the benefit of the surviving Trustor, in addition to the income payments from this Survivor's Trust, such amounts from the principal thereof up to the whole thereof as the Trustee may from time to time deem necessary for the Survivor's use and benefit.

C.    Anything to the contrary herein notwithstanding, the surviving Trustor may withdraw, by written notification to the Trustee, all or any portion of the Survivor's Trust.

D.    Upon the death of said surviving Trustor, the Trustee shall pay all debts and expenses of last illness and burial. The Trustee shall distribute and deliver all of the remaining balance of the Survivor's Trust, including any income therefrom that may then be accrued or undistributed by the Trustee to such person or persons, and in such amounts or manner as the surviving Trustor may designate and appoint in the last unrevoked written instrument other than a will executed by him or her and on file with the Trustee at the time of his or her death. If there should be a failure of disposition of all or any portion of Survivor's Trust, either in connection with the exercise or as a result of the non-exercise of such power of appointment by the surviving Trustor, then upon his or her death, all of the said Survivor's Trust not so disposed of shall be added to the principal of the Decedent's Trust as set forth, to be held, administered and distributed as a part of such Decedent's Trust as provided herein.

(3)

## ARTICLE V
### Decedent's Trust

The Trustee shall hold, manage and distribute the net income and principal of the Decedent's Trust as follows:

A.    The Trustee shall pay all of the debts of decedent, the expenses of last illness and burial unless otherwise determined by the Trustee to be adequately provided for otherwise.

B.    The Trustee shall pay to the surviving Trustor all of the net income from the Decedent's Trust for his or her lifetime, in monthly or other convenient installments, but not less frequently than annually.

C.    If the surviving Trustor should be in need of funds for his or her proper health, support and maintenance, the Trustee may pay such necessary amounts to him or her for such purposes.

D.    Upon the death of the surviving Trustor, the Trustee shall hold, manage, administer and distribute the remaining balance of the Decedent's Trust (and any assets received from the Survivor's Trust) as follows:

1.    The Trustor may have prepared a list of tangible personal property items to be distributed to various persons, and if so, will be found with an executed copy of his trust document.  If said list cannot be found, or there are items of tangible personal property not covered by said list, they shall be divided equally among the Trustor's children as they shall agree or if they are unable to agree, as the Trustee shall determine.

2.    The Trustee shall divide the remaining trust as hereinafter set forth and hold, manage and distribute it as follows:

(a)    The Trustee shall divide the trust estate into equal shares for Trustors' living children and distribute each such share outright and free of trust to each child under the terms hereof. To the extent any child is indebted to either of the Trustors the amount of such indebtedness shall be paid to the trust.  The Trustee shall have the ability in making the equal distributions to the children to provide that some or all of them may bid upon the purchase of a particular parcel or parcels based upon a valuation of fair market value by a MAI or other professionally qualified appraiser.  A

(4)

group of children can bid if they desire to do so with the highest bid to prevail. The proceeds of sale shall be equally divided among the children. Should there be no bidders within a time period set in the discretion of the Trustee (not to exceed two (2) years), the real property shall be placed on the market for sale. These provisions shall apply to property completely owned in the trust. In properties which are owned in tenancy in common, the persons owning an interest may bid as set forth above.

(b)    Should a child of Trustors predecease the surviving Trustor the deceased child's share shall be held, managed and distributed to the deceased child's children equally (Trustors' grandchildren) as follows and subject to the following provisions:

(i)    Any grandchild of Trustors who is over age 25 years at the surviving Trustor's death shall receive his or her share outright and free of trust.

(ii)    The Trustee shall hold for each grandchild under age 25 his or her interest in a separate share until the child attains age 25 years, with the Trustee, in the Trustee's discretion, to distribute to or on behalf of the grandchild such amounts the Trustee deems necessary for the reasonable support, care, and education of the grandchild, such amounts of the principal up to the whole thereof. Upon each grandchild attaining age 25, the Trustee shall distribute any balance remaining to the grandchild. Should a grandchild die prior to attaining age 25, the Trustee shall distribute the remaining trust to the grandchild's siblings.

## ARTICLE VI
### Trustee

The initial Trustee hereunder shall be HEINZ H. STEINMANN, LORA R. STEINMANN and ERIC STEINMANN. The word "Trustee" as used herein shall include Co-trustees where appropriate and without regard to number or gender. In the event of the death, resignation, or certification of incapacity of any named Trustee, the remaining individuals together with MARY SYPKENS shall serve as Trustee. On the death, resignation, or certification of incapacity of any subsequent Trustee, JOHN STEINMANN shall serve as Trustee with the remaining individuals. Subsequently, should any one of the preceding Trustees fail to act or cease to serve, the next oldest Steinmann child shall serve as Trustee with the then existing Trustees. The Trustees shall act by majority vote or majority written action. No bond shall be required of any Trustee. All rights, powers and duties of the initial Trustees shall vest in the successor Trustees. Any Trustee named hereunder shall be entitled to a reasonable fee for Trustee services.

The allocation of exemptions and properties pursuant to the preceding paragraphs shall be determined in the absolute discretion of the Trustee, subject to its fiduciary obligation, and the Trustee shall not be liable to any beneficiary of this trust or any other person by reason of such allocations.

## ARTICLE VII
### General Provisions

A.     No beneficiary of this Trust (except the Trustors during their joint lifetimes or the survivor as to the Survivor's Trust) shall have any right to alienate, encumber or hypothecate his or her interest in the principal or income of the trust in any manner, nor shall such interest of any beneficiary be subject to claims of his or her creditors or liable to attachment, execution or other process of law.

B.     This Trust has been accepted by the Trustee and will be administered in the state of California, and its validity, construction, and all rights thereunder shall be governed by the laws of that state.  If any provision of this Declaration of Trust shall be invalid or unenforceable, the remaining provisions thereof shall continue to be fully effective.  The word "children" or "issue" as used in this Declaration of Trust shall include adopted children and issue as well as natural children.

C.     Upon the death of any beneficiary prior to receiving distribution, any accrued or undistributed income which would have been payable to that beneficiary had the beneficiary lived shall be paid to the person who is entitled to payment of income on the day on which income is next payable, or who may be entitled to the transfer of principal upon the beneficiary's death.

D.     In the event any beneficiary under this Trust shall contest in any court the validity of this Trust or of a deceased Trustor's last will or shall seek to obtain an adjudication in any proceeding in any court that this Trust or any of its provisions or that such will or any of its provisions is void, or seek otherwise to void, nullify or set aside this Trust or any of its provisions, then the right of that person to take any interest given to him or her by this Trust shall be determined as it would have been determined had the person predeceased the execution of this Declaration of Trust.

The Trustee is hereby authorized to defend, at the expense of the trust estate, any contest or other attack of any nature on this Trust or any of its provisions.

(6)

E.    The Trustee shall respect and comply with any directions given and provisions made by the surviving Trustor's will or separate document directed to the Trustee for payment of and allocation of any death taxes resulting from his or her death. To the extent these matters are not covered by the surviving Trustor's will or such written directions, the Trustee shall pay from each separate trust (without charge to any beneficiary) all federal and state death taxes attributable to that particular trust estate by reason of the surviving Trustor's death or apportioned to it pursuant to California and federal law.  It is intended that the residue of the trust estate bear the taxes, and any specific bequests be made free of tax.

F.    Whenever the Trustee is directed to make a distribution of trust assets or a division of trust assets into separate trusts or shares on the death of a Trustor, the Trustee may, in the Trustee's discretion, defer such distribution or division until eight (8) months after the Trustor's death, provided however the Trustee may continue to hold real property in trust to fulfill provisions herein to provide for sales or distributions of real property to children up to two years pursuant to Section D.2(a) of Article V herein.

When the Trustee defers distribution or division of the trust assets, the deferred division or distribution shall be made as if it had taken place at the time prescribed in this instrument in the absence of this paragraph, and all rights given to the beneficiaries of such trust assets under other provisions of this instrument shall be deemed to have accrued and vested as of such prescribed time.

G.    The Trustors at the date hereof have the following children living:  ERIC STEINMANN, MARY SYPKENS, JOHN STEINMANN, TERESA STAPLETON, KATHERINE BELKNAP, ANDREA DOWNS, HEINZ J. STEINMANN, SUSANNA WILSON, JEFFREY STEINMANN and THOMAS STEINMANN.

## ARTICLE VIII

This Trust may be referred to THE STEINMANN TRUST, under Declaration of Trust dated _Jan. 8_ , 2015. 2016.

## ARTICLE IX

The rights, powers and duties of the Trustee with regard to the management and investment of the trust estate are as set forth on Schedule B, which is attached hereto and made a part hereof for all purposes.

(7)

The Trustors and the Trustee have executed this Amended and Restated Declaration of Trust this ___8___ day of ___January_____, ~~2015.~~ 2016.

TRUSTORS:

_(signature)_ _____     _(signature)_ _____
HEINZ H. STEINMANN                      LORA R. STEINMANN

TRUSTEES:

_(signature)_ _____     _(signature)_ _____
HEINZ H. STEINMANN                      LORA R. STEINMANN

_(signature)_ _____
ERIC STEINMANN

Prepared by:

_(signature)_ _____
Daniel W. Holden, Attorney for Trustors

# A C K N O W L E D G E M E N T

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA

COUNTY OF SAN BERNARDINO

On _January 8_____, 2016 ~~2015,~~ before me, _Stephanie Lynn Carroll_____, a Notary Public, personally appeared _Heinz H. Steinmann, Lora R. Steinmann & Eric Steinman,_ who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/(are) subscribed to the within instrument and acknowledged to me that he/she/(they) executed the same in his/her/(their) authorized capacity(ies), and that by his/her/(their) signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_(notary signature)_ _____
Notary Public Signature

> STEPHANIE LYNN CARROLL
> Commission # 2053363
> Notary Public - California
> San Bernardino County
> My Comm. Expires Dec 26, 2017

Notary Public Seal

(8)

SCHEDULE A

Initial Assets of Trust

1.  Real property commonly known as ███████████████████████

2.  ████████████, a California corporation.
3.  All interests in checking, savings and investment accounts owned by Trustors.
4.  All personal property owned by Trustors.
5.  Such other assets of Trustors to be specifically designated by separate documents.
6.  _____
7.  _____
8.  _____
9.  _____
10. _____

(9)

SCHEDULE B

TRUST POWERS

The rights, powers and duties of the Trustee with respect to the management and investment of the trust estate shall be as follows:

1.  Purchase, sell, convey, exchange, convert, improve, repair, partition, divide, allot, subdivide, create restrictions, easements, or other servitudes thereon, manage, operate, and control;

2.  Lease for terms within or beyond the term of any trust provided for in this Agreement and for any purpose, including exploration for and removal of gas, oil, and other minerals; and enter into any covenants and agreements relating to the property so leased or any improvements which may then or thereafter be erected on such property;

3.  Encumber or hypothecate for any trust purpose by mortgage, deed of trust, pledge, otherwise;

4.  Carry insurance of such kinds and in such amounts at the expense of the trusts provided for in this Agreement as the Trustee may deem advisable;

5.  Commence or defend at the expense of any trust provided for in this Agreement such litigation with respect to any such trust or any property of the Trust Estate as Trustee shall deem advisable for that purpose;

6.  Invest and reinvest the trust funds in such property as the Trustee, in the exercise of reasonable business judgment, may deem advisable, whether or not such property is of the character specifically permitted by law for the investment of trust funds; provided, however, that the Trustee is not authorized to invest or reinvest the trust funds in property which is nonproductive of income, except cash surrender values of any life insurance policies on the survivor's life, that in the event that any income-producing property of the Trust subsequently becomes nonproductive of income, the Trustee is directed within a reasonable time to convert such nonproductive property to property productive of income.

7.  Vote, by proxy or otherwise, in such manner as Trustee may determine to be in the best interests of the Trust provided for in this Agreement any securities having voting rights held by the Trustee pursuant to this Agreement;

8.  Pay any assessments or other charges levied on any stock or other security held by Trustee in trust pursuant to this Agreement;

9.  Exercise or not exercise as Trustee may deem best any subscription, conversion, or other rights or options which may at any time attach, belong, or be given to the holders of any stocks, bonds, securities, or other instruments held by it in trust pursuant to this Agreement;

10.  Participate in any plans or proceedings for the foreclosure, reorganization, consolidation, merger, or liquidation of any corporation or organization that has issued securities held by Trustee in trust pursuant to this Agreement, and incident to such participation to deposit securities with and transfer title or securities on such terms as Trustee may deem in the best interest of the trusts to any protective or other committee established to further or defeat any such plan or proceeding;

(10)

11.     Enforce any mortgage or deed of trust or pledge held by Trustee in trust pursuant to this Agreement and at any sale under any such mortgage, deed of trust, or pledge to bid and purchase at the expense of any trust provided for in this Agreement any property subject to such security instrument;

12.     Compromise, submit to arbitration, release with or without consideration, and otherwise adjust any claims in favor of or against any trust provided for in this Agreement;

13.     Subject to any limitations expressly set forth in this Agreement and faithful performance of Trustee's fiduciary obligations, to do all such acts, take all such proceedings, and exercise all such rights and privileges as could be done, taken, or exercised by an absolute owner of the trust property.

14.     The power to borrow money for any trust purpose on such terms and conditions as the Trustee may deem proper from any person, firm, or corporation, including the power to borrow money on behalf of one trust from any other trust provided for in this Agreement, and to obligate the trusts, or any of them, provided for in this Agreement to repay such borrowed money.

15.     The Trustee is authorized to loan or advance Trustee's own funds to any trust provided for in this Agreement, for any trust purpose, and to charge for such loan or advance, the rate of interest that Trustee, at the time such loan or advance is made, would have charged had such loan or advance been made to a person not connected with such trusts having a net worth equal to the value of the principal of such trust. Any such loan or advance, together with the interest accruing on such loan or advance, shall be a first lien against the principal of the trust to which such loan or advance is made, and shall be repaid from the income or principal of such trust as in the discretion of the Trustee appears for the best interests of such trust and its beneficiaries.

16.     The Trustee is authorized to purchase securities or other property from and to make loans and advancements from the Trust Estate, with or without security to the executor or other representative of the estate of the deceased spouse.

17.     The Trustee may hold securities or other property held by Trustee in trust pursuant to this Agreement in Trustee's name, as Trustee under this Agreement, in Trustee's own name without a designation showing it to be Trustee under this Agreement, or in the name of Trustee's nominee, or the Trustee may hold such securities unregistered in such condition that ownership will pass by delivery.

# EXHIBIT 2

# FIRST AMENDMENT

# TO

# THE STEINMANN TRUST

THIS FIRST TRUST AMENDMENT is entered into by **HEINZ H. STEINMANN** and **LORA R. STEINMANN**, as Trustors, and HEINZ H. STEINMANN, LORA R. STEINMANN and ERIC STEINMANN, as co-Trustees (hereinafter referred to as "Trustee"). For all purposes hereunder, the words "we", "us", "our", "their", and similar pronouns, shall refer to Trustors HEINZ H. STEINMANN and LORA R. STEINMANN and shall be construed as the possessive when the context would so indicate.

WHEREAS, on January 8, 2016, we did create and execute a revocable inter-vivos trust known as THE STEINMANN TRUST;

WHEREAS, said trust reserved to us the right and power to make amendments to said trust; and,

WHEREAS, we now desire to amend our trust in the manner hereinafter set forth,

NOW, THEREFORE, IN CONSIDERATION OF THESE PREMISES AND OTHERS, IT IS AGREED AS FOLLOWS:

1.      That subparagraph (a) of Paragraph 2 of Section D of Article V of said Trust Agreement shall be, and the same is hereby cancelled, annulled and rescinded and in lieu thereof the following shall be, and the same is hereby substituted:

(a)      It is Trustors' intention hereby to disinherit their daughter ANDREA DOWNS and she shall not be included in any distribution from this Trust, neither income nor principal.  With this exception of ANDREA DOWNS, the Trustee shall divide and distribute the remaining trust assets as follows:

The Trustee shall divide the trust estate into equal shares for Trustors' living children and distribute each such share outright and free of trust to each child under the terms hereof. To the extent any child is indebted to either of the Trustors the amount of such indebtedness shall be paid to the trust.  The Trustee shall have the ability in making the equal distributions to the children to provide that some or all of them may bid upon the purchase of a particular parcel or parcels based upon a valuation of fair market value by a MAI or other professionally qualified appraiser.  A group of children can bid if they desire to do so with the highest bid to prevail.  The proceeds of sale shall be equally divided among the children.  Should there be no bidders within a time period set in the

discretion of the Trustee (not to exceed two (2) years), the real property shall be placed on the market for sale.  These provisions shall apply to property completely owned in the trust.  In properties which are owned in tenancy in common, the persons owning an interest may bid as set forth above.

2.    Pursuant to §21310, et. seq., of the California Probate Code, in the event any beneficiary under the above referenced Trust Agreement shall, singly or in conjunction with any other person or persons, undertake any of the following actions then the right of that person to take any interest given him or her by said Trust Agreement shall be determined as it would have been determined had the person predeceased us without being survived by issue:

    (1)    Contests in any court the validity of this Amendment;

    (2)    Seeks to obtain adjudication in any proceeding in any court that this Amendment, or any of its provisions, are void, except to the extent permitted by §21380 of the California Probate Code; and/or,

    (3)    Seeks otherwise to set aside this Amendment.

    If California law governs the foregoing provisions of this Paragraph, then California Probate Code §21311 shall apply and the foregoing provisions of this Paragraph may only be enforced against the following types of contests:

    (1)    a direct contest that is brought without probable cause;

    (2)    a pleading to challenge a transfer of property on the grounds that it was not the transferor's property at the time of the transfer; and/or,

    (3)    the filing of a creditor's claim or prosecution of an action based on it.

    The terms "direct contest" and "pleading" have the same meanings as set forth in California Probate Code §21310. All trusts created in this Amendment and/or in said Trust Agreement are "protected instruments" as provided in California Probate Code §21310(e).

3.    Except for the changes hereinabove set forth, the provisions of said Trust Agreement dated January 8, 2016, shall be, and the same are hereby ratified and confirmed.

Executed on _May 2, 2016_ , 2016, in San Bernardino County, California.

**HEINZ H. STEINMANN,**
Trustor/Trustee

**LORA R. STEINMANN,**
Trustor/Trustee

**ERIC STEINMANN,**
Trustee

Amendment: Page 2

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA

COUNTY OF SAN BERNARDINO

On __May 7, 2016__, 2016, before me, __Stephanie Lynn Carroll__, a Notary Public, personally appeared HEINZ H. STEINMANN, LORA R. STEINMANN and ERIC STEINMANN, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____
Notary Public Signature

STEPHANIE LYNN CARROLL
Commission # 2053363
Notary Public - California
San Bernardino County
My Comm. Expires Dec 26, 2017

Notary Public Seal

# Declaration of Justin S. Draa

I, JUSTIN S. DRAA, say and declare as follows:

1.      I am an individual over 18 years of age and competent to make this Declaration.

2.      The facts set forth below are true of my personal knowledge.  If called upon to do so, I could and would competently testify as to the facts set forth in this Declaration.

3.      I am an attorney at law duly admitted to practice before this Court and all courts of the State of California.

4.      I am a partner in the law firm of DiBenedetto, Lapcevic & Draa LLP, counsel for Defendants in connection with the instant motion for sanctions.

5.      On September 23, 2020, Defendants' counsel served this Motion on Trustee in accordance with Federal Rule of Bankruptcy Procedure 9011(c)(1)(A). Attached hereto as Exhibit "3" is a true and correct copy of the originally served safe-harbor motion, along with the corresponding proof of service.

6.      The instant Motion along with its supporting evidence and argument are identical in substance to the originally served safe-harbor motion.  The only difference is the necessary update/revisions to the caption page, signature page, and this declaration (submitted in the stead of Defendants' previous counsel, Ed Hays).

I declare under penalty of perjury that the foregoing is true and correct. Executed on July 8, 2021.


_____/S/_____
JUSTIN S. DRAA

DECLARATION OF JUSTIN S. DRAA

DOCS 127019-000001/4210006.2

# EXHIBIT 3

D. Edward Hays, SBN 162507
ehays@marshackhays.com
Laila Masud, SBN 311731
lmasud@marshackhays.com
MARSHACK HAYS LLP
870 Roosevelt
Irvine, California 92620
Telephone: (949) 333-7777
Facsimile: (949) 333-7778

Attorneys for Defendants,
Lora Rae Steinmann, Heinz H. Steinmann,
and Eric Steinmann

Gerald P. Kennedy, SBN 105887
Email: gerald.kennedy@procopio.com
PROCOPIO, CORY, HARGREAVES &
SAVITCH LLP
525 B Street, Suite 2200
San Diego, CA 92101
Telephone: 619.238.1900
Facsimile: 619.235.0398

Attorneys for Defendants,
Susanna Steinmann Wilson, Thomas
Steinmann, John Steinmann, and Mary
Steinmann Sypkens

E. Scott Palmer (SBN 155376)
Email: scott@palmerhunter.com
PALMER HUNTER, & HALL
624 South Grand Ave., Ste. 2200
Los Angeles, CA 90017-3323
Telephone: 213.629.8704
Facsimile: 213.629.8703

Attorneys for Defendants,
Teresa Steinmann Stapleton, Katy Steinmann
Belknap, Jeff Steinmann, and Heinz J.
Steinmann

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION

| | |
|---|---|
| In re | Case No. 8:16-bk-12589-SC |
| ANDREA STEINMANN DOWNS, | Chapter 7 |
| Debtor. | Adv. No. 8:18-ap-01168-SC |
| THOMAS H. CASEY, Chapter 7 Trustee for the bankruptcy estate of Andrea Steinmann Downs, | MOTION FOR SANCTIONS UNDER RULE 9011 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATIONS OF ERIC STEINMANN AND D. EDWARD HAYS IN SUPPORT |
| Plaintiff, | |
| v. | |
| LORA RAE STEINMANN, HEINZ H. STEINMANN, ERIC STEINMANN, MARY (SYPKENS) STEINMANN, JOHN STEINMANN, TESSIE (STAPLETON) STEINMANN, KATY (BELKNAP) STEINMANN, HEINZ STEINMANN, JEFF STEINMANN, TOM STEINMANN, AND SUSIE (WILSON) STEINMANN, | Hearing Date to be set if Complaint Not Dismissed: |
| | Date: |
| | Time: |
| | Ctrm: |
| Defendants. | |

1

1

**TABLE OF CONTENTS**

2  1.  Summary of Argument ...........................................................................2

3  2.  Relevant Factual Background ..............................................................4

4  A.  Non-Dischargeable Judgment Against Debtor Due to a Failed Business
5      Venture Involving an Animated Children's TV Series...............................4

6  B.  This Unmeritorious Adversary Against 11 Members of Debtor's Family
       Including Debtor's 80+ Year Old Parents ...........................................6

7
8  C.  The Motions to Dismiss and BAP Ruling That the Bankruptcy Court Did Not
       Make a Determination of a Crucial Fact.............................................11

9  D.  Trustee and Creditors Have Conducted Extensive Discovery.....................12

10 3.  Legal Argument ..................................................................................15

11 A.  Sanctions are appropriate under FRBP 9011 .......................................15

12     i.  The "safe harbor" has been provided.............................................15

13     ii. Sanctions should be imposed for claims presented for an improper
14         purpose under FRBP 9011(b)(1)...............................................16

15     iii. Sanctions should be imposed for assertion of claims unwarranted by
16          existing law under FRBP 9011(b)(2)........................................16

17         a)  As a matter of California and Ninth Circuit law, it is frivolous to
               assert that an unvested interest in a revocable *inter vivos* trust
18             constitutes a property interest. ..........................................17

19         b)  The Claim for Imposition of a Resulting Trust Likewise Fails ..........20

20     iv. Sanctions should be imposed for assertion of a frivolous
           argument for modification or extension of law under FRBP
21         9011(b)(2) ....................................................................21

22     v.  If the Court is inclined to award monetary sanctions, Defendants
23         request the award be payable as a super-priority administrative
           claim against the Estate....................................................21

24 B.  Sanctions are Appropriate Under the Local Bankruptcy Rules..................22

25 4.  Conclusion .......................................................................................24
26

27

28

# TABLE OF AUTHORITIES

**Cases**

*Anwar v. Johnson,*

   720 F.3d 1183, 1189 (9th Cir. 2013) .................................................................23

*Arluk Medical Center Industrial Group, Inc. v. Dobler,*

   116 Cal.App.4th 1324, 1331-32 (2004).........................................................9, 18

*Burton v. Ulrich (In re Schmitt),*

   215 B.R. 417, 422 (B.A.P. 9th Cir. 1997) ..........................................................18

*Butner v. United States,*

   440 U.S. at 54 ....................................................................................................6, 9

*Chambers v. NASCO, Inc.,*

   501 U.S. 32, 43-45 (1991).................................................................................22

*Christian v. Mattel, Inc.,*

   286 F.3d 1118, 1127 (9th Cir. 2002) .................................................................17

*Crook v. Contreras,*

   116 Cal.Rptr.2d 319, 330 (Cal. Ct. App. 2002)................................................10

*Cutter v. Seror (In re Cutter),*

   398 B.R. 6, 20-21 (B.A.P. 9th Cir. 2008)..........................................................19

*De Dios v. International Realty & RC Investments,*

   641 F.3d 1071, 1076-77 (9th Cir. 2011)............................................................16

*Drye v. United States,*

   528 U.S. 49, 120 S. Ct. 474 (1999) .....................................................................8

Estate of Giraldin,

   55 Cal. 4th 1058, 1062 (2012).......................................................................9, 19

*Estate of Giraldin,*

   55 Cal.4th 1058, 1065-66 (2012).......................................................................18

*Giebelhaus v. Spindrift Yachts,*

   938 F.2d 962, 965 (9th Cir. 1991) .....................................................................17

MOTION FOR SANCTIONS

*Heifetz v. Bank of America Nat'l Trust & Savings Ass'n,*

    305 P.2d 979, 983 (Cal. Ct. App. 1957) ...................................................................... 9

*Hoeft v. Supreme Lodge Knights of Honor*, et al..,

    113 Cal. 91 (1896) ...................................................................................................... 19

*In re Cedar Funding, Inc.*,

    408 B.R. 299, 314 (2009) ...................................................................................... 10, 20

*In re Debs*,

    158 U.S. 564, 594, 15 S. Ct. 900, 910, 39 L. Ed. 1092 (1895)...................................... 14

*In re Giordano*,

    212 B.R. 617, 622 (9th Cir. BAP 1997) ...................................................................... 15

*In re Golden Triangle Capital, Inc*.,

    171 B.R. 79, 83 (9th Cir. BAP 1994) .......................................................................... 10

*In re Golden Triangle Capital, Inc*.,

    171 B.R. 79, 83 (9th Cir. BAP 1994) .......................................................................... 20

*In re Grantham Bros.*,

    922 F.2d 1438, 1443 (9th Cir. 1991) ........................................................................... 16

*In re Schmitt,*

    215 B.R. 417, 422 (9th Cir. BAP 1997) ........................................................................ 9

*Johnson v. Kotyck,*

    76 Cal.App.4th 83, 88 (1999) ..................................................................................... 18

*Kadjevich v. Kadjevich (In re Kadjevich),*

    220 F.3d 1016, 1020 (9th Cir. 2000) ........................................................................... 22

*Kosmala v. Cook (In re Cook),*

    2008 Bankr. LEXIS 4728 (B.A.P. 9th Cir. 2008) (no. CC-08-1091-HMoD) .............. 8, 21

*Laycock v. Hammer,*

    44 Cal. Rptr. 3d 921, 924 (Cal. Ct. App. 2006)........................................................... 9, 12

*Lloyds Bank California v. Wells Fargo Bank,*

    187 Cal.App.3d 1038, 1042-43, 232 Cal.Rptr. 339 (1986) ............................................ 10

DOCS 127019-000001/4210006.2

1   *Mazzera v. Wolf,*

2      30 Cal. 2d 531, 537 (1947) ........................................................................................10

3   *MC Asset Recovery LLC v. Commerzbank A.G. (In re Mirant Corp.),*

4      675 F.3d 530 (5th Cir. 2012) .........................................................................................7

5   *Moultrie v. Wright,*

6      154 Cal. 520, 98 P. 257 (1908) ...............................................................................11, 20

7   *Reading Co. v. Brown,*

8      391 U.S. 471, 483-85 (1968) .......................................................................................22

9   *Smyth v. City of Oakland (In re Brooks-Hamilton),*

10      271 Fed.Appx. 654 (9th Cir. 2008) ............................................................................17

11   *Steinhart v. County of Los Angeles,*

12      47 Cal.4th 1298, 1319-20 (2010) ...........................................................................18, 19

13   Steinhart v. Cty. of L.A.,

14      47 Cal. 4th 1298, 104 Cal. Rptr. 3d 195, 223 P.3d 57 (2010) .....................................9

15   *Stern v. Marshall,*

16      564 U.S. 462, 496 (2011) ............................................................................................18

17   *Tepper v. Wilkins,*

18      10 Cal.App.5th 1198, 1206 (2017) .............................................................................18

19   *Townsend v. Holman Consulting Corp.,*

20      914 F.2d 1136, 1140 (9th Cir. 1990) ..........................................................................16

21   *Truesdell v. S. Cal. Permanente Medical Group,*

22      293 F.3d 1146, 1152-53 (9th Cir. 2002).....................................................................15

23   *United States Small Business Admin. v. Bensal,*

24      853 F.3d 992, 1000 (9th Cir. 2017) ....................................................................8, 9, 18

25   *United States v. Harris,*

26      854 F.3d 1053, 1055 (9th Cir. 2017) ..........................................................................18

27   *Weilert v Gwartz,*

28      2016 Bankr. LEXIS 2538 (B.A.P. 9th Cir. July 8, 2016)..............................................9

MOTION FOR SANCTIONS

*Westinghouse Elec. Corp. v. Newman & Holtzinger, P.C.,*

   992 F.2d 932, 934-35 (9th Cir. 1993) ............................................................................. 14

*Winterrowd v. American General Annuity Insurance Co.,*

   556 F.3d 815, 826 (9th Cir. 2009) ................................................................................... 15

*Winterton v. Humitech of Northern California, LLC (In re Blue Pine Group, Inc.),*

   457 B.R. 64, 75 (B.A.P. 9th Cir. 2011) ........................................................................... 17

*Wolf v. Collins (In re Collins),*

   2014 Bankr. LEXIS 4395, at *7-8 (Bankr. S.D. Cal. 2014) ....................................... 11, 20

*Zaldivar v. City of Los Angeles,*

   780 F.2d 823, 829 (9th Cir. 1986) ................................................................................... 16

*Zimmermann v. Spencer,*

   306 B.R. 328 (Bankr. C.D. Cal. 2004) ............................................................................ 6, 9


**Statutes**

11 U.S.C. § 503(b)(1)(A) ...................................................................................................... 22

11 U.S.C. § 544 ..................................................................................................................... 17

11 U.S.C. §§ 544, 548 ............................................................................................................. 6

11 U.S.C. §544(b)(1) ............................................................................................................... 7

11 U.S.C. §548 ........................................................................................................................ 7

28 U.S.C. § 3002(12) ............................................................................................................ 18

28 U.S.C. § 3304(a) .............................................................................................................. 17

28 U.S.C. § 3305(4) ......................................................................................................... 17, 19

28 U.S.C. § 3306(a)(1) .......................................................................................................... 17

28 U.S.C. §§3001-3308 ........................................................................................................... 7

28 U.S.C. §3302(12) ................................................................................................................ 7

28 U.S.C. §3306 ....................................................................................................................... 7

Cal. Prob. Code § 15400 ..................................................................................................... 9, 12

MOTION FOR SANCTIONS

Cal. Prob. Code §§ 16069, 18200 .................................................................................................11

Cal. Prob. Code § 16069 ..............................................................................................................19

Cal. Prob. Code § 18200 ................................................................................................................9

California Civil Code § 3439 ..........................................................................................................7

California Civil Code § 700 ............................................................................................................6

**Other Authorities**

Federal Debt Collection Procedures Act, 28 U.S.C. §§ 3301 .......................................................17

**Rules**

Fed. R. Bank. Proc. 2004 ..............................................................................................................12

Fed. R. Bank. Proc. 9011(c)(1)(A) ...............................................................................................14

Fed. R. Bankr. Proc. 9011 .............................................................................................................22

Fed. R. Bankr. Proc. 9011(b)(1) ...................................................................................................16

Fed. R. Bankr. Proc. 9011(b)(1)-(2) .............................................................................................15

Fed. R. Bankr. Proc. 9011(b)(2) ...................................................................................................16

Fed. R. Bankr. Proc. 9011(c) ........................................................................................................15

Fed. R. Bankr. Proc. 9011(c)(1)(A) ..............................................................................................15

Fed. R. Bankr. Proc. 9011(c)(2) ...................................................................................................21

Fed. R. Civ. P. 37(b)(2)..................................................................................................................14

LBR 1001-1(f) ...............................................................................................................................22

LBR 9011-3(a)................................................................................................................................23

MOTION FOR SANCTIONS

DOCS 127019-000001/4210006.2

1  TO THE HONORABLE SCOTT C. CLARKSON, UNITED STATES BANKRUPTCY JUDGE,

2  PLAINTIFF, AND ALL INTERESTED PARTIES

3      Defendants Lora Rae Steinmann ("Mrs. Steinmann"), Heinz H. Steinmann ("Mr. Steinmann"

4  and with Mrs. Steinmann, collectively "Parents"), and Eric Steinmann ("E. Steinmann," and with

5  Mrs. Steinmann and Mr. Steinmann the "Steinmann Defendants"),  and Teresa Steinmann Stapleton,

6  Katy Steinmann Belknap, Jeff Steinmann, Heinz J. Steinmann, Susanna Steinmann Wilson, Thomas

7  Steinmann, John Steinmann and Mary Sypkens (collectively the "Sibling Defendants," and with the

8  Steinmann Defendants, collectively "Defendants" or the "Steinmann Family"), move the Court for

9  sanctions pursuant to Rule 9011 of the Federal Rules of Bankruptcy Procedure because the complaint

10 ("Complaint") filed in this adversary action ("Action") by Thomas H. Casey, in his capacity as the

11 Chapter 7 trustee ("Trustee") for the bankruptcy estate ("Estate") of Debtor Andrea Steinmann

12 Downs ("Debtor"), and in which creditors, HAUSMAN HOLDINGS, LLC, DAVID

13 MOELLENHOFF, and PAMELA MOELLENHOFF have intervened and financed ("Creditors," and

14 collectively with Trustee, "Plaintiffs"), is neither well-grounded in fact nor supported by existing law.

15 **1.      Summary of Argument**

16      The Court may impose sanctions if it determines that a party has failed to dismiss a frivolous

17 and legally unwarranted pleading. In this case, prior to bankruptcy, Debtor's parents amended their

18 revocable *inter vivos* trust[1] ("Trust") and removed Debtor as a beneficiary.[2] Debtor's parents, as the

19 settlors of their *inter vivos* Tust, had an unconditional right to remove revocable beneficiaries. Even

20 though Debtor never had property rights in the revocable Trust, the Trustee through counsel filed the

21 Complaint to "avoid" Debtor's termination as a revocable beneficiary. Binding Ninth Circuit and

22 California cases, however, have unanimously held that a beneficiary of a revocable *inter vivos* Trust

23 never acquires rights in property while the settlors are still living. As such, the fraudulent transfer and

24 resulting trust claims in the Complaint are neither well-grounded in fact nor supported by existing

25 law.

26 _____

27 [1] The Trust is clear on its face that it is revocable. *See*, Exhibit "1" to the Declaration of Eric
   Steinmann.

28 [2] The Trust Amendment is attached as Exhibit "2" to the Declaration of Eric Steinmann.

1    This Action has been pending for more than two years. During this time, Plaintiffs have failed

2  to identify any facts or law supporting the claims in the Complaint. As such, not only was the

3  Complaint completely unwarranted when filed, it remains even more sanctionable now that Plaintiffs

4  have had years to research and conduct discovery. Instead of accepting that this Action has no merit,

5  Creditors have funded the Trustee's continued prosecution of what is effectively a "shake-down" by

6  loaning money to the Estate to pay Chapter 7 administrative claims. Even after Defendants engaged

7  in multiple sessions of mediation in a good faith effort to resolve this matter, no settlement of the

8  Estate's alleged claims could be reached.[3]

9    Rather than seeking to discover any facts to support the alleged claims in the Complaint,

10 Plaintiffs have instead focused the voluminous discovery over the past two years on intrusive efforts

11 to identify all of Debtor's Parents' assets (which never constituted Debtor's property) for the purpose

12 of harassing and attempting to extort a settlement. Despite raising financial privacy and relevance

13 objections regarding the identification and value of Debtor's parents' wealth, including citation to

14 California law that trustors of a revocable trust have no duty to account for property to a beneficiary

15 (let alone a former beneficiary), the Court required the parents' financial information to be produced

16 but protected the acknowledged rights of privacy by requiring such financial information be filed

17 under seal pursuant to a protective order. Yet, on September 18, 2020, Creditors filed documents in

18 the Action that were clearly marked "confidential" and which included balance sheets detailing the

19 identification and value of all of the Parents' assets.[4] Publicly disclosing the assets including bank

20 account numbers of an elderly couple endangers their personal safety and financial security. Through

21 PACER, this information, detailing all assets, balances, and accounts was available for the public to

22 view.

23 / / /

24

25 _____

26 [3] The Hon. Mitchel R. Goldberg (Ret.) presided over multiple mediation sessions in the spring and summer of 2020.

27 [4] After demand was made by Defendants' counsel on September 18, 2020, Creditors filed an emergency motion on September 21, 2020, seeking to restrict public access to this detailed financial
28 information. On September 21, 2020, the Court granted the emergency motion. Unfortunately, by this point the information had been publically available for approximately 72 hours.

1    To fund this assault on Debtor's family, Creditors have also made a non-recourse loan of

2  $250,000 to the Estate and have allegedly promised to make additional loans.[5] To date, Creditors

3  have irrationally spent more than $5 million seeking to enforce payment of their original $750,000

4  investment. The Estate, however, is not excused from liability for malicious prosecution solely

5  because Creditors are abusing process by paying them. The Steinmann Family has already incurred

6  substantial damage because of this meritless action including attorneys' fees, costs, and the risk to

7  their safety caused by the public disclosure of a roadmap detailing the location and amount of their

8  assets. The time has come for this Action to be dismissed by Plaintiffs or ordered dismissed by the

9  Court for violating Rule 9011.

10    If Plaintiffs fail to take advantage of the "safe harbor" provided by the service of this Motion

11  prior to its filing, Defendants respectfully request that the Court issue an order (i) dismissing the

12  Complaint; and (ii) imposing monetary sanctions against the Estate and Creditors in the amount of all

13  attorneys' fees and costs incurred from and after the expiration of the safe harbor until this action is

14  dismissed and all personal financial information is returned or destroyed by Plaintiffs and their

15  attorneys. The sanctions against the Estate should be in the form of a super-priority Chapter 7

16  administrative expense claim. The sanctions should also be imposed jointly and severally against

17  Creditors.

18  **2.    Relevant Factual Background**

19    **A.    Non-Dischargeable Judgment Against Debtor Due to a Failed**

20       **Business Venture Involving an Animated Children's TV Series**

21    To understand why this action is being pursued, the Court must first understand the Creditors'

22  role and their relentless pursuit of a claim against Debtor for an investment of $750,000, that they

23  have since spent upwards of $5 million dollars to collect (with no end in sight).[6] This defies all

24  _____

25  [5] Trustee's counsel filed its first interim fee application on August 6, 2019, as Dk. No. 696,
   requesting fees in excess of $423,000 for services rendered through July 31, 2019. In a motion

26  seeking payment of previously allowed but unpaid fees filed on March 17, 2020, as Dk. No. 795,
   Trustee's counsel represented to the Court that it would "file its second interim fee application in the

27  next few weeks." Because no second interim application has yet to be filed, the amount of fees
   incurred by Trustee's counsel on and after August 1, 2019, remains unknown.

28  [6] These facts can be found in filings by Creditors in the bankruptcy, Dk No. 376, Case No. 8:16-
   12589-SC, as well as Dk. No. 1 in their non-dischargeability action, Adversary Case No. 8:17-ap-
   01235 ("Dischargeability Action").

4

1  rational explanation except that they want to inflict harm on Debtor and her family by misusing the

2  bankruptcy court as a weapon.

3      In 2010, Creditors made a $750,000 investment ("Funds") in a company called Happenstance

4  ("Company"). The purpose of the Funds was to create an animated children's television series called

5  Bug Rangers. It was through Debtor, who was one of the managers of the Company, that Creditors

6  contributed the Funds. Due to a variety of reasons, the television series never made it to air. In

7  January 2013, Creditors filed an action against the Company and its managers including Debtor and

8  proceeded to aggressively litigate to the point that Debtor had no more funds to defend herself.

9      In June 2016, Debtor filed for Chapter 11 bankruptcy. Ultimately, in May 2017, a judgment

10  was entered in state court against the Company and its managers, including Debtor, for (i) $900,000

11  in compensatory damages; and (ii) $280,000 in punitive damages. Thereafter, in September 2017, the

12  state court held that Debtor was also subject to the prevailing party attorneys' fee provision in the

13  loan agreements.

14      In December 2017, Creditors filed their complaint against Debtor in the Dischargeability

15  Action, seeking to have all amounts owed to them excepted from discharge. In September 2018, the

16  bankruptcy court entered a non-dischargeable judgment against Debtor in the amount of $4,594,473

17  ("523 Judgment").

18      During the two years that have passed since entry of the 523 Judgment, Creditors have

19  continued to incur attorneys' fees and costs by either filing suit, encouraging suit, or intervening in

20  suit against anyone and everyone with the last name Steinmann. In their irrational pursuit, Creditors

21  (i) contributed $250,000 to the Estate for the Trustee to prosecute this meritless action, (ii) allegedly

22  offered to loan the Estate more; and (iii) and sought allowance of administrative priority claims

23  against the Estate of additional attorneys' fees and costs fees in the amount of $531,645.08, along

24  with a prior sanctions award against Debtor (for actions taken by her counsel) in the amount of

25  $74,772. (Dk Nos. 243, and 924, Case No. 8:16-12589-SC).

26      Lastly, even though Debtor was represented by the well-regarded firm of Brown Rudnick

27  LLP in her appeal of the state court judgment pursuant to a flat fee agreement that was not paid from

28  estate property, Creditors convinced the Trustee to settle the appeal for a *de minimis* discount. *See*,

1  Dk. No. 399, pp. 9-10 which provided creditors with allowed claims totaling in excess of $4.5 million

2  after the "discount." By settling the appeal, the Estate lost any chance of minimizing or eliminating

3  the judgment even though the cost of prosecuting the appeal had already been paid by Debtor's

4  mother.

5      **B.    This Unmeritorious Adversary Against 11 Members of Debtor's**

6          **Family Including Debtor's 80+ Year Old Parents**

7          In bankruptcy, a Chapter 7 trustee can avoid a transfer of an interest of the debtor in property.

8  11 U.S.C. §§ 544, 548. Whether a debtor has an interest in property is determined by state law.

9  *Butner v. United States, infra.* Under California law, the interest of a beneficiary in a revocable living

10  trust does not constitute property – rather it's a **_mere expectancy_** that does not become property of a

11  bankruptcy estate. *Zimmermann v. Spencer (In re Spencer)*, 306 B.R. 328, 332 (Bankr. C.D. Cal.

12  2004, J. Goldberg) ["**_because at the time of the Petition, the Trust was fully revocable by the_**

13  **_Trustor and 'neither [Debtor's] creditors nor transferees had any right to rely upon_**

14  **_the Trust for the satisfaction of their claims.'_**" (Emphasis added.)]. *See also*, Civil Code § 700 ("A

15  mere possibility, such as the expectancy of an heir apparent, is not to be deemed an interest of any

16  kind").

17          In this case, prior to bankruptcy, Debtor's parents, Defendants Mr. Steinmann and Mrs.

18  Steinman ("Parents"), -- <u>not Debtor</u> -- removed Debtor as an unvested revocable beneficiary from

19  their revocable living Trust.  After Debtor's Chapter 11 case was converted to Chapter 7, and almost

20  on the very last day an avoidance action could be filed, the Trustee at the urging of Creditors, filed

21  this adversary action ("Adversary"). The named Defendants are Debtor's Parents, her brother Eric

22  Steinmann who was the other named trustee of the Trust, and all of her siblings who remained

23  revocable beneficiaries under the Trust (collectively, "Sibling Defendants").

24          In the Complaint, Plaintiffs seek to (a) avoid what they claim was an alleged *"transfer"* of

25  *"property"* when Debtor was removed as a revocable beneficiary or the revocable Trust, and

26  (b) impress a *"resulting trust"* on the claimed increased revocable beneficial interests purportedly

27  received by the Sibling Defendants who remained revocable beneficiaries.

28  / / /

MOTION FOR SANCTIONS

DOCS 127019-000001/4210006.2

1    Because the Parents retained (and still retain) all beneficial interests in their property because

2  it was held in a revocable Trust, there was never a transfer of property as required for the Trustee to

3  rely on Section 544(b)(1) ["the trustee may avoid any transfer of an interest of the debtor in

4  property…that is voidable under applicable law by a creditor holding an unsecured claim that is

5  allowable under section 502 of this title."]. Debtor, however, never had any property rights in her

6  parents' assets because her parents were still alive (and they are still alive today).

7    In fact, had Debtor's parents not terminated her interest, the courts in the Ninth Circuit have

8  **unanimously** held that a debtor's interest on the petition date as a beneficiary of a revocable trust

9  does not become property of a bankruptcy estate even if the trustors die within 180 days after the

10  petition date. *Spencer, supra*. As such, no purpose is being served in this case by avoiding and

11  recovering an interest that would nevertheless still not constitute property of the estate.

12    In a tacit admission that Debtor had no property rights that could be transferred, the complaint

13  did not assert any claim based on 11 U.S.C. § 548 or California Civil Code § 3439 *et seq*. The Trustee

14  and Creditors instead attempted to invoke the provisions of the Federal Debt Collection Procedures

15  Act ("FDCPA") codified in 28 U.S.C. §§ 3001-3308. Under 28 U.S.C. § 3306, the federal

16  government can avoid a debtor's transfer of an interest in property to the extent necessary to satisfy

17  its claim. The term "property" means "any present or future interest, whether legal or equitable, in

18  real, personal (including choses in action), or mixed property, tangible or intangible, vested or

19  contingent, wherever located and however held…" 28 U.S.C. § 3302(12).

20    First, it's important to note that the federal government's triggering claim was a $200 proof of

21  claim filed by the IRS that has since been paid and no longer remains a claim against the estate. As

22  such, there is no longer a federal government claim that that can serve as the basis for the Trustee to

23  rely on the FDCPA.

24    Second, it is an unsettled issue of law whether a bankruptcy trustee can even use the federal

25  government's powers to avoid transfers under the FDCPA. The only Circuit Court which has

26  considered the issue held that a bankruptcy trustee may not do what Trustee is purporting to do in this

27  case. *See, MC Asset Recovery LLC v. Commerzbank A.G. (In re Mirant Corp.)*, 675 F.3d 530 (5th

28  Cir. 2012).

DOCS 127019-000001/4210006.2

1    Lastly, even if the FDCPA remains applicable non-bankruptcy law after the government's

2   claim has been paid, the definition of property under Section 3302(12) would still not extend to an

3   interest in a revocable trust because the Ninth Circuit has held that state law defines property rights

4   for purposes of the FDCPA. In *United States Small Business Admin. v. Bensal*, 853 F.3d 992, 1000

5   (9th Cir. 2017).

6    In *Bensal*, the Ninth Circuit adopted the standards articulated by the United States Supreme

7   Court in *Drye v. United States*, 528 U.S. 49, 120 S. Ct. 474 (1999) for determining whether "state-

8   delineated rights" constitute property for purposes of avoiding transfers of "property" under the

9   FDCPA.

10    "Applying the analytical framework set forth in *Drye*, we look 'to state law to
      determine what rights the [debtor] has in the property the Government seeks to reach,
11    then to federal law to determine whether the [debtor's] state-delineated rights qualify
      as 'property' or 'rights to property' within the compass of the [FDCPA].'"
12

13  *United States Small Business Admin. v. Bensal*, 853 F.3d 992, 1000 (9th Cir. 2017).

14    In *Bensal* and *Drye*, disclaimers of inheritances were set aside as fraudulent transfers under

15   the FDCPA notwithstanding state laws that provided that such disclaimers were not transfers for

16   fraudulent transfer purposes. The Courts found that once a right to receive an inheritance <u>vested</u>, the

17   obligors had rights in property under state law. When they disclaimed such <u>vested</u> rights, it

18   constituted a transfer of rights in property under federal law that was avoidable notwithstanding

19   contrary state law.

20    In this case, however, Debtor had <u>no vested rights in property</u> because under California law,

21   until the settlors die, a beneficiary of a revocable trust does not have <u>any</u> property rights. In *Cook*, the

22   Ninth Circuit BAP rejected a bankruptcy trustee's argument, that a debtor's interest in a revocable

23   trust at the time debtor filed for bankruptcy was property of the estate. *See, Kosmala v. Cook (In re*

24   *Cook*), 2008 Bankr. LEXIS 4728 (9th Cir. BAP 2008).[7]

25    In rejecting the argument, the BAP held that debtor's interest in the trust, at the time of his

26   bankruptcy filing, was a contingent beneficial interest in a revocable *inter vivos* trust and **<u>was not</u>**

27   _____

28   [7] Counsel for the Trustee in this case, Jeffrey I. Golden, was also counsel for the trustee in *Cook* who
     lost this very issue.

**property of the bankruptcy estate**. *Id*. at *16. Emphasis added. Citing *Schmitt*[8] and *Spencer*[9] the

BAP determined debtor's interest in a **revocable trust**[10] is **not** a vested property right until the

settlors die and the beneficial interest vests:

> "The Trustee tries to maneuver around this outcome by arguing for the adoption of a
> federal law definition of bequest, devise, or inheritance so that an inheritance includes
> all property transfers upon death. However, as we noted above, there is no bankruptcy
> case which supports the Trustee's argument. ***We conclude that no compelling***
> ***rationale has been provided in this case to depart from the general Butner principle***
> ***that the interest of a bankruptcy estate with respect to particular property is***
> ***determined under applicable state law***. *Butner v. United States*, 440 U.S. at 54. There
> is no basis to apply anything other than the general state law definitions of bequest,
> devise or inheritance in interpreting § 541(a)(5)."

*Id*. at *15. Emphasis added.

Again, a revocable beneficiary has no property rights. Instead, the interest of a revocable

beneficiary is "merely potential" and can "evaporate in a moment at the whim of the [settlor]."[11]

Because Debtor never had any "state-delineated" rights in property as a revocable beneficiary of her

parents' trust (as required by the Ninth Circuit in *Bensal*), the lawsuit fails as a matter of law.[12] ***This***

---

[8] *See, In re Schmitt,* 215 B.R. 417, 422 (9th Cir. BAP 1997).

[9] *See, Zimmermann v. Spencer (In re Spencer)*, 306 B.R. 328 (Bankr. C.D. Cal. 2004).

[10] California Probate Code § 18200 makes clear that ownership of property held in a revocable trust
remains with the settlors: "If the settlor retains the power to revoke the trust in whole or in part, the
trust property is subject to the claims of creditors of the settlor to the extent of the power of
revocation during the lifetime of the settlor." *See also*, *Weilert v. Gwartz (In re Weilert)*, 2016 Bankr.
LEXIS 2538 (B.A.P. 9th Cir. July 8, 2016) [debtor could claim exemption in property transferred to
revocable trust since she retained ownership of such property].

[11] *Steinhart v. Cty. of L.A.*, 47 Cal. 4th 1298, 104 Cal. Rptr. 3d 195, 223 P.3d 57 (2010); *See also,
Arluk Medical Center Industrial Group, Inc. v. Dobler*, 116 Cal. App. 4th 1324, 1331-32 (2004)
("[A] settlor with the power to revoke a living trust…retains full ownership and control over any
property transferred to the trust."); *Estate of Giraldin*, 55 Cal. 4th 1058, 1062 (2012) ("The
beneficiaries' interest in the [revocable] trust is contingent only, and the settlor can eliminate that
interest at any time"); and *In re Schmitt*, 215 B.R. 417, 422 (9th Cir. BAP 1997) ("[w]hen a trust
expressly reserves the power to change the beneficiaries, no one acquires any right under the trust
instrument, except the settlor[s] to administer the trust in accordance with its terms.").

[12] California Probate Code § 15400 creates a presumption of revocability in trusts, and expressly
provides that "[u]nless a trust is expressly made irrevocable by the trust instrument, the trust is
revocable by the settlor." Indeed, to determine if the Trust is instead irrevocable (or even ambiguous)
as the Trustee has argued, a court must look to the "**four corners**" of the Trust itself, and **not** any
alleged undisclosed intent of the Settlors. *Laycock v. Hammer*, 44 Cal. Rptr. 3d 921, 924 (Cal. Ct.
App. 2006) ("California courts that have considered [whether a trust is revocable or irrevocable] have
looked to the express terms of the trust instrument"); *Heifetz v. Bank of America Nat'l Trust &
Savings Ass'n*, 305 P.2d 979, 983 (Cal. Ct. App. 1957) ("[t]he nature and extent of the rights retained
by the trustor are to [be] measured by the four corners of the instrument"); and *Crook v. Contreras*,

9

DOCS 127019-000001/4210006.2

1    *issue is literally dispositive of this entire action. Plaintiffs cannot identify any state-delineated rights*

2    *in property that Debtor ever held. As such, there is nothing to avoid.*

3        Even if Debtor's Parents had never terminated her as a beneficiary, her revocable interest in the

4    Trust would not have become property of the estate. Thus, the Trustee cannot avoid and recover

5    something that never rose to the level of property and that would have never been property of the

6    estate under any circumstances.

7        The Complaint also includes a resulting trust claim against the Sibling Defendants that likewise

8    fails as a matter of law because a transfer of "property" is also a necessary element of such a claim

9    (e.g. a resulting trust arises after a transfer of property to another). Although Trustee has argued that

10   property interest determinations are not dispositive for a resulting trust claim, the law is to the

11   contrary. A resulting trust arises only when ownership of "property" is at issue. *In re Cedar Funding,*

12   *Inc.*, 408 B.R. 299, 314 (2009). It follows that a resulting trust cannot arise where, as here, "the

13   [D]ebtor never had rights in the [property]" in the first place. *See also*, *In re Golden Triangle Capital,*

14   *Inc.*, 171 B.R. 79, 83 (9th Cir. BAP 1994).

15       Under California law, "[a] resulting trust arises by operation of law *from a transfer of*

16   *pro****perty** under circumstances showing that the transferee was not intended to take the beneficial

17   interest.... Ordinarily a resulting trust arises in favor of the payor of the purchase price of the property

18   where the purchase price, or a part thereof, is paid by one person and the title is taken in the name of

19   another." *Lloyds Bank California v. Wells Fargo Bank*, 187 Cal.App.3d 1038, 1042-43, 232 Cal.Rptr.

20   339 (1986) (emphasis added). "A resulting trust, or "intent-enforcing trust," may arise where the

21   purchase price is paid by one person, in whole or in part, and the title is taken in the name of another."

22   *Mazzera v. Wolf*, 30 Cal. 2d 531, 537 (1947).

23       In rejecting a claim to impose a resulting trust in the absence of an underlying transfer of

24   property, the United States District Court for the Southern District of California recently stated:

25       "Defendants have cited no case, and the Court has found none, in which a resulting
         trust was upheld where there was no initial transfer of title.

26

27   116 Cal.Rptr.2d 319, 330 (Cal. Ct. App. 2002) ("Under California law, the existence or nonexistence
     of a right to revoke must be determined by examining the trust instrument and determining from

28   language used in the instrument whether the settlors intended . . . a right to revoke [the trust]"). A
     review of the Trust in this case reveals that it clearly states that it is revocable and there is absolutely
     no evidence to the contrary.

DOCS 127019-000001/4210006.2

1
2
3

> As noted above, state law determines property interests. The resulting trust cases date back at least to 1908. *See Moultrie v. Wright*, 154 Cal. 520, 98 P. 257 (1908). ***In the 105 years since, no California court has publicly imposed a resulting trust where there was no transfer of title***. This Court is not willing [*8] to extend this California state law beyond where the state courts have seen fit."

4 *Wolf v. Collins (In re Collins)*, 2014 Bankr. LEXIS 4395, at *7-8 (Bankr. S.D. Cal. 2014) (emphasis

5 added).

6      Plaintiffs allege that the Sibling Defendants are holding Debtor's "property" because their pro

7 rata interest as beneficiaries increased after Debtor was removed as a revocable beneficiary of the

8 revocable Trust.  There is absolutely no facts or law, however, to support a finding that an interest of

9 the Debtor in property was transferred. Moreover, there is no evidence that anyone intended for

10 Defendants to hold any of Debtor's property. In fact, all the Sibling Defendants will testify to the lack

11 of any alleged side agreement in declarations or depositions.

12 **C.**      **The Motions to Dismiss and BAP Ruling That the Bankruptcy Court**

13           **Did Not Make a Determination of a Crucial Fact.**

14      Because there was no transfer of property in which Debtor ever had an interest, and the claims

15 in this Adversary fail as a matter of law, Defendants filed motions to dismiss the complaint for failure

16 to state a claim because Debtor's unvested interest as a revocable beneficiary did not rise to the level

17 of property. Specifically, that Debtor's Parents' termination of her status as a revocable beneficiary

18 did not constitute a transfer of an interest in property. *See*, Cal. Prob. Code §§ 16069, 18200.

19      Although Trustee's complaint failed to state a plausible or cognizable claim, the bankruptcy

20 court denied Defendants' motions to dismiss. In making its ruling, the Court did not articulate any

21 findings or conclusions - which fact was recognized by the Bankruptcy Appellate Panel ("BAP") in

22 denying motions for leave to pursue interlocutory appeals.[13] Defendants have therefore been required

23 to expend substantial fees and costs defending this Adversary where the Trustee and Creditors have no

24 chance of prevailing.

25

26

---

27 [13] *See*, Dk. No. 118, in the Adversary, *Order Dismissing Appeals*, p. 2. ("Since **the bankruptcy court has not made a determination of crucial factual issues**, including the character of the trust, and

28 whether the trust is estate property under applicable state and federal law, the interests of judicial economy would not be served by granting leave to appeal.")

DOCS 127019-000001/4210006.2

1   In the more than two years since this Action was filed, there has been zero evidence to

2   overcome the presumption that a trust is deemed revocable unless expressly made irrevocable.

3   California Probate Code § 15400 ["[u]nless a trust is expressly made irrevocable by the trust

4   instrument, the trust is revocable by the settlor"]. *Laycock v. Hammer*, 44 Cal. Rptr. 3d 921, 924 (Cal.

5   Ct. App. 2006) ("California courts that have considered [whether a trust is revocable or irrevocable]

6   have looked to the express terms of the trust instrument"). Again, the Trust is clear on its face that it is

7   revocable. *See*, Exhibit "1."

## D.    Trustee and Creditors Have Conducted Extensive Discovery

9   During the two years this Adversary has been pending, and in particular, the almost **year and**

10  **half** since the ruling by the BAP, the Trustee and Creditors have conducted substantial discovery.

11  Because the discovery cut-off will not expire until October 30, 2020, Plaintiffs continue to propound

12  discovery. Yet, none of this discovery has led or will lead to any evidence in support of the alleged

13  claims.

14  Premised on the need to examine Mrs. Steinmann with regard to her knowledge of Debtor's

15  assets and financial affairs, the Trustee obtained a 2004 order[14] from the Court. Despite the pending

16  proceeding rule, Mrs. Steinmann was ordered to submit to examination both as to her knowledge (or

17  lack thereof) of Debtor's financial affairs as well as questions relating to the subject of the Adversary

18  - i.e. the Trust and its revocable nature.

19  During the examination, Trustee's counsel instead began asking questions relating to Mrs.

20  Steinmann's personal financial affairs and assets including the assets in the Trust. Counsel for Mrs.

21  Steinmann objected asserting rights to financial privacy and relevance. Based on well-established

22  law, a beneficiary, which is what Trustee seeks to become by way of the Complaint, does not have;

23  (1) the right to know the trust res; (2) the right to know the terms of the trust; (3) the right to sue

24  

---

25  [14] In the 2004 Motion, Trustee claimed a need to depose two elderly individuals over 80 miles from
their home: (1) Mr. Steinmann, an 86-year-old man, homebound due to Parkinson's disease and;
26  (2) Mrs. Steinmann, an 82-year-old woman unable to sit for more than thirty minutes due to risk of
deep venous blood clots and who was already been examined in the case by Intervenors pursuant to
27  FRBP 2004. *See*, Dk. Nos. 502 in Case No. 8:16-bk-12589-SC. Needless to say, the court ruled Mr.
Steinmann was prohibited from being examined and that Mrs. Steinmann would be only examined for
28  up to 4 hours in one sitting with liberal breaks to be provided as needed. *See*, Dk. No. 712, in Case
No. 8:16-bk-12589-SC.

DOCS 127019-000001/4210006.2

while the trust is revocable; and (4) the right to challenge the settlor's disposition of the trust assets.[15] All signs, guideposts, and authorities dictated that the Trustee did not have the right to invade Mrs. Steinmann's financial right to privacy and provide details of her assets.

Later, after Trustee and Creditors filed a motion to compel, the bankruptcy court recognized this right to privacy and ordered that Mrs. Steinmann's financial documents be produced under seal and her examination be subject to a protective order to not be made public. Notwithstanding finding that Mrs. Steinmann's personal finances should be protected by a protective order from becoming public, the Court found her refusal to disclose her personal finances to not be substantially justified. As such, the Court imposed sanctions against her. This order imposing sanctions was determined interlocutory but will be appealed after it becomes final. The sanctions were timely paid.

In compliance with the Court's order, Defendants produced detailed personal financial information despite the fact that it has no relevancy or bearing on the issues in this case. In fact, to date, Defendants have produced approximately 2,500 pages of documents detailing Debtor's parents' assets and financial information which should not be required under California Probate Code § 16069.

Despite having been provided with documents spanning decades including the 15-year period prior to the creation of the revocable Trust that is the subject of the Adversary,[16] on September 20, 2020, Creditors filed six more notices of service of subpoena[17] upon various financial institutions and third parties ("Subpoenas"). *See*, Dk Nos. 202-209. These public filings divulged the confidential information that was subject to a stipulated protective order entered in April 2020 including:[18]

---

[15] *See*, Dk. No. 745 in Case No. 8:16-bk-12589-SC for full arguments and legal citations.

[16] This number does not include documents produced by the other Sibling Defendants not represented by Marshack Hays LLP.

[17] Movants would like to note that some of the Subpoenas served on September 20, 2020 were in fact the **second** subpoenas be directed to a **previously subpoenaed entity**. Further, Movants are informed that Creditors and Trustee have served more almost a dozen additional subpoenas to various third-party entities, including entities that Mr. Eric Steinmann is associated with – but have nothing to do with this case. This is further evidence that this sanctionable lawsuit was only brought to further harass the Steinmann Family.

[18] *See*, Dk. No. 168, in the Adversary.

MOTION FOR SANCTIONS

DOCS 127019-000001/4210006.2

1  (i) financial statements detailing the assets and values of the parents' property; (ii) accounts numbers

2  for banking institutions; (iii) policy numbers for various life insurance policies; and (iv) details of real

3  property holdings. Three days later, Creditors filed an emergency motion to restrict public access

4  which was immediately granted by the Court.

5       The public disclosure of the Steinmann Family's confidential financial information

6  demonstrates the continued damage this sanctionable lawsuit has caused. ("The power of a court to

7  make an order carries with it the equal power to punish for a disobedience of that order, and the

8  inquiry as to the question of disobedience has been, from time immemorial, the special function of

9  the court." *In re Debs*, 158 U.S. 564, 594, 15 S. Ct. 900, 910, 39 L. Ed. 1092 (1895); *see also* Fed. R.

10  Civ. P. 37(b)(2) (providing federal courts with the authority to apply sanctions, including contempt,

11  for the failure to comply with discovery orders); *Id.* Advisory Committee Note, 1970 Amendment,

12  subdivision (b) ("Rule 37(b)(2) should provide comprehensively for enforcement of all [discovery]

13  orders," including Rule 26(c) protective orders.); *see*, *Westinghouse Elec. Corp. v. Newman &*

14  *Holtzinger, P.C.*, 992 F.2d 932, 934-35 (9th Cir. 1993)).

15       Overall, this meritless crusade against the Steinmann Family has not only cost them

16  substantial amounts of money to defend, but resulted in the public disclosure of highly confidential

17  financial information. Further, the repeated attempts at assassinating the character of the Steinmann

18  Family in numerous filings with the court has continued despite that fact that they have done nothing

19  wrong and are not the Debtor in this bankruptcy case.

20       On September 23, 2020, almost two years after the Complaint was filed, the Defendants

21  served this Motion on Plaintiffs in accordance with Rule 9011(c)(1)(A) of the Federal Rule of

22  Bankruptcy Procedure ("FRBP"). If this Motion has to be filed with the Court, it will be because

23  Plaintiffs did not dismiss the Complaint during the 21-day safe harbor period. Accordingly, this Court

24  must now decide which sanctions are appropriate to bring an end to the invasive, unmeritorious and

25  irrational saga.

26  / / /

27  / / /

28

3.    **Legal Argument**

A.    **Sanctions are appropriate under FRBP 9011**

The filing of a pleading is an act "certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances – (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation," and "(2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law." Fed. R. Bankr. Proc. 9011(b)(1)-(2). "If, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court may, subject to the conditions stated below, impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation." Fed. R. Bankr. Proc. 9011(c). Determining what sanctions to impose for filing a complaint in violation of Rule 9011 is a matter of wide discretion for the bankruptcy court. *In re Giordano*, 212 B.R. 617, 622 (9th Cir. BAP 1997), aff'd in part, rev'd in part on other grounds, 202 F.3d 277 (9th Cir. 1999).

As explained above and below, the filing of the Complaint violated both subsection (b)(1) and (b)(2) of Rule 9011, and Plaintiffs should be sanctioned.

i.    **The "safe harbor" has been provided.**

A motion for sanctions under FRBP 9011(c) "may not be filed with or presented to the court unless, within 21 days after service of the motion… the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected." Fed. R. Bankr. Proc. 9011(c)(1)(A). This 21-day "safe harbor period is mandatory." *Truesdell v. S. Cal. Permanente Medical Group*, 293 F.3d 1146, 1152-53 (9th Cir. 2002). "Failure to provide the required notice precludes an award of Rule 11 sanctions." *Winterrowd v. American General Annuity Insurance Co.*, 556 F.3d 815, 826 (9th Cir. 2009).

On September 22, 2020, Plaintiffs and their counsel were served with a copy of this motion. If this Motion is filed with the Court, it will be because they have failed to dismiss the Complaint. If the

1  mandatory "safe harbor" period expires without Plaintiffs dismissing the Complaint, they should be
2  sanctioned.

3        ii.        **Sanctions should be imposed for claims presented for an**
4                   **improper purpose under FRBP 9011(b)(1)**

5        The court may impose appropriate sanctions if a cause of action is "presented for any
6  improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of
7  litigation." Fed. R. Bankr. Proc. 9011(b)(1); *see, e.g., De Dios v. International Realty & RC*
8  *Investments*, 641 F.3d 1071, 1076-77 (9th Cir. 2011) (attorney sanctioned for filing duplicative
9  litigation without justification). "The frivolous and improper purpose prongs of Rule 11 overlap, and
10 'evidence bearing on frivolousness … will often be highly probative of purpose.'" *In re Grantham*
11 *Bros.*, 922 F.2d 1438, 1443 (9th Cir. 1991) (quoting *Townsend v. Holman Consulting Corp.*, 914 F.2d
12 1136, 1140 (9th Cir. 1990) (*en banc*)). The standard for an improper purpose inquiry is "objective."
13 *Townsend*, 914 F.2d at 1140 (citing *Zaldivar v. City of Los Angeles*, 780 F.2d 823, 829 (9th Cir.
14 1986)). Regarding the filing of complaints, "subjective evidence of the signer's purpose is to be
15 disregarded," and "the improper purpose inquiry subsumes the frivolousness inquiry in this class of
16 cases." *Id.*

17       As explained below, the causes of action alleged in the Complaint are ***objectively*** frivolous
18 and unwarranted by existing law. Because the causes of action in the Complaint are objectively
19 frivolous, the Complaint was presented for an improper purpose, to harass Defendants. Although
20 Defendants acknowledge that the relevant standard for an improper purpose as to the filing of a
21 complaint is an objective one, Defendants firmly believe that the Complaint was filed principally
22 because Debtor's parents and siblings are wealthy individuals who would have the financial ability to
23 pay a substantial settlement *even for* claims that have no legal merit.

24       iii.       **Sanctions should be imposed for assertion of claims**
25                  **unwarranted by existing law under FRBP 9011(b)(2)**

26       The court may impose appropriate sanctions if "the claims, defenses, and other legal
27 contentions therein" are not "warranted by existing law or by a nonfrivolous argument for the
28 extension, modification, or reversal of existing law or the establishment of new law." *See* Fed. R.

1  Bankr. Proc. 9011(b)(2). "A filing is frivolous if it is 'both baseless and made without a reasonable

2  and competent inquiry.'" *Smyth v. City of Oakland (In re Brooks-Hamilton)*, 271 Fed.Appx. 654

3  (9th Cir. 2008) (quoting *Townsend*); *see, e.g., Winterton v. Humitech of Northern California, LLC*

4  *(In re Blue Pine Group, Inc.)*, 457 B.R. 64, 75 (B.A.P. 9th Cir. 2011). "An attorney has a duty to

5  conduct a reasonable factual investigation as well as to perform adequate legal research that

6  confirms his position is warranted by existing law (or by a good faith argument for a modification

7  or extension of existing law). *Winterton*, 457 B.R. at 75 (citing *Christian v. Mattel, Inc.*, 286 F.3d

8  1118, 1127 (9th Cir. 2002)). "In considering sanctions under Rule 9011, the bankruptcy court must

9  measure the attorney's conduct 'objectively against a reasonable standard, which consists of a

10  competent attorney admitted to practice before the involved court.'" *Id.* Indeed, "an attorney may

11  not delegate his duty to validate the truth and legal reasonableness of papers filed with the court."

12  *Id.* at 77 (citing *Giebelhaus v. Spindrift Yachts*, 938 F.2d 962, 965 (9th Cir. 1991)).

13      The Complaint alleges that the Debtor's prepetition termination as a revocable beneficiary of

14  her parents' *inter vivos* trust, is an avoidable fraudulent transfer under the FDCPA. The Ninth Circuit

15  in *Bensal,* however, has held that in order for the FDCPA to be used to avoid a fraudulent transfer,

16  the debtor must first have rights in property as defined by state law. Under California law, there is no

17  authority for the proposition that a revocable beneficiary has rights in property.

18                  a)      **As a matter of California and Ninth Circuit law, it is**

19                          **frivolous to assert that an unvested interest in a revocable**

20                          ***inter vivos* trust constitutes a property interest.**

21      The Complaint seeks to avoid the alleged transfer of property which occurred when Debtor

22  was disinherited from the Trust by Trustors, relying on 11 U.S.C. § 544 and the Federal Debt

23  Collection Procedures Act, 28 U.S.C. §§ 3301 *et seq.* ("FDCPA"). Specifically, "a transfer made or

24  obligation incurred by a debtor is fraudulent as to a debt to the United States…" 28 U.S.C. § 3304(a),

25  and "the United States, subject to section 3307 and to applicable principles of equity and in

26  accordance with the Federal Rules of Civil Procedure, may obtain – (1) avoidance of the transfer or

27  obligation to the extent necessary to satisfy the debt to the United States." 28 U.S.C. § 3306(a)(1).

28

DOCS 127019-000001/4210006.2

1    However, "[a] transfer is not made until the debtor has acquired rights in the asset transferred." 28

2    U.S.C. § 3305(4).

3        "Property interests are created and defined by state law, and unless some federal interest

4    requires a different result, there is no reason why such interests should be analyzed differently simply

5    because an interested party is involved in a bankruptcy proceeding." *Stern v. Marshall*, 564 U.S. 462,

6    496 (2011) (internal brackets and quotation marks omitted). The definition of "property" for the

7    purposes of the FDCPA is fixed by 28 U.S.C. § 3002(12). However, "in determining whether a

8    property right falls within [the definition of 28 U.S.C. § 3002(12)], 'the important consideration is the

9    breadth of the control the taxpayer could exercise over the property.,' which [is assessed] with

10   reference to the state law governing the right." *United States v. Harris,* 854 F.3d 1053, 1055 (9th Cir.

11   2017) (per curiam).

12       To determine whether a party's interest in a trust constitutes "property" under the FDCPA, the

13   Ninth Circuit has held that state law determines what rights the debtor has in property and then

14   whether such state-delineated rights qualify as property under the FDCPA.

15       "Applying the analytical framework set forth [by the US Supreme Court] in Drye, we
     look 'to state law to determine what rights the [debtor] has in the property the
16   Government seeks to reach, then to federal law to determine whether the [debtor's]
     state-delineated rights qualify as 'property' or 'rights to property' within the compass
17   of the [FDCPA].'"

18   *United States Small Business Admin. v. Bensal*, 853 F.3d 992, 1000 (9th Cir. 2017).

19       California law could not be clearer that a revocable beneficiary has no property rights. "Any

20   interest that beneficiaries of a revocable trust have in trust property is 'merely potential' and can

21   'evaporate in a moment at the whim of the [settlor].'" *Steinhart v. County of Los Angeles*, 47 Cal.4th

22   1298, 1319-20 (2010) (quoting *Johnson v. Kotyck*, 76 Cal.App.4th 83, 88 (1999)) (brackets in

23   original); *Estate of Giraldin*, 55 Cal.4th 1058, 1065-66 (2012) ("Property transferred into a revocable

24   inter vivos trust is considered the property of the settlor for the settlor's lifetime... the beneficiaries'

25   interest in that property is 'merely potential' and can 'evaporate in a moment at the whim of the

26   [settlor].'"); *Tepper v. Wilkins*, 10 Cal.App.5th 1198, 1206 (2017) ("Tepper does not claim to have any

27   legally cognizable interest in her mother's revocable living trust; and, even if she were named a

28   beneficiary, she would not have one."); *see also, Arluk Medical Center Industrial Group, Inc. v.*

1  *Dobler*, 116 Cal.App.4th 1324, 1331-32 (2004); *Burton v. Ulrich (In re Schmitt)*, 215 B.R. 417, 422

2  (B.A.P. 9th Cir. 1997) ("when a trust expressly reserves the power to change the beneficiaries, no one

3  acquires any right under the trust instrument, except the settlor to administer the trust in accordance

4  with its terms."); *see also Cutter v. Seror (In re Cutter)*, 398 B.R. 6, 20-21 (B.A.P. 9th Cir. 2008) (a

5  self-settled spendthrift trust is treated as property of the settlor). A vested right is property while a

6  mere expectancy is not property. *Hoeft v. Supreme Lodge Knights of Honor*, et al.., 113 Cal. 91 (1896).

7        The California Supreme Court has repeatedly stated in no uncertain terms that a beneficiary of

8  a revocable *inter vivos* trust **has no property right whatsoever** because the settlor retains the power

9  to unilaterally, at their "whim," divest the beneficiary of any right in the revocable trust (including

10  revoking the trust). Moreover, Probate Code § 16069 provides that the settlors of a revocable trust are

11  not required to account to a beneficiary or even to provide a copy of the trust while it may still be

12  revoked. Yet, notwithstanding the absence of claims well-grounded in fact or supported by law,

13  Plaintiffs conducted voluminous discovery into the financial affairs of the Steinmann Family. Again,

14  Debtor's parents were alive when they revoked the trust as to Debtor and remain alive today. Thus,

15  when Debtor was removed from her parents' revocable *inter vivos* trust, no transfer of property

16  occurred.

17        As explained above, California's highest court has repeatedly held that a beneficiary of a

18  revocable living trust acquires no ownership or property rights in the trust or its corpus during the life

19  of the settlors. *Steinhart*, 47 Cal.4th at 1319-20 (2010); *Giraldin*, 55 Cal.4th at 1065-66 (2012)

20  ("Property transferred into a revocable inter vivos trust is considered the property of the settlor for the

21  settlor's lifetime... the beneficiaries' interest in that property is 'merely potential' and can 'evaporate

22  in a moment at the whim of the [settlor].'") (brackets in original). ***In other words, Debtor never***

23  ***acquired any state-delineated rights in property merely because she was once a revocable***

24  ***beneficiary of her parents' trust***.

25        As such, Plaintiffs' claim to avoid the termination of Debtor's interest in the revocable trust as

26  a fraudulent transfer under the FDCPA or otherwise is unwarranted by law. First, no transfer can

27  occur until "until the debtor has acquired rights in the asset transferred." 28 U.S.C. § 3305(4). As

28  explained above, federal courts are compelled to follow state law to determine property interests in

DOCS 127019-000001/4210006.2

1  bankruptcy and for the purposes of the FDCPA. Under California law, the beneficiary of a revocable

2  *inter vivos* trust has no property rights in such a trust. Thus, under the plain language of the FDCPA,

3  no transfer of property occurred.

4  **b)     The Claim for Imposition of a Resulting Trust Likewise**

5  **Fails**

6       A resulting trust is the creation of an implied trust by operation of law, where property is

7  transferred to someone who pays nothing for it. In other words, a resulting trust arises only when

8  ownership of "property" is at issue. *In re Cedar Funding, Inc.*, 408 B.R. 299, 314 (2009). It follows

9  that a resulting trust cannot arise where, as here, "the [D]ebtor never had rights in the [property]" in

10 the first place. *In re Golden Triangle Capital, Inc.*, 171 B.R. 79, 83 (9th Cir. BAP 1994).

11       "Defendants have cited no case, and the Court has found none, in which a resulting

12       trust was upheld where there was no initial transfer of title.

13       As noted above, state law determines property interests. The resulting trust cases

14       date back at least to 1908. *See Moultrie v. Wright*, 154 Cal. 520, 98 P. 257 (1908). ***In***

15       ***the 105 years since, no California court has publicly imposed a resulting trust***

16       ***where there was no transfer of title***. This Court is not willing [*8] to extend this

17       California state law beyond where the state courts have seen fit."

18 *Wolf v. Collins (In re Collins)*, 2014 Bankr. LEXIS 4395, at *7-8 (Bankr. S.D. Cal. 2014) (emphasis

19 added).

20       Again, in this case, Debtor never had any rights to property as a beneficiary of her parents'

21 revocable trust. As such, when she was terminated by her parents (who are still alive), there was no

22 transfer of any property. Just because the siblings' interest in the revocable trust increased slightly

23 because the one of the ten beneficiaries was removed doesn't mean that any property transferred to

24 them. In fact, because Debtors' parents are still living, any of the siblings could have their interest in

25 the trust revoked at any time. In other words, all of the parents' property remains their property until

26 their deaths.

27

28

DOCS 127019-000001/4210006.2

### iv.    Sanctions should be imposed for assertion of a frivolous argument for modification or extension of law under FRBP 9011(b)(2)

Astonishingly, Trustee's counsel is familiar with the California law outlining why a beneficiary of a revocable trust does not have any property rights. Indeed, he has previously argued and lost an appeal before the Ninth Circuit BAP of an order by the United States Bankruptcy Court for the Central District of California finding that debtor's contingent beneficial interest in a revocable *inter vivos* trust was not property of the estate. *See Kosmala v. Cook (In re Cook)*, 2008 Bankr. LEXIS 4728 (B.A.P. 9th Cir. 2008) (no. CC-08-1091-HMoD).

In the *Cook* case, Trustee's counsel represented another bankruptcy trustee and made the argument that although the debtor held only a contingent beneficial interest in a trust as of the petition date, debtor's interest became property of the estate when the settlor died within 180 days after the petition date. The BAP disagreed, holding that it was plain as a matter of law that the debtor's contingent beneficial interest in an *inter vivos* trust was not property of the estate. *See* Cook, 2008 Bankr. LEXIS 4728 at *16. Additionally, the BAP noted that the Trustee tried to "maneuver around this outcome by arguing for adoption of a federal law definition of bequest, devise, or inheritance." *Id*. at *15. Similarly here, Trustee and his counsel are making an argument which is contrary to binding Ninth Circuit precedent in *Bensal* (i.e. that the definition of property under the FDCPA should control even though the dispositive issue is whether Debtor ever had any "state-delineated" rights in property).

### v.    If the Court is inclined to award monetary sanctions, Defendants request the award be payable as a super-priority administrative claim against the Estate.

Under FRBP 9011(c)(2), the Court has discretion in determining the amount of sanctions to be awarded to the prevailing party. FRBP 9011(c)(2) states:

> A sanction imposed for violation of this rule shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated. Subject to the limitations in subparagraphs (A) and (B), the sanction may consist of, or include, **directives of a nonmonetary nature**, an order to pay a penalty into court, or, **if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation**.

DOCS 127019-000001/4210006.2

Fed. R. Bankr. Proc. 9011(c)(2).

Defendants seek monetary sanctions against the Trustee in the form of a super-priority Chapter 7 administrative claim against the Estate for all attorneys' fees and costs incurred after expiration of the Rule 9011 safe harbor period. Because any such claim against the Trustee was incurred post-petition and in furtherance of his attempts to recover money, they should be afforded administrative priority as a claim against the Estate pursuant to 11 U.S.C. § 503(b)(1)(A). Because the improper conduct of Trustee and Creditors led the award, their claims and rights to payment should be subordinated by 11 U.S.C. §510.

Post-petition tort damages against a bankruptcy estate or its representatives for conduct in the course of the administration of the estate are allowable as administrative expenses of the estate. *Reading Co. v. Brown*, 391 U.S. 471, 483-85 (1968); *Kadjevich v. Kadjevich (In re Kadjevich)*, 220 F.3d 1016, 1020 (9th Cir. 2000) ("In addition to those kinds of 'standard' administrative expenses, tort claims based on a trustee's post-petition negligence are granted administrative-expense priority… Such claims are deemed 'ordinarily incident to the operation of a business…'").

The Defendants recognize that Trustee has a fiduciary duty to the Estate to maximize returns for creditors, and may have filed the Complaint in an overzealous attempt to generate a return for the Estate. As explained in this Motion, however, the claims alleged in the Complaint are wholly frivolous and Trustee has had more than two years to research, conduct discovery, and conclude that the action is neither well-grounded in fact nor supported by existing law. If (1) the Complaint is not withdrawn during the safe harbor period; and (2) this Motion is filed and set for hearing, Movants will file evidence regarding the amount of their damages arising from this frivolous and harassing lawsuit.

**B.    Sanctions are Appropriate Under the Local Bankruptcy Rules**

Bankruptcy courts have the inherent authority to regulate the practice of attorneys who appear before them. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43-45 (1991) (federal courts are vested with inherent power powers to manage their cases and courtrooms and to maintain the integrity of the judicial system). Bankruptcy courts have express authority under the code to sanction attorneys, *See*

1  LBR 1001-1(f), FRBP 9011. Specifically, Rule 1001-1(f) of the Local Bankruptcy Rules for the

2  Central District of California ("LBR") provides:

3      "**<u>Sanctions for Noncompliance with Rules</u>**. The failure of counsel of a party to
       comply with these Local Bankruptcy Rules, with the F.R.Civ.P. or the FRBP, or with
4      any order of the court may be grounds for the imposition of sanctions pursuant to
       applicable law, including the Bankruptcy Code, the F.R.Civ.P., the FRBP, and the
5      inherent powers of the court."

   LBR 1001-1(f).
6
       Further, LBR 9011-3(a) provides:
7
       <u>Violation of Rules</u>: The violation of, or failure to conform to, the FRBP or these
8
       rules may subject the offending party or counsel to penalties, including monetary
9
       sanctions, the imposition of costs and attorneys' fees payable to opposing counsel,
10
       **<u>and/or dismissal of the case or proceeding</u>**.
11
   LBR 9011-3(a).
12
       A local rule of bankruptcy procedure cannot be applied in a manner that conflicts with the
13
   federal rules; it must be consistent with the Code, the Rules and the Civil Rules. *Anwar v. Johnson*,
14
   720 F.3d 1183, 1189 (9th Cir. 2013). Local bankruptcy rules may not "enlarge, abridge, or modify
15
   any substantive right." *Id.*
16
       Here, as set forth above, Plaintiffs have violated FRBP 9011(b) and (c) by filing a frivolous
17
   complaint for claims unwarranted by existing law and for an improper purpose. Here, the Court,
18
   consistent with Local Rule 1001-1 and LBR 9011-3, can impose appropriate disciplinary sanctions
19
   against Plaintiffs for their violations of FRBP 9011. Defendants respectfully request that the Court
20
   sanction Plaintiffs for violations of LBR 1001 and LBR 9011-3 in the form of and order (i)
21
   dismissing the Adversary Proceeding; and (ii) monetary sanctions against the Estate in the form of a
22
   super-priority administrative claim; and (iii) jointly and severally against Creditors.
23
   / / /
24
   / / /
25

26

27

28

DOCS 127019-000001/4210006.2

## 4.    Conclusion

The claims alleged in the Complaint are wholly meritless and unwarranted by existing law. In fact, California Supreme Court and Ninth Circuit Court of Appeal plainly state that the claims alleged in the Complaint fail as a matter of law. As such, the Complaint violates FRBP 9011(b)(1) and (b)(2), and sanctions should issue in the form of monetary damages according to proof and dismissal of the Complaint *with prejudice*.

Dated:  September 23, 2020                    MARSHACK HAYS LLP

By: _____
D. EDWARD HAYS
LAILA MASUD
Attorneys for Defendants,
LORA RAE STEINMANN
HEINZ H. STIENMANN
ERIC STIENMANN

Dated: September 23, 2020                    PROCOPIO, CORY, HARGREAVES & SAVITCH LLP

By: _____
GERALD P. KENNEDY
Attorneys for Defendants,
SUSANNA STEINMANN WILSON, THOMAS STEINMANN, JOHN STEINMANN, AND MARY STEINMANN SYPKENS

Dated: September 23, 2020                    PALMER HUNTER. & HALL

By: _____
E. SCOTT PALMER
Attorneys for Defendants,
TERESA STEINMANN STAPLETON, KATY STEINMANN BELKNAP, JEFF STEINMANN, AND HEINZ J. STEINMANN

24

DOCS 127019-000001/4210006.2

# Declaration of Eric Steinmann

I, ERIC STEINMANN, declare as follows:

1.      I am an individual over 18 years of age and competent to make this Declaration.

2.      If called upon to do so, I could and would competently testify as to the facts set forth in this Declaration. The facts set forth below are true of my personal knowledge.

3.      I make this Declaration in support of the motion for sanctions against Plaintiff, Creditors and their counsel under FRBP 901, the Local Bankruptcy Rules of the Central District of California for the presentation of a meritless complaint, filed with improper purpose, unwarranted by existing law, and supported only by a frivolous argument lacking good faith for extending or modifying existing law.

4.      On January 8, 2016, my parents, Lora Rae Steinmann and Heinz H. Steinmann ("Trustors") settled a revocable trust ("Trust"). A true and correct copy of the Trust is attached hereto as Exhibit "1."

5.      On May 2, 2016, Trustors amended the Trust to remove their daughter, Andrea Steinmann Downs, as a beneficiary. A true and correct copy of the Trust Amendment is attached as Exhibit "2."

6.      On June 19, 2016, Andrea Steinmann Downs ("Debtor") filed a voluntary petition under Chapter 11 of Title 11 of the United States Code ("Petition Date").

7.      On September 6, 2018, Trustee filed a complaint to avoid and recover fraudulent transfers Pursuant to 11 U.S.C. §§548(a)(1)(A), 544(b) and 550. Trustee is attempting to avoid as a fraudulent transfer my sister Andrea Steinmann Down's removal as a beneficiary from my parents' revocable trust.

8.      I am a named Defendant along with my parents, brothers, and sisters in Adversary Proceeding No. 8:18-ap-01168.

I declare under penalty of perjury that the foregoing is true and correct. Executed on September 23, 2020.

*TO BE SIGNED IF MOTION IS FILED*
ERIC STEINMANN

DECLARATION OF ERIC STEINMANN

DOCS 127019-000001/4210006.2

# Declaration of D. Edward Hays

I, D. EDWARD HAYS, say and declare as follows:

1.      I am an individual over 18 years of age and competent to make this Declaration.

2.      If called upon to do so, I could and would competently testify as to the facts set forth in this Declaration.

3.      The facts set forth below are true of my personal knowledge.

4.      I am an attorney at law duly admitted to practice before this Court and all courts of the State of California.

5.      I am a partner in the law firm of Marshack Hays LLP, attorneys of record for Defendants, Lora Rae Steinmann ("Mrs. Steinmann") and Heinz H. Steinmann ("Mr. Steinmann") (collectively Mr. Steinmann and Mrs. Steinmann referred to as "Steinmanns").

6.      On September 23, 2020, Defendants served this Motion on Trustee in accordance with Federal Rule of Bankruptcy Procedure 9011(c)(1)(A).

I declare under penalty of perjury that the foregoing is true and correct. Executed on September 23, 2020.

_____
D. EDWARD HAYS

DECLARATION OF D. EDWARD HAYS

**EXHIBIT 1**

# DECLARATION OF TRUST

This Declaration of Trust is entered into on the _8_ day of _January_, 2016, ~~2015~~, by and between HEINZ H. STEINMANN and LORA R. STEINMANN, husband and wife, as Trustors, and the parties set forth in Article VI, as Trustees.

## RECITALS

The Trustors desire to establish a trust initially funded with assets set forth on Schedule A hereof and intend to transfer to this trust additional assets, all of which transfers shall constitute and fund this Declaration of Trust. The Trustees acknowledge receipt of the initial assets and any subsequent assets designated as trust assets.

## ARTICLE I
### Trust Assets

The Trustors have transferred, without consideration, certain properties or other assets to this trust as set forth on Schedule A hereto. Property transferred to this trust is sometimes referred to as trust estate. All assets in the name of the Trust, whether or not listed on Schedule A, are to be included herein.

The Trustors or the surviving Trustor shall have the right at any time, either during his or her lifetime or at his or her death, to add to this trust other property, which additional property shall become a part of the trust estate. It is understood and agreed by the Trustors that all property transferred to the trust by them is community property unless specifically designated otherwise and shall continue to retain its community property status; likewise, during their lifetime all distributions of principal or income, on revocation or otherwise, will be community property.

To the extent reasonable and practical for management purposes, the assets generally considered under Trustor HEINZ H. STEINMANN's control during his lifetime shall be allocated to his community share of the trust estate, and the assets generally considered under Trustor LORA R. STEINMANN's control during her lifetime shall be allocated to her community share of the trust estate. The Trustors request that their son, ERIC STEINMANN, assist with the management of HEINZ H. STEINMANN's share and that their daughter, MARY SYPKENS, assist with the management of LORA R. STEINMANN's share.

EXHIBIT 1, PAGE 27

## ARTICLE II
### Certain Rights of Trustors

The Trustors while both shall live have the right at any time to alter, revoke or amend any of the provisions of this Declaration of Trust, or of any amendment thereto in whole or in part by a writing directed to the Trustee and executed by the Trustors jointly or by either Trustor as to his or her share of the community property. Upon the death of either Trustor, this trust shall become irrevocable as to the decedent's share, also referred to as the Decedent's Trust. The surviving Trustor shall continue to have the right to revoke, alter or amend the trust as to the survivor's share, also referred to as the Survivor's Trust. Upon the death of the survivor, the entire Decedent's Trust shall become irrevocable.

## ARTICLE III
### Distribution of Income and Principal

The Trustee shall apply and distribute the net income and principal of the trust estate in the following manner:

A.    During the lifetime of the Trustors, the Trustee shall make the following payments from the trust estate:

1.    The Trustee shall pay to or apply for the benefit of the Trustors all of the net income from the trust estate, unless the Trustee is otherwise directed in writing by the Trustors, together with any principal so requested.

2.    If at any time either Trustor should be determined to be physically or mentally incapacitated such that a Trustor is unable to effectively manage his or her own property of financial affairs, the Trustee may pay to or apply for the benefit of such Trustor such amounts from the income and principal of the trust estate, up to the whole thereof, as the Trustee may from time to time deem necessary for his or her proper health, support, business endeavors and maintenance. The determination of incapacity for the purposes hereof shall be made by Trustors' children, namely by JOHN STEINMANN, TERESA STAPLETON and THOMAS STEINMANN, who shall act by a majority thereof and shall issue a written certification.

B.    Upon the death of either Trustor, the Trustee shall divide the trust estate, including any additions made to the trust by reason of the death such as life insurance or from the decedent's will, into two separate shares as follows: one referred to as the "Survivor's Trust," consisting of the surviving Trustor's share of the community property

(2)

EXHIBIT 1, PAGE 28

of the trust estate; and one to be referred to as the "Decedent's Trust," consisting of the deceased Trustor's share of the community property of the trust estate. The Trustee is specifically authorized to allocate to the Survivor's Trust any residential property or tangible personal property selected by the surviving Trustor. The Trustors have executed a Community Property Agreement and do not anticipate having any separate property. If, for any reason, separate property is acquired, it shall be divided equally between the trusts herein created.

### ARTICLE IV
### Survivor's Trust

The Trustee shall apply and distribute the net income and principal of the Survivor's Trust as follows:

A.    The Trustee shall pay to or apply for the benefit of the surviving Trustor all of the net income from the Survivor's Trust in monthly or convenient installments, but in no event less frequently than in annual installments, during his or her lifetime.

B.    If at any time during the lifetime of the said surviving Trustor, he or she should for any reason be in need of funds for his or her proper care, maintenance, reasonable comfort and support, the Trustee may pay to or apply for the benefit of the surviving Trustor, in addition to the income payments from this Survivor's Trust, such amounts from the principal thereof up to the whole thereof as the Trustee may from time to time deem necessary for the Survivor's use and benefit.

C.    Anything to the contrary herein notwithstanding, the surviving Trustor may withdraw, by written notification to the Trustee, all or any portion of the Survivor's Trust.

D.    Upon the death of said surviving Trustor, the Trustee shall pay all debts and expenses of last illness and burial. The Trustee shall distribute and deliver all of the remaining balance of the Survivor's Trust, including any income therefrom that may then be accrued or undistributed by the Trustee to such person or persons, and in such amounts or manner as the surviving Trustor may designate and appoint in the last unrevoked written instrument other than a will executed by him or her and on file with the Trustee at the time of his or her death. If there should be a failure of disposition of all or any portion of Survivor's Trust, either in connection with the exercise or as a result of the non-exercise of such power of appointment by the surviving Trustor, then upon his or her death, all of the said Survivor's Trust not so disposed of shall be added to the principal of the Decedent's Trust as set forth, to be held, administered and distributed as a part of such Decedent's Trust as provided herein.

(3)

EXHIBIT 1, PAGE 29

## ARTICLE V
### Decedent's Trust

The Trustee shall hold, manage and distribute the net income and principal of the Decedent's Trust as follows:

A.    The Trustee shall pay all of the debts of decedent, the expenses of last illness and burial unless otherwise determined by the Trustee to be adequately provided for otherwise.

B.    The Trustee shall pay to the surviving Trustor all of the net income from the Decedent's Trust for his or her lifetime, in monthly or other convenient installments, but not less frequently than annually.

C.    If the surviving Trustor should be in need of funds for his or her proper health, support and maintenance, the Trustee may pay such necessary amounts to him or her for such purposes.

D.    Upon the death of the surviving Trustor, the Trustee shall hold, manage, administer and distribute the remaining balance of the Decedent's Trust (and any assets received from the Survivor's Trust) as follows:

1.    The Trustor may have prepared a list of tangible personal property items to be distributed to various persons, and if so, will be found with an executed copy of his trust document.  If said list cannot be found, or there are items of tangible personal property not covered by said list, they shall be divided equally among the Trustor's children as they shall agree or if they are unable to agree, as the Trustee shall determine.

2.    The Trustee shall divide the remaining trust as hereinafter set forth and hold, manage and distribute it as follows:

(a)    The Trustee shall divide the trust estate into equal shares for Trustors' living children and distribute each such share outright and free of trust to each child under the terms hereof. To the extent any child is indebted to either of the Trustors the amount of such indebtedness shall be paid to the trust.  The Trustee shall have the ability in making the equal distributions to the children to provide that some or all of them may bid upon the purchase of a particular parcel or parcels based upon a valuation of fair market value by a MAI or other professionally qualified appraiser.  A

(4)

EXHIBIT 1, PAGE 30

group of children can bid if they desire to do so with the highest bid to prevail. The proceeds of sale shall be equally divided among the children. Should there be no bidders within a time period set in the discretion of the Trustee (not to exceed two (2) years), the real property shall be placed on the market for sale. These provisions shall apply to property completely owned in the trust. In properties which are owned in tenancy in common, the persons owning an interest may bid as set forth above.

(b)    Should a child of Trustors predecease the surviving Trustor the deceased child's share shall be held, managed and distributed to the deceased child's children equally (Trustors' grandchildren) as follows and subject to the following provisions:

(i)    Any grandchild of Trustors who is over age 25 years at the surviving Trustor's death shall receive his or her share outright and free of trust.

(ii)    The Trustee shall hold for each grandchild under age 25 his or her interest in a separate share until the child attains age 25 years, with the Trustee, in the Trustee's discretion, to distribute to or on behalf of the grandchild such amounts the Trustee deems necessary for the reasonable support, care, and education of the grandchild, such amounts of the principal up to the whole thereof. Upon each grandchild attaining age 25, the Trustee shall distribute any balance remaining to the grandchild. Should a grandchild die prior to attaining age 25, the Trustee shall distribute the remaining trust to the grandchild's siblings.

### ARTICLE VI
#### Trustee

The initial Trustee hereunder shall be HEINZ H. STEINMANN, LORA R. STEINMANN and ERIC STEINMANN. The word "Trustee" as used herein shall include Co-trustees where appropriate and without regard to number or gender. In the event of the death, resignation, or certification of incapacity of any named Trustee, the remaining individuals together with MARY SYPKENS shall serve as Trustee. On the death, resignation, or certification of incapacity of any subsequent Trustee, JOHN STEINMANN shall serve as Trustee with the remaining individuals. Subsequently, should any one of the preceding Trustees fail to act or cease to serve, the next oldest Steinmann child shall serve as Trustee with the then existing Trustees. The Trustees shall act by majority vote or majority written action. No bond shall be required of any Trustee. All rights, powers and duties of the initial Trustees shall vest in the successor Trustees. Any Trustee named hereunder shall be entitled to a reasonable fee for Trustee services.

(5)

The allocation of exemptions and properties pursuant to the preceding paragraphs shall be determined in the absolute discretion of the Trustee, subject to its fiduciary obligation, and the Trustee shall not be liable to any beneficiary of this trust or any other person by reason of such allocations.

### ARTICLE VII
### General Provisions

A.    No beneficiary of this Trust (except the Trustors during their joint lifetimes or the survivor as to the Survivor's Trust) shall have any right to alienate, encumber or hypothecate his or her interest in the principal or income of the trust in any manner, nor shall such interest of any beneficiary be subject to claims of his or her creditors or liable to attachment, execution or other process of law.

B.    This Trust has been accepted by the Trustee and will be administered in the state of California, and its validity, construction, and all rights thereunder shall be governed by the laws of that state.  If any provision of this Declaration of Trust shall be invalid or unenforceable, the remaining provisions thereof shall continue to be fully effective.  The word "children" or "issue" as used in this Declaration of Trust shall include adopted children and issue as well as natural children.

C.    Upon the death of any beneficiary prior to receiving distribution, any accrued or undistributed income which would have been payable to that beneficiary had the beneficiary lived shall be paid to the person who is entitled to payment of income on the day on which income is next payable, or who may be entitled to the transfer of principal upon the beneficiary's death.

D.    In the event any beneficiary under this Trust shall contest in any court the validity of this Trust or of a deceased Trustor's last will or shall seek to obtain an adjudication in any proceeding in any court that this Trust or any of its provisions or that such will or any of its provisions is void, or seek otherwise to void, nullify or set aside this Trust or any of its provisions, then the right of that person to take any interest given to him or her by this Trust shall be determined as it would have been determined had the person predeceased the execution of this Declaration of Trust.

The Trustee is hereby authorized to defend, at the expense of the trust estate, any contest or other attack of any nature on this Trust or any of its provisions.

(6)

EXHIBIT 1, PAGE 32

E.    The Trustee shall respect and comply with any directions given and provisions made by the surviving Trustor's will or separate document directed to the Trustee for payment of and allocation of any death taxes resulting from his or her death. To the extent these matters are not covered by the surviving Trustor's will or such written directions, the Trustee shall pay from each separate trust (without charge to any beneficiary) all federal and state death taxes attributable to that particular trust estate by reason of the surviving Trustor's death or apportioned to it pursuant to California and federal law.  It is intended that the residue of the trust estate bear the taxes, and any specific bequests be made free of tax.

F.    Whenever the Trustee is directed to make a distribution of trust assets or a division of trust assets into separate trusts or shares on the death of a Trustor, the Trustee may, in the Trustee's discretion, defer such distribution or division until eight (8) months after the Trustor's death, provided however the Trustee may continue to hold real property in trust to fulfill provisions herein to provide for sales or distributions of real property to children up to two years pursuant to Section D.2(a) of Article V herein.

When the Trustee defers distribution or division of the trust assets, the deferred division or distribution shall be made as if it had taken place at the time prescribed in this instrument in the absence of this paragraph, and all rights given to the beneficiaries of such trust assets under other provisions of this instrument shall be deemed to have accrued and vested as of such prescribed time.

G.    The Trustors at the date hereof have the following children living:  ERIC STEINMANN, MARY SYPKENS, JOHN STEINMANN, TERESA STAPLETON, KATHERINE BELKNAP, ANDREA DOWNS, HEINZ J. STEINMANN, SUSANNA WILSON, JEFFREY STEINMANN and THOMAS STEINMANN.

## ARTICLE VIII

This Trust may be referred to THE STEINMANN TRUST, under Declaration of Trust dated Jan. 8 , 2015. 2016.

## ARTICLE IX

The rights, powers and duties of the Trustee with regard to the management and investment of the trust estate are as set forth on Schedule B, which is attached hereto and made a part hereof for all purposes.

(7)

EXHIBIT 1, PAGE 33

The Trustors and the Trustee have executed this Amended and Restated Declaration of Trust this __8__ day of __January_____, ~~2015.~~ 2016.

TRUSTORS:

_(signature)_____          _(signature)_____
HEINZ H. STEINMANN                              LORA R. STEINMANN

TRUSTEES:

_(signature)_____          _(signature)_____
HEINZ H. STEINMANN                              LORA R. STEINMANN

_(signature)_____
ERIC STEINMANN

Prepared by:

_(signature)_____
Daniel W. Holden, Attorney for Trustors

## A C K N O W L E D G E M E N T

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA

COUNTY OF SAN BERNARDINO

On __January 8_____, 2016 ~~2015,~~ before me, __Stephanie Lynn Carroll__, a Notary Public, personally appeared __Heinz H. Steinmann, Lora R. Steinmann & Eric Steinman,__ who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/(are) subscribed to the within instrument and acknowledged to me that he/she/(they) executed the same in his/her/(their) authorized capacity(ies), and that by his/her/(their) signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

STEPHANIE LYNN CARROLL
Commission # 2053363
Notary Public - California
San Bernardino County
My Comm. Expires Dec 26, 2017

_(signature)_____
Notary Public Signature                              Notary Public Seal

(8)

SCHEDULE A

Initial Assets of Trust

1.  Real property commonly known as ███████████████████████
2.  ████████████████, a California corporation.
3.  All interests in checking, savings and investment accounts owned by Trustors.
4.  All personal property owned by Trustors.
5.  Such other assets of Trustors to be specifically designated by separate documents.
6.  _____
7.  _____
8.  _____
9.  _____
10. _____

(9)

EXHIBIT 1, PAGE 35

SCHEDULE B

TRUST POWERS

The rights, powers and duties of the Trustee with respect to the management and investment of the trust estate shall be as follows:

1.    Purchase, sell, convey, exchange, convert, improve, repair, partition, divide, allot, subdivide, create restrictions, easements, or other servitudes thereon, manage, operate, and control;

2.    Lease for terms within or beyond the term of any trust provided for in this Agreement and for any purpose, including exploration for and removal of gas, oil, and other minerals; and enter into any covenants and agreements relating to the property so leased or any improvements which may then or thereafter be erected on such property;

3.    Encumber or hypothecate for any trust purpose by mortgage, deed of trust, pledge, otherwise;

4.    Carry insurance of such kinds and in such amounts at the expense of the trusts provided for in this Agreement as the Trustee may deem advisable;

5.    Commence or defend at the expense of any trust provided for in this Agreement such litigation with respect to any such trust or any property of the Trust Estate as Trustee shall deem advisable for that purpose;

6.    Invest and reinvest the trust funds in such property as the Trustee, in the exercise of reasonable business judgment, may deem advisable, whether or not such property is of the character specifically permitted by law for the investment of trust funds; provided, however, that the Trustee is not authorized to invest or reinvest the trust funds in property which is nonproductive of income, except cash surrender values of any life insurance policies on the survivor's life, that in the event that any income-producing property of the Trust subsequently becomes nonproductive of income, the Trustee is directed within a reasonable time to convert such nonproductive property to property productive of income.

7.    Vote, by proxy or otherwise, in such manner as Trustee may determine to be in the best interests of the Trust provided for in this Agreement any securities having voting rights held by the Trustee pursuant to this Agreement;

8.    Pay any assessments or other charges levied on any stock or other security held by Trustee in trust pursuant to this Agreement;

9.    Exercise or not exercise as Trustee may deem best any subscription, conversion, or other rights or options which may at any time attach, belong, or be given to the holders of any stocks, bonds, securities, or other instruments held by it in trust pursuant to this Agreement;

10.    Participate in any plans or proceedings for the foreclosure, reorganization, consolidation, merger, or liquidation of any corporation or organization that has issued securities held by Trustee in trust pursuant to this Agreement, and incident to such participation to deposit securities with and transfer title or securities on such terms as Trustee may deem in the best interest of the trusts to any protective or other committee established to further or defeat any such plan or proceeding;

(10)

EXHIBIT 1, PAGE 36

11.    Enforce any mortgage or deed of trust or pledge held by Trustee in trust pursuant to this Agreement and at any sale under any such mortgage, deed of trust, or pledge to bid and purchase at the expense of any trust provided for in this Agreement any property subject to such security instrument;

12.    Compromise, submit to arbitration, release with or without consideration, and otherwise adjust any claims in favor of or against any trust provided for in this Agreement;

13.    Subject to any limitations expressly set forth in this Agreement and faithful performance of Trustee's fiduciary obligations, to do all such acts, take all such proceedings, and exercise all such rights and privileges as could be done, taken, or exercised by an absolute owner of the trust property.

14.    The power to borrow money for any trust purpose on such terms and conditions as the Trustee may deem proper from any person, firm, or corporation, including the power to borrow money on behalf of one trust from any other trust provided for in this Agreement, and to obligate the trusts, or any of them, provided for in this Agreement to repay such borrowed money.

15.    The Trustee is authorized to loan or advance Trustee's own funds to any trust provided for in this Agreement, for any trust purpose, and to charge for such loan or advance, the rate of interest that Trustee, at the time such loan or advance is made, would have charged had such loan or advance been made to a person not connected with such trusts having a net worth equal to the value of the principal of such trust. Any such loan or advance, together with the interest accruing on such loan or advance, shall be a first lien against the principal of the trust to which such loan or advance is made, and shall be repaid from the income or principal of such trust as in the discretion of the Trustee appears for the best interests of such trust and its beneficiaries.

16.    The Trustee is authorized to purchase securities or other property from and to make loans and advancements from the Trust Estate, with or without security to the executor or other representative of the estate of the deceased spouse.

17.    The Trustee may hold securities or other property held by Trustee in trust pursuant to this Agreement in Trustee's name, as Trustee under this Agreement, in Trustee's own name without a designation showing it to be Trustee under this Agreement, or in the name of Trustee's nominee, or the Trustee may hold such securities unregistered in such condition that ownership will pass by delivery.

EXHIBIT 1, PAGE 37

EXHIBIT  2

# FIRST AMENDMENT

# TO

# THE STEINMANN TRUST

THIS FIRST TRUST AMENDMENT is entered into by **HEINZ H. STEINMANN** and **LORA R. STEINMANN**, as Trustors, and HEINZ H. STEINMANN, LORA R. STEINMANN and ERIC STEINMANN, as co-Trustees (hereinafter referred to as "Trustee"). For all purposes hereunder, the words "we", "us", "our", "their", and similar pronouns, shall refer to Trustors HEINZ H. STEINMANN and LORA R. STEINMANN and shall be construed as the possessive when the context would so indicate.

WHEREAS, on January 8, 2016, we did create and execute a revocable inter-vivos trust known as THE STEINMANN TRUST;

WHEREAS, said trust reserved to us the right and power to make amendments to said trust; and,

WHEREAS, we now desire to amend our trust in the manner hereinafter set forth,

NOW, THEREFORE, IN CONSIDERATION OF THESE PREMISES AND OTHERS, IT IS AGREED AS FOLLOWS:

1.      That subparagraph (a) of Paragraph 2 of Section D of Article V of said Trust Agreement shall be, and the same is hereby cancelled, annulled and rescinded and in lieu thereof the following shall be, and the same is hereby substituted:

(a)      It is Trustors' intention hereby to disinherit their daughter ANDREA DOWNS and she shall not be included in any distribution from this Trust, neither income nor principal.  With this exception of ANDREA DOWNS, the Trustee shall divide and distribute the remaining trust assets as follows:

The Trustee shall divide the trust estate into equal shares for Trustors' living children and distribute each such share outright and free of trust to each child under the terms hereof. To the extent any child is indebted to either of the Trustors the amount of such indebtedness shall be paid to the trust.  The Trustee shall have the ability in making the equal distributions to the children to provide that some or all of them may bid upon the purchase of a particular parcel or parcels based upon a valuation of fair market value by a MAI or other professionally qualified appraiser.  A group of children can bid if they desire to do so with the highest bid to prevail.  The proceeds of sale shall be equally divided among the children.  Should there be no bidders within a time period set in the

discretion of the Trustee (not to exceed two (2) years), the real property shall be placed on the market for sale.  These provisions shall apply to property completely owned in the trust.   In properties which are owned in tenancy in common, the persons owning an interest may bid as set forth above.

2.      Pursuant to §21310, et. seq., of the California Probate Code, in the event any beneficiary under the above referenced Trust Agreement shall, singly or in conjunction with any other person or persons, undertake any of the following actions then the right of that person to take any interest given him or her by said Trust Agreement shall be determined as it would have been determined had the person predeceased us without being survived by issue:

    (1)     Contests in any court the validity of this Amendment;

    (2)     Seeks to obtain adjudication in any proceeding in any court that this Amendment, or any of its provisions, are void, except to the extent permitted by §21380 of the California Probate Code; and/or,

    (3)     Seeks otherwise to set aside this Amendment.

    If California law governs the foregoing provisions of this Paragraph, then California Probate Code §21311 shall apply and the foregoing provisions of this Paragraph may only be enforced against the following types of contests:

    (1)     a direct contest that is brought without probable cause;

    (2)     a pleading to challenge a transfer of property on the grounds that it was not the transferor's property at the time of the transfer; and/or,

    (3)     the filing of a creditor's claim or prosecution of an action based on it.

    The terms "direct contest" and "pleading" have the same meanings as set forth in California Probate Code §21310. All trusts created in this Amendment and/or in said Trust Agreement are "protected instruments" as provided in California Probate Code §21310(e).

3.      Except for the changes hereinabove set forth, the provisions of said Trust Agreement dated January 8, 2016, shall be, and the same are hereby ratified and confirmed.

Executed on _May 2, 2016_, 2016, in San Bernardino County, California.

_____          _____
**HEINZ H. STEINMANN,**                    **LORA R. STEINMANN,**
Trustor/Trustee                            Trustor/Trustee

_____
**ERIC STEINMANN,**
Trustee

Amendment: Page 2

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA

COUNTY OF SAN BERNARDINO

On _May 2, 2016_, 2016, before me, _Stephanie Lynn Carroll_, a Notary Public, personally appeared HEINZ H. STEINMANN, LORA R. STEINMANN and ERIC STEINMANN, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____
Notary Public Signature

STEPHANIE LYNN CARROLL
Commission # 2053363
Notary Public - California
San Bernardino County
My Comm. Expires Dec 26, 2017

Notary Public Seal

EXHIBIT 2, PAGE 40

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
870 Roosevelt, Irvine, CA 92620

A true and correct copy of the foregoing document entitled (*specify*): **MOTION FOR SANCTIONS UNDER RULE 9011 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATIONS OF ERIC STEINMANN AND D. EDWARD HAYS IN SUPPORT** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) _____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) **September 23, 2020**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) **September 23, 2020**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

Hamid R. Rafatjoo – jrafatjoo@raineslaw.com
Jeffrey I. Golden  –  jgolden@wgllp.com

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| September 23, 2020    D. Edward Hays | /s/ D. Edward Hays |
|---|---|
| *Date*     *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

4833-1667-2663, v. 1

**F 9013-3.1.PROOF.SERVICE**

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
870 Roosevelt, Irvine, CA 92620

A true and correct copy of the foregoing document entitled (*specify*): **MOTION FOR SANCTIONS UNDER
RULE 9011 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE; MEMORANDUM OF POINTS AND
AUTHORITIES; DECLARATIONS OF ERIC STEINMANN AND D. EDWARD HAYS IN SUPPORT** will be served or was
served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated
below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General
Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*)
_____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the
following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) **September 24, 2020**, I served the following persons and/or entities at the last known addresses in this
bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United
States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that
mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

| | |
|---|---|
| Hamid R. Rafatjoo<br>RAINES FELDMAN LLP<br>1800 Avenue of the Stars, 12th Floor<br>Los Angeles, California 90067 | Jeffrey I. Golden<br>WEILAND GOLDEN GOODRICH LLP<br>650 Town Center Drive, Suite 600<br>Costa Mesa, CA 92626 |

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method
for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the
following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to
such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration
that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is
filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| September 24, 2020  Layla Buchanan | /s/ Layla Buchanan |
|---|---|
| *Date*     *Printed Name* | *Signature* |

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

4833-1667-2663, v. 1

**F 9013-3.1.PROOF.SERVICE**

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
1101 Pacific Ave., #320, Santa Cruz, California 95060

A true and correct copy of the foregoing document entitled (*specify*): **NOTICE OF MOTION AND MOTION FOR SANCTIONS UNDER RULE 9011 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATIONS OF ERIC STEINMANN AND JUSTIN S. DRAA IN SUPPORT** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **July 8, 2021**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) **July        , 2021**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) **July___, 2021**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

RACHAEL SPENCER, Legal Secretary
_____
*Date      Printed Name*                                                    *Signature*

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

F 9013-3.1.PROOF.SERVICE

**1**. <u>**TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**</u>:

- Thomas H Casey (TR)    msilva@tomcaseylaw.com, thc@trustesolutions.net
- Beth Gaschen    bgaschen@wgllp.com,
  kadele@wgllp.com;vrosales@wgllp.com;cbmeeker@gmail.com;cyoshonis@wgllp.com
- Jeffrey I Golden    jgolden@wgllp.com, kadele@wgllp.com;vrosales@lwgfllp.com;cbmeeker@gmail.com
- Jeffrey M Goldman    goldmanj@pepperlaw.com, allenjs@pepperlaw.com
- Michael J Hauser    michael.hauser@usdoj.gov
- D Edward Hays    ehays@marshackhays.com, 8649808420@filings.docketbird.com
- Marshall J Hogan    mhogan@swlaw.com, semartinez@swlaw.com
- Gerald P Kennedy    gerald.kennedy@procopio.com,
  kristina.terlaga@procopio.com;calendaring@procopio.com;efile-bank@procopio.com
- Alan J Kessel    kessela@pepperlaw.com, philipsj@pepperlaw.com
- Kay S Kress    kressk@pepperlaw.com, henrys@pepperlaw.com
- Charity J Manee    charity@rmbklaw.com
- Laila Masud    lmasud@marshackhays.com, 8649808420@filings.docketbird.com
- Jennifer L Nassiri    jennifernassiri@quinnemanuel.com
- Aram Ordubegian    ordubegian.aram@arentfox.com
- Eric S Pezold    epezold@swlaw.com, scrisp@swlaw.com
- Hamid R Rafatjoo    hrafatjoo@raineslaw.com, bclark@raineslaw.com;cwilliams@raineslaw.com
- Faye C Rasch    frasch@wgllp.com, kadele@wgllp.com;tziemann@wgllp.com
- Daniel B Spitzer    dspitzer@spitzeresq.com
- Annie Y Stoops    annie.stoops@arentfox.com, yvonne.li@arentfox.com
- James E Till    jtill@btntlaw.com, maraki@btntlaw.com
- United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1.PROOF.SERVICE**