1

**PACHULSKI STANG ZIEHL & JONES LLP**
Richard M. Pachulski (State Bar No. 90073)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, California  90067-4003
Telephone: 310.277.6910
Email: rpachulski@pszjlaw.com

2

3

4

**RAINES FELDMAN LLP**
Hamid R. Rafatjoo (State Bar No. 181564)
1800 Avenue of the Stars, 12th Floor
Los Angeles, California  90067
Telephone: 310.440.4100
E-mail: hrafatjoo@raineslaw.com

5

6

7

8

**TROUTMAN PEPPER HAMILTON SANDERS LLP**
Alan J. Kessel (State Bar No. 130707)
5 Park Plaza, Suite 1400
Irvine, California  92614-2545
Telephone: 949.622.2700
Email: alan.kessel@troutman.com

9

10

11

Attorneys for Creditors and Intervenors
HAUSMAN HOLDINGS, LLC and
DAVID and PAMELA MOELLENHOFF

12

13

**UNITED STATES BANKRUPTCY COURT**

14

**CENTRAL DISTRICT OF CALIFORNIA, SANTA ANA DIVISION**

15

16 | In re:

17 | ANDREA STEINMANN DOWNS,

18 |         Debtor.

19 |

20 | THOMAS H. CASEY, Chapter 7 Trustee,

21 |

22 |         Plaintiff,

23 | v.

24 | LORA RAE STEINMANN, ET AL.,

25 |         Defendants.

Case No. 8:16-bk-12589-SC

Chapter 7

Adversary No. 8:18-ap-01168-SC

**HAUSMAN HOLDINGS, LLC'S AND DAVID AND PAMELA MOELLENHOFF'S AND THEIR COUNSEL'S OPPOSITION TO DEFENDANTS' MOTION FOR SANCTIONS UNDER RULE 9011 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE; MEMORANDUM OF POINTS AND AUTHORITIES; AND DECLARATION OF HAMID R. RAFATJOO**

26 |

27 |

Date:          September 2, 2021
Time:          11:00 a.m.
Courtroom:     5C

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

#118393301v1

# TABLE OF CONTENTS

**Page(s)**

I.      INTRODUCTION ................................................................................................. 1

II.     STATEMENT OF RELEVANT FACTS AND PROCEDURAL HISTORY ............. 5

    A.    The Debtor's Bankruptcy Case and the Adversary Action........................... 5

    B.    This Court's and the BAP's Respective Denials of the Steinmanns' Motions to Dismiss the Adversary Complaint .................................................................. 5

    C.    This Court's Second Denial of The Steinmanns' No Valid Claim Defense in Compelling Discovery and Sanctioning Lora Steinmann............................... 7

    D.    This Court's Third Denial of the Steinmanns' No Valid Claim Defense in Granting Creditors' Motion to Intervene in the Adversary Action................................. 8

    E.    The Service of the 9011 Motion and the Dismissal of the Adversary Action ............. 9

    F.    The District Court's Denial of the Steinmanns' No Valid Defense Argument in Substantively Affirming the Motion to Compel and Sanctions Orders...................... 9

    G.    The Steinmanns' Late Filed 9011 Motion ................................................. 10

III.    LEGAL STANDARD APPLICABLE TO RULE 9011 MOTIONS ........................ 11

IV.     ARGUMENT .................................................................................................... 13

    A.    This Court's and the BAP's Prior Orders and Rulings Legally Preclude the Imposition of Rule 9011 Sanctions ................................................................................. 13

    B.    The 9011 Motion Also Must Be Denied Because It Is Untimely ............................... 18

    C.    It is the Steinmanns' Rule 9011 Motion Alone Which is "Objectively Frivolous" and Has Been Filed for an "Improper Purpose" ................................................. 20

V.      CONCLUSION.................................................................................................. 22

DECLARATION OF HAMID R. RAFATJOO .......................................................... 213

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Title Ins. Co. v. Lacelaw Corp.,*
   861 F.2d 224 (9th Cir.1988) ..................................................................... 16

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ................................................................................... 14

*Baxter v. MBA Grp. Ins. Tr. Health & Welfare Plan,*
   958 F. Supp. 2d 1223 (W.D. Wash. 2013) ................................................ 16

*Bowers v. Nat'l Collegiate Athletic Ass'n,*
   475 F.3d 524 (3d Cir. 2007) ........................................................................ 1

*Bus. Guides, Inc. v. Chromatic Communs. Enters.,*
   498 U.S. 533 (1991) ............................................................................ 12, 15

*Childs v. State Farm Mut. Auto Ins. Co.,*
   29 F.3d 1018 (5th Cir. 1994) .................................................................... 17

*Compare, In re Cement Antitrust Litig.,*
   673 F.2d 1020 (9th Cir. 1982) .................................................................. 15

*Country Inns & Suites by Carlson, Inc. v. Gokul Mgmt.,* Civil Action No. 07-2044 (DRD),
   2007 U.S. Dist. LEXIS 59407, at *12 (D.N.J. Aug. 13, 2007)................... 14

*DeStefano v. Twentieth Century Fox Film Corp.,*
   11 F.3d 123 (2d Cir. 1997) ................................................................. 14, 18

*Draper & Kramer, Inc. v. Baskin-Robbins, Inc.,*
   690 F. Supp. 728 (N.D. Ill. 1988) ............................................................ 20

*G.C. & K.B. Invs., Inc. v. Wilson,*
   326 F.3d 1096 (9th Cir. 2003) .................................................................. 11

*Gaiardo v. Ethyl Corp.,*
   835 F.2d 479 (3d Cir. 1987) ..................................................................... 12

*Gal. v. Viacom Int'l, Inc.,*
   403 F. Supp. 294 (S.D.N.Y. 2005) ........................................................... 13

*Gary v. Braddock Cemetery,*
   517 F.3d 195 (3d Cir. 2008) ..................................................................... 20

*Gospel Missions of Am. v. City of Los Angeles,*
   328 F.3d 548 (9th Cir. 2003) .................................................................... 16

*Grant v. Bostwick,*
   No. 15-cv-874 WQH (BLM), 2016 U.S. Dist. LEXIS 96078, at *18
   (S.D. Cal. July 20, 2016) .......................................................................... 19

*Holgate v. Baldwin,*
   425 F.3d 671 (9th Cir. 2005) ................................................................ 4, 19

*Hudson v. Moore Business Forms, Inc.,*
   836 F.2d 1156 (9th Cir. 1986) .............................................................. 2, 15

*In re Bertain,*
   215 B.R. 438 (B.A.P. 9th Cir. 1997) ........................................................ 15

*In re Brooks-Hamilton,*
   400 B.R. 238 (B.A.P. 9th Cir. 2009) ........................................................ 11

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

*In re Crystal Cathedral Ministries*,
No. 2:12-bk-15665-RK, 2020 Bankr. LEXIS 851, at *164 n. 25
(Bankr. C.D. Cal. Mar. 31, 2020) ................................................................ 11

*In re Dane*,
No. CC-13-1298-KiLaPa, 2014 Bankr. LEXIS 2378, at *19
(B.A.P. 9th Cir. May 30, 2014) ............................................................... 2, 15

*In re Quinones*,
543 B.R. 638 (Bankr. N.D. Cal. 2015) ........................................... 11, 18, 21

*In re Radakovich*,
No. WW-13-1254-KuPaJu, 2014 Bankr. LEXIS 4017, at *11
(B.A.P. 9th Cir. Sep. 19, 2014), at *10 (B.A.P. 9th Cir. Sept. 19, 2014) ............................... 11, 12

*In re Theokary*,
Nos. 07-110008 ELF, 09-051, 2012 Bankr. LEXIS 4020, at *5 n. 3
(Bankr. E.D. Pa. 2012) ................................................................................ 14

*In re Villa Madrid*,
110 B.R. 919 (9th Cir. BAP 1990) ............................................................... 12

*In re Waldrop*,
No. 15-14689-JDL, 2017 Bankr. LEXIS 3720, at *17 (Bankr. W.D. Okla. Oct. 25, 2017) .......... 20

*In re Yagman*,
796 F.2d 1165 (9th Cir. 1986) ............................................................. 18, 21

*Instant Checkmate, Inc. v. Background Alert, Inc.*,
No. 3:14-cv-01182-MMA-DHB, 2014 U.S. Dist. LEXIS 190115, at *20
(S.D. Cal. Dec. 4, 2014) .............................................................................. 13

*Islamic Shura Council of S. Cal. v. FBI*,
757 F.3d 870 (9th Cir. 2014) ............................................................. 4, 18, 19

*Kaplan v. Zenner*,
956 F.2d 149 (7th Cir. 1991) ....................................................................... 20

*Kohler v. Inter–Tel Techs.*,
244 F.3d 1167 (9th Cir.2001) ...................................................................... 16

*Loumena v. Kennedy*,
No. 15-CV-00951-LHK, 2015 U.S. Dist. LEXIS 139369, at *17
(N.D. Cal. Oct. 13, 2015) ............................................................................ 13

*Operating Eng'rs Pension Trust v. A-C Co.*,
859 F.2d 1336 (9th Cir. 1988) ......................................................... 11, 12, 15

*Philips v. Gilman*,
836 Fed. App'x 511 (9th Cir. 2020) ........................................................... 19

*Price v. Hawaii*,
789 F. Supp. 330 (D. Haw. 1992) ............................................................... 19

*Purgess v. Sharrock*,
33 F.3d 134 (2d Cir. 1994) .......................................................................... 16

*Riverhead Sav. Bank v. Nat'l Mortg. Equity Corp.*,
893 F.2d 1109 (9th Cir. 1990) ..................................................................... 12

*Rose v. Seamless Fin. Corp.*,
 916 F. Supp. 2d 1160 (S.D. Cal. 2013) .................................................. 4, 13

*Safe-Strap Co. v. Koala Corp.*,
270 F. Supp. 2d 407 (S.D.N.Y. 2003) ........................................................ 20

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

*Steinberg v. Nationwide Mut. Ins. Co.*,
   418 F. Supp. 2d 215 (E.D.N.Y. 2006) ........................................................................... 13

*Strom v. United States*,
   641 F.3d 1051 (9th Cir. 2011) ............................................................................... 11, 16

*Team Obsolete Ltd. v. AHRMA, Ltd.*,
   216 FRD 29 (E.D.N.Y. 2003) ...................................................................................... 20

*Ted Lapidus, S.A. v. Vann*,
   112 F.3d 91 (2d Cir. 1997) ............................................................................................ 1

*Thompson v. United Transp. Union*,
   167 F. Supp. 2d 1254 (D. Kan. 2001) .......................................................................... 20

*United Nat'l Ins. Co. v. R&D Latex Corp.*,
   242 F.3d 1102 (9th Cir. 2001) ...................................................................................... 12

*United States Nat'l Ins. Co. v. Spectrum Worldwide, Inc.*,
   555 F.3d 772 (9th Cir. 2009) ....................................................................................... 16

*United States v. Bentson*,
   947 F.2d 1353 (9th Cir.1991) ...................................................................................... 16

*Wade v. Gaither*,
   623 F. Supp. 2d 1277 (D. Utah 2009) .......................................................................... 13

*Williams v. Aho*,
   No. CV 16-2088 PSG (FFMx), 2016 U.S. Dist. LEXIS 195930, at *9-10
   (C.D. Cal. Sep. 2, 2016) ............................................................................................... 13

**Statutes**
11 U.S.C. § 544(b)(1) .......................................................................................................... 6

**Rules**
Fed. R. Bankr. P. 9001(b)(1)-(2) ....................................................................................... 11

Fed. R. Bankr. P. 9001(c)(2)(A) ........................................................................................ 11

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

Creditors and Intervenors Hausman Holdings, LLC and David and Pamela Moellenhoff (collectively, **"Creditors"**) and their counsel[1] submit the following opposition (**"Opposition"**) to the *Motion for Sanctions Under Rule 9011 of the Federal Rules of Bankruptcy Procedure* (the "**9011 Motion**") filed by Defendants Lora Rae Steinmann, Heinz H. Steinmann, Eric Steinmann, Susanna Steinmann Wilson, Thomas Steinmann, John Steinmann, Mary Steinmann Sypkens, Teresa Steinmann Stapleton, Kay Steinmann Belknap, Jeff Steinmann, and Heinz J. Steinmann (collectively, the "**Steinmanns**"). (Adv. Dkt. No. 316). In support of their Opposition, Creditors respectfully state as follows:

## I.  **INTRODUCTION**

Despite professing an alleged desire to extricate themselves from this adversary action (the "**Adversary Action**"), the Steinmanns, through the 9011 Motion filed by their newly retained counsel, DiBenedetto, Lapcevic & Draa LLP (the "**DiBenedetto Firm**"), not only seek to continue and expand this action long-after it has been dismissed, but also fail to address, much less refute, the controlling law and facts mandating that motion's denial. That is particularly true where the Chapter 7 Trustee's (the "**Trustee**") adversary complaint ("**Adversary Complaint**") survived *four* separate legal challenges to its legal tenability in this Court and in the Ninth Circuit Bankruptcy Appellate Panel ("**BAP**") prior to its dismissal via a Motion for Judgment on the Pleadings in November 2020 (the

---

[1] In marked contrast to the Steinmanns' *Motion for Sanctions Pursuant to the Court's Inherent Authority* [*see* Adv. Dkt. No. 324 at "Notice" and n. 1], counsel for the Creditors and the Trustee neither are named nor are otherwise mentioned in the 9011 Motion. Those conspicuous omissions alone legally require the denial of the 9011 Motion against such counsel to the extent the Steinmanns now attempt to claim that the 9011 Motion additionally is brought against those attorneys and their law firms. *See, e.g., Bowers v. Nat'l Collegiate Athletic Ass'n*, 475 F.3d 524, 544-545 (3d Cir. 2007) ("It is clear that attorneys for Bowers had no notice whatsoever that the District Court was contemplating entering sanctions against them prior to the hearing on Temple's motion. Temple's original sanctions motion requested sanctions against plaintiff, not plaintiff's counsel . . . . Until the District Court's opinion and order was filed, attorneys for Bowers had no idea that the Court was even considering levying sanctions against them."); *Ted Lapidus, S.A. v. Vann*, 112 F.3d 91, 96-97 (2d Cir. 1997) ("The purpose of particularized notice is to put counsel on notice as to the particular factors that he must address if he is to avoid sanctions," and "a sanctioned attorney must [therefore] receive specific notice of the conduct alleged to be sanctionanable and the standard by which that conduct will be assessed"). In an abundance of caution, and without waiver and in express reservation of their respective rights under the law, Creditors' counsel, Raines Feldman LLP and Hamid R. Rafatjoo, and Troutman Pepper Hamilton Sanders LLP and Alan J. Kessel have retained counsel in connection with this Rule 9011 Motion, each of whom are expected to file Notices of Appearance in this action in the near future.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

"**MJOP Ruling**"), *three* of which challenges occurred and were denied *before* Creditors obtained leave to partially intervene in this case.

*First*, as Creditors notified the Steinmanns in October 2020—nearly 10 months before they filed their 9011 Motion (Adv. Dkt. No. 285 at pp. 4:17-6:13; 7:4-15)—the "ultimate failure" of the Adversary Complaint via the MJOP Ruling is legally irrelevant to the availability and propriety of sanctions,[2] as well as legally incapable of justifying sanctions against Creditors by retroactively negating this Court's and the BAP's prior Orders and rulings, each of which uniformly and repeatedly confirmed the legal tenability of the Adversary Complaint.  Specifically:

- In January 2019, after extensive briefing and multiple hearings, this Court *denied* the Steinmanns' two separate Rule 12(b)(6) Motions to Dismiss the Adversary Complaint in their entirety**,** finding that the Trustee had stated legally cognizable claims relating to the fraudulent transfer of debtor Andrea S. Downs' (the "**Debtor**") interest in the Steinmanns' valuable revocable trust ("**Revocable Trust**").  (Adv. Dkt. Nos. 25, 27, 49-50).  Having denied the Steinmanns' Rule 12(b)(6) Motions to Dismiss, this Court "axiomatic[ally]" determined that the Adversary Complaint had both a "legal basis" and correspondingly was "plausible" under the law.  *See In re Dane*, No. CC-13-1298-KiLaPa, 2014 Bankr. LEXIS 2378, at *19 (B.A.P. 9th Cir. May 30, 2014);

- In April 2019, all three reviewing judges of the BAP *denied* the Steinmanns' requests for interlocutory review and reversal of this Court's denial of their Rule 12(b)(6) Motions to Dismiss, based upon the BAP's express determination that those motions did not implicate any "controlling question of law" that could result in the "ultimate termination of the litigation," but rather necessitated "the bankruptcy court's . . . determination of crucial factual issues," (Adv. Dkt. Nos. 117-118), which BAP rulings the Steinmanns never appealed;

---

[2] *Hudson v. Moore Business Forms, Inc.*, 836 F.2d 1156, 1159 (9th Cir. 1986) (finding that because (i) "[a]n objective standard of reasonableness is applied to determinations of frivolousness as well as improper purpose"; and because (ii) "[t]he key question in assessing frivolousness is whether a complaint states an arguable claim, and not whether the pleader is correct in his perception of the law"; it follows that (iii) "courts 'do not examine the complaint in the same manner as a court considering a Rule 12(b)(6) motion,' because ultimate failure on the merits is irrelevant.")

- In September 2019—in reliance on this Court's Orders *denying* the Steinmanns' Rule 12(b)(6) Motions to Dismiss, and the BAP's *affirmance* of those denials—Creditors moved to intervene in the Adversary Action on the grounds that they "possesse[d] a significant and concreate interest in the outcome of [that proceeding] by virtue of their (i) status as the Debtor's largest creditors; and the (ii) significant value of the Debtor's fraudulently transferred interest in the [Revocable] Trust"; and that (iii) "[i]f the Debtor and Steinmanns prevail[ed] in the [] Adversary Action, the Debtor's interest in the [Revocable] Trust [would] remain beyond the reach of the Trustee, and the Estate [would] correspondingly be denied a potentially significant asset that [could] be used to satisfy the Debtor's creditors." (Adv. Dkt. No. 122). This Court thereafter granted Creditors permission in December 2019 to partially intervene in the Adversary Complaint's respective second and third causes of action for a resulting trust and declaratory relief: (a) based upon its express finding and ruling that Creditors have carried "the[ir] burden of showing that [those] purported claims exist[ed] under some substantive law"; and (b) over the Steinmanns' objections that Creditors allegedly did "not hold" any "independent" or valid "legal claims that can be asserted against" them as to the Revocable Trust. (Adv. Dkt. Nos. 135, 145);

- Between January and April 2020—and consistent with each of its and the BAP's prior Orders upholding the legal tenability of the Adversary Complaint—this Court entered several additional Orders not only (i) rejecting the Steinmanns' efforts to avoid discovery based upon their assertion that the Debtor's interest in the Revocable Trust did not constitute bankruptcy estate property; but also (ii) compelling the Steinmanns to participate in discovery; and (iii) sanctioning Lora Steinmann for her refusal to do so. (Bk. Dkt.[3] Nos. 759, 816, 848); and

- In March 2021, following the entry of judgment in the Adversary Action, the California Central District Court (**"District Court"**) entered an Order which, in addition to (a) affirming this Court's decision to sanction Lora Steinmann for her discovery violations during the pendency of this case; also (b) *rejected* Lora Steinmann's contention on appeal that she should be relieved from the consequences of her malfeasance because the MJOP Ruling purportedly eradicated

---

[3] *In re Andrea S. Downs*, 8:16-bk-12589-SC (Bankr. C.D. Cal.).

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

and nullified this Court's and the BAP's prior Orders and rulings which determined the legal tenability of the Adversary Complaint, and this Court's corresponding Motion to Compel and Sanctions Orders compelling the Steinmanns to participate in discovery related to that pleading's claims.  (Dist. Ct.[4] Dkt. Nos. 9, 15).

*See also, infra, at Section II.A-G for further discussion of procedural background.*

Simply put, neither Creditors nor their counsel can legally be punished for intervening in and thereafter assisting in the prosecution of this action with this Court's express authorization, and in good-faith reliance on the foregoing Orders and rulings by this Court and the BAP consistently upholding the legal tenability of the Adversary Complaint.  *See, e.g., Rose v. Seamless Fin. Corp.*, 916 F. Supp. 2d 1160, 1174 (S.D. Cal. 2013)  (Rule 11 sanctions were legally unavailable where the court denied defendant's motion to dismiss and the plaintiff had therefore "sufficiently alleged a non-frivolous claim").  To the contrary, those prior Orders and rulings legally preclude a finding that Creditors' intervention and prosecution of the Adversary Complaint were objectively "frivolous," let alone were pursued for an "improper purpose" within the meaning of Federal Rule of Bankruptcy Procedure 9011 ("**Rule 9011**").  *See also, infra, at Section IV.A for further authorities legally precluding the imposition of sanctions after a complaint withstands a motion to dismiss.*

***Second***, the law is similarly clear that a Rule 9011 motion is untimely and is required to be denied where, as here, it is filed ***after*** the court has already adjudicated and disposed of the allegedly offending pleading.  Indeed, it would be reversible error to award sanctions in light of the timing of the Rule 9011 Motion.  *See, e.g., Islamic Shura Council of S. Cal. v. FBI*, 757 F.3d 870, 873 (9th Cir. 2014) (reversing sanctions award where motion was filed after "the district court had already resolved the underlying dispute").  Moreover, even where a challenged pleading remains at issue, sanctions are still legally unavailable if the moving party delays seeking them until long-after the alleged misconduct initially occurred.  *See, e.g., Holgate v. Baldwin*, 425 F.3d 671, 679 (9th Cir. 2005) (reversing sanctions award where defendant waited "over a year" after complaint was filed to pursue sanctions).  That is precisely the case here, where the Steinmanns inexplicably waited to file their 9011 Motion: (i) nearly 3 years ***after*** the Trustee commenced the Adversary Action; (ii) more than 9 months

---

[4] *Lora Rae Steinmann v. Hausman Holdings, LLC, et al.*, Case No. 8:20-cv-02272-RGK (C.D. Cal.).

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

*after* the 9011 Motion was first served; and (iii) more than 7 months *after* the Court issued its MJOP Ruling and dismissed the Adversary Complaint. As such, denial of the 9011 Motion further is required on the independently dispositive grounds that it is untimely as a matter of law. *See also, infra, at Section IV.B for further authorities precluding untimely sanctions motions.*

For each of the foregoing reasons further detailed below, the 9011 Motion is legally required to be denied.

**II.    STATEMENT OF RELEVANT FACTS AND PROCEDURAL HISTORY**

**A.    The Debtor's Bankruptcy Case and the Adversary Action**

On June 19, 2016, the Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code (the "**Bankruptcy Case**"), less than 10 hours before the scheduled commencement of trial in Creditors' then-pending fraud action against her in the Orange County Superior Court (the "**State Court Action**"). (Bk. Dkt. No. 1). On September 7, 2018, this Court converted the Debtor's Bankruptcy Case into a Chapter 7 proceeding due to the Debtor's obstructionism, resulting in the appointment of Thomas H. Casey as Trustee. (Bk. Dkt. Nos. 267, 292-293).

On September 6, 2018, the Trustee initiated the Adversary Action by filing the Adversary Complaint against the Revocable Trust's trustees and beneficiaries (the Steinmanns) to avoid the fraudulent transfer of and recover the Debtor's interest in that trust, from which the Debtor was strategically disinherited for the admitted purpose of denying her anticipated bankruptcy estate (the "**Estate**") and creditors access to that asset. (Adv. Dkt. No. 1; *see also* concurrently filed Declaration of Hamid R. Rafatjoo ("**Rafatjoo Decl.**"), Ex. A [L. Steinmann 7/10/17 Examination] at pp. 47:8-16; Ex. B [L. Steinmann 9/3/19 Examination] at pp. 71:8-10, 72:23-25, 73:10-15; Ex. C [E. Steinmann Examination] at pp. 67:16-68:5).

**B.    This Court's and the BAP's Respective Denials of the Steinmanns' Motions to Dismiss the Adversary Complaint**

On November 18, 2018, the Steinmanns, by and through the four different law firms then representing them, filed two separate Rule 12(b)(6) Motions to Dismiss the Adversary Complaint on the alleged grounds that the Trustee had failed to state a valid claim for relief because (i) the Debtor purportedly lacked a legally cognizable property interest in the Revocable Trust; and (ii) the Debtor's

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

parents, as settlors of the Revocable Trust, were purportedly entitled to revoke the Debtor's beneficial interest, and reallocate that interest to the trust's other beneficiaries, for any reason whatsoever, including in strategic anticipation of the Debtor's bankruptcy filing (the "**No Valid Claim Defense**"). (Adv. Dkt. No. 25 at pp. 9:18-10:6, 11:20-21:24; Adv. Dkt. No. 27 at pp. 1:2-13, 4:1-10:12).

On January 15, 2019, this Court entered Orders denying the Steinmanns' Motions to Dismiss (the "**Motion to Dismiss Orders**"), based upon its determination that both the Adversary Complaint and those motions raised "*very interesting*" and "*cutting edge*" issues that were "*not ripe*" for adjudication and resolution at the pleading stage. (Adv. Dkt. Nos. 49-50; *see also* Adv. Dkt. No. 48 [1/8/19 Tr.] at pp. 36:17-37:6 (emphasis added)). The Steinmanns thereafter sought leave from the BAP to pursue interlocutory appeals of the Motion to Dismiss Orders. In doing so, the Steinmanns not only again made the same No Valid Claim Defense this Court had previously rejected, but also argued that those Orders "*present[ed] a question of first impression*" regarding "whether the FDCPA can be utilized in a bankruptcy case pursuant to 11 U.S.C. § 544(b)(1) to avoid the termination of a revocable beneficiary's former interest in a trust[,]" (Adv. Dkt. No. 58, 60; BAP Dkt.[5] No. 2 at pp. 2:4-25, 7:3-5, 8:3-20 (emphasis added)). The Steinmanns subsequently requested that this Court stay its Motion to Dismiss Orders pending the BAP's resolution of their proposed interlocutory appeals in light of, *inter alia*, their argument and admission that those Orders implicated "*a brand new issue of law*" on which this Court "*may be right*" given that "*this is a pretty unique case*" involving the Steinmanns' coordinated and strategically-timed revocation of the Debtor's interest in the Revocable Trust. (Adv. Dkt. No. 134 [2/26/19 Tr.] at pp. 3:2-10, 7:4-5, 42:12-14 (emphasis added)).

On April 10, 2019, the BAP denied the Steinmanns' requests for interlocutory review and dismissed their proposed appeals (the "**BAP Dismissal Orders**"). (Adv. Dkt. Nos. 117-118). Notably, despite expressly recognizing its authority to entertain and rule upon interlocutory appeals that involve "a controlling question of law" that "may materially advance [the] ultimate termination of the litigation or avoid wasted litigation[,]" the BAP declined to exercise that authority because it determined "*factual issues*" concerning "the character" of the Revocable Trust, and "whether [it] is

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

---

[5] *Lora Rae Steinmann, et al. v. Thomas H. Casey*, BAP Nos. CC-19-1020, CC-19-1021 (B.A.P. 9th Cir.).

estate property under applicable state and federal law," should be made by the bankruptcy court in the first instance. (*Id.* at p. 2 (emphasis added)).  The Steinmanns sought no further review.  Nor did they ask this Court to make findings that would permit further appellate review, or seek summary judgment.

**C.**    **This Court's Second Denial of The Steinmanns' No Valid Claim Defense in Compelling Discovery and Sanctioning Lora Steinmann**

On January 15, 2019, the Trustee filed, and Creditors subsequently joined, Motions for Orders authorizing the Rule 2004 examinations of, and requiring the production of documents by, the trustees of the Revocable Trust—namely, the Debtor's brother, Eric Steinmann; and the Debtor's mother and father, Lora and Heinz Steinmann, respectively (collectively, the "**Steinmann Trustee Defendants**"). (Bk. Dkt. Nos. 498, 502, 515, 517).  In response, the Steinmann Trustee Defendants unsuccessfully sought protective orders to prevent the requested discovery.  This Court responded by entering Orders requiring Eric and Lora Steinmann to appear for their combined Rule 2004 examinations and depositions, and to produce records responsive to the Trustee's and Creditors' joint document requests relating to the Revocable Trust.  (Bk. Dkt. Nos. 545-546, 632, 634, 711-712, 728).

On September 3, 2019, Lora Steinmann appeared for her combined Rule 2004 examination and deposition, during which she failed (i) to produce any documents; and refused to answer (ii) any questions asked by Creditors' counsel whatsoever, as well as (iii) any basic questions posed by the Trustee's attorney.  In response, the Trustee and Creditors jointly moved to compel Lora Steinmann's further examination and production of documents.  (Bk. Dkt. Nos. 736-738).

In opposing those motions, Lora Steinmann admittedly "beat[] a dead horse" by resurrecting the same No Valid Claim Defense which both this Court and the BAP had previously considered and rejected.  In doing so, she again contended that the "[A]dversary [A]ction [was] neither well-grounded in fact nor supported by existing law[,]" and that none of the previously ordered discovery was warranted because "[a]ny interest that beneficiaries of a revocable trust, such as the [Revocable] Trust in this case, have in trust property is 'merely potential' and can 'evaporate in a moment at the whim of the settlor[.]"  (Bk. Dkt. No. 745 at pp. 2:14-21, 7:11-16; *see also* Bk. Dkt. No. 737 at pp. 17:20-18:11, 23:26-24:16, 26:24-27:14, 28:24-29:9 (arguing that "until the settlors die, a beneficiary of a

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

revocable trust does not have any property rights," and that "the assets owned by the Debtor's parents" in the Revocable Trust were therefore "irrelevant" and not discoverable).

Reconfirming its prior Orders and rulings that the Adversary Complaint was legally tenable, this Court entered Orders between January and April 2020 (i) again rejecting the No Valid Claim Defense, this time as an excuse for the Steinmanns' violation of this Court's discovery Orders, and correspondingly (ii) compelling Lora and Eric Steinmann to participate in discovery, as well as (iii) sanctioning Lora Steinmann for her misconduct (the "**Motion to Compel and Sanctions Orders**").  (Bk. Dkt. Nos. 759, 816, 848).

### D.    This Court's Third Denial of the Steinmanns' No Valid Claim Defense in Granting Creditors' Motion to Intervene in the Adversary Action

On September 17, 2019, shortly after Lora Steinmann refused to participate in her combined Rule 2004 examination and deposition, Creditors moved to intervene in the Adversary Action on the grounds that they (i) "possesse[d] a significant and concrete interest in the outcome of [that proceeding] by virtue of their status as the Debtor's largest creditors; and in light of both the (ii) significant value of the Debtor's fraudulently transferred interest in the [Revocable] Trust"; and the fact that (iii) "[i]f the Debtor and Steinmanns prevail[ed] in the [] Adversary Action, the Debtor's interest in the [Revocable] Trust [would] remain beyond the reach of the Trustee, and the Estate [would] correspondingly be denied a potentially significant asset that [could] be used to satisfy the Debtor's creditors" (the "**Intervention Motion**").  (Adv. Dkt. No. 122 at pp. 10:10-22, 11:3-8).

The Steinmanns jointly opposed the Intervention Motion by once-again deploying their No Valid Claim Defense and arguing that Creditors "lack[ed] standing to intervene because they" allegedly did "not hold" any "independent" or valid "legal claims that can be asserted" with respect to the Revocable Trust.  (Adv. Dkt. 135 at p. 3:17-22).  Consistent with its and the BAP's prior Orders and rulings, this Court not only rejected the Steinmanns' No Valid Claim Defense for a third time and subsequently entered its December 11 and 12, 2019 Orders granting the Intervention Motion as to the Adversary Complaint's respective second and third causes of action for a resulting trust and declaratory relief, (Adv. Dkt. Nos. 145, 149), but also explicitly found that Creditors had carried

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

1   "the[ir] burden of showing that [those] purported claims exist[ed] under some substantive law." (Adv.

2   Dkt. No. 145 at p. 4:6-5:20).

3         **E.**        **The Service of the 9011 Motion and the Dismissal of the Adversary Action**

4         On July 31, 2020, the Debtor's Bankruptcy Case and the Adversary Action were reassigned to

5   the Honorable Scott C. Clarkson following the retirement of the Honorable Catherine Bauer. (Bk.

6   Dkt. No. 931; Adv. Dkt. No. 178).

7         On September 23, 2020, the Steinmanns served—but did not file—their 9011 Motion. (*See*

8   Rafatjoo Decl., Ex. D [Proof of Service]).

9         One week later, on October 2, 2020, the Court set a hearing and corresponding briefing

10  schedule, *sua sponte*, to determine whether judgment on the pleadings should be granted in favor of

11  the Steinmanns in the Adversary Action. (Adv. Dkt. No. 233).

12        On October 15, 2020, the Trustee moved to voluntarily dismiss the Adversary Complaint's

13  first, fourth and fifth causes of action. (Adv. Dkt. No. 268).

14        On November 17, 2020, the Court, after considering the briefing and argument of the parties,

15  entered Orders (i) granting the Steinmanns judgment on the pleadings and dismissing the Adversary

16  Complaint; and (ii) denying the Trustee's motion for voluntary dismissal as procedurally improper.

17  (Adv. Dkt. Nos. 300, 304). The next day, on November 18, 2020, the Court entered judgment in favor

18  of the Steinmanns in the Adversary Action. (Adv. Dkt. No. 304).

19        **F.**        **The District Court's Denial of the Steinmanns' No Valid Defense Argument in**

20              **Substantively Affirming the Motion to Compel and Sanctions Orders**

21        Following the entry of judgment in the Adversary Action, Lora Steinmann appealed and sought

22  to overturn Judge Bauer's Motion to Compel and Sanctions Orders on, *inter alia*, the professed

23  grounds that Judge Clarkson's MJOP Ruling not only (i) vindicated the No Valid Claim Defense the

24  Steinmanns had unsuccessfully interposed multiple times before the Adversary Action's reassignment

25  and dismissal, but also (ii) retroactively nullified each of this Court's and the BAP's prior contrary

26  Orders and rulings, thereby (iii) legitimizing and absolving her of all responsibility for the discovery

27  abuses she committed while the Adversary Complaint was pending. (*See* Dist. Ct. Dkt. No. 9 at p. 13

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

("the Defense Judgment on the Pleadings . . . also support[s] that Appellant's positions were substantially justified.").[6]

On March 26, 2021, the District Court entered an Order affirming Judge Bauer's decision to sanction Lora Steinmann, thereby confirming that the MJOP Ruling and No Valid Claim Defense were not remotely relevant to the propriety of, let alone capable of negating, Judge Bauer's prior Orders and rulings, or Lora Steinmann's discovery misconduct. (Dist. Ct. Dkt. No. 15). Although the District Court affirmed the issuance of sanctions against Lora Steinmann, it remanded the matter to this Court for the sole purpose of recalculating the appropriate sanctions amount. (*Id.*)

### G.    The Steinmanns' Late Filed 9011 Motion

On July 8, 2021—nearly (i) 3 years after the Trustee commenced the Adversary Action; more than (ii) 9 months after the 9011 Motion was served; and more than (iii) 7 months after the Court issued the MJOP Ruling and dismissed this case—the Steinmanns, through their newly retained counsel, the DiBenedetto Firm, filed their 9011 Motion, seeking: (1) the dismissal of the Adversary Action (*i.e.*, the same relief the Steinmanns had obtained more than seven months earlier); and (2) unspecified fees the Steinmanns claim they incurred after the 9011 Motion was served in September 2020. (Adv. Dkt. No. 316).[7]

---

[6] *See also, id.,* Lora Steinmann contentions made at pp. 15-16 ("Without question, the Debtor did not have any interest in Appellant's revocable *inter-vivos* trust, having been removed as a beneficiary prior to bankruptcy . . . . As such, none of the documents ordered produced had any bearing on bankruptcy estate property."); p. 20 (citing Judge Clarkson's MJOP Ruling to support the argument that Appellant's nondisclosure of her financial information was "substantially justified"); p. 21 (arguing "the discovery sought by Trustee and Appellees was not 'needed' in the litigation" because Judge Clarkson ultimately determined the Debtor's interest in the Revocable Trust was "never actually 'property' owned by the Debtor" or by her Estate); p. 22 (arguing Appellant was "substantially justified in refusing to disclose her personal financial information during her deposition," and that such information was "irrelevant," based on the "breadth of authority" Judge Bauer rejected in the Motion to Dismiss Orders, but which Judge Clarkson later relied upon in his MJOP Ruling); pp. 24-25 (arguing the Motion to Compel and Sanctions Orders were "unjust" in light of Judge Clarkson's subsequent MJOP Ruling and corresponding "critici[sm] of the former bankruptcy judge" who issued those Orders); p. 30 ("The underlying lawsuit seeking to avoid Debtor's termination as a revocable beneficiary should never have been filed for the reasons set forth in Judge Clarkson's detailed 35-page Memorandum Decision . . . . As such, discovery into Appellant's assets held in the revocable trust was improper and Appellant was substantially justified in refusing to disclose such information.")

[7] Tellingly, none of the law firms that represented the Steinmanns throughout the Adversary Action and that prepared and served the 9011 Motion in September 2020—Marshack Hays LLP, Procopio, Cory Hargreaves & Savitch LLP, and Palmer Hunter & Hall—either filed or are prosecuting the 9011 Motion, in apparent recognition of that motion's legal impropriety detailed, *infra,* and the

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

1    ## III.    LEGAL STANDARD APPLICABLE TO RULE 9011 MOTIONS

2    Rule 9011 "empowers courts to impose sanctions upon the signers of paper where a) the paper

3    is frivolous, or b) the paper is filed for an improper purpose." *In re Brooks-Hamilton*, 400 B.R. 238,

4    249 (B.A.P. 9th Cir. 2009); *see also* Fed. R. Bankr. P. 9001(b)(1)-(2).  Monetary sanctions, however,

5    "may not be awarded against a represented party" for asserting an allegedly frivolous argument.  *See*

6    Fed. R. Bankr. P. 9001(c)(2)(A); *see also In re Crystal Cathedral Ministries*, No. 2:12-bk-15665-RK,

7    2020 Bankr. LEXIS 851, at *164 n. 25 (Bankr. C.D. Cal. Mar. 31, 2020) ("a represented party relies

8    on her counsel's expertise and may not be held accountable for legal arguments that are baseless and

9    made without a reasonable inquiry.").

10    Frivolousness is an "objectively" measured and "minimal standard," and "[w]hen there is a

11    plausible basis, even a very weak one, supporting the litigant's position, [the] imposition of . . .

12    sanctions is inappropriate." *In re Radakovich*, No. WW-13-1254-KuPaJu, 2014 Bankr. LEXIS 4017,

13    at *11 (B.A.P. 9th Cir. Sep. 19, 2014), at *10 (B.A.P. 9th Cir. Sept. 19, 2014).  Accordingly, like its

14    civil counterpart Federal Rule of Civil Procedure 11 ("**Rule 11**"), Rule 9011 "sets a low bar[.]" *Strom*

15    *v. United States*, 641 F.3d 1051, 1059 (9th Cir. 2011); *see also In re Grantham Bros.*, 922 F.2d at 1441

16    (9th Cir. 1991) (Rule 9011 and Rule 11 are "essentially identical," and courts applying Rule 9011

17    "rely on Rule 11 cases").

18    "As with frivolous pleadings, whether a paper is filed for an improper purpose is tested by

19    objective standards[,]" and a court must ask whether the pleading is "harass[ing]," "cause[d]

20    unnecessary delay," or "needless[ly] increase[d] [] the cost of litigation." *G.C. & K.B. Invs., Inc. v.*

21    *Wilson*, 326 F.3d 1096, 1110 (9th Cir. 2003) (quotation marks omitted).  In making that determination,

22    a party's subjective intent in filing the challenged pleading "is of no moment." *Id.* at 1109.

23    Consistent with these governing standards, both Rule 9011 and Rule 11 sanctions are

24    "reserve[d] . . . for [] rare and exceptional case" and must be "exercised with extreme caution."

25    *Operating Eng'rs Pension Trust v. A-C Co.*, 859 F.2d 1336, 1344-1345 (9th Cir. 1988) (Rule 11); *see*

26    *also In re Quinones*, 543 B.R. 638, 646 (Bankr. N.D. Cal. 2015) (Rule 9011 sanctions are "an

27

28    corresponding unwillingness of those firms to proceed or otherwise be involved with that prohibited
filing.  (Adv. Dkt. No. 316 at p. 1).

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

exceptionally serious matter, and [are] reserved for [] rare situations").  "This minimalist approach" is "no accident."  "Rather, it is necessitated by the risk that losing arguments easily can" and improperly will "be conflated with frivolous arguments."  *In re Radakovich*, 2014 Bankr. LEXIS 4017, at *10. To that end, the law is clear that a party's "ultimate failure on the merits is irrelevant" to the propriety of sanctions.  *Hudson,* 836 F.2d at 1159;  *see also Bus. Guides, Inc. v. Chromatic Communs. Enters.*, 498 U.S. 533, 553 (1991) (Rule 11 sanctions "are not tied to the outcome of litigation" because "the relevant inquiry is whether a specific filing was, if not successful, at least well founded.").  ***Indeed, it constitutes a "misuse" of Rule 9011 and Rule 11 to seek sanctions "against a party or counsel whose only sin was being on the unsuccessful side of a ruling or judgment*.**"  *Gaiardo v. Ethyl Corp.*, 835 F.2d 479, 483 (3d Cir. 1987) (emphasis added).

To counter such misuse, courts are required to avoid applying Rule 9011 "so as to chill an attorney's enthusiasm in pursuing factual or legal theories[,]" *In re Villa Madrid*, 110 B.R. 919, 922 (9th Cir. BAP 1990) (internal quotations omitted), and from "using the wisdom of hindsight" in evaluating the propriety of a pleading, because "[t]he simple fact that an attorney's legal theory failed to persuade the district court does not demonstrate" the frivolousness or improper purpose prerequisite to sanctions.  *See Operating Eng'rs Pension Trust*, 859 F.3d at 1344.  Absent adherence to these mandated principles, the Ninth Circuit can, and routinely does, reverse sanctions awards.  *See, e.g., Operating Eng'rs Pension Trust*, 859 F.3d at 1345 ("we have been required with some regularity to reverse district court awards of sanctions," and "courts simply must use more restraint" when contemplating the "extraordinary remedy" of Rule 11 sanctions); *United Nat'l Ins. Co. v. R&D Latex Corp.*, 242 F.3d 1102 (9th Cir. 2001) (reversing sanctions where counsel had "some plausible basis, albeit quite a weak one" for argument); *Riverhead Sav. Bank v. Nat'l Mortg. Equity Corp.*, 893 F.2d 1109, 1116 (9th Cir. 1990) (reversing sanctions where there was a "plausible good faith argument" for equitable indemnity claim).

///

///

///

///

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

## IV.    **ARGUMENT**

### A.    **This Court's and the BAP's Prior Orders and Rulings Legally Preclude the Imposition of Rule 9011 Sanctions**

Consistent with the policy of extreme caution and lenity with respect to Rule 9011 and Rule 11, both Ninth Circuit and federal district court law are clear that sanctions are legally unavailable where, as here, an allegedly offending complaint has survived a Rule 12(b)(6) motion to dismiss. *See, e.g., Rose*, 916 F. Supp. 2d at 1174 (holding Rule 11 sanctions were legally unavailable where the court denied defendant's motion to dismiss and the plaintiff had therefore "sufficiently alleged a non-frivolous claim"); *Williams v. Aho*, No. CV 16-2088 PSG (FFMx), 2016 U.S. Dist. LEXIS 195930, at *9-10 (C.D. Cal. Sep. 2, 2016) ("Given that the Court has already concluded that the Complaint stated a plausible claim for relief under the Copyright Act and the DMCA, Defendant has provided the Court with no reason to believe that this litigation was filed purely to harass or that Plaintiff's claims are wholly lacking evidentiary support.  The court thus denies Defendant's [Rule 11] motion for sanctions."); *Loumena v. Kennedy*, No. 15-CV-00951-LHK, 2015 U.S. Dist. LEXIS 139369, at *17 (N.D. Cal. Oct. 13, 2015) ("In determining whether an objectively reasonable basis exists, whether the pleader is correct in his perception of the law is not critical.  Thus, if a court finds that a party made a reasonably arguable claim at the time of filing the complaint, the court should not apply Rule 11 sanctions."); *Instant Checkmate, Inc. v. Background Alert, Inc.*, No. 3:14-cv-01182-MMA-DHB, 2014 U.S. Dist. LEXIS 190115, at *20 (S.D. Cal. Dec. 4, 2014) ("in light of the Court's denial of Instant Checkmate's motion to dismiss, the Court finds that the counterclaim is not frivolous for purposes of Rule 11 sanctions."); *Steinberg v. Nationwide Mut. Ins. Co.*, 418 F. Supp. 2d 215, 226 (E.D.N.Y. 2006) (rejecting argument that complaint was frivolous and improperly prosecuted where the court previously denied a motion to dismiss); *Wade v. Gaither*, 623 F. Supp. 2d 1277, 1289 (D. Utah 2009) ("Given the Court's instant ruling [denying] Defendant's Motion to Dismiss, it is clear that Rule 11 sanctions are inappropriate"); *Gal. v. Viacom Int'l, Inc.*, 403 F. Supp. 294, 308 (S.D.N.Y. 2005) ("as I have already concluded in this opinion that Plaintiff's infringement claim alleges enough to survive a Rule 12(b)(6) motion to dismiss, it follows that the claim is not 'baseless' for Rule 11 purposes"); *Country Inns & Suites by Carlson, Inc. v. Gokul Mgmt.*, Civil Action No. 07-2044 (DRD), 2007 U.S.

Dist. LEXIS 59407, at *12 (D.N.J. Aug. 13, 2007) ("The Third Party Plaintiffs have pleaded sufficient facts and there is a basis in law to defeat the motion to dismiss.  Thus, [the] motion for Rule 11 sanctions is denied.").

As long-recognized and instructed by the United States Supreme Court, "only a complaint that states a plausible claim for relief survives a motion to dismiss."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Accordingly, adherence to the rule prohibiting sanctions after a complaint withstands a motion to dismiss further is mandated by the practical and legal reality that a plaintiff is legally entitled to prosecute its claims following, and in reliance upon, a prior court order acknowledging their legal tenability.  *See, e.g., In re Theokary*, Nos. 07-110008 ELF, 09-051, 2012 Bankr. LEXIS 4020, at *5 n. 3 (Bankr. E.D. Pa. 2012) ("Ordinarily, a party's continued prosecution of a claim after the court's denial of a motion to dismiss will not give rise to a Rule 9011 violation.").  That rule applies with particular force here, where Judge Clarkson's MJOP Ruling not only (i) represented a 180-degree departure from each of Judge Bauer's and the BAP's prior Orders and rulings ***denying*** the Steinmanns' No Valid Claim Defense, but also represented (ii) the very first and only time ***any*** court had issued ***any*** ruling casting doubt upon, much less rejecting, the legal tenability of the Adversary Complaint's claims.  *See, e.g., DeStefano v. Twentieth Century Fox Film Corp.*, 11 F.3d 123 (2d Cir. 1997) ("As to the failure of plaintiff's counsel to withdraw the suit in December 1994, counsel's reliance on a prior order of Judge Sprizzo denying summary judgment, despite the successor judge's statement as to her expectation that she would overturn that ruling, was not so misguided as to warrant imposition of sanctions under either Rule 11 or the court's inherent power."), *published in full-text format at* 1997 U.S. App. LEXIS 6247.  ***It is therefore not surprising that the Steinmanns have failed to cite—nor have the Creditors found—<u>any</u> authority requiring a party to unilaterally concede the invalidity of and voluntarily abandon its claims <u>after</u> the presiding court has confirmed the legal tenability of those claims, let alone done so <u>repeatedly</u>, as this Court and the BAP respectively did here.***

Consistent with the governing law the Steinmanns conspicuously fail to address, the 9011 Motion is legally precluded and is required to be denied where the No Valid Claim Defense collectively was rejected by this Court and the BAP on four separate occasions prior to the MJOP Ruling, and where the irrefutable facts further establish that:

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

1. On January 15, 2019, this Court entered the Motion to Dismiss Orders denying the Steinmanns' Rule 12(b)(6) challenges to the Adversary Complaint, (Adv. Dkt. Nos. 49-50), thereby confirming that the Trustee had alleged both "a cognizable legal theory," and "sufficient facts" to state a "plausible" claim under the law. *In re Dane*, 2014 Bankr. LEXIS 2378, at *19. Indeed, to that end, this Court specifically found that both the Adversary Complaint and the Steinmanns' Rule 12(b)(6) Motions to Dismiss raised "***very interesting***" and "***cutting edge***" issues that were "***not ripe***" for adjudication and resolution at the pleading stage. (Adv. Dkt. No. 48 [1/8/19 Tr.] at pp. 36:17-37:6 (emphasis added));

2. On April 10, 2019, the BAP denied the Steinmanns' requests for interlocutory review of the Motion to Dismiss Orders on the grounds that they did not implicate "a controlling question of law" that could result in the "ultimate termination of the litigation," but rather necessitated "the bankruptcy court's . . . determination of crucial ***factual*** issues" regarding the Revocable Trust in the first instance. (Adv. Dkt. Nos. 117-118 at p. 2 (emphasis added)). *Compare, In re Cement Antitrust Litig.*, 673 F.2d 1020, 1026 (9th Cir. 1982) (appellate courts have discretion to consider and rule upon interlocutory appeals that may "avoid protracted and expensive litigation."); *In re Bertain*, 215 B.R. 438, 441 (B.A.P. 9th Cir. 1997) (granting leave to appeal interlocutory order denying motion to dismiss);

3. On January 8, March 19 and April 17, 2020, this Court entered its Motion to Compel and Sanctions Orders (i) rejecting the Steinmanns' attempt to avoid discovery based upon their No Valid Claim Defense; (ii) granting the Trustee's and Creditors' motions to compel discovery from Lora and Eric Steinmann; and (iii) sanctioning Lora Steinmann for her violations of the Court's discovery Orders. (Bk. Dkt. Nos. 759, 816, 848);

4. On December 11, 2019, this Court partially granted Creditors' Intervention Motion as to the Adversary Complaint's second and third causes of action, based upon its express conclusion and finding that Creditors had carried "the[ir] burden of showing that [those] purported claims exist[ed] under some substantive law." (Adv. Dkt. No. 145 at pp. 4:6-5:20); and where

5. The District Court again rejected the No Valid Claim Defense and Lora Steinmann's corresponding assertion that the MJOP Ruling retroactively excused and legitimized her discovery violations in substantively affirming the Motion to Compel and Sanctions Orders (Dist. Ct. Dkt. No. 15). *See also Bus. Guides, Inc.*, 498 U.S. at 553 (Rule 11 sanctions "are not tied to the outcome of litigation"); *Hudson*, 836 F.2d at 1159 ("ultimate failure on the merits is irrelevant" to Rule 11 sanctions); *Operating Eng'rs Pension Trust*, 859 F.3d at 1344 (a pleading is not "frivolous" simply because the "attorney's legal theory failed to persuade" the court).

Put simply, there is no basis for the Steinmanns' bald supposition that the MJOP Ruling somehow retroactively nullified the foregoing Orders and rulings and thereby negated Creditors' good-faith reliance on them. Nor is there any legal or factual justification for the Steinmanns' equally unsubstantiated assertion that the MJOP Ruling alone warrants the imposition of Rule 9011 sanctions, particularly where the evidence establishes that:

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

- Creditors only requested and obtained leave to intervene on the Trustee's second and third causes of action in December 2019—*i.e.*, *after both* this Court and the BAP had each *already* determined and confirmed the legal tenability of the Adversary Complaint, (Adv. Dkt. Nos. 49-50, 117-118), and had recognized the legal plausibility of those claims under governing "substantive law." (Adv. Dkt. No. 145);

- After Creditors intervened, this Court expressly found that, unlike a run-of-the-mill revocable trust case, the Adversary Action raised the specter of a "*side deal*" that was "*coordinat[ed]*" between the Debtor and her family members for the admitted purpose of depriving the Debtor's creditors and Estate of that valuable asset. (Rafatjoo Decl., Ex. E [12/17/19 Tr.] at pp. 15:10-16:1 (emphasis added)). To that end and in seeking interlocutory review of this Court's Motion to Dismiss Orders, the Steinmanns expressly argued and admitted to the BAP that the Adversary Complaint "*present[ed] a question of first impression" regarding "whether the FDCPA can be utilized in a bankruptcy case . . . to avoid the termination of a revocable beneficiary's former interest in a trust*." (BAP Dkt. No. 2 at p. 8:3-5 (emphasis added)). And, in subsequently requesting a stay of this Court's Motion to Dismiss Orders pending the BAP's resolution of their proposed interlocutory appeals, the Steinmanns similarly argued and admitted that those rulings implicated "*a brand new issue of law" on which this Court "may be right" given that "this is a pretty unique case" involving the Debtor's strategically-revoked interest in the Revocable Trust.* (Adv. Dkt. No. 134 [2/26/19 Tr.] at pp. 3:2-10, 7:4-5, 42:12-14 (emphasis added)). Having made those judicial admissions,[8] the Steinmanns are legally estopped[9] from now hypocritically contending that the Adversary Complaint was "completely unwarranted when filed" or "objectively frivolous" under Rule 9011. (9011 Mot. at pp. 3:2-3, 16:18-19). *See also Strom*, 641 F.3d at 1059 ("a suit raising a novel issue" is "not subject to Rule 11 sanctions, even if it was subject to dismissal on the pleadings for failure to state a claim for relief");

- In issuing its MJOP Ruling and dismissing the Adversary Complaint, this Court concluded that the Debtor's contingent interest in the Revocable Trust did not legally constitute property of the Debtor's Estate. (*see* Adv. Dkt. No. 300). As such, this is *not* a case in which a plaintiff

---

[8] *See, e.g., Gospel Missions of Am. v. City of Los Angeles*, 328 F.3d 548, 557 (9th Cir. 2003) ("We have discretion to consider a statement made in briefs to be a judicial admission, *Kohler v. Inter–Tel Techs.*, 244 F.3d 1167, 1180 n. 9 (9th Cir.2001) (appellate briefs); *Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 227 (9th Cir.1988) (trial briefs), binding on both this court and the trial court. *United States v. Bentson*, 947 F.2d 1353, 1356 (9th Cir.1991).");  *Baxter v. MBA Grp. Ins. Tr. Health & Welfare Plan*, 958 F. Supp. 2d 1223, 1232–33 (W.D. Wash. 2013) ("First, the Court exercises its discretion and treats Plaintiff's admission in his motion for summary judgment as a binding judicial admission. *Gospel Missions of Am. v. City of L.A.*, 328 F.3d 548, 557 (9th Cir.2003) (holding courts "have discretion to consider a statement made in briefs to be a judicial admission … binding on . . . the trial court."); *see also Purgess v. Sharrock*, 33 F.3d 134, 144 (2d Cir. 1994) ("A court can appropriately treat statements in briefs as binding judicial admissions of fact."). Here, Plaintiff unambiguously conceded in his summary judgment motion that proton therapy is more costly than x-ray therapy. Plaintiff should not be permitted to abandon this argument and take a different position in later-filed briefing.").

[9] *See United States Nat'l Ins. Co. v. Spectrum Worldwide, Inc.*, 555 F.3d 772, 778 (9th Cir. 2009) (the "doctrine of judicial estoppel" may be "invoke[d] to protect the integrity of the judicial process" and "was developed to prevent litigants from 'playing fast and loose' with the courts by taking one position" and "then seeking a second advantage by later taking an incompatible position" in the "same litigation")

improperly continued to prosecute a complaint after discovering facts clearly requiring its dismissal.  To the contrary, Creditors justifiably and partially intervened in, and thereafter exclusively assisted in the prosecution of, the Adversary Complaint's second and third causes of action in reliance upon Judge Bauer's and the BAP's prior Orders and rulings.  Indeed, the Adversary Complaint's ultimate dismissal exclusively resulted from this Court's subsequent and purely legal conclusion—***reached for the very first time in the MJOP Ruling***—that Judge Bauer (and, correspondingly, the BAP in its subsequent BAP Dismissal Orders) had "clearly" and "erroneously" applied the law in deeming the Adversary Complaint legally tenable and plausible in the first instance.  (*Id.* at p. 28:6-14).  *Cf. Childs v. State Farm Mut. Auto Ins. Co.*, 29 F.3d 1018, 1020 (5th Cir. 1994) (affirming Rule 11 sanctions where attorney continued to prosecute action and sign pleadings despite defendant's production of "substantial and compelling evidence" that plaintiff deliberately staged alleged accident to secure insurance benefits); and that

- Even after dismissing the Adversary Action, this Court expressly acknowledged and commended Creditors for their work and good faith efforts across the Debtor's entire bankruptcy action and related proceedings, stating that:

> . . . I have to tell you that I have reviewed, as Mr. Rafatjoo has said, the entire record of this entire case, and I appreciate the work that was done in advancing [Creditors'] own claims, and finding lots of information that was uncovered, and that effort is not unnoted by this Court, and please convey that back to your clients, Mr. Rafatjoo.
>
> \*      \*      \*      \*
>
> Mr. Rafatjoo, I appreciate all of your comments, and, again, I want to again amplify my comments about your clients' efforts in this entire case, and what I consider good faith efforts.  They were doing exactly what they needed to do, and especially because of the amount of their claim, you know, whether proven at the time or not, whether determined to be dischargeable or not.  So I highly acclaim you and your work, and your associate attorneys, and your clients, for fulfilling, I believe, a good civil commitment.  I also wanted to compliment everyone in the entire process on the civility that I have seen throughout this case.
>
> \*      \*      \*      \*
>
> So I want to thank you again for all of the work, and I really, seriously and sincerely, want you to convey to your client's this Court's appreciation and complete understanding of what they were seeking and they obtained in the form of a nondischargeability result . . . .

(Rafatjoo Decl., Ex. F [3/3/21 Tr.] at pp. 13:14-20, 16:22-17:8, 21:24-22:4).

Under these circumstances, no federal law or policy either does, or conceivably legally can, condone the Steinmanns' attempt to punish Creditors for partially intervening in, and thereafter assisting exclusively in the prosecution of, the second and third causes of action of the Adversary

1   Complaint in good faith reliance upon, and in strict compliance with, the prior Orders and rulings of

2   not only this Court, but also of the BAP.  Nor is there any basis for the Steinmanns' related and

3   similarly unsubstantiated supposition and presumption that Creditors should have foreseen and

4   avoided participation in the Adversary Action in anticipation of (i) Judge Bauer's sudden and

5   unexpected retirement; and (ii) the corresponding reassignment to and dismissal of this case by Judge

6   Clarkson via a motion for judgment on the pleadings, which motion was *sua sponte* invited and

7   granted, following this Court's and the BAP's previous recognition of the Adversary Complaint's legal

8   tenability on no less than four prior occasions. *See DeStefano*, 11 F.3d 123 (holding that (1) plaintiff's

9   counsel properly "reli[ed] on [the first judge's] prior order . . . denying summary judgment" and

10  refused to dismiss the complaint "despite the successor judge's statement as to her expectation that

11  she would overturn that ruling"; and that (2) Rule 11 sanctions were therefore legally inappropriate).

### B.    The 9011 Motion Also Must Be Denied Because It Is Untimely

13  Even assuming, *arguendo*, that this Court's and the BAP's prior Orders and rulings did not

14  exist and did not alone  legally preclude an award of sanctions, the 9011 Motion would still  legally

15  be required to be denied for the independently dispositive reason that it is untimely.

16  "[T]he primary purpose of sanctions" is to "deter subsequent abuses[,]" and that "policy is not

17  well served by tolerating [alleged] abuses during the course of an action and then punishing the

18  offender after the [action] is at an end."  *In re Yagman*, 796 F.2d 1165, 1183 (9th Cir. 1986).  A

19  sanctions motion therefore must be denied when it is filed after the court has already adjudicated and

20  disposed of the allegedly sanctionable pleading. *See Islamic Shura Council of S. Cal.*, 757 F.3d at 873

21  (reversing Rule 11 sanctions where motion was served 25 days before filing, because "the district

22  court had already resolved the underlying dispute at the time Shura Council filed its motion for

23  sanctions."). ***It is therefore unsurprising that "delaying bringing [a Rule 9011] motion until the***

24  ***favorable conclusion of [an adversary proceedings] is exactly the sort of behavior that should result***

25  ***in the Court denying the motion[,]" in order to prevent "turn[ing] [the rule] from a powerful tool***

26  ***for deterrence of abusive litigation practice to a mere fee shifting statute," in violation of Rule 9011***

27  ***"and the cases interpreting" it.***  *In re Quinones*, 534 B.R. at 648-649 (emphasis added) (denying

28  sanctions where debtors failed to seek them until (1) "more than a year and a half after their assertion

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

of FRBP 9011 violations"; and (2) after the debtors had prevailed in the subject adversary proceedings); *see also Philips v. Gilman,* 836 Fed. App'x 511, 515 (9th Cir. 2020) (affirming that "Creditors untimely filed their Rule 9011 Motion after the Bankruptcy Court had already ruled on 'the underlying dispute[s] giving rise to' the Rule 9011 Motion."); *Price v. Hawaii,* 789 F. Supp. 330, 335-336 (D. Haw. 1992) (recognizing that "[a] motion for sanctions under Rule 11" should "be denied when the moving party fails to act promptly[,]" and denying a Rule 11 motion that was "filed more than two years after dismissal" of the challenged pleading); *Grant v. Bostwick*, No. 15-cv-874 WQH (BLM), 2016 U.S. Dist. LEXIS 96078, at *18 (S.D. Cal. July 20, 2016) (denying a Rule 11 motion that was "filed after the Court decided the merits of the underlying motion" that was the subject of the sanctions request).

Moreover, even where, ***unlike here***, a challenged pleading remains at issue, the Ninth Circuit has held that a sanctions motion is still required to be denied as untimely if it was served or filed well-after the alleged misconduct initially occurred. *See, e.g., Holgate*, 425 F.3d at 679 (recognizing that a Rule 11 motion "should be served promptly after the inappropriate paper is filed, and, if delayed too long, may be viewed as untimely[,]" and reversing award of sanctions to defendant who waited "over a year" after complaint was filed to serve and file Rule 11 motion).

Here, the 9011 Motion legally is required to be denied where the Steinmanns impermissibly:

1.    Failed to even ***serve*** the 9011 Motion until September 24, 2020—*i.e.*, more than ***2 years after*** the Trustee filed the Adversary Complaint, and more than ***8 months after*** the Court granted Creditors permission to partially intervene in the Adversary Complaint; as well as

2.    Failed to actually ***file*** the 9011 Motion until July 8, 2021—*i.e.*, nearly (i) ***3 years after*** the Adversary Complaint was filed; more than (ii) ***9 months after*** the 9011 Motion was served; and more than (iii) ***7 months after*** the Court issued the MJOP Ruling dismissing the Adversary Complaint.

(*See* Adv. Dkt. Nos. 1, 145, 300, 316; *see also* Rafatjoo Decl., Ex. D [Proof of Service]).

As such, the Steinmanns' 9011 Motion is untimely as a matter of law and is required to be denied. *See Islamic Shura Council of S. Cal.*, 757 F.3d at 873; *Holgate*, 425 F.3d at 679; *see also,*

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

*e.g., Gary v. Braddock Cemetery*, 517 F.3d 195, 201-202 (3d Cir. 2008) (recognizing the "supervisory rule that counsel seeking Rule 11 sanctions must file their motions before the entry of final judgment in the district court."); *Kaplan v. Zenner*, 956 F.2d 149, 151 (7th Cir. 1991) (approving requirement that Rule 11 motions be filed within 90 days after entry of judgment); *Thompson v. United Transp. Union*, 167 F. Supp. 2d 1254, 1259-1260 (D. Kan. 2001) (Rule 11 motion filed after summary judgment was "untimely"); *Team Obsolete Ltd. v. AHRMA, Ltd.*, 216 FRD 29, 44 (E.D.N.Y. 2003) (denying Rule 11 motion after granting defendant's motion for judgment on the pleadings because defendant "waited for over a year to object to the filing of the complaint in the first instance," and "[i]f the claims on their face were patently frivolous or without any existing basis in law[,]" then defendant should "have moved far sooner."); *Safe-Strap Co. v. Koala Corp.*, 270 F. Supp. 2d 407, 413 n. 3 (S.D.N.Y. 2003) (collecting cases denying Rule 11 sanctions due to moving party's delay, and recognizing that "when, as here, the 'inappropriate paper' averred to is the complaint," the party seeking sanctions "should move promptly after the complaint is filed."); *In re Waldrop*, No. 15-14689-JDL, 2017 Bankr. LEXIS 3720, at *17 (Bankr. W.D. Okla. Oct. 25, 2017) (denying Rule 9011 motion filed 18.5 months after action commenced and 4.5 months after the entry of judgment).

**C.**  **It is the Steinmanns' Rule 9011 Motion Alone Which is "Objectively Frivolous" and Has Been Filed for an "Improper Purpose"**

"Rule 11 is not a toy[,]" and "[a] lawyer who transgress [it] abuses the special role our legal system has entrusted to him." *Draper & Kramer, Inc. v. Baskin-Robbins, Inc.*, 690 F. Supp. 728, 732 (N.D. Ill. 1988). In violation of that law, it is readily apparent that it is the Steinmanns' 9011 Motion alone which is objectively frivolous and has been filed for an improper purpose, particularly where:

1.  Creditors have cited no less than ***10 federal cases, including four from within the Ninth Circuit***, holding that sanctions are legally unavailable in light of this Court's and the BAP's Orders and rulings acknowledging the legal tenability of the Adversary Complaint both prior to, and after, Creditors intervened in this action.

2.  Creditors expressly apprised the Steinmanns of that dispositive law in October 2020, nearly 10 months before they filed their ill-conceived 9011 Motion. (Adv. Dkt. No. 285 at pp. 5:16-6:13); *see also, supra, at Section IV.A;*

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

3.      Creditors further have citied no less than *11 federal causes, including five from within the Ninth Circuit*, holding that a sanctions motion must be promptly filed immediately after the challenged conduct occurs, and cannot legally be filed where, as here, the Court has already ruled upon and resolved the challenged pleading. *See, supra, at Section IV.B*;

4.      The Steinmanns completely ignored, let alone attempted to refute, any one of the above-referenced *21 decisions* legally precluding the imposition of sanctions against Creditors and their counsel in this case in their 9011 Motion; and where

5.      The Steinmanns did not promptly file their 9011 Motion after (i) the Trustee commenced the Adversary Action in September 2018; (ii) Creditors partially intervened in the Adversary Complaint in December 2019; (iii) the Steinmanns served the 9011 Motion in September 2020; or (iv) the Court issued the MJOP Ruling and dismissed this case in November 2020.  Instead, the Steinmanns strategically waited until months *after* judgment was *already* entered, thereby demonstrating that their 9011 Motion clearly is *not* intended to "deter [any] subsequent abuses" in this now-closed action, nor possibly could be.  *In re Yagman*, 796 F.2d at 1183.  Rather, by filing their Rule 9011 Motion long after this case has been adjudicated, the Steinmanns clearly are attempting to utilize Rule 9011 as a "mere fee shifting statute," in violation of the law prohibiting such misuse of that Rule.  *In re Quinones*, 534 B.R. at 648-649 (denying sanctions where debtors failed to seek them until (1) "more than a year and a half after their assertion of FRBP 9011 violations"; and (2) after the debtors had prevailed in the subject adversary proceedings).

///

///

///

///

///

///

///

///

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

#118393301v1

21

1

## V.     **CONCLUSION**

2

3    For each of the foregoing reasons, Creditors respectfully request that the Steinmann's Rule

9011 Motion be denied in its entirety.

4    Dated:  August 5, 2021

PACHULSKI STANG ZIEHL & JONES LLP

5    By:  ___/s/ Richard M. Pachulski_____

6    Richard M. Pachulski
Attorneys for Creditors and Intervenors

7    HAUSMAN HOLDINGS, LLC and
DAVID and PAMELA MOELLENHOFF

8    Dated:  August 5, 2021

RAINES FELDMAN LLP

9

10    By:  ___/s/ Hamid R. Rafatjoo_____
Hamid R. Rafatjoo

11    Attorneys for Creditors and Intervenors
HAUSMAN HOLDINGS, LLC and

12    DAVID and PAMELA MOELLENHOFF

13    Dated:  August 5, 2021

TROUTMAN PEPPER HAMILTON SANDERS LLP

14    By:  ___/s/ Alan J. Kessel_____
Alan J. Kessel

15    Attorneys for Creditors and Intervenors
HAUSMAN HOLDINGS, LLC and

16    DAVID and PAMELA MOELLENHOFF

17

18

19

20

21

22

23

24

25

26

27

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

## DECLARATION OF HAMID R. RAFATJOO

I, Hamid R. Rafatjoo, hereby declare as follows:

1      I am an attorney duly authorized to practice before the United States Bankruptcy Court for the Central District of California.  I am a Partner of Raines Feldman LLP located at 1800 Avenue of the Stars, Suite 1200, Los Angeles, California 90067, counsel of record for Creditors and Intervenors Hausman Holdings, LLC and David and Pamela Moellenhoff (collectively, **"Creditors"**).

2      I make this declaration in support of Creditors' opposition (**"Opposition"**) to the *Motion for Sanctions Under Rule 9011 of the Federal Rules of Bankruptcy Procedure* (the "**9011 Motion**") filed by Defendants Lora Rae Steinmann, Heinz H. Steinmann, Eric Steinmann, Susanna Steinmann Wilson, Thomas Steinmann, John Steinmann, Mary Steinmann Sypkens, Teresa Steinmann Stapleton, Kay Steinmann Belknap, Jeff Steinmann, and Heinz J. Steinmann (collectively, the "**Steinmanns**").  (Adv. Dkt. No. 316).   I am over the age of 18 and, except as is otherwise set forth herein, I have personal knowledge of all facts stated herein.  If called as a witness, I could and would testify competently to the facts stated herein.

3      Attached as Exhibit "A" is a true and correct copy of relevant excerpts of the transcript of the July 10, 2017 deposition of Lora Rae Steinmann.

4      Attached as Exhibit "B" is a true and correct copy of relevant excerpts of the transcript of the September 3, 2019 deposition of Lora Rae Steinmann.

5      Attached as Exhibit "C" is a true and correct copy of relevant excerpts of the transcript of the January 29, 2020 examination of Eric Steinmann before the Hon. Catherine Bauer in the above-captioned proceeding.

6      Attached as Exhibit "D" is a true and correct copy of the Proof of Service of the 9011 Motion.

7      Attached as Exhibit "E" is a true and correct copy of the relevant excerpts of the transcript of the December 17, 2019 hearing in the United States Bankruptcy Court of the Central District of California, Santa Ana division, before the Hon. Catherine Bauer, in the above-captioned proceeding.

8      Attached as Exhibit "F" is a true and correct copy of the relevant excerpts of the transcript of the March 3, 2021 hearing in the United States Bankruptcy Court of the Central District of California, Santa Ana division, before the Hon. Scott Clarkson, in the Chapter 7 Bankruptcy proceeding of Andrea Steinmann Downs, Case No. 8:16-bk-12589-SC.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

Executed this 5th day of August, 2021, at Los Angeles, California.

/s/ Hamid R. Rafatjoo
Hamid R. Rafatjoo

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

# EXHIBIT A

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA, SANTA ANA DIVISION


In re:                              )
                                    )
ANDREA S. DOWNS,                    ) CASE NO.
                                    ) 8:16-bk-12589-CB
_____ )




                    DEPOSITION OF:  LORA STEINMANN

                    TAKEN ON:       July 10, 2017



          37755                     Amy L. Horn

                                    CSR No. 7919

1          MR. RAFATJOO:  That's what the document says.

2    The document says she's disowned.  I'm asking why did you

3    amend your trust to disown Andrea?

4          MR. GALLAGHER:  Objection.  The document

5    speaks for itself.

6          MR. RAFATJOO:  It does not.

7    BY MR. RAFATJOO:

8        Q.    Why did you disown Andrea?

9              MR. GALLAGHER:  Same objection.

10   BY MR. RAFATJOO:

11       Q.    You can answer the question.

12             MR. GALLAGHER:  You can answer.

13             THE WITNESS:  In lieu of what was happening,

14   we didn't want any of our assets to be given to anyone

15   else, so we decided that we have a revocable trust, that

16   we would exclude Andrea from receiving any of our assets.

17   BY MR. RAFATJOO:

18       Q.    So if heaven forbid something should happen

19   to you now, what would happen to Andrea?

20       A.    She would receive nothing.

21       Q.    Was Andrea aware of that?

22       A.    Yes.

23       Q.    When did she become aware of that?

24             MR. GALLAGHER:  Well, objection.  Calls for

25   speculation as to what Andrea's knowledge is or was.

47

Exhibit A, Page 26

# EXHIBIT B

1           UNITED STATES BANKRUPTCY COURT

2      CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION

3

4   _____

                         )

5   In re:                  ) No. 8:16-bk-12589-CB

                         )

6   ANDREA S. DOWNS        ) Chapter 7

                         )

7              Debtor.    )

  _____)

8   THOMAS H. CASEY, Chapter 7  )  Adversary No. 8:18-ap-

  Trustee,             )  01167-CB

9                     )

       Plaintiff,     )

10                     )

     vs.              )

11                     )

  LORA RAE STEINMANN, HEINZ H. )

12   STEINMANN, ERIC STEINMANN,  )

  MARY (SYPKENS) STEINMANN,   )

13   JOHN STEINMANN, TESSIE    )

  (STAPLETON) STEINMANN, KATY  )

14   (BELKNAP) STEINMANN, HEINZ   )

  STEINMANN, JEFF STEINMANN,   )

15   TOM STEINMANN, SUSIE (WILSON))

  STEINMANN,            )

16                     )

       Defendant.     )

17   _____)

18          DEPOSITION OF LORA RAE STEINMANN

19            Wrightwood, California

20          Tuesday, September 3, 2019

21               Volume I

22   Reported by:

  VALERIE D. GRANILLO

23   CSR No. 11469

  Job No. 3512642

24

25   PAGES 1 - 80

                            Page 1

Exhibit B, Page 27

```
 1       Q    Did that impact your feelings about her or your

 2   decisions regarding what to do with her end of the trust?

 3       A    Explain what you mean by "impact my feelings."

 4       Q    You tell me.

 5       A    I don't feel any differently about my daughter.

 6       Q    Okay.  And if that judgment went away -- well,

 7   let me take it back.

 8            If that judgment never occurred, would Andrea

 9   Downs still be one of the beneficiaries under the trust?

10       A    Yes.

11       Q    If that judgment went away, would you make her a

12   beneficiary of the trust again?

13            MR. HAYS:  Objection; calls for speculation.

14            THE WITNESS:  Yeah.  I won't answer.

15   BY MR. GOLDEN:

16       Q    You can answer the question.

17            MR. HAYS:  You can answer if you know, but it's

18   asking you to speculate a hypothetical.

19            THE WITNESS:  I don't know.  I don't know.

20   BY MR. GOLDEN:

21       Q    What?

22       A    I don't know what people do in the future, you

23   know.  I'm not going to answer that question.

24       Q    I'm asking about you, not other people.

25       A    I don't know what I would do in the future.
```

Page 71

1      Q      What would you do today if that happened?

2      A      I would do nothing today.

3      Q      So if that judgment went away, you would not add

4   her in as a beneficiary?

5      A      Not today.

6      Q      Why?

7      A      I'm not going to answer that.

8      Q      Okay.  Just to be clear, you know what you would

9   do, but you're not going to answer that.  Is that correct?

10  That's all I'm asking?

11     A      You're supposing something.  I don't know.  I

12  don't know.  First of all, we both know that's not going

13  to happen, so this just seems silly.

14     Q      All I'm asking you is when you said I'm not going

15  to answer that, I'm not here to badger you.  I don't want

16  to badger you in any way.  You said, "I'm not going to

17  answer that."  I'm just clarifying that you're not

18  going -- you know what considerations there would be, and

19  you know what you might do.  But you don't want to answer

20  that; is that correct?

21     A      I have never thought of it, and I don't know.

22  And I answered you already.

23     Q      Okay.  Is there any reason other than the

24  existence of the judgment that you took Andrea out of the

25  trust?

                                            Page 72

```
 1        A    I think that's our business why we would do that.

 2    We are free to move -- do that, anything with any of our

 3    children if we want to in the way our trust is written.

 4              MR. GOLDEN:  Move to strike as nonresponsive.

 5        Q    Is there any other reason?

 6              You can repeat the last question, actually.

 7              (Record Read.)

 8              THE WITNESS:  No.

 9    BY MR. GOLDEN:

10        Q    And do you have -- do you intend one day to share

11    assets with Andrea?

12        A    No.

13        Q    Why?

14        A    Because this judgment is going to be going on

15    longer than I am.

16        Q    But -- understood.  Understood.

17        A    I think that's clear.

18        Q    Understood.  Understood.  Other than the

19    judgment, she would have some interest in those assets?

20        A    What are you getting at?

21        Q    Well, if the judgment wasn't there, she would

22    have been still there as a beneficiary.

23        A    Yes.  I already answered that.

24        Q    Right.  Yes, you did.  Yes, you did.  And as a

25    beneficiary, she would have an entitlement to assets
```

Page 73

Exhibit B, Page 30

# EXHIBIT C

1              UNITED STATES BANKRUPTCY COURT

2              CENTRAL DISTRICT OF CALIFORNIA

3                  --oOo--

4  In Re:                 )  Case No. 8:16-bk-12589-CB

5  ANDREA STEINMANN DOWNS,   )  Chapter 7

6        Debtor.       )  Santa Ana, California
   _____ )  Wednesday, January 29, 2020
7                 )  1:00 p.m.

8  CASEY,             )  Adv. No. 8:18-ap-01168-CB

9       Plaintiff,    )

10     vs.             )

11  STEINMANN, et al.,      )

12       Defendants.   )
   _____)
13

14                         CONT STATUS CONFERENCE RE:
                         COMPLAINT: (1) TO AVOID AND
15                         RECOVER FRAUDULENT TRANSFERS
                         PURSUANT TO 11 U.S.C. SECTIONS
16                         548(A)(1)(A), 544(B) AND 550;
                         (2) FOR IMPOSITION OF A
17                         RESULTING TRUST; (3) FOR
                         DECLARATORY RELIEF; (4) FOR
18                         PRESERVATION OF THE TRANSFER
                         FOR THE BENEFIT OF THE ESTATE;
19                         (5) FOR ATTORNEYS' FEES AND
                         COSTS
20

21              TRANSCRIPT OF PROCEEDINGS
          BEFORE THE HONORABLE CATHERINE BAUER
22           UNITED STATES BANKRUPTCY JUDGE

23

24

25  Proceedings produced by electronic sound recording;
   transcript produced by transcription service.

67

BY MR. GOLDEN:

Q    So who made the decision on the first amendment?

A    The trustees in the trust, which would be both of my parents and myself.

Q    Were the other family members involved in those discussions?

A    Not to my knowledge.

Q    And what was the thought process being doing that first amendment?

        MR. LARSON:  I'll just object to foundation.  As to this witness, certainly he can describe his thought processes.  I think to ask about the thought processes of his parents is beyond the pale.

        MR. KESSEL:  Unless it's communicated in meetings, unless they express their thought process.

BY MR. GOLDEN:

Q    You had a meeting with the parents to discuss whether or not you should have the first amendment or not?

A    There was a meeting.  We discussed that.

Q    About how long was the meeting?

A    I can't recall.

Q    Okay.  And at the meeting, what was discussed?

A    That there was this -- Annie was in some litigation with some people that, you know, were not interested in anything other than, you know, litigating her to death, and

68

1  it's a fact.  You know, it's millions of dollars, over 4.7

2  million dollars, chasing some 500,000 or $700,000

3  investment, and, you know, it would be a good idea to remove

4  her from the trust and remove us from this thing, because

5  it's going to be a burden on everybody.

6  Q    Were the other -- and were there any conversations at

7  all with the other siblings about this?

8  A    What?

9  Q    Were there any conversations with the other siblings

10  about this?

11  A    About removing Annie?

12  Q    Yes.

13  A    Not that I can recall.

14  Q    What was Andrea Downs' reaction to this?

15  A    I don't believe I told Annie this, or discussed it with

16  her, until after she had discussed it with maybe my parents,

17  and I believe, from whatever I understood, she was not --

18  didn't maybe understand it, or the reasons why at first,

19  but, you know, she came to accept it.

20  Q    And did she get financial support after that from the

21  other siblings at all?

22  A    I don't know, but I don't believe so.

23  Q    Did she get any financial support from you?

24  A    You know, nothing of significance.  I can't think of

25  anything, maybe a gift or something of that, but, you know,

# EXHIBIT D

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
870 Roosevelt, Irvine, CA 92620

A true and correct copy of the foregoing document entitled (*specify*): **MOTION FOR SANCTIONS UNDER
RULE 9011 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE; MEMORANDUM OF POINTS AND
AUTHORITIES; DECLARATIONS OF ERIC STEINMANN AND D. EDWARD HAYS IN SUPPORT** will be served or was
served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated
below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General
Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*)
_____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the
following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) **September 23, 2020**, I served the following persons and/or entities at the last known addresses in this
bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United
States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that
mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method
for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) **September 23, 2020**, I
served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in
writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a
declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the
document is filed.

Hamid R. Rafatjoo – jrafatjoo@raineslaw.com
Jeffrey I. Golden – jgolden@wgllp.com

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| September 23, 2020 | D. Edward Hays | /s/ D. Edward Hays |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1.PROOF.SERVICE**
Exhibit D, Page 34

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
870 Roosevelt, Irvine, CA 92620

A true and correct copy of the foregoing document entitled (*specify*): **MOTION FOR SANCTIONS UNDER
RULE 9011 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE; MEMORANDUM OF POINTS AND
AUTHORITIES; DECLARATIONS OF ERIC STEINMANN AND D. EDWARD HAYS IN SUPPORT** will be served or was
served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated
below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General
Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*)
_____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the
following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) **September 24, 2020**, I served the following persons and/or entities at the last known addresses in this
bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United
States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that
mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

| | |
|---|---|
| Hamid R. Rafatjoo<br>RAINES FELDMAN LLP<br>1800 Avenue of the Stars, 12th Floor<br>Los Angeles, California 90067 | Jeffrey I. Golden<br>WEILAND GOLDEN GOODRICH LLP<br>650 Town Center Drive, Suite 600<br>Costa Mesa, CA 92626 |

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method
for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the
following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to
such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration
that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is
filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| September 24, 2020  Layla Buchanan | /s/ Layla Buchanan |
|---|---|
| *Date*     *Printed Name* | *Signature* |

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1.PROOF.SERVICE**
Exhibit D, Page 35

## PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
1101 Pacific Ave., #320, Santa Cruz, California 95060

A true and correct copy of the foregoing document entitled (*specify*): **NOTICE OF MOTION AND MOTION FOR
SANCTIONS UNDER RULE 9011 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE; MEMORANDUM OF
POINTS AND AUTHORITIES; DECLARATIONS OF ERIC STEINMANN AND JUSTIN S. DRAA IN SUPPORT** will be
served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the
manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General
Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*)
**July 8, 2021**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the
following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) **July    , 2021**, I served the following persons and/or entities at the last known addresses in this bankruptcy
case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail,
first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the
judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method
for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) **July___, 2021**, I served the
following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to
such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration
that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is
filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

RACHAEL SPENCER, Legal Secretary
*Date     Printed Name*                                        *Signature*

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1.PROOF.SERVICE**

**1**. <u>**TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**</u>:

- Thomas H Casey (TR)    msilva@tomcaseylaw.com, thc@trustesolutions.net
- Beth Gaschen    bgaschen@wgllp.com,
  kadele@wgllp.com;vrosales@wgllp.com;cbmeeker@gmail.com;cyoshonis@wgllp.com
- Jeffrey I Golden    jgolden@wgllp.com, kadele@wgllp.com;vrosales@lwgfllp.com;cbmeeker@gmail.com
- Jeffrey M Goldman    goldmanj@pepperlaw.com, allenjs@pepperlaw.com
- Michael J Hauser    michael.hauser@usdoj.gov
- D Edward Hays    ehays@marshackhays.com, 8649808420@filings.docketbird.com
- Marshall J Hogan    mhogan@swlaw.com, semartinez@swlaw.com
- Gerald P Kennedy    gerald.kennedy@procopio.com,
  kristina.terlaga@procopio.com;calendaring@procopio.com;efile-bank@procopio.com
- Alan J Kessel    kessela@pepperlaw.com, philipsj@pepperlaw.com
- Kay S Kress    kressk@pepperlaw.com, henrys@pepperlaw.com
- Charity J Manee    charity@rmbklaw.com
- Laila Masud    lmasud@marshackhays.com, 8649808420@filings.docketbird.com
- Jennifer L Nassiri    jennifernassiri@quinnemanuel.com
- Aram Ordubegian    ordubegian.aram@arentfox.com
- Eric S Pezold    epezold@swlaw.com, scrisp@swlaw.com
- Hamid R Rafatjoo    hrafatjoo@raineslaw.com, bclark@raineslaw.com;cwilliams@raineslaw.com
- Faye C Rasch    frasch@wgllp.com, kadele@wgllp.com;tziemann@wgllp.com
- Daniel B Spitzer    dspitzer@spitzeresq.com
- Annie Y Stoops    annie.stoops@arentfox.com, yvonne.li@arentfox.com
- James E Till    jtill@btntlaw.com, maraki@btntlaw.com
- United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1.PROOF.SERVICE**

Exhibit D, Page 37

# EXHIBIT E

```
 1                    UNITED STATES BANKRUPTCY COURT

 2                    CENTRAL DISTRICT OF CALIFORNIA

 3                            --oOo--

 4  In Re:                        ) Case No. 8:16-bk-12589-CB
                                  )
 5  ANDREA STEINMANN DOWNS,       ) Chapter 7
                                  )
 6          Debtor.              ) Santa Ana, California
    _____) Tuesday, December 17, 2019
 7                                ) 10:00 a.m.
    CASEY,                        )
 8                                ) Adv. No. 8:18-ap-01168-CB
            Plaintiff,           )
 9                                )
        vs.                       )
10                                )
    STEINMANN, ET AL.,            )
11                                )
            Defendants.          )
12  _____)

13                                MOTION FOR ENTRY OF ORDER:
                                  (1) COMPELLING TESTIMONY OF
14                                LORA RAE STEINMANN AT COURT
                                  ORDERED 2004 EXAMINATION;
15                                (2) IMPOSING MONETARY
                                  SANCTIONS;
16                                (3) FINDING CIVIL CONTEMPT;
                                  AND
17                                (4) AWARDING ATTORNEYS' FEES
                                  AND COSTS
18
                                  TRUSTEE'S MOTION RE: JOINT
19                                STIPULATION ON DISPUTED ISSUES
                                  REGARDING COMPELLING TESTIMONY
20                                OF LORA RAE STEINMANN AT COURT
                                  ORDERED 2004 AND COMBINED
21                                DEPOSITION AND EXAMINATION AND
                                  PRODUCTION OF DOCUMENTS
22

23

24
    Proceedings recorded by electronic sound recording;
25  transcript produced by transcription service.
```

*Briggs Reporting Company, Inc.*

Exhibit E, Page 38

ii

1                                    CONT STATUS CONFERENCE RE:
                                     COMPLAINT:
2                                    (1) TO AVOID AND RECOVER
                                     FRAUDULENT TRANSFERS PURSUANT
3                                    TO 11 U.S.C. SECTIONS
                                     548(a)(1)(A), 544(b) and 550;
4                                    (2) FOR IMPOSITION OF A
                                     RESULTING TRUST;
5                                    (3) FOR DECLARATORY RELIEF;
                                     (4) FOR PRESERVATION OF THE
6                                    TRANSFER FOR THE BENEFIT OF
                                     THE ESTATE;
7                                    (5) FOR ATTORNEYS' FEES AND
                                     COSTS
8

9                      TRANSCRIPT OF PROCEEDINGS
              BEFORE THE HONORABLE CATHERINE BAUER
10                 UNITED STATES BANKRUPTCY JUDGE

11  APPEARANCES:

12  For the Hausman and            HAMID R. RAFATJOO, ESQ.
      Moellenhoff Creditors:       Raines Feldman, LLP
13                                 1800 Avenue of the Stars
                                   12th Floor
14                                 Los Angeles, California 90067
                                   (310) 440-4100
15
                                   ALAN J. KESSEL, ESQ.
16                                 Pepper Hamilton, LLP
                                   4 Park Plaza, Suite 1200
17                                 Irvine, California 92614
                                   (949) 567-3500
18

19  For Lora Rae Steinmann,        D. EDWARD HAYS, ESQ.
      Heinz H. Steinmann and       Marshack Hays, LLP
20    Eric Steinmann:              870 Roosevelt
                                   Irvine, California 92620
21                                 (949) 333-7777

22  For the Chapter 7 Trustee:     JEFFREY I. GOLDEN, ESQ.
                                   Weiland, Golden & Goodrich,
23                                   LLP
                                   650 Town Center Drive
24                                 Suite 950
                                   Costa Mesa, California 92626
25                                 (714) 966-1000

*Briggs Reporting Company, Inc.*

Exhibit E, Page 39

15

1  look for all the documents.  So, these have only been six or

2  seven or eight pages, but she said, I never went through my

3  e-mails, I never -- you know, so you want people to have

4  acknowledge that they've looked for what they can and they

5  found what they have.  So that would be the ideal situation.

6          And we just, we didn't want to ink Eric's

7  examination without the Court being able to rule on the

8  matters before the Court, because otherwise we felt, I felt

9  we're going to be in the same situation again.

10          THE COURT:  I want there to be some teeth here.  I

11  was just -- I mean, Eric needs to come here.  I'm just so

12  tired of this.  He's in the background actively doing

13  things.  He needs to be here.

14          MR. RAFATJOO:  I agree, your Honor.

15          THE COURT:  And my -- I'm not holding my breath

16  for him to give up any docs, really I'm not.

17          All right.  I'm open to suggestions.  I'm going to

18  let Mr. Hays -- I'm just tried, Mr. Hays, of these people.

19  I'm really tired.  I understand they don't like being sued,

20  but the Trustee has an obligation here, and we need answers

21  to questions.  Is there a side deal here?

22          What -- you know, she was cut out of the trust

23  right before she filed bankruptcy, right after a major

24  judgment.  Yeah, there seems to be some coordination if you

25  just look at the surface.  But since we're getting no

16

1    cooperation from them whatsoever --

2            MR. RAFATJOO:  Your Honor --

3            THE COURT:  -- you would think if there wasn't

4    anything, we would be getting cooperation.

5            MR. RAFATJOO:  One of the questions that Mr.

6    Golden asked was, have you given Andrea any money?

7            THE COURT:  Yeah, I'm --

8            MR. RAFATJOO:  We're not answering that.

9            THE COURT:  Yeah, that's ridiculous.  I'm sorry.

10           MR. GOLDEN:  Or what interest did she have -- you

11   know, what was her interest in the trust at one point in

12   time?  What was the interest in -- what was her interest in

13   the trust at the time it was gone?

14           I mean, even from her -- even from a very narrow

15   perspective, without even context or anything else like

16   that, those are -- you know, as the Trustee, Mr. Casey

17   should be in a position to know that.

18           And I'll tell you, too -- and I don't want to

19   interrupt the flow of communication, but, you know, my --

20   there is a lot of communication about -- comments about how,

21   you know, we're not moving fast enough.

22           I will put on the record, Mr. Casey's admonition

23   to me in this case is, get this case resolved as quickly as

24   possible for the creditors, for cost, for the Court, because

25   many courts, especially this Court, doesn't like adversaries

# EXHIBIT F

```
 1                    UNITED STATES BANKRUPTCY COURT

 2                    CENTRAL DISTRICT OF CALIFORNIA

 3                              --oOo--

 4  In Re:                        )   Case No. 8:16-bk-12589-SC
                                  )
 5  ANDREA STEINMANN DOWNS,       )   Chapter 7
                                  )
 6            Debtor.             )   Santa Ana, California
    _____)   Wednesday, March 3, 2021
 7                                    11:00 a.m.

 8                                 CONT'D HEARING RE:  MOTION FOR
                                   ALLOWANCE AND PAYMENT OF
 9                                 ADMINISTRATIVE CLAIM OF NORIO,
                                   INC. IN THE AMOUNT OF
10                                 $50,000.00

11                                 CONT'D HEARING RE:  MOTION FOR
                                   ALLOWANCE AND PAYMENT OF
12                                 ADMINISTRATIVE CLAIM OF
                                   CREDITORS HAUSMAN HOLDINGS,
13                                 LLC AND DAVID AND PAMELA
                                   MOELLENHOFF  PURSUANT TO 11
14                                 U.S.C. SECTION 503(B)(1)(A) IN
                                   THE AMOUNT OF $74,722.00
15
                                   CONT'D HEARING RE:  MOTION FOR
16                                 ALLOWANCE AND PAYMENT OF
                                   ADMINISTRATIVE EXPENSE CLAIM
17                                 OF CREDITORS HAUSMAN HOLDINGS,
                                   LLC AND DAVID AND PAMELA
18                                 MOELLENHOFF PURSUANT TO 11
                                   U.S.C. SECTIONS 503(B)(3)(D)
19                                 AND 503(B)(4) IN THE AMOUNT OF
                                   $531,645.08
20
                                   CONT'D HEARING RE:  MOTION OF
21                                 BOSLEY TILL LLP FKA BOSLEY
                                   TILL NEUE & TALERICO LLP FOR
22                                 ALLOWANCE AND PAYMENT OF ITS
                                   CHAPTER 11 SECTION 503(B)
23                                 ADMINISTRATIVE EXPENSE CLAIM

24
    Proceedings produced by electronic sound recording;
25  transcript produced by transcription service.
```

13

1  the status of the 727?  Does she have her -- I'm sorry.

2  Your $5,000,000 judgment is nondischargeable at this point,

3  correct?

4          MR. RAFATJOO:  Correct, your Honor.

5          THE COURT:  So all you're hoping for is, after you

6  collect the $5,000,000, you can collect the $75,000.  Okay.

7  Well, maybe your --

8          MR. RAFATJOO:  Plus interest.

9          THE COURT:  Maybe your client can loan the money

10  estate -- the estate money, and then have them pay it to

11  you.  That's a possibility.  I have no legal authority.  I

12  can't find any, and the movant hasn't provided any, to

13  support the request with respect to the nondischargeability.

14          So I'm going to deny this motion, but I have to

15  tell you that I have reviewed, as Mr. Rafatjoo has said, the

16  entire record of this entire case, and I appreciate the work

17  that was done in advancing their own claims, and finding

18  lots of information that was uncovered, and that effort is

19  not unnoted by this Court, and please convey that back to

20  your clients, Mr. Rafatjoo.

21          MR. RAFATJOO:  Thank you, your Honor.

22          THE COURT:  Thank you.

23          Item Number 4 is the motion for allowance of

24  payment of administrative expense claims of creditors

25  Hausman Holdings, LLC, and David and Pamela Moellenhoff

16

1  magnitude of their claim?  Absolutely.  But that doesn't

2  mean that what we did didn't provide substantial benefits to

3  these estates.  That doesn't mean that the work that we did

4  didn't, in a way, cut down on the Chapter 7 admin claims for

5  the work that Mr. Golden would have had to do to deal with

6  these assets and these disclosures.

7          I understand that it's $500,000 that we will never

8  see, because there's only $10,000 in the pot, if that, but

9  that doesn't take away from the work that we did and the

10  benefit that it provided to these estates.  It's not

11  contemplatable.  I can't say that we spent 500,000 of her

12  $3,000,000 worth of assets.  I wish I could.  But the work

13  that we did helped maintain the integrity of the process.

14          The work that we did kept this Debtor's feet to

15  the fire, and that provides a benefit.  We did it.  We're

16  never going to get reimbursed for it, come to accept that,

17  but, as an admin claim, I think it's just a matter of, it's

18  the right thing to do, because we did make a substantial

19  contribution.  We did provide benefits.  It doesn't

20  quantify, but we did do it.  And based on that, your Honor,

21  we request that the motion be granted.

22          THE COURT:  Mr. Rafatjoo, I appreciate all of your

23  comments, and, again, I want to again amplify my comments

24  about your clients' efforts in this entire case, and what I

25  consider good faith efforts.  They were doing exactly what

17

1  they needed to do, and especially because of the amount of

2  their claim, you know, whether proven at the time or not,

3  whether determined to be dischargeable or not.

4          So I highly acclaim you and your work, and your

5  associate attorneys, and your clients, for fulfilling, I

6  believe, a good civil commitment.  I also wanted to

7  compliment everyone in the entire process on the civility

8  that I have seen throughout this case.

9          I need to make another observation unrelated to

10 this case.  I noticed that counsel, Zinser, has arrived, and

11 I wanted just to let her know that we've already undertaken

12 Item Number 10 on the calendar, and the sale went forward.

13 If she wants to stick around and watch this, that's fine,

14 but I notice that she has made an appearance on the screen.

15         MS. ZINSER:  Thank you.  I will leave.

16         THE COURT:  No, you can stay.  It's just, you

17 probably didn't -- you came a little late, and you probably

18 didn't know that we took Item Number 10 first.

19         MS. ZINSER:  Wonderful.

20         THE COURT:  And let me give you a little update.

21 The property was sold to Chen and Chan for $246,000.

22         MS. ZINSER:  Wonderful.  Thank you.

23         THE COURT:  Thank you.

24         Mr. Golden, would you like to address your

25 opposition to this motion?

21

1  services were actions that would have been taken by the

2  party on its own behalf, absent an expectation of

3  reimbursement from the estate -- and the Court will note Mr.

4  Rafatjoo's comments that it's obvious that they would have

5  taken all of these actions -- three, whether the party can

6  demonstrate that its actions provided a direct and

7  significant and demonstrable benefit to the estate, four,

8  whether the benefit conferred upon the estate exceeds the

9  costs sought to obtain that benefit, and whether the actions

10  were duplicative of those being taken by other parties.

11        I draw that from the case of In Re: 1250 Oceanside

12  Partners, 519 B.R. 802, at 806 to 807, which is from the

13  Bankruptcy Court from the District of Hawaii, 2014.

14        The movants, as the holders of an approximately

15  $5,000,000 claim, would have undertaken those actions absent

16  any reimbursement by the estate.  Further, those actions

17  lack any direct and significant and demonstrable benefit to

18  the estate, and far exceed the costs sought to obtain the

19  benefit, and are duplicative to the work that was or should

20  have been undertaken by other parties in the case,

21  especially the Chapter 7 Trustee.

22        In light of the foregoing, this Court will deny

23  the motion.

24        So I want to thank you again for all of the work,

25  and I really, seriously and sincerely, want you to convey to

22

1  your clients this Court's appreciation and complete

2  understanding of what they were seeking and they obtained in

3  the form of a nondischargeability result, but I can't help

4  you on the administrative claim.

5          MR. RAFATJOO:  Thank you, your Honor.

6          THE COURT:  Thank you very much.

7          MR. RAFATJOO:  Your Honor, I will submit the

8  orders on both of those.

9          THE COURT:  If you'd like to.  You're not the

10  prevailing party, but I appreciate the effort.

11          MR. RAFATJOO:  Might as well take care of it.

12          THE COURT:  All right.  Well, thank you, and

13  please just say that they're denied based upon the

14  statements on the record.

15          MR. RAFATJOO:  Will do, your Honor.

16          THE COURT:  Thank you.

17          Finally, Item Number 5.  This is the continued

18  hearing on the motion of Bosley, Till, LLP, for payment

19  of -- allowance and payment of its Chapter 7 Section 503(b)

20  administrative claims.

21          Appearances, please.

22          MR. TILL:  Good morning, your Honor.  James Till

23  on behalf of Bosley Till, LLP.

24          MR. GOLDEN:  Good morning, your Honor.  Jeffrey

25  Golden, Weiland Golden Goodrich, on behalf of the Trustee.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
1800 Avenue of the Stars, 12th Floor, Los Angeles, CA 90067

A true and correct copy of the foregoing document entitled (*specify*):

**HAUSMAN HOLDINGS, LLC'S AND DAVID AND PAMELA MOELLENHOFF'S AND THEIR COUNSEL'S OPPOSITION TO DEFENDANTS' MOTION FOR SANCTIONS UNDER RULE 9011 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE; MEMORANDUM OF POINTS AND AUTHORITIES; AND DECLARATION OF HAMID R. RAFATJOO**

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  <u>TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)</u>**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) August 5, 2021, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Ryan W Beall**    rbeall@lwgfllp.com, vrosales@wgllp.com;kadele@wgllp.com;lbracken@wgllp.com;rbeall@ecf.courtdrive.com
- **Thomas H Casey (TR)**    msilva@tomcaseylaw.com, thc@trustesolutions.net
- **Justin S Draa**    jdraa@dld-law.com
- **Jeffrey I Golden**    jgolden@wgllp.com, kadele@ecf.courtdrive.com;cbmeeker@gmail.com;lbracken@wgllp.com;gestrada@wgllp.com
- **D Edward Hays**    ehays@marshackhays.com, ehays@ecf.courtdrive.com;kfrederick@ecf.courtdrive.com;cmendoza@marshackhays.com;cmendoza@ecf.courtdrive.com
- **Gerald P Kennedy**    gerald.kennedy@procopio.com, kristina.terlaga@procopio.com;calendaring@procopio.com;efile-bank@procopio.com
- **Laila Masud**    lmasud@marshackhays.com, lmasud@ecf.courtdrive.com;kfrederick@ecf.courtdrive.com
- **Aram Ordubegian**    ordubegian.aram@arentfox.com
- **Richard M Pachulski**    rpachulski@pszjlaw.com
- **Malhar S Pagay**    mpagay@pszjlaw.com, bdassa@pszjlaw.com
- **Hamid R Rafatjoo**    hrafatjoo@raineslaw.com, bclark@raineslaw.com
- **Faye C Rasch**    frasch@wgllp.com, kadele@wgllp.com;lbracken@wgllp.com;gestrada@wgllp.com
- **Todd C. Ringstad**    becky@ringstadlaw.com, arlene@ringstadlaw.com
- **Annie Y Stoops**    annie.stoops@arentfox.com, yvonne.li@arentfox.com
- **United States Trustee (SA)**    ustpregion16.sa.ecf@usdoj.gov
-

☐  Service information continued on attached page

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*
1991916.1

**F 9013-3.1.PROOF.SERVICE**

**2. SERVED BY UNITED STATES MAIL**:

On (*date*) _____ I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) August 5, 2021, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

The Honorable Scott C. Clarkson
United States Bankruptcy Judge
411 West Fourth Street
Suite 5130
Santa Ana, CA 92701-4393

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 8/5/2021 | Bambi Clark | /s/ Bambi Clark |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*
1991916.1

**F 9013-3.1.PROOF.SERVICE**