Justin S. Draa, SBN 253688
DiBENEDETTO, LAPCEVIC & DRAA LLP
1101 Pacific Ave., suite 320
Santa Cruz, California 95060
Telephone: (831) 325-2674
Facsimile: (831) 477-7617
jdraa@dld-law.com

Attorneys for Defendants/Movants LORA RAE STEINMANN, HEINZ H. STEINMANN, ERIC STEINMANN, MARY (SYPKENS) STEINMANN, JOHN STEINMANN, TESSIE (STAPLETON) STEINMANN, KATY (BELKNAP) STEINMANN, HEINZ STEINMANN, JEFF STEINMANN, TOM STEINMANN, and SUSIE (WILSON) STEINMANN

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION

| | |
|---|---|
| In re<br><br>ANDREA STEINMANN DOWNS,<br><br>Debtor.<br>_____<br>THOMAS H. CASEY, Chapter 7 Trustee for the bankruptcy estate of Andrea Steinmann Downs,<br><br>Plaintiff,<br><br>v.<br><br>LORA RAE STEINMANN, HEINZ H. STEINMANN, ERIC STEINMANN, MARY (SYPKENS) STEINMANN, JOHN STEINMANN, TESSIE (STAPLETON) STEINMANN, KATY (BELKNAP) STEINMANN, HEINZ STEINMANN, JEFF STEINMANN, TOM STEINMANN, AND SUSIE (WILSON) STEINMANN,<br><br>Defendants. | Case No. 8:16-bk-12589-SC<br><br>Chapter 7<br><br>Adv. No. 8:18-ap-01168-SC<br><br>COMBINED REPLY TO OPPOSITIONS FILED BY THE CHAPTER 7 TRUSTEE AND INTERVENING CREDITORS IN SUPPORT OF THE STEINMANNS' MOTION FOR SANCTIONS UNDER FRBP 9011<br><br>Date: September 2, 2021<br>Time: 11:00a.m.<br>Ctrm: 5C, Ronald Reagan Federal Building and United States Courthouse<br>411 West Fourth Street<br>Santa Ana, California 92701 |

**INTRODUCTION**

The adversary process may not be weaponized by prosecuting claims that were neither well-grounded in fact nor supported by law in an effort to extort innocent members of a debtor's family. Nor should it be used as a collection tool.[1] Notwithstanding, the Opposition continues to try and justify their expenditure of hundreds of thousands of dollars or more to prosecute baseless claims. Absent effective deterrence, it seems they would gleefully jump at the opportunity to do it again.

The Opposition recycles the same, previously rejected arguments raised before this Court's issuance of the final (un-appealed) Memorandum Decision Granting Judgment on the Pleadings (**"Order on MJOP"**). Regrettably, the Trustee now doubles-down on the propriety of his conduct in the face of overwhelming realities to the contrary. Rather than acknowledge missteps and express some modicum of ownership for the needless harms inflicted upon the Steinmann family and this Court, the Trustee and his counsel have chosen to continue to ignore the law and fling personal attacks in hopes to avoid liability for their actions.

**I. THE TRUSTEE'S PRE-FILING INQUIRY WAS NEITHER REASONABLE NOR COMPETENT**

In his Opposition, the Trustee declares, "I believe that the litigation was not filed for any improper or a bad faith purpose and in fact was filed in good faith." (**Decl. of Thomas H. Casey in Support of Opposition ("Trustee's Decl."), at ¶8).** His lawyer, Mr. Golden, also declares, "At all times, the firm and I believed that we were acting in good faith with respect to the causes of

---

[1] MR. PACHULSKI: Okay, your Honor. I'll answer your question directly, since, obviously, it's a major concern. And the first is, your Honor, the -- since we believe -- well, let me go back. We are the major creditor, and we believe the only way we're going to collect is through the action to get assets that the estate is entitled to. So then we get to the complaint.

THE COURT: Well, now I'm really confused. I apologize. You've already -- your client has already filed writs of -- abstracts of judgment and sought writs of execution, and we've -- this Court has issued those.

MR. PACHULSKI: Your Honor, I understand that, but that doesn't mean we're going to collect. What we're going to collect is –

THE COURT: So this is a collection -- this is a collection action?

MR. PACHULSKI: No -- well, every action, your Honor, is a collection action that's a fraudulent conveyance or resulting trust. [10/2/2020 Transcript of Proceedings on Hearing RE: Emergency Motion to Quash Subpoenas, Etc., 17:2-21]

1

action alleged in the Complaint." **(Decl. of Jeffrey I. Golden in Support of Opposition ("Golden Decl."), at ¶7).** These statements seem to miss the point, which is that the complaint lacked an *objectively* reasonable basis and that the Trustee failed to conduct an *objectively* reasonable investigation into applicable facts and law prior to filing the baseless complaint and prior to expiration of the Rule 9011 Safe Harbor. *Townsend v. Holman Consulting Corp.***, 929 F.2d 1358, 1362 (9th Cir., 1990) (en banc).**

Even if the Trustee and his counsel are sincere in their *post-hoc* justifications and beliefs, as the Seventh Circuit stated about the importance of the policy of requiring a reasonable prefiling legal inquiry under FRBP 11, "[a]n empty head but a pure heart is no defense"[2] and "[t]he Rule requires counsel to read and consider before litigating." *Mars Steel Corp. v. Continental Bank N.A.***, 880 F.2d 928, 932 (7th Cir. 1989) (citation omitted)**; See also *Zaldivar v. City of Los Angeles***, 780 F.2d 823, 829 (9th Cir.1986);** *Smith v. Ricks***, 31 F.3d 1478 (9th Cir.1994).** That is, "[c]ounsel may not drop papers into the hopper and insist that the court or opposing counsel undertake bothersome factual and legal investigation." *Mars Steel, supra,* **at 932,** referencing *Thornton v. Wahl***, 787 F.2d 1151, 1154 (7th Cir. 1986)** ("We have told lawyers that "[t]he ostrich-like tactic of pretending that potentially dispositive authority against a litigant's position does not exist is as unprofessional as it is pointless.", *Mars Steel* at 939, quoting *Hill v. Norfolk & Western Ry.***, 814 F.2d 1192, 1198 (7th Cir.1987).**

Movants agree that Rule 11 should not jeopardize aggressive advocacy or stifle innovative legal positions, but that does not lessen the obligation to undertake a reasonable investigation before filing suit. The Trustee's self-serving beliefs[3] are of no import and the Court is, instead, to "measure the attorney's conduct 'objectively against a reasonable standard, which consists of a competent attorney admitted to practice before the involved court.'" *Winterton v. Humitech of Northern California, LLC* **(*In re Blue Pine Group, Inc.*), 457 B.R. 64, 75 (B.A.P. 9th Cir. 2011),**

---

[2] This Court has also recognized that FRBP 9011 makes no exception for a "pure heart, empty head" defense *In re Nelson***, 503 B.R. 466, 479 (Bankr. C.D. Cal. 2013)** (partially reversed on other grounds), citing to *Zaldivar v. City of Los Angeles***, 780 F.2d 823, 829 (9th Cir.1986);** *Smith v. Ricks***, 31 F.3d 1478 (9th Cir.1994).**

[3] Trustee also argues that he relied on his "counsel's good faith belief…". (**Opp. at pg. 2, ll. 17-18**). True or not, the applicable standard under Rule 11 is objective not subjective.

**citing *Christian v. Mattel, Inc*., 286 F.3d 1118, 1127 (9th Cir. 2002).[4]**

The Opposition insists that "the claims alleged in the Complaint were analyzed and there was investigation and research prior to filing the Complaint." Aside from researching "reach back cases as well as the interplay of the FDCPA and bankruptcy law," it is not clear that any *applicable* legal research was conducted before the Complaint was filed. Had there been, Trustee and his counsel would have easily determined that a property right must both exist and be transferred to be eligible for avoidance under Section 544(b) and the FDCPA. As this Court noted, "The law involved, and all of it in this matter, is so clear and obvious." **(Order on MJOP, 29:1-2).**

The Trustee claims that his "counsel conducted extensive investigation and legal research regarding: (i) the Revocable Trust, the elimination of the Debtor's interest in the revocable trust, and the apparent continued use of family assets to support the Debtor's lifestyle, (ii) the nuances of, and interplay between, FDCPA and bankruptcy law, (iii) resulting trusts, and (iv) analysis of a litigation in which member's of the Trustee's counsel's firm had previously litigated a resulting trust claim through trial." **(Opp., 6:11-17).** The Trustee's counsel also boasts of having interviewed witnesses, strategized with other counsel, reviewed deposition transcripts, and more. **(Opp., 6:11-17).** This laundry list of activity no doubt generated plenty billable hours, but begs the question: what does any of that have to do with determining whether the Trustee held a cognizable legal claim under the theories asserted?[5]

What the Opposition conspicuously does *not* claim to have researched is the basic threshold legal question of whether the Debtor held an interest in property upon which the avoidance action

---

[4] The Chapter 7 Trustee was appointed to serve as an officer of this Court and a representative of the Debtor's creditors, with the primary obligation of collecting and reducing to money the property of the estate, and to closing it as expeditiously as is compatible with the best interests of parties in interest. See **11 U.S.C. § 704(a)(1).** Trustee Casey is also a licensed California attorney (State Bar No. 138264) with over 30 years of experience as an attorney in complex bankruptcy litigation, serving as a trustee and court-appointed receiver, and even representing chapter 7 and 11 trustees and defendants in bankruptcy proceedings. Mr. Casey knew better, and should be held to a higher standard than a typical adversary plaintiff who lacks the benefit of a decades-long career and experience in the field.

[5] In addition to service of the actual safe harbor papers, the Trustee and his counsel were placed on written notice via letter as to the complete lack of legal merit within weeks after service of the Adversary Complaint just shortly after the case was commenced. [**Declaration of Eric Steinmann in Support of Motion for Sanctions Pursuant to the Court's Inherent Authority (Dkt. 324), ¶2, Ex."A."**].

3

could have been lawfully premised to begin with.[6] The answer being a clear and resounding 'no' based on settled law. Instead of acknowledging their mistake in filing the complaint and by refusing to remedy prior to expiration of the Safe Harbor, the Opposition appears to tacitly admit that they are just the "certain type" of litigant that this Court recognized would be willing to sue innocent beneficiaries.[7]

The Adversary Complaint was itself frivolous within the meaning of FRBP 9011.[8] Such an objectively frivolous legal position alone supports a finding that the Plaintiffs did not conduct a reasonable amount of research, and that the action was brought for an improper purpose.[9]

FRBP 9011 imposes an objective standard of "reasonableness under the circumstances."

---

[6] If the Court thinks fact discovery and perhaps in-camera examination of the evidence and materials purportedly relied upon by the Opposition to corroborate their vague representations, the Steinmanns have no objection to postponing this matte and setting a reasonably tailored schedule to undertake such discovery. This might also reveal the genuineness of the Intervening Creditors' and their counsel's claim that they were not involved with the Adversary Case until much after it was initiated. Presumably this means there was no coordination, collusion, or mutual assistance at all amongst the parties or counsel during the months leading to the order granting intervention and their 6-figure funding. Without discovery, however, the Steinmanns and this Court are left to assess these unsupported representations without the benefit of verification.

[7] This Court already addressed one problem implicated by the Trustee's position, which highlights its practical implausibility and absurdity:

> The Trustee's argument turns estate planning with revocable trusts into a nightmare for the beneficiaries. But worse than that, it turns the privacy of family and business estate planning into a treasure trove for certain types of trustees or creditors who may be willing to sue innocent beneficiaries with the hope of recovering some benefit for them or the debtor's estate. This is a risk that no individual or charity beneficiary should be forced to undertake, and legally there is no basis for them to do so. **(Order on MJOP** at fn. 15, 15:26-28).

[8] Plaintiff will not belabor the Trustee's "creative" FDCPA standing theory other than to reiterate two points: (1) state law determines the debtor's interest in property, while federal law determines whether that interest constitutes property and an "asset" and whether a "transfer" has occurred under **28 U.S.C. § 3301.** *Exp.-Imp. Bank of the United States v. ASIA Pulp & Paper Co., LTD.,* **609 F.3d 111, 117 (2d Cir. 2010)** (citing *United States v. Craft*, **535 U.S. 274, 278 (2002)** (holding that the FDCPA "itself 'creates no property rights, but merely attaches consequences, federally defined, to rights created under state law'."); See also, *United States Small Business Admin. v. Bensal, 853 F.3d 992, 1000 (9th Cir. 2017)* (the definition of property under Section 3302(12) does not extend to an interest in a revocable trust because the Ninth Circuit has held that state law defines property rights for purposes of the FDCPA); and (2) the IRS' filed claim (upon which the FDCPA arguments are based) was for just $200 of estimated taxes, and was later amended to $0 after the Steinmanns filed an objection to the claim. On November 16, 2020, as Dk. No 968, the Court entered an order disallowing the IRS claim which order further held that "Pursuant to 11 U.S.C. §502(b), as of the date of the filing of the petition, the IRS did not have an allowed or allowable claim against Debtor."

[9] In assessing the propriety of sanctions, "frivolousness and improper purpose are not wholly independent considerations but 'will often overlap.'" **Marsch v. Marsch (*In re Marsch*), 36 F.3d 825, 830 (9th Cir. 1994)**. The Court "must consider both frivolousness and improper purpose on a sliding scale, where the more compelling the showing as to one element, the less decisive need be the showing as to the other." *Id*.

*Business Guides, Inc. v. Chromatic Commc'ns. Enters.*, **498 U.S. 533, 551 (1991).** The Ninth Circuit has held that Rule 11 sanctions may be imposed only "where a litigant makes a 'frivolous filing,' that is, where he files a pleading or other paper which no competent attorney could believe was well grounded in fact and warranted by law; and where a litigant files a pleading or paper for an 'improper purpose,' such as personal or economic harassment." *Greenberg v. Sala*, **822 F.2d 882, 885 (9th Cir. 1987) (internal citations omitted).** Accord *Townsend v. Holman Consulting Corp.*, **929 F.2d 1358, 1362 (9th Cir. 1990) (en banc);** *Zaldivar v. City of Los Angeles*, **780 F.2d 823, 832 (9th Cir. 1986).**

If the Court were to allow the Opposition to escape sanctions by permitting it to rely on an intellectually dishonest meaning of the term 'property interest' (which was contrary to the binding 9th Circuit case of *United States Small Business Admin. v. Bensal, 853 F.3d 992, (9th Cir. 2017)*). Indeed, such a ruling would open a wide hole in Rule 11(b)(2)'s proscription on false statements by permitting parties to recharacterize inaccurate statements as their own personal "legal" interpretations. *Bensal* clearly holds that for purposes of the FDCPA, property interests are defined by state law and California Courts have unanimously held that a beneficiary of a revocable trust does not have property rights. Accordingly, the Trustee's strained and subjective interpretation of generally a accepted notion (i.e. – the nature of a debtor's property interest) did not create a plausible basis to proceed with this scorched-earth litigation.

## II. THE TRUSTEE'S 'LAW OF THE CASE' ARGUMENT FAILS

The Opposition relies heavily on the fact that the Steinmann's lost the 2019 Motions to Dismiss before Judge Bauer (Ret.) and that the BAP denied their request for interlocutory review. Such reliance, however, is misplaced. In denying the Motions to Dismiss, Judge Bauer did *not* articulate any findings or conclusions, which was recognized by the BAP in denying the Steinmanns' motion for leave to pursue interlocutory appeals. **(See, Dk. No. 118, Order Dismissing Appeals, p. 2:** "Since the bankruptcy court has not made a determination of crucial factual issues, including the character of the trust, and whether the trust is estate property under applicable state and federal law, the interests of judicial economy would not be served by granting leave to appeal.").

As this Court noted in the **Order on MJOP**, the Motions to Dismiss were "obviously lightly considered…[I]t is safe to say that ignorance of, or turning a blind eye to, rudimentary California trust and estate law manifested itself in the creation and continuation of this expensive and wasteful adversary proceeding for so long." **(Order on MJOP, 6:3-8).** Indeed, it appears Judge Bauer premised the ruling on her belief that there was "wonderful lawyering" and that the case was "a lot more interesting" than her typical docket. **(Transcript of Hearings held January 8, 2019, Dkt. No. 48, pages 36:17-37:6).** This, the Steinmann's submit, is hardly the standard under Rule 12(b)(6), nor is it something a reasonable attorney would ever rely on to justify years of continued frivolous litigation including the propounding of wholly irrelevant and excessive discovery demands, deposition notices, and the eventual violation of this Court's protective orders by publishing the personal financial documents of private individuals.

Moreover, a court has discretion to depart from the law of the case where the first decision was clearly erroneous, or a manifest injustice would otherwise result. *Thomas v. Bible*, **983 F.2d at 155.** *United States v. Alexander*, **106 F.3d 874, 876 (9th Cir. 1997) (emphasis added).** Here, the Court found there was clear error and manifest injustice with regard to the predecessor judge's handling of Steinmann's Motions to Dismiss:

> This Court has discretion to depart from the law of the case where the first decision was clearly erroneous. It is this Court's position, as demonstrated by this Memorandum Opinion, that the predecessor Court's Orders Denying Motions to Dismiss were entirely erroneous, both procedurally and on the merits. Indeed, the clear error of the predecessor Court can further be amplified by the granting of a complete Stay Pending Appeal (with respect to the Appeals to the Motion to Dismiss) by the predecessor Court, again without findings or conclusions. **(Order on MJOP, 28:7-14)**
>
> *******
>
> This Court finds that a "manifest injustice" to the Defendants has resulted by the predecessor Court not providing findings of fact or conclusions of law with respect to the Orders Denying Motions to Dismiss. Had the predecessor Court undertaken a modicum of procedure on such an important motion and not put the burden on an appellate court to consider the law for the first time, the Bankruptcy Appellate Panel might have had the opportunity to carefully review the law on fraudulent transfers, revocable trusts, and resulting trusts, as this Court has now undertaken, and hundreds of thousands of dollars, and perhaps more than a million dollars, of legal fees might have been avoided. To put it in the words of one Defendants' counsel made during the November 4, 2020 hearing, to which this Court agrees, *"It's perverse, and it's been an abuse of this court process to engage in this lawsuit from day one."* **November 4, 2020 Hearing at 12:15:19-25; Transcript, Dkt. No. 967, page 28:8-10. (Order on MJOP, 29:16-27)** (Emphasis in Original).

The Opposition offers no authority addressing a situation similar to the one at hand, where a predecessor Judge in the same matter made such clearly erroneous findings upon which counsel claims it relied in continuing to prosecute objectively frivolous claims. If the Opposition can enjoy refuge behind an obviously flawed order that is so inconsistent with the law and common sense in order to avoid sanctions, that would serve only to compound the harm to the victimized party, incentivize future bad conduct, and delegitimize the integrity of our judicial system.

Lastly, the Motion for Sanctions was filed after the previous denial of the motions to dismiss, and only seeks sanctions to compensate movants for the fees and costs incurred from and after expiration of the Safe Harbor.[10] As such, respondents had a *new* duty to inquire into the complete lack of facts and law to support the complaint notwithstanding the prior rulings of Judge Bauer.

## III.    STEINMANN'S RULE 9011 MOTION IS TIMELY

Rule 9011(c)(1)(A) requires that before a motion for sanctions is filed with the court, the motion must have been *served* on the party whose conduct is alleged to violate the rule, and the alleged violating party must be allowed at least twenty-one days to correct or withdraw the offending pleading. The Opposition argues the FRBP 9011 Motion was untimely based primarily on the notion that it was *filed* after this Court already decided the merits of the underlying dispute when it entered the Order on MJOP. The 9th Circuit case the Trustee offers in support of this conclusion is the unpublished decision in ***Phillips v. Gilman*** (***In re Gilman***), **836 Fed.Appx.511 (9th Cir. 2020).**

*Phillips* is distinguishable in that it addressed the timing for "serving" a Rule 9011 safe harbor motion, not *filing* one. This is more than a mere semantical distinction; it goes to the heart of the purpose of the safe harbor protections under Rule 9011 – which is to deter future baseless

---

[10] The Opposition curiously contends that the Steinmann's delay in serving the 9011 Motion until after the judicial reassignment is some kind of defense. However, as the Court knows, targets of a Rule 11 motion should have a reasonable opportunity to conduct discovery that might yield information supportive of their claims. Thus, if anything, the timing of the service of the motion benefitted the Opposition by providing ample extra time to research the law and conduct meaningful discovery. In any event, the Steinmann's concede the available sanctions under this Motion are limited to the period from and after service of the safe harbor. The Steinmann's are not reaching, and they certainly aren't motivated by a desire to prolong this litigation beyond what is necessary to achieve substantial justice.

7

filings. ***Business Guides, Inc. v. Chromatic Communications Enterprises*, 498 U.S. 533, 552 (1991)** ("The main objective of the Rule is… to deter baseless filings and curb abuses.")

Here, the Trustee was not deprived of the opportunity to take advantage of the safe-harbor before the matter was decided on the merits. There is no dispute that the Trustee was served with a copy of the Steinmann's Rule 9011 safe harbor motion and that 21 days elapsed without adequate correction of the offending pleading. In ***Philips***, *supra,* the Court stated: "Rule 9011 motions, like Rule 11 motions, "cannot be ***served*** after the [lower] court has decided the merits of the underlying dispute giving rise to the questionable filing." Citing ***Islamic Shura Council of S. Cal*. v. F.B.I., 757 F.3d 870, 873 (9th Cir. 2014) (Emphasis added).**

In ***Islamic Shura***, *supra*, the Court clarifies this nuanced distinction:

> Motions for Rule 11 attorney's fees cannot be ***served*** after the district court has decided the merits of the underlying dispute giving rise to the questionable filing. This is because once the court has decided the underlying dispute, the motion for fees cannot serve Rule 11's purpose of judicial economy. See **Advisory Committee's Notes to the 1993 Amendments to Rule 11** (noting that a party may not ***serve*** a motion for Rule 11 sanctions after "judicial rejection of the offending contention"). *Id*. (Emphasis added).

Aside from the "served" vs. "filed" distinction, which terms Movants concede are sometimes used interchangeably within the case law, the particular facts presented in the ***Islamic Shura Council*** case are crucial. There, focus was on whether the offending party (the F.B.I.) could avail itself of the safe harbor provision. That Court's ruling was based on the fact that "Motions for Rule 11 attorney's fees cannot be ***served*** after the district court has decided the merits of the underlying dispute giving rise to the questionable filing." ***Id*. at 873 (emphasis added)**. The underlying dispute pertained to the F.B.I.'s alleged withholding of responsive documents to discovery in a Freedom of Information (FOIA) case, and misrepresentations made to the court about its production. Upon determination by the court that the F.B.I.'s responses had been "inadequate and misleading", it took steps to resolve the F.B.I.'s wrong by holding two (2) *in camera* hearings on May 14, 2009, and June 23, 2009. **(See *Islamic Shura Council of S. Cal. v. FBI*, 278 F.R.D. 538, 548 (C.D. Cal. 2011).** In other words, judicial rejection of the F.B.I.'s offending contention (i.e. – misrepresentations as to the appropriateness of its FOIA compliance in connection with) occurred in 2009.

The Islamic Shura Council, however, waited until September 1, 2011, and September 26,

8

2011, to serve its safe harbor papers and then file the motion, respectively.[11] This was years after the allegedly offending conduct occurred and was remedied in 2009[12]. The F.B.I. had eventually complied in providing the required information, long *before* service of a motion for sanctions. In the court's words:

> Shura Council argues that its motion complied with the safe harbor provision of Rule 11. Shura Council notes that it served its motion for sanctions on the FBI 25 days before it filed the motion with the district court. Shura Council further notes that the FBI did not change its original response to the complaint during this 25–day period. What Shura Council fails to observe, however, is that the district court had already resolved the underlying dispute at the time Shura Council filed its motion for sanctions. The FBI informed the court of the existence of additional documents after the court ordered an in-camera proceeding. ***Islamic Shura Council*, 278 F.R.D. at 541.** On April 27, 2011, the district court ruled that the FBI should have told the court about these documents at the pleading stage of the litigation, when the FBI responded to Shura Council's 2007 FOIA complaint with redacted documents the FBI claimed were "outside the scope" of Shura Council's request. ***Islamic Shura Council of S. Cal. v. FBI*, 779 F.Supp.2d 1114, 1125 (C.D.Cal.2011);** see also ***Islamic Shura Council II*, 635 F.3d at 1166.** In the same order, the district court concluded that, in light of the FBI's in camera submissions, Shura Council was "not entitled to any further information regarding the Government's previous searches for documents, and that the Government need not conduct any additional searches for responsive documents." ***Islamic Shura Council*, 278 F.R.D. at 542; see also *Islamic Shura Council*, 779 F.Supp.2d at 1126.**
> (*Islamic Shura Council of S. Cal*. v. F.B.I., 757 F.3d 870, 873 (9th Cir. 2014))

Unlike Islamic Shura Council, the Steinmann's *did* serve their FRBP 9011 safe-harbor motion and 21 days *did* elapse before this Court judicially rejected the adversary case on the merits. Therefore, the safe harbor was provided, and the motion is not untimely. The Advisory Committee's Notes provide further guidance, and confirm that timing for the service and filing of a Rule 9011 motion is left to the court to determine on a "**case-by-case basis, considering the particular circumstances involved.**" The Advisory Committee's Notes confirm merely that "a party cannot delay ***serving*** its Rule 11 motion until conclusion of the case (or judicial rejection of the offending contention)."(Emphasis added).

---

[11] See, ***Islamic Shura Council of S. Cal*. v. F.B.I., 757 F.3d 870, 873 (9th Cir. 2014)** ("Shura Council notes that it served its motion for sanctions on the FBI 25 days before it filed the motion with the district court", which motion was filed on 9/26/2011); ***Islamic Shura Council of S. Cal. v. FBI* (USDC, Southern District)**, Case No. 8:07-cv-01088-CJC-AN, Dkt. 123-1 (Sanctions Motion and MPA, filed by plaintiff on 09/26/2011),

[12] To the Islamic Shura Council's credit, the nature of *in camera* review rendered it practically unable to assess the veracity of the F.B.I.'s position vis-à-vis the documents, so it was only after the Ninth Circuit issued its decision in March/April 2011, and after the Court issued its subsequent Amended Order – four years after the FOIA action started – that they had information to support a motion for sanctions. See ***Islamic Shura Council of S. Cal. v. FBI*, 278 F.R.D. 538, fn. 2 (C.D. Cal. 2011).**

The safe harbor contemplates that the offending party will correct the error either on its own or at the behest of the opposing party, prior to the Court's intervention. "[A] party will not be subject to sanctions on the basis of another party's motion unless, after receiving the motion, it refuses to withdraw that position or to acknowledge candidly[13] that it does not currently have evidence to support a specified allegation." ***Holgate v. Baldwin*, 425 F. 3d 671, 678 (9th Cir. 2005) (citing Advisory Committee Notes to 1993 Amendments) (emphasis added).** This timing requirement is consistent with the purpose of the Rule more generally, which is to deter such outrageous conduct before it infects the judicial process. See generally ***Business Guides, Inc. v. Chromatic Communications Enterprises*, 498 U.S. 533, 552 (1991)** ("The main objective of the Rule is … to deter baseless filings and curb abuses."). If a party could avoid sanction by correcting its offending conduct after Court intervention, it would be no deterrent effect at all. See ***In Re Matter of Yagman*, 796 F.2d 1165, 1184 (9th Cir. 1986)** (recognizing that circumstances under which sanctions should be imposed "will, quite naturally, be unique and may vary widely" and that "[i]t is critical … that the sanctioning court embrace the overriding purpose of deterrence and mold its sanctions in each case so as to best implement that policy.")

In this case, instead of taking advantage of the Safe Harbor, the Trustee and Counsel refused to dismiss all the frivolous claims subjecting Movants to continued substantial discovery and litigation. Movant seeks only an appropriate sanction for the damages incurred based on Trustee's decision not to dismiss the entire action and acknowledge candidly that there existed no evidence or law to support the claims. In the Motion, Movants suggested that a priority administrative claim against the Estate (not the individuals) is one proper sanction this Court may consider in its discretion. It would be an unjust result for the Steinmanns to recover their damages from property of the estate before either Trustee or Trustee's counsel and the Intervening Creditors are able to be paid for any fees and costs incurred in this case, if any, and before the respondent creditors receive any distributions on account of their claims.

///

---

[13] The Opposition papers confirm that the Trustee, Intervening Creditors, and their counsel still refuse to "acknowledge candidly" that they lacked evidence and legal support to justify their actions.

## IV. CONCLUSION

For the foregoing reasons, it is respectfully requested that this Court grant the Steinmanns' Motion for Sanctions pursuant to FRBP 9011(b)(1) and (2), and set a hearing date and briefing schedule for submission of evidence and argument on the appropriate form and amount of sanctions under the circumstances.

Dated: August 12, 2021　　　　　　　　　　DIBENEDETTO, LAPCEVIC & DRAA LLP


By:_____/S/_____
JUSTIN S. DRAA
Attorneys for the STEINMANN Defendants/Movants

**PROOF OF SERVICE OF DOCUMENT**

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 1101 Pacific Avenue, Suite 320, Santa Cruz, California 95060

A true and correct copy of the foregoing document entitled (*specify*): **COMBINED REPLY TO OPPOSITIONS FILED BY THE CHAPTER 7 TRUSTEE AND INTERVENING CREDITORS IN SUPPORT OF THE STEINMANNS' MOTION FOR SANCTIONS UNDER FRBP 9011** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:
Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **August 12, 2021**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page.

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) **August 12, 2021**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page.

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) **August 12, 2021**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dated: August 12, 2021.

| | |
|---|---|
| RACHAEL SPENCER, Legal Secretary | *(signature)* |
| *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

F 9013-3.1.PROOF.SERVICE

**TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:

- Thomas H Casey (TR)    msilva@tomcaseylaw.com, thc@trustesolutions.net
- Beth Gaschen    bgaschen@wgllp.com, kadele@wgllp.com;vrosales@wgllp.com;cbmeeker@gmail.com;cyoshonis@wgllp.com
- Jeffrey I Golden    jgolden@wgllp.com, kadele@wgllp.com;vrosales@lwgfllp.com;cbmeeker@gmail.com
- Jeffrey M Goldman    goldmanj@pepperlaw.com, allenjs@pepperlaw.com
- Michael J Hauser    michael.hauser@usdoj.gov
- D Edward Hays    ehays@marshackhays.com, 8649808420@filings.docketbird.com
- Marshall J Hogan    mhogan@swlaw.com, semartinez@swlaw.com
- Gerald P Kennedy    gerald.kennedy@procopio.com, kristina.terlaga@procopio.com;calendaring@procopio.com;efile-bank@procopio.com
- Alan J Kessel    kessela@pepperlaw.com, philipsj@pepperlaw.com
- Kay S Kress    kressk@pepperlaw.com, henrys@pepperlaw.com
- Charity J Manee    charity@rmbklaw.com
- Laila Masud    lmasud@marshackhays.com, 8649808420@filings.docketbird.com
- Jennifer L Nassiri    jennifernassiri@quinnemanuel.com
- Aram Ordubegian    ordubegian.aram@arentfox.com
- Eric S Pezold    epezold@swlaw.com, scrisp@swlaw.com
- Hamid R Rafatjoo    hrafatjoo@raineslaw.com, bclark@raineslaw.com;cwilliams@raineslaw.com
- Faye C Rasch    frasch@wgllp.com, kadele@wgllp.com;tziemann@wgllp.com
- Daniel B Spitzer    dspitzer@spitzeresq.com
- Annie Y Stoops    annie.stoops@arentfox.com, yvonne.li@arentfox.com
- James E Till    jtill@btntlaw.com, maraki@btntlaw.com
- United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

F 9013-3.1.PROOF.SERVICE