1  Todd C. Ringstad (State Bar No. 97345)
   todd@ringstadlaw.com
2  **RINGSTAD & SANDERS LLP**
   4343 Von Karman Avenue, Suite 300
3  Newport Beach, California 92660
   Telephone: (949) 851-7450
4  Facsimile: (949) 851-6926

5  Attorneys for Former Trustee Thomas H. Casey

6

7

8              **UNITED STATES BANKRUPTCY COURT**

9        **CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION**

10

11  | | |
    |---|---|
    | In re | Case No. 8:16-bk-12589-SC |
    | ANDREA STEINMANN DOWNS, | Chapter 7 |
    | Debtor. | Adv. Proc. No. 8:18-ap-01168-SC |
    | ROBERT WHITMORE, Successor Chapter 7 Trustee, | **OPPOSITION OF FORMER TRUSTEE THOMAS H. CASEY TO MOTION FOR SANCTIONS AGAINST THE FORMER TRUSTEE PURSUANT TO COURT'S INHERENT AUTHORITY; DECLARATION OF THOMAS H. CASEY** |
    | Plaintiff, | |
    | v. | |
    | LORA RAE STIENMANN, HEINZ H. STEINMANN, ERIC STEINMANN, MARY (SYPKENS) STEINMANN, JOHN STEINMANN, TESSIE (STAPLETON) STEINMANN, KATY (BELKNAP) STEINMANN, HEINZ STEINMANN, JEFF STEINMANN, TOM STEINMANN AND SUZY (WILSON) STEINMANN, | Hearing: Date:    September 2, 2021 Time:    11:00 a.m. Place:    Courtroom 5C (In Person) 411 West Fourth Street Santa Ana, California 92701 |
    | Defendants. | |

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*(left margin, vertical text)* Ringstad & Sanders LLP · 4343 Von Karman Avenue, Suite 300 · Newport Beach, California 92660 · 949.851.7450

# **TABLE OF CONTENTS**

| | | |
|---|---|---:|
| I. | INTRODUCTION | 2 |
| II. | FACTURAL BACKGROUND | 2 |
| | A. Procedural History | 2 |
| | B. The Investigation and the Filing of the Complaint | 3 |
| | C. The Motions to Dismiss | 4 |
| | D. The Case Proceeds to Discovery and Mediation | 5 |
| | E. Dismissal of the Case and the Motions for Sanctions | 5 |
| III. | THE ACTIONS OF THOMAS H. CASEY WERE CONSISTENT WITH THE DUTIES OF A TRUSTEE | 7 |
| IV. | THE FACTS OF THE CASES CITED BY THE DEFENDANT SUPPORT THE TRUSTEE'S ARGUMENT THAT SANCTIONS UNDER THE COURT'S INHERENT AUTHORITY ARE UNWARRANTED IN THE PRESENT CASE | 9 |
| V. | CONCLUSION | 15 |
| | DECLARATION OF THOMAS H. CASEY | 16 |

Ringstad & Sanders
— LLP —
4343 Von Karman Avenue, Suite 300
Newport Beach, California 92660
949.851.7450

i

1

# TABLE OF AUTHORITIES

2

**Cases:**

3

*Chambers v. NASCO, Inc.*,
    501 U.S. 32, 45-46 (1991) ................................................................. 10

4

*Christian v. Mattel, Inc.*,
    286 F.3d 1118 (9th Cir. 2002) ........................................................... 12

5

*Fink v. Gomez*,
    239 F.3d 989, 993-94 (9th Cir. 2001) ............................................... 10

6

*In re De Jesus Gomez*,
    592 B.R. 698 (B.A.P. 9th Cir. 2018**)** ............................................... 14

7

*In re Deville*,
    280 B.R. 483, 495 (B.A.P. 9th Cir. 2002) ........................................ 10

8

*In re Dyer*,
    322 F.3d 1178, 1196 (9th Cir. 2003) ................................................. 10

9

*In re Girardi*,
    611 F.3d 1027, 1029 (9th Cir. 2010) ................................................. 13

10

*In re Itel Sec. Litig.*,
    791 F.2d 672, 674 (9th Cir. 1986) ..................................................... 14

11

*In re Jacobson*,
    No. BAP.CC-08-1273-DMKPA, 2009 WL 7751428, at *16
    (B.A.P. 9th Cir. June 23, 2009) ......................................................... 11

12

*In re Keegan Mgmt. Co., Sec. Litig.*,
    78 F.3d 431, 436 (9th Cir. 1996) ....................................................... 12

13

*Mars Steel Corp. v. Cont'l Bank N.A.*,
    880 F.2d 928 (7th Cir. 1989) ............................................................. 14

14

*Primus Auto. Fin. Servs., Inc. v. Batarse*,
    115 F.3d 644, 649 (9th Cir. 1997) ..................................................... 11

15

*Roadway Exp., Inc. v. Piper*,
    447 U.S. 752, 767, 100 S. Ct. 2455, 2465, 65 L. Ed. 2d 488 (1980) .... 10

16

*Skies Unlimited, Inc. of Colorado v. King*,
    72 B.R. 536, 539 (Bankr. D. Colo. 1987) ......................................... 14

17

*Thompson v. Massarweh*,
    No. 17-CV-05321-SI, 2017 WL 6316816, at *2 (N.D. Cal. Dec. 11, 2017) .... 12

18

Townsend v. Holman Consulting Corp.,
    929 F.2d 1358 (9th Cir. 1990) ........................................................... 13

19

*United States v. Braunstein*,
    281 F.3d 982 (9th Cir. 2002) ............................................................. 13

20

*United States v. Stoneberger*,
    805 F.2d 1391, 1393 (9th Cir. 1986) ................................................. 12

**Statutes:**

United States Bankruptcy Code Section 323 ........................................ 7
United States Bankruptcy Code Section 327 ........................................ 7
United States Bankruptcy Code Section 544 ........................................ 7
United States Bankruptcy Code Section 547 ........................................ 7
United States Bankruptcy Code Section 548 ........................................ 7
United States Bankruptcy Code Section 549 ........................................ 7
United States Bankruptcy Code Section 704 ........................................ 7

Federal Rules of Civil Procedure 11 ................................................... 8,9
Federal Rules of Bankruptcy Procedure 9011 ..................................... 2, 8

21

22

23

24

25

26

27

28

Ringstad & Sanders
LLP
4343 Von Karman Avenue, Suite 300
Newport Beach, California 92660
949.851.7450

1  TO: THE HONORABLE SCOTT CLARKSON, UNITED STATES BANKRUPTCY

2  JUDGE, TO MOVING PARTIES LORA RAE STIENMANN, HEINZ H. STEINMANN, ERIC

3  STEINMANN, MARY (SYPKENS) STEINMANN, JOHN STEINMANN, TESSIE

4  (STAPLETON) STEINMANN, KATY (BELKNAP) STEINMANN, HEINZ STEINMANN,

5  JEFF STEINMANN, TOM STEINMANN AND SUZY (WILSON) STEINMANN, AND THEIR

6  COUNSEL OF RECORD, AND TO ALL OTHER INTERESTED PARTIES AND THEIR

7  COUNSEL OF RECORD:

8       Thomas H. Casey, the former trustee of this bankruptcy case now appearing in his

9  individual capacity, hereby respectfully submits this Opposition to the Motion for Sanctions

10  Pursuant to the Court's Inherent Authority filed by moving parties Lora Rae Steinmann, Heinz H.

11  Steinmann, Eric Steinmann, Mary (Sypkens) Steinmann, John Steinmann, Tessie (Stapleton)

12  Steinmann, Katy (Belknap) Steinmann, Heinz Steinmann, Jeff Steinmann, Tom Steinmann and

13  Suzy (Wilson) Steinmann (collectively, "Defendants.").

14  **I.**

15  **INTRODUCTION**

16       The Defendants Motion for Sanctions Pursuant to the Court's Inherent Authority comes

17  eight months after the dismissal of this adversary proceeding and 19 days after their filing of a

18  motion seeking sanctions for the identical conduct under Rule 9011.  The conduct alleged by the

19  Defendants to be sanctionable is the filing of the Complaint asserting claims against the

20  Defendants, some 34 months ago.  As will be shown herein, the Trustee was acting in good faith

21  and in furtherance of his lawful duties in the filing of the Complaint.  The Trustee believes no

22  lawful basis for sanction has been shown by Defendants and urges the Court to deny the Motion

23  and the accompany motion for sanctions under Rule 9011.

24  **II.**

25  **FACTUAL BACKGROUND**

26  A.    **Procedural History.**

27       This bankruptcy case was commenced by the filing of a voluntary petition under Chapter

28  11 by the debtor, Andrea Steinmann Downs ("Downs" or "Debtor") on November 19, 2016.  The

*Ringstad & Sanders*
LLP
4343 Von Karman Avenue, Suite 300
Newport Beach, California 92660
949.851.7450

1  case was converted to Chapter 7 of the Bankruptcy Code approximately 10 months later, on

2  September 7, 2017.  Thomas H. Casey ("Trustee") was appointed Chapter 7 Trustee on the same

3  day.  On August 4, 2021, counsel for the Defendants communicated their Motion for Sanctions

4  Pursuant to the Court's Inherent Authority sought sanctions "…directly against Mr. Thomas

5  Casey…not the estate itself"  and on August 6, 2021 the Former Trustee filed his Resignation as

6  Chapter 7 Trustee.  On August 18, 2021, Robert Whitmore filed his Notice of Appointment of

7  Trustee.

8         B.       **The Investigation and the Filing of the Complaint.**

9         The Trustee's good faith belief his Complaint was meritorious was based in part on

10  multiple warning signs about the Debtor from the outset of the case.  Just a few months before the

11  conversion of the case, and following a seven-week trial, the Debtor had been found by a jury to

12  have made intentional misrepresentations and fraudulent concealment leading to an award of

13  damages and $280,000 in punitive damages against her and in favor of Hausman Holdings, LLC,

14  David Moellenhoff and Pamela Moellenhoff (the "Hausman Parties").  A true and correct copy of

15  the state court verdict is attached hereto as Exhibit "1".  Further, the Bankruptcy Court had issued

16  monetary sanctions against the Debtor and in favor of the Hausman Parties in the amount of

17  $74,722.00 for failure to comply with a Court Order for Production of Documents.  See Doc. 243.

18  There appeared clearly to be a pattern of dishonesty and concealment by the Debtor

19         The Hausman Parties were the largest creditors in the case.  Shortly after his appointment,

20  the Trustee and his counsel met with counsel for the Hausman Parties at their request.  The

21  Hausman Parties emphasized that Ms. Downs' testimony could not and should not be believed,

22  that Ms. Downs had lied in her testimony and in her bankruptcy schedules, had committed

23  fraudulent transfers, and concealed assets of the estate.

24         Over the course of a year following the conversion of the case, the Trustee's counsel

25  continued an investigation of potential claims against Ms. Downs and others, including the facts

26  surrounding her purported disinheritance by her parents from their revocable family trust shortly

27  before the bankruptcy case.  Evidence developed by the Trustee's counsel from various sources,

28  including Tim Downs, the Debtors former spouse, led the Trustee's counsel to conclude that the

Ringstad & Sanders
LLP
4343 Von Karman Avenue, Suite 300
Newport Beach, California 92660
949.851.7450

Ringstad & Sanders
LLP
4343 Von Karman Avenue, Suite 300
Newport Beach, California 92660
949.851.7450

1   removal of Ms. Downs from her parents' revocable trust was quite possibly a sham, and that she

2   still retained an interest that was being concealed by her parents and siblings to avoid any of her

3   inheritance going to her creditors.

4        Based upon that evidence, the Trustee's counsel drafted a complaint to pursue legal

5   theories, including fraudulent transfer and resulting trust, in an effort to recover what was

6   believed to be a concealed interest in the parents' revocable trust, and conducted discovery to

7   further develop the evidence, and ultimately obtain a determination of whether a beneficiary's

8   interest in a revocable trust, fraudulently concealed from creditors, could be recovered.  The

9   Complaint, filed on September 6, 2018, almost exactly one year after the Trustee's appointment,

10  asserted in paragraph 46 thereof:

11       46.    Plaintiff is informed, believes, and alleges that at the time of the

12       Transfer, Debtor intended and agreed that the beneficial interest in the Trust

13       Assets *would be held by Defendants for the benefit of the Debtor*.  Accordingly,

14       Defendants hold title to the Trust Assets in trust for the Debtor and currently hold

15       title in the Trust Assets in trust for the benefit of the estate.  (Emphasis added.)

16  **C.    The Motions to Dismiss.**

17       The legal theories presented in the Complaint were novel and designed to address a highly

18  unusual and unique set of alleged facts.  These theories were tested immediately as the Steinmann

19  defendants, represented by four respected law firms, filed two motions to dismiss.  The issues

20  were thoroughly briefed, and a lengthy hearing was held before the Hon. Catherine Bauer, the

21  bankruptcy judge assigned to the Case.  The Court was clearly intrigued by the unique case before

22  her, and following the completion of oral argument, stated:

23       I appreciate all the great arguments. This is a lot more interesting than most of

24       the cases I get on a daily basis. And I appreciate all the wonderful lawyering that's

25       gone into this.  I think it's clear that we're going to survive a motion to dismiss right

26       now.  This is the very beginning.  I don't know where this is headed, but given how

27       much there is that's involved, we're going to have to go forward. This is not ripe for a

28       motion to dismiss to be granted. And I look forward to it. It's very interesting issues

1   and cutting edge and we'll see what happens next, but it's pretty clear based on how

2   much time it took just to argue this that we have enough here to go forward. At least a

3   little bit more.

4        So I am going to deny the motions to dismiss….

5   Adv. Doc. 48, Transcript at pp. 36 and 37 of 40.

6        The Court's ruling affirmed the decision to file the Complaint.  Novel legal theories

7   crafted to address a unique and highly unusual factual scenario, had passed their first test.

8        **D.**     **The Case Proceeds to Discovery and Mediation.**

9        Over the next year and a half, the case received additional endorsements from the Court as

10  amply described in the companion briefs filed by the former Trustee's counsel, Weiland Golden

11  Goodrich, and the brief filed by the Hausman Parties' counsel.  Those endorsements included

12  repeated efforts by the Defendants to test the legal theories of the Complaint, which efforts the

13  Hausman Parties' brief refers to as the "No Valid Claim Defense."  As documented in their brief,

14  the Court *repeatedly* denied those efforts and endorsed the continuation of the lawsuit and the

15  discovery sought therein.

16       While the litigation continued, the parties eventually agreed to mediation and held three

17  mediation sessions with Hon. Mitchell Goldberg, United States Bankruptcy Judge (ret.) as

18  mediator.  Those efforts were ongoing when, on July 31, 2020, the Hon. Scott Clarkson, United

19  States Bankruptcy Judge, was appointed to the case following the retirement of Judge Bauer.

20       **E.**     **Dismissal of the Case and the Motions for Sanctions.**

21       This Court took a different view of the merits of the legal theories pursued in the

22  Complaint, issuing a *sua sponte* Order requiring Defendants to file Motion for Judgment on the

23  Pleadings (Doc. 233), and ultimately granting the Motion for Judgment on the Pleadings and

24  dismissing the action (Doc. 300).

25       Nine months following the service of a "safe harbor" Motion for Rule 9011 Sanctions and

26  seven months following dismissal of the case, the Defendants filed their Motion for Rule 9011

27  Sanctions (Adv. Doc. 316) (the "Rule 9011 Motion for Sanctions"), followed 19 days later by a

28

Ringstad & Sanders
LLP
4343 Von Karman Avenue, Suite 300
Newport Beach, California 92660
949.851.7450

*second* sanctions Motion, this time relying upon the Court's inherent authority (the "Second Sanctions Motion").

The Second Sanctions Motion seeks sanctions against "Thomas H. Casey in his capacity as Chapter 7 Trustee" and the Trustee's counsel, as well as the Hausman Parties and their counsel.  In an exchange of emails between Defendants' counsel and the Trustee's counsel on August 4, 2021, Defendants' counsel clarified that by their Motion for Sanctions Pursuant to the Court's Inherent Authority the Defendants seek sanctions "…*directly against Mr. Thomas H. Casey based on action taken in his capacity as Chapter 7 Trustee/Plaintiff, not the estate itself.* True and correct copies of the email exchanges between Defendants' counsel and the Trustee's counsel dated August 4, 2021, are attached hereto collectively as Exhibit "2" and are incorporated herein by this reference.

On August 5, 2021, Mr. Casey advised the Office of the U.S. Trustee that the pendency of the Rule 9011 Sanctions Motion seeking a priority claim against the estate and the Second Sanctions Motion seeking sanctions for the identical conduct against Mr. Casey personally placed him in a position of conflict that would not allow him to continue as Trustee.  On August 6, 2021, Mr. Casey filed Notice of his Resignation as Trustee (Doc. 1137).  Mr. Robert Whitmore has been appointed as successor trustee (Doc. 1145).

The issues presented in the Rule 9011 Sanctions Motion and the Second Sanctions Motion have been capably and thoroughly briefed by the former Trustee's counsel, Weiland Golden Goodrich, and counsel for the Hausman Parties, and the legal authorities and arguments contained in those briefs are incorporated and adopted herein so as to avoid an unnecessary duplication of those discussions.  The remainder of this brief will address the duties of the Trustee, the actions of Thomas H. Casey as Trustee in filing and pursuing the Complaint, and the impropriety of sanctions directly against Trustee Thomas H. Casey under the Court's inherent authority for those actions; and provide a survey of the egregious misconduct present in each the cases cited by the Defendants as authority for the Court's use of its inherent authority to sanction parties and counsel in litigation.

Ringstad & Sanders
LLP
4343 Von Karman Avenue, Suite 300
Newport Beach, California 92660
949.851.7450

# III.

## THE ACTIONS OF THOMAS H. CASEY WERE CONSISTENT

## WITH THE DUTIES OF A TRUSTEE

Under section 704 of the Bankruptcy Code, the trustee in a chapter 7 case is, among other things, to "investigate the financial affairs of the debtor" and to "collect and reduce to money the property of the estate for which such trustee serves."

Under section 323 of the Bankruptcy Code, the trustee is the "representative of the estate" with the "capacity to sue and be sued." Title 5 of the Bankruptcy Code enumerates numerous powers of the trustee to pursue a variety of claims. Under section 544 of the Bankruptcy Code the trustee holds broad powers including the rights and powers of a judicial lien creditor including the right to avoid certain transfers of property. Under section 547, 548, and 549 of the Code the trustee may seek avoidance of certain preferential transfers, fraudulent transfers, and unauthorized post-petition transfers.

Section 327 allows the trustee to employ one or more attorneys (and other professionals) "to represent and assist the trustee in carrying out the trustee's duties under this title."

The Trustee engaged legal counsel to assist the Trustee in investigating the financial affairs of the Debtor. The Trustee filed an application to employ Lobel Weiland Golden Friedman (now known as Weiland Golden Goodrich) for the following express purposes:

1. Analyze the Debtor's scheduled assets, **investigate any undisclosed assets**, and analyze any encumbrances against the assets;
2. Assist the Trustee in negotiating, documenting and obtaining Court approval to liquidate assets, as warranted;
3. Potentially conduct 2004 examinations and/or subpoena documents regarding assets and potential avoidance actions, if appropriate; and
4. Analyze any problematic claims and prepare any necessary objections.
…
5. **Advise the Trustee concerning the rights and remedies of the Estate** and of the Trustee in regard to the secured, priority and general unsecured claims of creditors;
6. **Represent the Trustee in any proceeding or hearing**, including, without limitation, objections to claims, in the Bankruptcy Court **and in any action where the rights of the Estate or the Trustee may be litigated or affected;**

Ringstad & Sanders
LLP
4343 Von Karman Avenue, Suite 300
Newport Beach, California 92660
949.851.7450

7. Assist the Trustee in the settlement of any debts owed to the Debtor;

8. Assist the Trustee in the disposition of any assets of the Estate; and

9. Conduct examinations of witnesses, claimants, or adverse parties
and prepare and assist in the preparation of reports, accounts, applications and
orders.

*See,* Application of the Chapter 7 Trustee to Employ Counsel (Lobel Weiland Golden

Friedman LLP), Doc. 301 at pp. 2-3 of 35 (emphasis added).

Following nearly a year-long investigation of the financial affairs of the debtor by

Trustee's counsel, the action was filed for the purpose of pursuing a claim arising from what

appeared likely to be a deliberate concealment of the Debtor's interest in her parents' trust,

concealed for the specific purpose of keeping the trust property away from her creditors.

The theories in the Complaint were novel, designed to pursue the estate's interest in a

highly unusual factual situation.  The defendants tested those theories with two motions to

dismiss at the outset of the case, which the Court, clearly intrigued by Trustee's counsel's

arguments, believed warranted further litigation and denied.  As the case proceeded into

discovery, the Defendants, resisting discovery, tested the theories of the Complaint again and

again, and each time the Court allowed the action, and attendant discovery, to proceed.

The adversary proceeding was filed consistent with the duties and responsibilities of the

Trustee and for a proper purpose: to collect and liquidate the assets of the estate.  That the effort

ultimately proved unsuccessful should not vitiate the fact that the Complaint was filed in good

faith and for a proper purpose.

The Trustee acknowledges that the Complaint asserted untested and novel legal theories to

pursue what was perceived as a fraudulent conspiracy to conceal the Debtor's continuing interest

in the parents' trust.  But Rule 11 and its bankruptcy counterpart in Bankruptcy Rule 9011 make

it clear the good faith arguments espousing untested or novel legal theories are not sanctionable.

Rules 11 and 9011 require that claims, if not warranted by existing law, at least be warranted by

"a nonfrivolous argument for the extension, modification, or reversal of existing law *or the*

*establishment of new law.*"

1    For nearly two years, the legal theories of the complaint survived test after test before a

2   court that continually supported the continued litigation of the claims.  But different judges often

3   have differing views even of well-established law and legal theories.  Upon the retirement of

4   Judge Bauer and appointment of Judge Clarkson, the fresh eyes of a different jurist viewed the

5   theories of the Complaint differently.  But innovative legal arguments designed to test a novel

6   theory of recovery do not equate to bad faith, and the Trustee respectfully submits it does not

7   warrant sanctions against the Trustee.

8    The Trustee and his counsel acted in good faith in an unusual situation where they had an

9   objectively reasonable belief that the purported disinheritance of the debtor was instead a

10  fraudulent concealment of her continuing interest in the trust, concealed from the Trustee and her

11  creditors but preserved for her benefit.  For nearly two years, the action survived multiple

12  challenges on the same ground made in the unsuccessful motions to dismiss and multiple

13  discovery motions.  Despite the prior Court's *repeated* rejection of the Defendants' argument, that

14  very same previously-rejected argument is now asserted as the basis for sanctions in the two

15  sanctions motions filed months after the dismissal and closing of the adversary proceeding.  The

16  pursuit of the claims against the Defendants by the Trustee, in good faith and for the laudable

17  purpose of realizing funds for the creditors of the estate, is squarely within the duties of the

18  Trustee and within Rule 11's protection for legal claims made by the  Trustee's counsel for the

19  modification of existing law or the establishment of new law.

20                                          **IV.**

21      **THE FACTS OF THE CASES CITED BY THE DEFENDANTS SUPPORT THE**

22    **TRUSTEE'S ARGUMENT THAT SANCTIONS UNDER THE COURT'S INHERENT**

23         **AUTHORITY ARE UNWARRANTED IN THE PRESENT CASE.**

24    The Defendants cite numerous cases involving situations in which courts have issued

25  sanctions for misconduct under the court's inherent authority.  A review of the underlying facts

26  justifying the courts' conclusions that sanctions were or were not warranted demonstrates that

27  sanctions were only awarded in cases involving egregious examples of actual misconduct:

28

Ringstad & Sanders
L.L.P.
4343 Von Karman Avenue, Suite 300
Newport Beach, California 92660
949.851.7450

***Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 767, 100 S. Ct. 2455, 2465, 65 L. Ed. 2d 488 (1980)**

Party repeatedly **failed to comply** with orders regarding discovery and the filing of briefs, including **failing to answer** interrogatories after the magistrate court ordered that the interrogatories be answered, failing to appear for noticed depositions, and **failing to file** briefs as the ordered by the district court. The Supreme Court remanded the case to the District Court to determine whether counsel's conduct constituted or was tantamount to bad faith.

***Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46 (1991)**

Party **actively attempted to avoid court's ability** to require specific performance of a contract for the sale of said property (he transferred the property to a trust with his sister as trustee and children as beneficiaries, and **concealed the transfer from the court** until after the properties had been recorded), and after the court issued a TRO prohibiting further alienation, proceeded with a series of meritless motions, pleadings, and **delaying actions**, which triggered **repeated warnings** from the court regarding the abuse of the judicial process.

***Fink v. Gomez*, 239 F.3d 989, 993-94 (9th Cir. 2001)**

An attorney who represented prison guards in a § 1983 action by a prisoner **misrepresented law and facts** to the district court in connection with the prisoner's petition for writ of habeas corpus in reckless disregard for the truth by (among other things) stating that a second disciplinary hearing for the prisoner was required by state law (it wasn't) and that the second disciplinary hearing would not have adverse consequences for the prisoner (it did); in sanctioning the attorney, the district court found that the attorney had orchestrated the second disciplinary hearing for the purpose of gaining a tactical advantage in the § 1983 case.

***In re Deville*, 280 B.R. 483, 495 (B.A.P. 9th Cir. 2002)**

An attorney representing defendants in a state court action **orchestrated successive bankruptcy filings** and notices of removal by each of the three defendants for the **purpose of delaying** the state court trial. The attorney's efforts included deliberately **filing bankruptcy cases and removals in the wrong division to avoid a judge** who had previously ruled to dismiss the cases, and after Judge Montali prohibited the attorney from filing further removals absent court authority, the attorney assisted a defendant in filing a removal in pro per. The Bankruptcy Court found the attorney and the defendant who filed the pro per removal both acted with **subjective bad faith** and sanctioned them under the Court's inherent powers, *inter alia*. The Bankruptcy Appellate Panel upheld this finding, and the compensatory sanctions, but remanded to the bankruptcy court for further ruling regarding the unauthorized punitive portions of the damages.

***In re Dyer*, 322 F.3d 1178, 1196 (9th Cir. 2003)**

A creditor holding a years-old deed of trust recorded the deed of trust post-petition; the creditor did not know of the petition when he started the recordation process, but did not make efforts to halt the recording once he became aware of the bankruptcy filing, and then refused

Ringstad & Sanders
LLP
4343 Von Karman Avenue, Suite 300
Newport Beach, California 92660
949.851.7450

to reconvey the deed of trust at the trustee's request, resulting in litigation. The Bankruptcy Court awarded compensatory and punitive damages for willful violation of the automatic stay, finding the creditor 's stay violation was done in "bad faith." **The Ninth Circuit questioned this finding**, noting that there is no indication in the record that the creditor or his attorney knew that recording the deed would violate the automatic stay and the creditor stopped efforts to enforce his recorded deed of trust, only vigorously asserting the validity of his unrecorded deed of trust (as he was entitled to); however, the Ninth Circuit did not rule one way or the other regarding whether the bad faith finding was correct and instead the Ninth Circuit ruled that punitive damages are not permitted under inherent authority and remanded the case to determine the appropriate scope of the compensatory damages award.

### *In re Jacobson*, No. BAP.CC-08-1273-DMKPA, 2009 WL 7751428, at *16 (B.A.P. 9th Cir. June 23, 2009)

A creditor alleged a debtor and her attorney filed the bankruptcy petition for the **improper purpose of frustrating his attempt to execute judgment** against the debtor and that filing the petition was **frivolous** because the debtor had no dischargeable debts as a result of a 1999 judgment denying discharge. The bankruptcy court **did not award sanctions**. It found that the debtor did not file the bankruptcy for improper purposes because she had other creditors and was forthcoming with the court and her creditors. The bankruptcy court found that the attorney had made a **reasonable investigation** before filing the petition given the time limitations (an imminent foreclosure sale) and limited availability of information (limited records were available on PACER from the prior case), and after discovering the judgment denying discharge, was **sincere and diligent** in trying to resolve the case for the debtor through legitimate nonfrivolous means, including **trying to negotiate a settlement** with the creditor and not opposing the creditor's stay motion. The Bankruptcy Appellate Panel of the Ninth Circuit found that the bankruptcy court did not err in finding no bad faith.

### *Primus Auto. Fin. Servs., Inc. v. Batarse*, 115 F.3d 644, 649 (9th Cir. 1997)

District court sanctioned attorney who, "In a misguided attempt to extend a basic principle of bankruptcy law," argued that his client should not be sanctioned for an overdraft that violated the district court's pre- and post-petition orders to make payments to a creditor because the creditor had forced the dealership to write the bad check post-petition in violation of the automatic stay. The district court made no finding of bad faith, however. On appeal, the Ninth Circuit notes that the attorney "has continued to insist that this theory finds support in bankruptcy law; he has failed to appreciate that his argument both attempts to deflect blame for a clear violation of the [district] court's orders and imputes some of that blame to the district court judge who ordered [his client] to issue the check. The Ninth Circuit remanded the case to the district court to make an explicit finding whether the attorney had acted in bad faith, stating that the attorney's "argument clearly lacks merit, but **forceful and effective representation often will call for innovative arguments**. For this reason, **sanctions should be reserved for the 'rare and exceptional case where the action is clearly frivolous, legally unreasonable or without legal foundation, or brought for an improper purpose**.'"

*United States v. Stoneberger*, 805 F.2d 1391, 1393 (9th Cir. 1986)

Attorney was **35-40 minutes late** for multiple criminal trial dates and missed another criminal trial date entirely (his office informed the court he was ill). The district court suspended the attorney from practice in the United States District Court, District of Nevada, for one year. The Ninth Circuit held that the **suspension could not be upheld** pursuant to the court's inherent powers because there was no finding by either the magistrate or the district court that the attorney acted in bad faith.

*In re Keegan Mgmt. Co., Sec. Litig.*, 78 F.3d 431, 436 (9th Cir. 1996)

The district court sanctioned class action plaintiffs' attorneys under Rule 11, 28 U.S.C. § 1927, and its inherent authority, finding that the attorneys had been reckless in filing a securities fraud complaint alleging that the defendant knowingly or recklessly failed to disclose health risks associated with its product in issuing an IPO when the attorneys could at best only guess that the defendant recklessly failed to disclose health risks of the defendant's products. The Ninth Circuit **overruled the sanctions under inherent authority** because the District Court had **issued sanctions based solely on its finding that the plaintiffs had acted recklessly, stating that "our precedents plainly require more."** The district court never made a finding that the plaintiffs' attorneys acted with bad faith or conduct tantamount to bad faith, and the Ninth Circuit noted that the **record does not support a finding of bad faith**. The Ninth Circuit also overruled the district court's Rule 11 sanctions based on frivolousness, as the district court had improperly applied a subjective standard considering only the subjective knowledge the attorneys had at the time they filed the complaint even as it conceded that objectively, the pretrial evidence the plaintiffs had was enough to render their complaint not frivolous.

*Christian v. Mattel, Inc.*, 286 F.3d 1118 (9th Cir. 2002)

A copyright infringement action where the allegedly infringing work (Mattel's Barbie dolls) was created six years before the allegedly infringed work (Christian's Claudene doll) was clearly legally and factually frivolous for Rule 11 purposes, especially since the copyright notices were located on the back of the Mattel dolls' heads, so the attorney could have discovered the copyright information simply by examining the doll heads. However, as **no explicit finding related to bad faith was made, the Rule 11 sanctions could not also be supported by the court's inherent authority**.

*Thompson v. Massarweh*, No. 17-CV-05321-SI, 2017 WL 6316816, at *2 (N.D. Cal. Dec. 11, 2017)

Defendants sought sanctions against plaintiffs under Rule 11 (there is no mention of inherent authority in the case), arguing that (1) the professional malpractice complaint was frivolous because it was time-barred; (2) plaintiff's statements during the underlying incident prove there is no evidentiary support to advance the complaint; and (3) plaintiff's counsel made misrepresentations to the state court regarding service of the complaint and settlement negotiations. The Court found that **no sanctions were warranted because**, as to (1), even

though the court ultimately ruled the complaint was untimely, since there are no bright line rules regarding whether and when to toll the statute of limitations in professional malpractice claims, particularly in determining whether attorney error has causes actual injury under C.C.P. §340.6(a)(1), plaintiff's argument for why the statute of limitations should have been tolled was not legally baseless under existing California law; and as to (2) and (3) the case is "at best, factually messy and, at worst, rife with bad acts on all sides," so it is not clear there was no evidentiary support.

### *United States v. Braunstein*, 281 F.3d 982 (9th Cir. 2002)

This is a criminal case and concerns sanctions under the Hyde Amendment, which permits courts to award attorney's fees and other litigation expenses to prevailing criminal defendants where the courts find the position of the United States was vexatious, frivolous, or in bad faith; it **does not implicate either the court's inherent authority or Rule 11, and is not instructive** regarding the definition of frivolous used to sanction parties in those civil contexts.

### *Townsend v. Holman Consulting Corp.*, 929 F.2d 1358 (9th Cir. 1990)

Deals only with frivolousness under Rule 11 and **does not consider any sanctions under the court's inherent authority**.

Plaintiff **persisted in naming a defendant who clearly had no role in the claims** alleged in the case, notwithstanding affidavits from the defendant and the other defendants as to the defendant's non-involvement and the court's order granting the defendant's motion to dismiss, and filed a motion for reconsideration after filing a notice of appeal. The court found that the plaintiff sued the defendant without reasonable investigation, without adequate basis in law or fact, and for purposes of harassment. The Ninth Circuit upheld the sanctions, finding that the existence of non-frivolous claims in the pleading did not necessarily insulate the frivolous claim from Rule 11 sanctions.

### *In re Girardi*, 611 F.3d 1027, 1029 (9th Cir. 2010)

Plaintiff's attorneys attempted to enforce a Nicaraguan judgment for $489 million in district court but failed. They appealed, and maintained their appeal to the Ninth Circuit even though they knew, at least by the time the defendants filed a motion to supplement the record on appeal, that the document the plaintiffs offered as evidence of the Nicaraguan judgment was **spurious**. The Ninth Circuit adopted the Special Master's recommendations with respect to sanctions under Federal Rule of Appellate Procedure 38 and 28 U.S.C. § 1912 and § 1927. Attorney who took almost no active part in the proceedings to enforce the judgment but permitted his name to be signed to documents was reckless, and a **formal reprimand** was an appropriate discipline for his "recklessness in determining whether statements or documents central to the action on which his name appeared were false." It does not appear that any sanctions were awarded under Rule 11 or the court's inherent authority, but the Court found bad faith in the context of § 1927.

Ringstad & Sanders
L.L.P.
4343 Von Karman Avenue, Suite 300
Newport Beach, California 92660
949.851.7450

***Skies Unlimited, Inc. of Colorado v. King*, 72 B.R. 536, 539 (Bankr. D. Colo. 1987)**

Counsel for the reorganized debtors alleged that a real estate broker violated the automatic stay when he placed a lis pendens on property that had been abandoned to the reorganized debtor in the plan and clearly was no longer property of the estate and no longer subject to the automatic stay. The bankruptcy court sanctioned counsel under rule 9011.

Movant cites this case for the proposition that "Bankruptcy courts have also determined that bad faith is shown by pursuing litigation for **an improper purpose such as a tactical advantage**."

The only references to "bad faith" in this case are to state that the 10th circuit recognized in Burkhart v. The Kinsley Bank, 804 F.2d 588 (10th Cir.1986) that Rule 11 was amended specifically to remove the requirement of finding subjective bad faith before sanctions could be imposed.

***In re De Jesus Gomez*, 592 B.R. 698 (B.A.P. 9th Cir. 2018)**

Debtor's attorney amended debtor's exemptions to claim an exemption in a previously unscheduled vehicle after trustee discovered vehicle, successfully avoided a security interest to create equity in the vehicle, and filed a motion to compel turnover of the vehicle to obtain possession. The bankruptcy court held, and the Ninth Circuit BAP affirmed, that **seeking to claim an exemption in the vehicle when debtor clearly was prohibited** from an exemption under the plain language of 522(g) was frivolous and reckless, not a mere "difference of opinion," especially in light of the impact on the small-dollar estate. The Ninth Circuit BAP further sanctioned the attorney for filing a frivolous appeal (notwithstanding the court's clearly stated rational behind its ruling, the debtor "took the same incorrect position on appeal and submitted an opening brief with only two pages of argument that was largely devoid of legal authority or analysis") and disobeying appellate rules.

***Mars Steel Corp. v. Cont'l Bank N.A.*, 880 F.2d 928 (7th Cir. 1989)**

This out of circuit case, non-bankruptcy case concerns sanctions under Rule 11, not the Court's inherent authority.

"Although the district judge was tempted to hold that Joyce & Kubasiak's entire course of conduct was **objectively frivolous and conducted in bad faith** to boot, he held back because he believed that this court, by discussing Joyce & Kubasiak's arguments in affirming his approval of the settlement, had implicitly determined that the arguments were neither frivolous nor pressed in bad faith. Mars Steel and Continental have not appealed from the order to the extent it denied their request for additional sanctions, so we shall not have to determine whether the judge's inference from our opinion was appropriate." *Id*. at 931 (Internal citation omitted) (emphasis added).

***In re Itel Sec. Litig.*, 791 F.2d 672, 674 (9th Cir. 1986)**

Attorney admitted that he filed objections in a class action case to **exact fee concessions** in an action pending before another court. Actions taken included filing a motion in the class action litigation seeking to redefine the plaintiff class and appoint a class representative for a different class of claims, even though the class definition issue had been resolved three years

Ringstad & Sanders
LLP
4343 Von Karman Avenue, Suite 300
Newport Beach, California 92660
949.851.7450

earlier and litigation notices mailed to the class (motion was settled and he withdrew the motion), and filing an objection to the proposed class settlement on behalf of his client's daughter who had no involvement (the corporation made further fee-related concessions to keep the settlement on track). The Ninth Circuit held that this alone was sufficient to support finding of bad faith warranting imposition of sanctions.

See the underlying case referenced in the Ninth Circuit opinion for a more detailed description of the facts: *In re Itel Securities Litigation*, 596 F.Supp. 226 (N.D.Cal.1984).

These cases demonstrate that use of the Court's inherent authority to assess sanctions is reserved for egregious misconduct, and not merely for presenting unmeritorious claims, even ones that the Court determines are unwarranted under applicable law.

## V.

## **CONCLUSION**

The Defendants have provided no evidence that the Trustee acted in bad faith, vexatiously, wantonly, or for an improper purpose.  Defendants have cited to no instances of misstatements of law or fact.  Their arguments for imposition of sanctions are the same arguments on which they sought dismissal in their unsuccessful motions to dismiss.  The predecessor court found the Defendants' arguments wanting and continually encouraged the litigation to proceed. The successor court obviously viewed it differently and dismissed the action.  Nothing Defendants have cited, however, suggests that the Trustee has acted in bad faith or for an improper purpose.  Under the circumstances, sanctions directly against the Trustee under the Court's inherent authority are simply unwarranted.  Former Trustee Thomas H. Casey thus respectfully requests the Court deny the Defendants request for sanctions against Thomas H. Casey.

Respectfully submitted,

Dated:  August 19, 2021                    RINGSTAD & SANDERS LLP

By: _Todd C. Ringstad_
Todd C. Ringstad, Attorneys for
Thomas H. Casey

Ringstad & Sanders
LLP
4343 Von Karman Avenue, Suite 300
Newport Beach, California 92660
949.851.7450

Ringstad & Sanders
LLP
4343 Von Karman Avenue, Suite 300
Newport Beach, California 92660
949.851.7450

### DECLARATION OF THOMAS H. CASEY

I, Thomas H. Casey, do hereby declare:

1. The following matters are true and correct and within my own personal knowledge. If called to testify, I could and would competently testify thereto.

2. I am an attorney at law licensed to practice before in the state of California and before this Court. I was admitted to practice law in the state of Massachusetts in 1986. I am still a member of the Massachusetts bar but my status is inactive. I was admitted to practice law in the state of California in 1988 and my license to practice law has been in good standing at all times since my admission.

3. From December 1987 through August 1989 I was employed by the Office of the United States Trustee ("OUST") in the Santa Ana Division as a staff attorney. In September 1989, I left the OUST and began private practice, specializing in the field of bankruptcy and insolvency law. I was an associate at Rosen, Wachtell & Gilbert, Irvine, California, from September 1989 through February 1991; an associate at Buchalter, Nemer, Fields & Younger, Newport Beach, California, from March 1991 through December 1992; a principal of Daff & Casey, a Professional Corporation, in Santa Ana, California, from January 1993 through April 1994; and a partner of Marshack & Shulman, LLP, in Santa Ana, California from May 1994 through June 1998. In July 1998, I formed the Law Offices of Thomas H. Casey where I have remained since.

4. I became a member of the panel of bankruptcy trustees, in the Central District of California, Santa Ana Division in 1993 and I have remained a member without interruption since my appointment in 1993.

5. In all of my years as a trustee and in private practice, I have never been sanctioned by any court. In fact, I cannot recall even a single instance in which sanctions were sought against me[1]. I take very seriously my duties and responsibilities as a trustee. I almost always

---

[1] It is possible that at some point in my past a pleading in some discovery dispute requested sanctions that were not awarded, but I cannot recall any such incident. I am quite certain that I have never been the subject of a motion for sanctions under F.R.C.P. Rule 11, Bankruptcy Rule 9011, or the Court's inherent authority.

Ringstad & Sanders
— LLP —
4343 Von Karman Avenue, Suite 300
Newport Beach, California 92660
949.851.7450

1    retain counsel when I believe that it may be necessary to commence litigation in order to fulfill

2    my duties as trustee.  Having counsel in such circumstances allows me to truly play the role of

3    trustee, obtaining legal advice from legal counsel and serving as a client and ultimate decision

4    maker concerning matters such as settlement.  That is the role in which I served in this adversary

5    proceeding, having engaged the respected bankruptcy firm Weiland Golden Goodrich LLP

6    ("WGG") (and its predecessor firm) to represent me in my capacity as Trustee of the bankruptcy

7    estate of debtor Andrea Steinmann Downs ("Debtor" or "Ms. Downs").  Jeffrey I. Golden, a

8    partner in WGG, served as lead counsel in this matter.  I have engaged WGG, its predecessor

9    firms, and Mr. Golden in a number of different cases in which I served as trustee, and have

10   achieved good results from their services on many occasions.

11       6.       The bankruptcy case of Andrea Steinmann Downs was commenced by the filing of

12   a voluntary petition under chapter 11 on November 19, 2016.  See Doc. 1.  The case remained in

13   chapter 11 until September 7, 2017, when the case was converted to chapter 7.  *See* Doc. 292.  I

14   was appointed as the Chapter 7 Trustee on the same day.  *See* Doc. 293.  Following my

15   appointment, I reviewed the docket in the case and a number of the filed pleadings, as well as the

16   Schedules and Statement of Financial Affairs.  The Statement of Affairs disclosed litigation

17   pending on the petition date that caught my attention.  The original statement of affairs filed on

18   July 6, 2016 by Andrea Downs, at item 9, in response to the question "Within one year before you

19   filed bankruptcy were you a party in any lawsuit, court action or administrative proceeding?

20   Debtor Andrea Downs responded "Hausman Holdings LLC et al v. Michael Reynolds et al ,

21   Complaint for Promissory Note (False Promise); Fraud and Deceit (Intentional Misrepresentation

22   and Concealment); Breach of Loan Agreements".  The Debtor's Statement of Affairs put me on

23   notice early in the case a creditor believed the Debtor was capable of concealing and engaging in

24   fraud.  The same response was provided by Debtor Andrea Downs in her amended SOFA filed

25   July 28, 2016.

26       7.       On or about September 15, 2017, less than a month after my appointment, I

27   attended a meeting with Hamid Rafatjoo and Alan Kessel, co-counsel for Hausman Holdings,

28   LLC and David and Pamela Mellenhoff (the "Hausman Parties"), who were the largest creditors

of the estate and who were heavily involved in the case prior to the conversion of the case and my

appointment, and my counsel (Jeff Golden).  During that meeting the counsel for the Hausman

Parties emphasized that Ms. Downs' testimony could not and should not be believed, that Ms.

Downs had lied in her testimony and in her bankruptcy schedules, and had committed fraudulent

transfers and concealed assets of the estate.

8.      After my meeting with counsel for the Hausman Parties additional evidence was

made available to me that caused me to question the credibility of  the Debtor Andrea Downs.

For example, I read a May 18, 2017 jury verdict following a seven-week jury trial issued in a

state court action commenced by the Hausman Parties against Andrea Downs that went to trial

following the granting of relief from the automatic stay.  From the jury verdict it was clear that

the jury did not find her testimony credible.  The state court jury rendered a special verdict

finding Ms. Downs liable for, among other things, concealment, promissory fraud, and intentional

misrepresentation.  A copy of the state court special verdict against the Debtor and others is

attached hereto as Exhibit "1" and is incorporated herein by this reference.

9.      Over the year following my appointment, my counsel engaged in efforts to

determine the facts concerning "disinheritance" of Ms. Downs from her parents' revocable trust

shortly prior to her bankruptcy filing.  Based upon information from a variety of sources, my

counsel developed a theory that Ms. Downs had not actually been disinherited by her parents in

connection with their revocable trust, but that in fact the interest of Ms. Downs as a beneficiary in

her parents revocable trust was concealed by an agreement between her parents and her siblings

that her interest would be held by them until such time as the bankruptcy case was concluded in

order to prevent any of her inheritance from being paid to her creditors.

10.     The sources upon which this theory was based include interviews with Tim

Downs, the Debtor's former husband, and the testimony of Lora Steinmann (the Debtor's mother)

at a 2004 examination conducted on July 10, 2017 (prior to the conversion of the case and my

appointment), in which she testified that the revocable trust was amended on the eve of Debtor's

bankruptcy filing specifically to avoid any distribution of trust assets to creditors, stating "In lieu

of what was happening, we didn't want any of our assets to be given to anyone else, so we

Ringstad & Sanders
LLP
4343 Von Karman Avenue, Suite 300
Newport Beach, California 92660
949.851.7450

Ringstad & Sanders
LLP
4343 Von Karman Avenue, Suite 300
Newport Beach, California 92660
949.851.7450

1    decided that we . . . would exclude Andrea from receiving any of our assets."[2]  Further, it

2    appeared that Ms. Downs had continued to receive financial support from her parents

3    notwithstanding their asserted decision to disinherit her, which seemed contradictory to their

4    assertion that they had disowned her.

5        11.    The suspected facts as presented to me by my counsel presented a unique situation

6    for which my counsel was unable to find direct precedent.  If, in fact, the Debtor's

7    "disinheritance" was a fraudulent scheme in which the Debtor's parents and siblings cooperated --

8    not to disinherit her-- but rather to "park" her inheritance with her siblings until the bankruptcy

9    case was closed and no longer a factor, this would seem to be an actionable fraudulent scheme,

10   though one perhaps without legal precedent.  My counsel developed theories for pursuing such a

11   claim including novel use of the FDCPA, resulting trust and fraudulent transfer theory.

12       12.    My counsel drafted a complaint asserting resulting trust and fraudulent transfer

13   theories.  The key factual allegation appears in the Second Claim for Relief for imposition of a

14   resulting trust.  Paragraph 46 of the Complaint alleges:

15           "Plaintiff is informed, believes, and alleges that at the time of the Transfer,

16       Debtor intended and agreed that the beneficial interest in the Trust Assets would

17       be *held by Defendants for the benefit of Debtor*.  Accordingly, Defendants hold

18       title to the Trust Assets in trust for the Debtor and currently hold title in the Trust

19       Assets in trust for the benefit of the Estate."

20   Complaint, Adv. Doc. 1 at p. 6, ¶ 46 (emphasis added).

21       13.    I am familiar with the requirements of Rule 11 of the Federal Rules of Civil

22   Procedure and its bankruptcy twin in Rule 9011 of the Federal Bankruptcy Rules and was at the

23   time of the commencement of this adversary case.  While the evidence was not fully developed,

24   it appeared to me that there was sufficient circumstantial evidence of such an agreement to

25   satisfy the requirement of Rule 9011(b)(3) that the factual allegations were "likely to have

26   evidentiary support after a reasonable opportunity for further investigation or discovery."

27   _____

28   [2] Moellenhoff Adv. Dkt. No. 42, Ex. R [7/10/17, Tr. at pp. 47:13-16; 48:2-4 (L. Steinmann).

1    Further, while the legal theories presented were novel, it appeared that those theories were

2    warranted "by a nonfrivolous argument for the extension, modification, or reversal of existing

3    law or the establishment of new law."  I believed in good faith that if sufficient evidence of a

4    fraudulent scheme or a secret agreement were obtained, these theories would likely provide some

5    basis for recovery for the estate.

6        14.    From a period of two years from the filing of the Complaint on September 6, 2018

7    until the issuance of the Hon. Judge Clarkson's Order Setting Hearing *Sua Sponte* on Motion for

8    Judgment on the Pleadings and Establishing Briefing Schedule on October 2, 2020, it seemed

9    every event, and every ruling of the Bankruptcy Court and the Bankruptcy Appellate Panel

10   confirmed at least the potential viability of the legal theories developed by my counsel, and the

11   evidence that may support such a finding.   These events included:

12       a.     The predecessor Bankruptcy Court denied the Steinmann Parties' motions to

13   dismiss the Trustee's Complaint;

14       b.     The predecessor Bankruptcy Court took the unusual step of ordering Defendant

15   Eric Steinmann to appear in the Bankruptcy Court for his deposition;

16       c.     In referring to the Defendants the predecessor Bankruptcy Court stated "…there

17   seems to be some coordination if you just look at the surface…." and "you would think if there

18   wasn't anything we would be getting cooperation; and

19       d.     The predecessor Bankruptcy Court sanctioned a Defendant for discovery abuses.

20       15.    I later learned the Debtor had an interest in an irrevocable trust which I recently

21   sold per Court Order.  The Debtor's interest in the irrevocable trust was not disclosed in the

22   Debtor's Schedules or at her Chapter 7 341(a) examination.

23       16.    The parties actively pursued settlement negotiations through mediation with the

24   Honorable Mitch Goldberg, United States Bankruptcy Judge  (ret.).  Mediation sessions were

25   held on April 13, 2020 (pre-mediation private session), April 16, 2020, April 24, 2020, and May

26   8, 2020.  Although I will not reveal either parties' position in mediation, it is safe to say that

27   multiple sessions with Judge Goldberg resulted in steady progress toward a settlement.  On May

28

Ringstad & Sanders
— LLP —
4343 Von Karman Avenue, Suite 300
Newport Beach, California 92660
949.851.7450

28, 2020, a Joint Status Report was filed by the parties in the adversary case in which the parties

jointly sought continuing mediation and reported:

> "The Court has ordered the parties to mediation and the parties have
>
> engaged in multiple sessions of mediation with more sessions
>
> planned….Mediation has already been ordered and is ongoing."

This Joint Status Report was the last document filed in the adversary action prior to the

July 31, 2020 transfer of the case to Judge Clarkson.

17.    At the last mediation session with Judge Goldberg held on May 8, 2020, the

parties had jointly agreed that further mediation would be delayed while a bar date notice was

obtained, served and the time for filing claims had expired.  The parties jointly believed that

obtaining finality with respect to the amount of valid claims would aid the settlement efforts.

The bar date occurred on July 20, 2020 and I expected that another mediation session would be

scheduled soon thereafter.  Thus, at the time of Judge Bauer's retirement and the transfer of the

case to Judge Clarkson on July 31, 2020, I firmly believed that a further session with Judge

Goldberg would occur, that a settlement would be reached, that such a settlement would occur in

the relatively near future, and that a settlement would achieve a result favorable to the estate and

its creditors.  Settlement negotiations ceased, however, upon the issuance of this Court's Order

Setting Hearing *Sua Sponte* on Motion for Judgment on the Pleadings.

18.    A "safe harbor" motion for Rule 9011 sanctions (the "Safe Harbor Motion") was

served by the Defendants upon my counsel and me, for the first time, on or about September 22,

2020, just ten days prior to the issuance of this Court's Order Setting Hearing *Sua Sponte* on

Motion for Judgment on the Pleadings on October 2, 2020.  The Safe Harbor Motion came as a

surprise, as it was based upon nothing more than an argument that the legal theories of the

Complaint were baseless, and yet was served more than *two years* after the Complaint was filed.

During those two years, the very legal theories upon which the Safe Harbor Motion sought

sanctions had been repeatedly tested, including by two Motions to Dismiss that were thoroughly

briefed and argued before the predecessor Court and denied, and an appeal to the BAP which

was also denied.  The same argument was made repeatedly during discovery disputes as

Ringstad & Sanders

justifying the stubborn refusal by certain of the Defendants to provide discovery, which disputes

were repeatedly resolved against the Defendants.  Thus, at the time of the service of the Safe

Harbor Motion, there appeared to be no logical basis for such an action, nor any objective reason

to believe that sanctions would be justified.

19.    The Defendants' Motion for Judgment on the Pleadings, filed in accordance with

the instruction of the Court, was granted by the Memorandum Decision entered on November 17,

2020, dismissing the case.  Despite the service of the Safe Harbor Motion, no Rule 9011 Motion

was filed, and the adversary proceeding was closed on March 11, 2021.

20.    Based upon the Defendants' failure to file a timely Rule 9011 Motion after the

expiration of the 21-day safe harbor period on October 13, 2020, or within a reasonable period of

time following the dismissal of the case, I surmised that Defendants had determined that a Rule

9011 Motion was unwarranted based upon their failure to serve their Safe Harbor Motion until

what turned out to be the waning days of the case.  The Defendants, represented by new counsel,

filed a Rule 9011 Motion for Sanctions on July 8, 2021, nearly nine months after the expiration

of the safe harbor period, and nearly eight months after the case was dismissed.

21.    The Rule 9011 Motion for Sanctions sought:

 "[m]onetary sanctions against the Trustee in the form of a super-priority Chapter

7 administrative claim against the Estate for all attorneys' fees and costs incurred

after expiration of the Rule 9011 safe harbor period.  Because any such claim

against the Trustee was incurred post-petition and in furtherance of this attempts

to recover money, they should be afforded administrative priority as a claim

against the Estate pursuant to 11 U.S.C. § 503(B)(1)(a).  Because the improper

conduct of Trustee and Creditors led the award, their claims and rights to payment

should be subordinated by 11 U.S.C. § 510."  [See Motion, Doc. 316, at p. 29 of

102.]

22.    On July 27, 2021, nineteen days after filing the Rule 9011 Motion for Sanctions,

the Defendants filed *another* motion for sanctions, this time asserting sanctions under this

Court's inherent authority (the "Second Sanctions Motion").  *See* Doc. 324.  The Second

Sanctions Motion seeks sanctions for the same conduct on the same grounds, *i.e.,* that the

Complaint failed to state a cognizable claim for relief and the filing and litigation of the

Complaint was therefore undertaken in bad faith.  The Second Sanctions Motion offered no

explanation for the delay in filing either of the sanction motions (approximately two years and 10

months after the Complaint was filed, 9 months after the Safe Harbor Motion was served, and 8

months after the adversary case was dismissed), or why the relief sought in the Second Sanctions

Motion was also included within the Rule 9011 Motion for Sanctions, or why the Second

Sanctions Motion was filed over two weeks after the Rule 9011 Motion for Sanctions.

23.     Virtually no evidence is filed in support of either sanctions motion.  The Rule

9011 Motion includes an unsigned Declaration of Eric Steinmann, stating in conclusory terms

that the revocable family trust was amended prior to the commencement of the case to remove

the Debtor, that the Complaint was filed, and that he, along with his parents and siblings are

named as Defendants, and a signed Declaration of D. Edward Hays attesting to the service of the

Safe Harbor Motion upon Plaintiff and Plaintiff's counsel.  The Second Sanctions Motion is

supported only by a three-paragraph declaration of Eric Steinmann purportedly authenticating a

letter from an attorney by the name of Shannon Gallagher to my counsel, Jeffrey Golden, and a

one-sentence assertion on information and belief that the defendants have incurred "a minimum

amount of $1,084.013.31 [sic] in fees and costs associated with defending the above-captioned

case."  *See* Doc. 324 at p. 23 of 31.

24.     The Second Motion for Sanctions does not attempt to offer any explanation as to

why it was filed following the filing of the Rule 9011 Sanctions Motion, the timing of its filing,

or the reasons it was filed given the pending Rule 9011 Sanctions Motion.

25.     The Second Sanctions Motion asserts that the motion "is brought against plaintiff

THOMAS H. CASEY, in his capacity as the Chapter 7 trustee … in the above-captioned

bankruptcy case and as Plaintiff in the above-captioned adversary case, *and* against his counsel."

The Second Sanctions Motion further asserts that it is also brought against the Hausman Parties

and their legal counsel.

Ringstad & Sanders
LLP
4343 Von Karman Avenue, Suite 300
Newport Beach, California 92660
949.851.7450

26.    In an attempt to ascertain the purpose and target of the Second Sanctions Motion, Trustee counsel Jeffrey Golden reached out to the counsel for Defendants to inquire whether sanctions were sought against the Trustee *personally*.  Counsel for Defendants then advised Mr. Golden via email on August 4, 2021, "Relief is sought directly against Mr. Thomas Casey based on actions taken in his capacity as Chapter 7 Trustee/Plaintiff, not the estate itself."  A true and correct copy of the email chain which my counsel forwarded to me is attached hereto as Exhibit "2."

27.    When I learned from this email that sanctions were sought against me personally in the Second Sanctions Motion and against the estate based upon my actions in the Rule 9011 Sanctions Motion, I determined that I was in a position of conflict with the bankruptcy estate and could no longer serve as Trustee.  On August 5, 2021, I so advised Frank Cadigan, Assistant United States Trustee, of my situation via email in which I stated my determination that I had a conflict that would prevent me from continuing as Trustee of the estate, "because I cannot concurrently defend against the First Sanctions Motion which is a motion for sanctions for a Chapter 7 administrative claim against the estate and based on the same facts and law, the Second Sanctions Motion which is a claim against me personally."  I filed my notice of my July 6, 2016 resignation as Trustee the next day and on August 6, 2021.  *See,* Doc. 1137.

28.    The Rule 9011 Sanctions Motion seeks, in addition to a priority claim against the estate, subordination of any claim of the Trustee and Trustee's counsel.  I waive any claim for Trustee's fees and costs in this bankruptcy estate and will file notice thereof.

I declare under penalty of perjury that the foregoing is true and correct.  Executed in Rancho Santa Margarita, California this 19 day of August, 2021.

_____
Thomas H. Casey

Ringstad & Sanders
LLP
4343 Von Karman Avenue, Suite 300
Newport Beach, California 92660
949.851.7450

1

2

3

4

5

6

7

8

9

10

**FILED**
SUPERIOR COURT OF CALIFORNIA
COUNTY OF ORANGE
CENTRAL JUSTICE CENTER

**MAY 1 8 2017**

DAVID H. YAMASAKI, Clerk of the Court

BY:_____,DEPUTY

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF ORANGE, CENTRAL JUSTICE CENTER

| | |
|---|---|
| 11 | HAUSMAN HOLDINGS, LLC, a |
| 12 | California limited liability company, DAVID MOELLENHOFF, an individual, |
| 13 | and PAMELA MOELLENHOFF, an individual, |
| 14 | Plaintiffs, |
| 15 | v. |
| 16 | MICHAEL REYNOLDS, an individual, |
| 17 | ANDREA DOWNS, an individual, HAPPENSTANCE CORPORATION, a |
| 18 | California corporation, and DOES 1 through 50, inclusive, |
| 19 | Defendants. |

Case No. 30-2013-00627272-CU-BC-CJC

Assigned For All Purposes To:
The Honorable Craig Griffin
Department C-17

**SPECIAL VERDICT FORM**

Complaint Filed:  January 28, 2013
First Amended Complaint Filed:  April 30, 2015

Trial Date:  April 11, 2017

20

21

22

23

24

25

26

27

28

SPECIAL VERDICT FORM

EXHIBIT F

Exhibit "1"
Page 25

## SPECIAL VERDICT FORM

We answer the questions submitted to us as follows:

### FALSE PROMISE

A.    **Plaintiff Hausman Holdings, LLC as to Michael Reynolds**

1.    Did Michael Reynolds make a promise to Hausman Holdings, LLC?

✓ Yes    _____ No

If your answer to question 1 is yes, then answer question 2.  If you answered no, then go to question 9.

2.    Did Michael Reynolds intend to perform this promise when he made it?

_____ Yes    ✓ No

If your answer to question 2 is no, then answer question 3.  If you answered yes, then go to question 9.

3.    Did Michael Reynolds intend that Hausman Holdings, LLC rely on this promise?

✓ Yes    _____ No

If your answer to question 3 is yes, then answer question 4.  If you answered no, then go to question 9.

4.    Did Hausman Holdings, LLC reasonably rely on this promise?

✓ Yes    _____ No

If your answer to question 4 is yes, then answer question 5.  If you answered no, then go to question 9.

5.    Did Michael Reynolds perform the promised act?

_____ Yes    ✓ No

If your answer to question 5 is no, then answer question 6.  If you answered yes, then go to question 9.

6.    Was Hausman Holdings, LLC's reliance on Michael Reynolds' promise a substantial factor in causing harm to Hausman Holdings, LLC?

✓ Yes    _____ No

If your answer to question 6 is yes, then answer question 7.  If you answered no, then go to question 9.

1

7. What are Hausman Holdings, LLC's damages?

$ *600,000.*

Answer question 8.

8. Did Michael Reynolds engage in the conduct involving Hausman Holdings, LLC with malice, oppression, or fraud?

___✓___Yes    _____No

**B.    Plaintiff Hausman Holdings, LLC as to Andrea Downs**

9. Did Andrea Downs make a promise to Hausman Holdings, LLC?

___✓___Yes    _____No

If your answer to question 9 is yes, then answer question 10. If you answered no, then go to question 17.

10. Did Andrea Downs intend to perform this promise when she made it?

_____Yes    ___✓___No

If your answer to question 10 is no, then answer question 11. If you answered yes, then go to question 17.

11. Did Andrea Downs intend that Hausman Holdings, LLC rely on this promise?

___✓___Yes    _____No

If your answer to question 11 is yes, then answer question 12. If you answered no, then go to question 17.

12. Did Hausman Holdings, LLC reasonably rely on this promise?

___✓___Yes    _____No

If your answer to question 12 is yes, then answer question 13. If you answered no, then go to question 17.

13. Did Andrea Downs perform the promised act?

_____Yes    ___✓___No

If your answer to question 13 is no, then answer question 14. If you answered yes, then go to question 17.

2

14. Was Hausman Holdings, LLC's reliance on Andrea Downs' promise a substantial factor in causing harm to Hausman Holdings, LLC?

    √ Yes          _____No

    If your answer to question 14 is yes, then answer question 15. If you answered no, then go to question 17.

15. What are Hausman Holdings, LLC's damages?

    $ 600,000 or

    Answer question 16.

16. Did Andrea Downs engage in the conduct involving Hausman Holdings, LLC with malice, oppression, or fraud?

    √ Yes          _____No

**C.    Plaintiffs David and Pamela Moellenhoff as to Michael Reynolds**

17. Did Michael Reynolds make a promise to David and Pamela Moellenhoff?

    _____Yes          √ No

    If your answer to question 17 is yes, then answer question 18. If you answered no, then go to question 25.

18. Did Michael Reynolds intend to perform this promise when he made it?

    _____Yes          _____No

    If your answer to question 18 is no, then answer question 19. If you answered yes, then go to question 25.

19. Did Michael Reynolds intend that David and Pamela Moellenhoff rely on this promise?

    _____Yes          _____No

    If your answer to question 19 is yes, then answer question 20. If you answered no, then go to question 25.

20. Did David and Pamela Moellenhoff reasonably rely on this promise?

    _____Yes          _____No

    If your answer to question 20 is yes, then answer question 21. If you answered no, then go to question 25.

3

21.   Did Michael Reynolds perform the promised act?

_____Yes          _____No

If your answer to question 21 is no, then answer question 22.  If you answered yes, then go to question 25.

22.   Was David and Pamela Moellenhoff's reliance on Michael Reynolds' promise a substantial factor in causing harm to David and Pamela Moellenhoff?

_____Yes          _____No

If your answer to question 22 is yes, then answer question 23.  If you answered no, then go to question 25.

23.   What are David and Pamela Moellenhoff''s damages?

$_____

Answer question 24.

24.   Did Michael Reynolds engage in the conduct involving David and Pamela Moellenhoff with malice, oppression, or fraud?

_____Yes          _____No

**D.   Plaintiffs David and Pamela Moellenhoff as to Andrea Downs**

25.   Did Andrea Downs make a promise to David and Pamela Moellenhoff?

__✓__Yes          _____No

If your answer to question 25 is yes, then answer question 26.  If you answered no, then go to question 33.

26.   Did Andrea Downs intend to perform this promise when she made it?

_____Yes          __✓__No

If your answer to question 26 is no, then answer question 27.  If you answered yes, then go to question 33.

27.   Did Andrea Downs intend that David and Pamela Moellenhoff rely on this promise?

__✓__Yes          _____No

If your answer to question 27 is yes, then answer question 28.  If you answered no, then go to question 33.

4

28.   Did David and Pamela Moellenhoff reasonably rely on this promise?

   ____✓____Yes          _____No

   If your answer to question 28 is yes, then answer question 29. If you answered no, then go to question 33.

29.   Did Andrea Downs perform the promised act?

   _____Yes          ____✓____No

   If your answer to question 29 is no, then answer question 30. If you answered yes, then go to question 33.

30.   Was David and Pamela Moellenhoff's reliance on Andrea Downs' promise a substantial factor in causing harm to David and Pamela Moellenhoff?

   ____✓____Yes          _____No

   If your answer to question 30 is yes, then answer question 31. If you answered no, then go to question 33.

31.   What are David and Pamela Moellenhoff's damages?

   $ 300,000.00

   Answer question 32.

32.   Did Andrea Downs engage in the conduct involving David and Pamela Moellenhoff with malice, oppression, or fraud?

   ____✓____Yes          _____No

## INTENTIONAL MISREPRESENTATION

### A.   Plaintiff Hausman Holdings, LLC as to Michael Reynolds

33.   Did Michael Reynolds make a false representation to Hausman Holdings, LLC?

   ____✓____Yes          _____No

   If your answer to question 33 is yes, then answer question 34. If you answered no, then go to question 40.

5

34.  Did Michael Reynolds know that the representation was false or did he make the representation recklessly and without regard for its truth?

✓ Yes        _____ No

If your answer to question 34 is yes, then answer question 35.  If you answered no, then go to question 40.

35.  Did Michael Reynolds intend that Hausman Holdings, LLC rely on the representation?

✓ Yes        _____ No

If your answer to question 35 is yes, then answer question 36.  If you answered no, then go to question 40.

36.  Did Hausman Holdings, LLC reasonably rely on the representation?

✓ Yes        _____ No

If your answer to question 36 is yes, then answer question 37.  If you answered no, then go to question 40.

37.  Was Hausman Holdings, LLC's reliance on Michael Reynolds' representation a substantial factor in causing harm to Hausman Holdings, LLC?

✓ Yes        _____ No

If your answer to question 37 is yes, then answer question 38.  If you answered no, then go to question 40.

38.  What are Hausman Holdings, LLC's damages?

$ 600,000.00

Answer question 39.

39.  Did Michael Reynolds engage in the conduct involving Hausman Holdings, LLC with malice, oppression, or fraud?

✓ Yes        _____ No

**B.    Plaintiff Hausman Holdings, LLC as to Andrea Downs**

40.  Did Andrea Downs make a false representation to Hausman Holdings, LLC?

✓ Yes        _____ No

If your answer to question 40 is yes, then answer question 41.  If you answered no, then go to question 47.

6

EXHIBIT F

41. Did Andrea Downs know that the representation was false or did she make the representation recklessly and without regard for its truth?

   ✓ Yes           No

If your answer to question 41 is yes, then answer question 42. If you answered no, then go to question 47.

42. Did Andrea Downs intend that Hausman Holdings, LLC rely on the representation?

   ✓ Yes           No

If your answer to question 42 is yes, then answer question 43. If you answered no, then go to question 47.

43. Did Hausman Holdings, LLC reasonably rely on the representation?

   ✓ Yes           No

If your answer to question 43 is yes, then answer question 44. If you answered no, then go to question 47.

44. Was Hausman Holdings, LLC's reliance on Andrea Downs' representation a substantial factor in causing harm to Hausman Holdings, LLC?

      Yes        ✓ No

If your answer to question 44 is yes, then answer question 45. If you answered no, then go to question 47.

45. What are Hausman Holdings, LLC's damages?

$_____

Answer question 46.

46. Did Andrea Downs engage in the conduct involving Hausman Holdings, LLC with malice, oppression, or fraud?

      Yes        No

C. **Plaintiffs David and Pamela Moellenhoff as to Michael Reynolds**

47. Did Michael Reynolds make a false representation to David and Pamela Moellenhoff?

   ✓ Yes           No

If your answer to question 47 is yes, then answer question 48. If you answered no, then go to question 54.

7

48. Did Michael Reynolds know that the representation was false or did he make the representation recklessly and without regard for its truth?

___✓___ Yes        _____ No

If your answer to question 48 is yes, then answer question 49. If you answered no, then go to question 54.

49. Did Michael Reynolds intend that David and Pamela Moellenhoff rely on the representation?

___✓___ Yes        _____ No

If your answer to question 49 is yes, then answer question 50. If you answered no, then go to question 54.

50. Did David and Pamela Moellenhoff reasonably rely on the representation?

___✓___ Yes        _____ No

If your answer to question 50 is yes, then answer question 51. If you answered no, then go to question 54.

51. Was David and Pamela Moellenhoff's reliance on Michael Reynolds' representation a substantial factor in causing harm to David and Pamela Moellenhoff?

___✓___ Yes        _____ No

If your answer to question 51 is yes, then answer question 52. If you answered no, then go to question 54.

52. What are David and Pamela Moellenhoff's damages?

$ 300,000.00

Answer question 53.

53. Did Michael Reynolds engage in the conduct involving David and Pamela Moellenhoff with malice, oppression, or fraud?

___✓___ Yes        _____ No

8

EXHIBIT F

D.   **Plaintiffs David and Pamela Moellenhoff as to Andrea Downs**

54.   Did Andrea Downs make a false representation to David and Pamela
Moellenhoff?

___✓___Yes        _____No

If your answer to question 54 is yes, then answer question 55.  If you answered no,
then go to question 61.

55.   Did Andrea Downs know that the representation was false or did she make the
representation recklessly and without regard for its truth?

___✓___Yes        _____No

If your answer to question 55 is yes, then answer question 56.  If you answered no,
then go to question 61.

56.   Did Andrea Downs intend that David and Pamela Moellenhoff rely on the
representation?

___✓___Yes        _____No

If your answer to question 56 is yes, then answer question 57.  If you answered
no, then go to question 61.

57.   Did David and Pamela Moellenhoff reasonably rely on the representation?

___✓___Yes        _____No

If your answer to question 57 is yes, then answer question 58.  If you answered no,
then go to question 61.

58.   Was David and Pamela Moellenhoff's reliance on Andrea Downs' representation a
substantial factor in causing harm to David and Pamela Moellenhoff?

___✓___Yes        _____No

If your answer to question 58 is yes, answer question 59.  If you answered no, then
go to question 61.

59.   What are David and Pamela Moellenhoff's damages?

$_300,000.⁰⁰_

Answer question 60.

60.   Did Andrea Downs engage in the conduct involving David and Pamela
Moellenhoff with malice, oppression, or fraud?

___✓___Yes        _____No

9

## CONCEALMENT

### A.   Plaintiff Hausman Holdings, LLC as to Michael Reynolds

61.   Did Michael Reynolds intentionally fail to disclose a fact that Hausman Holdings, LLC did not know and could not reasonably have discovered?

✓ Yes            _____ No

If your answer to question 61 is yes, then answer question 62. If you answered no, then go to question 67.

62.   Did Michael Reynolds intend to deceive Hausman Holdings, LLC by concealing the fact?

✓ Yes            _____ No

If your answer to question 62 is yes, then answer question 63. If you answered no, then go to question 67.

63.   Had the omitted information been disclosed, would Hausman Holdings, LLC reasonably have behaved differently?

✓ Yes            _____ No

If your answer to question 63 is yes, then answer question 64. If you answered no, then go to question 67.

64.   Was Michael Reynolds' concealment a substantial factor in causing harm to Hausman Holdings, LLC?

✓ Yes            _____ No

If your answer to question 64 is yes, then answer question 65. If you answered no, then go to question 67.

65.   What are Hausman Holdings, LLC's damages?

$ 600,000.00

Answer question 66.

66.   Did Michael Reynolds engage in the conduct involving Hausman Holdings, LLC with malice, oppression, or fraud?

✓ Yes            _____ No

10

EXHIBIT F

Exhibit "1"
Page 35

**B.** **Plaintiff Hausman Holdings, LLC as to Andrea Downs**

67. Did Andrea Downs intentionally fail to disclose a fact that Hausman Holdings, LLC did not know and could not reasonably have discovered?

☑ Yes　　　　＿＿＿＿No

If your answer to question 67 is yes, then answer question 68. If you answered no, then go to question 73.

68. Did Andrea Downs intend to deceive Hausman Holdings, LLC by concealing the fact?

☑ Yes　　　　＿＿＿＿No

If your answer to question 68 is yes, then answer question 69. If you answered no, then go to question 73.

69. Had the omitted information been disclosed, would Hausman Holdings, LLC reasonably have behaved differently?

☑ Yes　　　　＿＿＿＿No

If your answer to question 69 is yes, then answer question 70. If you answered no, then go to question 73.

70. Was Andrea Downs' concealment a substantial factor in causing harm to Hausman Holdings, LLC?

☑ Yes　　　　＿＿＿＿No

If your answer to question 70 is yes, then answer question 71. If you answered no, then go to question 73.

71. What are Hausman Holdings, LLC's damages?

$ 600,000.00

Answer question 72.

72. Did Andrea Downs engage in the conduct involving Hausman Holdings, LLC with malice, oppression, or fraud?

☑ Yes　　　　＿＿＿＿No

11

EXHIBIT F

C.   **Plaintiffs David and Pamela Moellenhoff as to Michael Reynolds**

73.   Did Michael Reynolds intentionally fail to disclose a fact that David and Pamela Moellenhoff did not know and could not reasonably have discovered?

___✓___ Yes   _____ No

If your answer to question 73 is yes, then answer question 74. If you answered no, then go to question 79.

74.   Did Michael Reynolds intend to deceive David and Pamela Moellenhoff by concealing the fact?

___✓___ Yes   _____ No

If your answer to question 74 is yes, then answer question 75. If you answered no, then go to question 79.

75.   Had the omitted information been disclosed, would David and Pamela Moellenhoff reasonably have behaved differently?

___✓___ Yes   _____ No

If your answer to question 75 is yes, then answer question 76. If you answered no, then go to question 79.

76.   Was Michael Reynolds' concealment a substantial factor in causing harm to David and Pamela Moellenhoff?

___✓___ Yes   _____ No

If your answer to question 76 is yes, then answer question 77. If you answered no, then go to question 79.

77.   What are David and Pamela Moellenhoff's damages?

$ 300,000.00

Answer question 78.

78.   Did Michael Reynolds engage in the conduct involving David and Pamela Moellenhoff with malice, oppression, or fraud?

___✓___ Yes   _____ No

12

**D.**   **Plaintiffs David and Pamela Moellenhoff as to Andrea Downs**

79.   Did Andrea Downs intentionally fail to disclose a fact that David and Pamela Moellenhoff did not know and could not reasonably have discovered?

      ___✓___Yes          _____No

      If your answer to question 79 is yes, then answer question 80. If you answered no, then go to question 85.

80.   Did Andrea Downs intend to deceive David and Pamela Moellenhoff by concealing the fact?

      ___✓___Yes          _____No

      If your answer to question 80 is yes, then answer question 81. If you answered no, then go to question 85.

81.   Had the omitted information been disclosed, would David and Pamela Moellenhoff reasonably have behaved differently?

      ___✓___Yes          _____No

      If your answer to question 81 is yes, then answer question 82. If you answered no, then go to question 85.

82.   Was Andrea Downs' concealment a substantial factor in causing harm to David and Pamela Moellenhoff?

      ___✓___Yes          _____No

      If your answer to question 82 is yes, then answer question 83. If you answered no, then go to question 85.

83.   What are David and Pamela Moellenhoff's damages?

      $300,000 ⁰⁰

      Answer question 84

84.   Did Andrea Downs engage in the conduct involving ~~Hausman Holdings, LLC~~ DAVID and PAMELA MOELLENHOFF with malice, oppression, or fraud?

      ___✓___Yes          _____No

13

EXHIBIT F

## NEGLIGENT MISREPRESENTATION

A.    <u>Plaintiff Hausman Holdings, LLC as to Andrea Downs</u>

85.    Did you answer questions 15, 45 <u>or</u> 71?

    ✓___Yes        ___No

If your answer to question 85 is no, then answer question 86. If you answered yes, then go to question 93.

86.    Did Andrea Downs make a false representation to Hausman Holdings, LLC?

    ___Yes        ___No

If your answer to question 86 is yes, then answer question 87. If you answered no, then go to question 93.

87.    Did Andrea Downs honestly believe that the representation was true when she made it?

    ___Yes        ___No

If your answer to question 87 is yes, then answer question 88. If you answered no, then go to question 93.

88.    Did Andrea Downs have reasonable grounds for believing the representation was true when she made it?

    ___Yes        ___No

If your answer to question 88 is no, then answer question 89. If you answered yes, then go to question 93.

89.    Did Andrea Downs intend that Hausman Holdings, LLC rely on the representation?

    ___Yes        ___No

If your answer to question 89 is yes, then answer question 90. If you answered no, then go to question 93.

90.    Did Hausman Holdings, LLC reasonably rely on the representation?

    ___Yes        ___No

If your answer to question 90 is yes, then answer question 91. If you answered no, then go to question 93.

14

EXHIBIT F

91. Was Hausman Holdings, LLC's reliance on Andrea Downs' representation a substantial factor in causing harm to Hausman Holdings, LLC?

_____Yes          _____No

If your answer to question 91 is yes, then answer question 92. If you answered no, then go to question 93.

92. What are Hausman Holdings, LLC's damages?

$_____

**B.** **Plaintiffs David and Pamela Moellenhoff as to Andrea Downs**

93. Did you answer questions 31, 59 or 83?

___✓___Yes          _____No

If your answer to question 93 is no, then answer question 94. If you answered yes, then have the presiding juror sign and date this verdict form.

94. Did Andrea Downs make a false representation to David and Pamela Moellenhoff?

_____Yes          _____No

If your answer to question 94 is yes, then answer question 95. If you answered no, then have the presiding juror sign and date this verdict form.

95. Did Andrea Downs honestly believe that the representation was true when she made it?

_____Yes          _____No

If your answer to question 95 is yes, then answer question 96. If you answered no, then have the presiding juror sign and date this verdict form.

96. Did Andrea Downs have reasonable grounds for believing the representation was true when she made it?

_____Yes          _____No

If your answer to question 96 is no, then answer question 97. If you answered yes, then have the presiding juror sign and date this verdict form.

15

EXHIBIT F

97.  Did Andrea Downs intend that David and Pamela Moellenhoff rely on the representation?

_____Yes          _____No

If your answer to question 97 is yes, then answer question 98. If you answered no, then have the presiding juror sign and date this verdict form.

98.  Did David and Pamela Moellenhoff reasonably rely on the representation?

_____Yes          _____No

If your answer to question 98 is yes, then answer question 99. If you answered no, then have the presiding juror sign and date this verdict form.

99.  Was David and Pamela Moellenhoff's reliance on Andrea Downs' representation a substantial factor in causing harm to David and Pamela Moellenhoff?

_____Yes          _____No

If your answer to question 99 is yes, then answer question 100. If you answered no, then have the presiding juror sign and date this verdict form.

100.  What are David and Pamela Moellenhoff's damages?

$_____

Have the presiding juror sign and date this verdict form.

Signed: _____
                    Presiding Juror

Dated: 5/18/17

After this verdict form has been signed, notify the court attendant that you are ready to present your verdict in the courtroom.

16

# EXHIBIT G

**FILED**
SUPERIOR COURT OF CALIFORNIA
COUNTY OF ORANGE
CENTRAL JUSTICE CENTER

MAY 23 2017

DAVID H. YAMASAKI, Clerk of the Court

BY:_____DEPUTY

1
2
3
4
5
6
7
8          SUPERIOR COURT OF THE STATE OF CALIFORNIA
9       FOR THE COUNTY OF ORANGE, CENTRAL JUSTICE CENTER
10
11   HAUSMAN HOLDINGS, LLC, a          Case No. 30-2013-00627272-CU-BC-CJC
     California limited liability company,
12   DAVID MOELLENHOFF, an individual,  Assigned For All Purposes To:
     and PAMELA MOELLENHOFF, an        The Honorable Craig Griffin
13   individual,                        Department C-17
14           Plaintiffs,               **SPECIAL VERDICT RE: AMOUNT OF
                                        PUNITIVE DAMAGES**
15       v.
16   MICHAEL REYNOLDS, an individual,
     ANDREA DOWNS, an individual,
17   HAPPENSTANCE CORPORATION, a       Complaint Filed: January 28, 2013
     California corporation, and DOES 1  First Amended Complaint Filed: April 30, 2015
18   through 50, inclusive,
                                        Trial Date: April 11, 2017
19           Defendants.
20
21
22
23
24
25
26
27
28

SPECIAL VERDICT RE AMOUNT OF PUNITIVE DAMAGES

## AMOUNT OF PUNITIVE DAMAGES

**A.**  **Plaintiff Hausman Holdings, LLC**

    1.   What amount of punitive damages, if any, do you award Plaintiff Hausman Holdings, LLC against Defendant Andrea Downs?

      $130,000

    2.   What amount of punitive damages, if any, do you award Plaintiff Hausman Holdings, LLC against Defendant Michael Reynolds?

      $180,000

**B.**  **Plaintiffs David and Pamela Moellenhoff**

    3.   What amount of punitive damages, if any, do you award Plaintiffs David and Pamela Moellenhoff against Defendant Andrea Downs?

      $150,000

    4.   What amount of punitive damages, if any, do you award Plaintiffs David and Pamela Moellenhoff against Defendant Michael Reynolds?

      $70,000

Have the presiding juror sign and date this verdict form.

Signed: _____
            Presiding Juror

Dated: 5/23/17 _____

After this verdict form has been signed, notify the court attendant that you are ready to present your verdict to the courtroom.

SPECIAL VERDICT RE AMOUNT OF PUNITIVE DAMAGES

EXHIBIT G

Exhibit "1"
Page 44

**Todd Ringstad**

**Subject:**              FW: Downs

**From:** Justin Draa <jdraa@dld-law.com>
**Date:** August 4, 2021 at 12:18:38 PM PDT
**To:** Jeff Golden <jgolden@wgllp.com>
**Subject: RE: Downs**

Jeff,

Relief is sought directly against Mr. Thomas Casey based on actions taken in his
capacity as Chapter 7 Trustee/Plaintiff, not the estate itself.

Justin

Justin S. Draa, Esq.
**DiBENEDETTO LAPCEVIC & DRAA, LLP**
1101 Pacific Avenue, Suite 320
Santa Cruz, CA  95060
(831) 325-2674 Tel
(831) 477-7617 Fax
jdraa@dld-law.com

**From:** Jeff Golden <jgolden@wgllp.com>
**Sent:** Wednesday, August 4, 2021 12:02 PM
**To:** Justin Draa <jdraa@dld-law.com>
**Subject:** Re: Downs

Justin,

I need clarification immediately on the issue if whether by your motion you are seeking relief against the
Trustee in an individual capacity . On the phone this morning you told me that the claim if allowed
would be against the estate and not against him personally but you wanted to reread the language of
your motion.
I have gone back and read the motion and it says exactly what you recalled on the phone .

We are simply trying to figure out and determine the relief you are seeking against the trustee .  We
can't analyze the motion and any issues you raise until we fully understand your position .

Please advise as soon as possible as we discussed.

Jeff

Sent from my iPhone

Exhibit "2"
Page 45

On Aug 4, 2021, at 11:35 AM, Justin Draa <jdraa@dld-law.com> wrote:

Jeff,

Quick follow-up question is whether Mr. Casey (as Trustee) will be asserting
'advice of counsel' or otherwise be at odds with you/your firm in connection
with these sanctions motions?

Justin

Justin S. Draa, Esq.
**DiBENEDETTO LAPCEVIC & DRAA, LLP**
1101 Pacific Avenue, Suite 320
Santa Cruz, CA  95060
(831) 325-2674 Tel
(831) 477-7617 Fax
jdraa@dld-law.com

**From:** Jeff Golden <jgolden@wgllp.com>
**Sent:** Wednesday, August 4, 2021 11:10 AM
**To:** Justin Draa <jdraa@dld-law.com>
**Subject:** Re: Downs

Thanks .

Sent from my iPhone

On Aug 4, 2021, at 11:08 AM, Justin Draa <jdraa@dld-law.com> wrote:

Sure, I'll be able to call you back before noon.

Justin S. Draa, Esq.
**DiBENEDETTO LAPCEVIC & DRAA, LLP**
1101 Pacific Avenue, Suite 320
Santa Cruz, CA  95060
(831) 325-2674 Tel
(831) 477-7617 Fax
jdraa@dld-law.com

**From:** Jeff Golden <jgolden@wgllp.com>
**Sent:** Wednesday, August 4, 2021 11:07 AM
**To:** Justin Draa <jdraa@dld-law.com>
**Subject:** Downs

Exhibit "2"
Page 46

I just left a message . Please call me at 714 271 0010.


Sent from my iPhone


### Disclaimer

The information contained in this communication from the sender is confidential. It is intended solely for use by the recipient and others authorized to receive it. If you are not the recipient, you are hereby notified that any disclosure, copying, distribution or taking action in relation of the contents of this information is strictly prohibited and may be unlawful.

This email has been scanned for viruses and malware, and may have been automatically archived by **Mimecast Ltd**, an innovator in Software as a Service (SaaS) for business. Providing a **safer** and **more useful** place for your human generated data. Specializing in; Security, archiving and compliance. To find out more Click Here.


### Disclaimer

The information contained in this communication from the sender is confidential. It is intended solely for use by the recipient and others authorized to receive it. If you are not the recipient, you are hereby notified that any disclosure, copying, distribution or taking action in relation of the contents of this information is strictly prohibited and may be unlawful.

This email has been scanned for viruses and malware, and may have been automatically archived by **Mimecast Ltd**, an innovator in Software as a Service (SaaS) for business. Providing a **safer** and **more useful** place for your human generated data. Specializing in; Security, archiving and compliance. To find out more Click Here.


### Disclaimer

The information contained in this communication from the sender is confidential. It is intended solely for use by the recipient and others authorized to receive it. If you are not the recipient, you are hereby notified that any disclosure, copying, distribution or taking action in relation of the contents of this information is strictly prohibited and may be unlawful.

This email has been scanned for viruses and malware, and may have been automatically archived by **Mimecast Ltd**, an innovator in Software as a Service (SaaS) for business. Providing a **safer** and **more useful** place for your human generated data. Specializing in; Security, archiving and compliance. To find out more Click Here.


### Disclaimer

The information contained in this communication from the sender is confidential. It is intended solely for use by the recipient and others authorized to receive it. If you are not the recipient, you are hereby notified that any disclosure, copying, distribution or taking action in relation of the contents of this information is strictly prohibited and may be unlawful.

This email has been scanned for viruses and malware, and may have been automatically archived by **Mimecast Ltd**, an innovator in Software as a Service (SaaS) for business. Providing a **safer** and **more useful** place for your human generated data. Specializing in; Security, archiving and compliance. To find out more Click Here.

Exhibit "2"
Page 47

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
4343 Von Karman Avenue, Suite 300, Newport Beach, CA 92660

A true and correct copy of the foregoing document entitled (*specify*): **OPPOSITION OF FORMER TRUSTEE
THOMAS H. CASEY TO MOTION FOR SANCTIONS AGAINST THE FORMER TRUSTEE
PURSUANT TO COURT'S INHERENT AUTHORITY; DECLARATION OF THOMAS H. CASEY**
will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in
the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General
Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On August
19, 2021, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the
following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Ryan W Beall**    rbeall@lwgfllp.com,
  vrosales@wgllp.com;kadele@wgllp.com;lbracken@wgllp.com;rbeall@ecf.courtdrive.com
- **William C Beall**    will@beallandburkhardt.com, carissa@beallandburkhardt.com
- **Thomas H Casey (TR)**    msilva@tomcaseylaw.com, thc@trustesolutions.net
- **Justin S Draa**    jdraa@dld-law.com
- **Jeffrey I Golden**    jgolden@wgllp.com,
  kadele@ecf.courtdrive.com;cbmeeker@gmail.com;lbracken@wgllp.com;gestrada@wgllp.com
- **D Edward Hays**    ehays@marshackhays.com,
  ehays@ecf.courtdrive.com;kfrederick@ecf.courtdrive.com;cmendoza@marshackhays.com;cmendoza@ecf.courtdrive.com
- **Gerald P Kennedy**    gerald.kennedy@procopio.com,
  kristina.terlaga@procopio.com;calendaring@procopio.com;efile-bank@procopio.com
- **Laila Masud**    lmasud@marshackhays.com,
  lmasud@ecf.courtdrive.com;kfrederick@ecf.courtdrive.com
- **Aram Ordubegian**    ordubegian.aram@arentfox.com
- **Richard M Pachulski**    rpachulski@pszjlaw.com
- **Malhar S Pagay**    mpagay@pszjlaw.com, bdassa@pszjlaw.com
- **Hamid R Rafatjoo**    hrafatjoo@raineslaw.com, bclark@raineslaw.com
- **Faye C Rasch**    frasch@wgllp.com,
  kadele@wgllp.com;lbracken@wgllp.com;gestrada@wgllp.com
- **Todd C. Ringstad**    becky@ringstadlaw.com, arlene@ringstadlaw.com
- **Annie Y Stoops**    annie.stoops@arentfox.com, yvonne.li@arentfox.com
- **United States Trustee (SA)**    ustpregion16.sa.ecf@usdoj.gov

☐    Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or
adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class,
postage prepaid, and addressed as follows.

☐    Service information continued on attached page

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

**F 9013-3.1.PROOF.SERVICE**

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on August 19, 2021, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

Honorable Scott C. Clarkson
United States Bankruptcy Judge
411 W. Fourth Street., Ste. 5130
Santa Ana, Ca 92701

☐    Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| August 19, 2021 | Becky Metzner | /s/ Becky Metzner |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                                **F 9013-3.1.PROOF.SERVICE**