Justin S. Draa, SBN 253688
DIBENEDETTO, LAPCEVIC & DRAA LLP
1101 Pacific Ave., suite 320
Santa Cruz, California 95060
Telephone: (831) 325-2674
Facsimile: (831) 477-7617
jdraa@dld-law.com

Attorneys for Defendants/Movants
LORA RAE STEINMANN; HEINZ H.
STEINMANN; ERIC STEINMANN,
SUSANNA STEINMANN WILSON;
THOMAS STEINMANN; JOHN
STEINMANN; MARY STEINMANN
SYPKENS; TERESA STEINMANN
STAPLETON; KATY STEINMANN
BELKNAP; JEFF STEINMANN; and HEINZ
J. STEINMANN

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION

| | |
|---|---|
| In re<br><br>ANDREA STEINMANN DOWNS,<br><br>Debtor. | Case No. 8:16-bk-12589-SC<br><br>Chapter 7<br><br>Adv. No. 8:18-ap-01168-SC |
| THOMAS H. CASEY, Chapter 7 Trustee for the bankruptcy estate of Andrea Steinmann Downs,<br><br>Plaintiff,<br><br>v.<br><br>LORA RAE STEINMANN, HEINZ H. STEINMANN, ERIC STEINMANN, MARY (SYPKENS) STEINMANN, JOHN STEINMANN, TESSIE (STAPLETON) STEINMANN, KATY (BELKNAP) STEINMANN, HEINZ STEINMANN, JEFF STEINMANN, TOM STEINMANN, AND SUSIE (WILSON) STEINMANN,<br><br>Defendants. | COMBINED REPLY TO OPPOSITIONS IN SUPPORT OF THE STEINMANNS' MOTION FOR SANCTIONS PURSUANT TO THE COURT'S INHERENT AUTHORITY; AND DECLARATION OF JUSTIN S. DRAA IN SUPPORT<br><br>Date:     September 2, 2021<br>Time:    11:00a.m.<br>Place:   Courtroom 5C (In Person)<br>Ronald Reagan Federal Building and United States Courthouse<br>411 West Fourth Street<br>Santa Ana, California 92701 |

**INTRODUCTION**

The Steinmann family asks this Court to help bring a *just* conclusion to their legal nightmare. This Motion presents an opportunity to help wipe clean a stain of injustice and restore the Defendants' damaged sense of trust in the legal process. Most importantly, however, it can help deter such blatant abuses from happening again.

The Opposition accurately confirms that relief is *not* sought against attorneys Richard Pachulski and Ryan Beall. Those two attorneys candidly explained they had no role in the preparation or filing of the Complaint and asked to be released on that basis. The Steinmann family agreed, since they believe it would be despicable to knowingly drag anyone through a legal quarrel with which they have no responsibility or involvement.

Imposition of sanctions pursuant to the Court's inherent authority is greatly justified and, for the following reasons, the Opposition arguments should be rejected.[1]

**ARGUMENT**

I.    **The Trustee and Counsel Failed to Research 'Revocable' v 'Irrevocable' Trusts Before Suing the Steinmann Family.**

The Opposition peddles a narrative that the Trustee's counsel "conducted extensive investigation and legal research" before filing the Adversary Complaint. **[Dkt. 345, Trustee's Opposition, 6:21-22].**  Indeed, back when the Trustee and counsel were asking this Court to approve more than $420,000 in legal fees, the importance of legal research before filing the Adversary Complaint was noted:

> The fraudulent transfer relates to a discrete, complicated, and unsettled area of the law – the Federal Debt Collection Procedures Act, as well as a resulting trust theory. Accordingly, significant legal research was needed prior to the filing of the Complaint.
> **[Dkt. 696, First Interim Application For Allowance And Payment Of Fees And Reimbursement Of Expenses Of Counsel For The Chapter 7 Trustee].**

---

[1] Due to the 10-page reply limit and fact that many of the arguments raised in Opposition to this Motion were also raised in connection with the Rule 9011 Motion, as to the so called "No Valid Claim Defense," for example, Movants do not repeat those reply arguments herein.  Instead, Movants refer to and incorporate the responses set forth in their Reply to Opposition in Support of Sanctions under Rule 9011. **[Dkt. 336].**

*But what about research of the crucial issue of whether debtor's expectancy interest in a revocable trust constitutes property of the estate*? Billing records expose that no such research occurred. Total attorney time spent on "research" activity in advance of filing the Complaint totaled 18.7 hours, only 3.5 of which were Mr. Golden's.

| Date | Attorney | Description | Hours |
|---|---|---|---|
| 6/19/18 | FCR | Legal Research re: Disclaimer of inheritance as fraudulent transfer | 3.4 |
| 6/20/18 | FCR | Continued Research re: Disclaimer of Inheritance and Fraudulent transfer | 1.7 |
| 6/20/18 | FCR | Resulting Trust Research | 1.0 |
| 6/21/18 | FCR | Research Fraudulent Transfer Complaint and IRS as Creditor | 0.7 |
| 6/24/18 | FCR | Continued legal research in connection with fraudulent transfer complaint | 1.1 |
| 6/26/18 | JIG | Research and Revise Complaint | 0.9 |
| 6/28/18 | FCR | Investigation regarding Tax claims of the estate | 0.3 |
| 6/28/18 | FCR | Continued investigation and legal research re: fraudulent transfer of inheritance | 0.7 |
| 7/16/18 | JIG | Research re: Resulting Trust | 2.6 |
| 8/3/18 | RJB | Review and Analysis of and research re: avoidance actions and demands to be made on banks | 2.8 |
| 8/14/18 | FCR | Review and analysis re: Fraudulent transfer claims | 0.4 |
| 8/16/18 | RJB | Review and analysis of law and research re: basis for complaint | 0.8 |
| 8/23/18 | RJB | Review and analysis of documents and research re: entities for recovery on transfers | 1.5 |
| 8/28/18 | RJB | Review and analysis of and research re: transferees/entities for avoidance actions | 0.8 |
| | | | **18.7** |

**[See Dkt. 696, First Interim Application For Allowance And Payment Of Fees And Reimbursement Of Expenses Of Counsel For The Chapter 7 Trustee]**

Incredibly, **_none_** of the prefiling research hours were spent on the most important question at hand: whether a debtor's expectancy interest in a revocable trust (as opposed to an irrevocable trust) is considered property of the estate under applicable law. Not a single prefiling time entry so much as mentions the words "irrevocable" or "revocable." The very first time there appears to have been any research at all on this issue was in December 2018 – more than three (3) months *after* filing the Complaint when opposing the Motions to Dismiss.[2]

---

[2] The Trustee's counsels' time entries make no reference to any research of the pivotal legal issue until December 2018, as follows: (footnote continued on next page).

The Court is respectfully asked to weigh the Oppositions' after-the-fact assurances of due diligence against the <u>zero</u> (0.0) hours of legal research spent on the threshold question. What's worse, at his deposition in October 2020 (2 years after filing suit), Trustee Casey was apparently still unwilling or unable to address this basic legal issue. The Trustee's responses and his counsel's objections to straightforward questions on revocable trusts reads more like a twisted Abbott and Costello routine than a legitimate legal stance. [**Decl. of Justin S. Draa in Support of Combined Reply To Oppositions In Support Of The Steinmanns' Motion For Sanctions Pursuant To The Court's Inherent Authority, para. 2, Ex. "A" (partial transcript of Deposition of Thomas H. Casey, October 30, 2020**)].

## II.    <u>Disdain for and Frustration with the Debtor did not Justify Protracted Litigation Against Her Individual Family Members.</u>

The Opposition is plenty clear that Plaintiffs were very frustrated with, and disliked, the Debtor. But does that justify a baseless lawsuit against her innocent family members?[3] Sadly, still showing no signs of contrition, the Opposition continues to malign the Steinmann family despite it being abundantly clear they were dragged into the fray by no fault of their own.

Counsel has collectively referred to the Defendants throughout these proceedings as "The Steinmanns," which – as a matter of brevity – makes sense. But lumping them all together as a single group disregards the importance in recognizing the individual victims left in the wake of this multi-million-dollar legal fiasco. The Opposition used a broad brush to paint eleven separate members of the Steinmann family as perpetrators of a fraud, and those distasteful and false accusations will forever remain a matter of public record.

The Debtor's nine siblings and two elderly parents are not her keeper. The Debtor is a grown,

---

- 12/12/18 -  FCR - LEGAL RESEARCH RE: CONTINGENT VS.  EXPECTANT INTERESTS (1.4 hours)
- 12/26/18 - FCR - LEGAL RESEARCH RE: RESULTING TRUST AND PRESUMPTION RE: REVOCABLE TRUST (2.6 hours) [**See Dkt. 696**]

[3] With regard to there being any fathomable justification for the actions taken, Movants point to the absence of any fiscal rationality on the part of the Plaintiffs since the beginning of their crusade against the Debtor.  Before investing time and money into this Adversary Case, Hausman had already spent millions of dollars in legal fees at the state court level in pursuit of the Debtor on a five hundred-thousand-dollar investment loss.  The Plaintiffs' motivations, whether based on estate planning or as part of a spiteful personal ploy, questionable at best.

independent adult. Her siblings and parents are also independent adults ranging from 45-89, each with separate families and lives of their own. These eleven victims are real people, much more than a perceived, collective, deep pocket who might yield to unrelenting legal and financial pressures to help out a loved one. All have worked throughout their adult lives, and all eleven have college degrees (including three doctoral and two master's degrees). These are responsible teachers, doctors, farmers, entrepreneurs, and developers with deep commitments to their families, professions, and communities.

Being dragged into frivolous litigation severely impacted the lives of not just these Defendants, but their spouses, children, work, and friends. For example, the family matriarch, Mrs. Lora Steinmann, serves as a caregiver to her husband who suffers from advanced stage Parkinson's disease. The countless hours, stress, and anxiety of litigation, and the experience of being deposed *three* times, became insufferable. The questions asked during these depositions, and the way counsel asked them, served not to elicit relevant information but to stir up bad feelings and suspicions amongst family members in furtherance of the shakedown.

This lawsuit injected thick tension into the family by portraying innocent individuals in a totally false light. Stirring up discord and internal strife amongst this large family was part of the Plaintiffs' malicious strategy.[4] The sheer amount of people involved necessitated that Defendants break out into grouped factions, each represented by a different law firm, causing legal fees and costs to skyrocket. Naturally, these unfair circumstances tended to turn people against one another, causing blame and frustration. All this obviously aimed at trying to elicit a settlement with no relation to the merits.

There was simply no valid excuse to depose innocent siblings and parents other than to inflict injury by causing stress and legal bills in the hope of forcing a settlement. Other than basic greed

---

[4] By way of analogy, in the context of state court claims for malicious prosecution, where a lack of probable cause is shown an inference of malice may be drawn. (*Drummond v. Desmarais* (2009) 176 Cal.App.4th 439, 451-452.) Since a party rarely admits an improper motive, "malice is usually proven by circumstantial evidence and inferences drawn from the evidence." (*HMS Capital, Inc. v. Lawyers Title Co.* (2004) 118 Cal.App.4th 204, 218.) Malice may also be inferred when a party continues to prosecute an action after becoming aware that the action lacks probable cause. (*Cuevas-Martinez v. Sun Salt Sand, Inc.* (2009) 35 Cal.App.5th 1109, 1122.)

1    and/or animosity, the Steinmann family can fathom no other reason why the Trustee and Hausman

2    chose to personally harass them for years.

3    **III.   The Trustee and Hausman Creditors Unreasonably Relied on the Speculation**
     **of Debtor's Ex-Husband to Justify this Adversary Case.**

4

5    Not only were the Plaintiffs' claims *legally* baseless, but their Opposition also finally

6    confirms that they lacked any reliable *factual* basis. The Opposition admits to the exceedingly low

7    bar it set in evaluating the merits: "Evidence developed by the Trustee's counsel from various

8    sources, including Tim Downs, the Debtor's former spouse, led the Trustee's counsel to conclude

9    that the removal of Ms. Downs [Debtor] from her parents' revocable trust was quite possibly a

10   sham…". **[Dkt. 344, Trustee's Opposition at pg. 3:27 – 4:1].** Quite possibly a sham?

11   Conjecture from the Debtor's ex-husband is, quite literally, the only specific evidence the

12   Opposition appears to have relied on in deciding to mount this multi-million-dollar legal warfare. It

13   is an insult to both the Court and the Steinmanns to suggest that uncorroborated statements from the

14   Debtor's ex-husband – an inherently hostile witness – could form a reasonable basis to believe the

15   claims had merit.

16   **IV.   Inherent Authority Sanctions for Conduct Tantamount to Bad Faith Are Not**
     **Displaced by Other Potentially Applicable Rules**

17

18   Even where other potential avenues to obtain sanctions may be available by statutes or rules,

19   the Supreme Court in *Chambers v. NASCO, Inc,* [5] *501 U.S. 32, 111 S.Ct.* emphasized that the

20   inherent authority of the Court is an independent basis for sanctioning bad faith conduct – or even

21

22

23

24   _____

25   [5] Although *Chambers* states that a district court should typically consider whether offending conduct
     could be sanctioned under the rules before it relies upon its inherent authority to impose sanctions, *Chambers*

26   does not explicitly require in every instance that a district court first determine whether the conduct could be
     sanctioned under the rules or relevant statutes before considering sanctions under its inherent authority. (*First*

27   *Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 512 (6th Cir. 2002) [Interpreting
     *Chambers* broadly to permit the district court to resort to its inherent authority to sanction bad-faith conduct,

28   even if the court has not expressly considered whether such conduct could be sanctioned under all potentially
     applicable rules or statutes].

tantamount[6] to bad faith – in litigation. There, the Supreme Court affirmed a district court's award of nearly a million dollars in attorney's fees and litigation expenses for the defendant's series of meritless motions and pleadings and delaying actions. *501 U.S. at 38, 111 S.Ct. 2123*. In affirming the district court's resort to use of its inherent authority for that award – despite the potential availability of sanctions under 28 U.S.C. § 1927 and Rule 11 – the Court stated:

> We discern no basis for holding that the sanctioning scheme of the statute and the rules displaces the inherent power to impose sanctions for the bad-faith conduct described above. These other mechanisms, taken alone or together, are not substitutes for the inherent power, for that power is both broader and narrower than other means of imposing sanctions. First, whereas each of the other mechanisms reaches only certain individuals or conduct, the inherent power extends to a full range of litigation abuses. *At the very least, the inherent power must continue to exist to fill in the interstices*. 501 U.S. at 46, 111 S.Ct. 2123 (emphasis added).

Harmful litigation abuses cannot be allowed to escape through these "interstices" – or small intervening spaces. *Chambers* recognized that sometimes normal sanctioning mechanisms are just not "up to the task,"[7] holding that a court's reliance upon its inherent authority to sanction derives from its equitable power to control the litigants before it and to guarantee the integrity of the court and its proceedings. 501 U.S. at 43, 111 S.Ct. 2123:

> [A] court may assess attorney's fees when a party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." In this regard, if a court finds "that fraud has been practiced upon it, or that the very temple of justice has been defiled," it may assess attorney's fees against the responsible party, as it may when a party Ashows bad faith by delaying or disrupting the litigation or by hampering enforcement of a court order [...]. "The imposition of sanctions in this instance transcends a court's equitable power concerning relations between the parties and reaches a court's inherent power to police itself, thus serving the dual purpose of Avindicat[ing] judicial authority without resort to the more drastic

---

[6] "A court may impose sanctions pursuant to its inherent powers only when it finds the action in question was taken in bad faith," *Lockary v. Kayfetz*, 974 F.2d 1166, 1174 (9th Cir.1992) (citing *Chambers*, 501 U.S. at 50, 111 S.Ct. 2123), **or conduct that is "tantamount to bad faith**." *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 767, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980) (emphasis added).

[7] *Chambers* leaves to the district court's "informed discretion" whether the applicable statutes or rules are "up to the task" given the circumstances of the particular conduct. See *Klein v. Stahl GMBH & Co. Maschinefabrik*, 185 F.3d 98, 109–11 (3rd Cir.1999) (interpreting *Chambers* to mean "that the Rules are not 'up to the task' when they would not provide a district court with the authority to sanction all of the conduct deserving of sanction"); *Mark Indus., Ltd. v. Sea Captain's Choice, Inc*., 50 F.3d 730, 732 (9th Cir.1995) (noting that the inherent power to sanction generally should be invoked where statutes or rules are not "up to the task").

1     sanctions available for contempt of court and mak[ing] the prevailing party whole
2     for expenses caused by his opponent's obstinacy."
    *Id.*, 501 U.S. at 45–46, 111 S.Ct. 2123 (citations omitted).

3
4     The Steinmann family submits that the Plaintiffs' bad faith pursuit of these groundless claims
were not just a violation upon them personally, but upon the "temple of justice" itself. *Id.*

5

6     **V.**   **The Trustee Violated his Fiduciary Duties.**

7     Bankruptcy trustees are fiduciaries who are held to very high standards of honesty,

8 professionalism, and impartiality. A Chapter 7 Trustee should not be experimenting with

9 "interesting," "novel," and "cutting edge," legal theories, especially not in ill-conceived litigation

10 against innocent members of the public for amusement, academic curiosity, or personal financial

11 gain.

12     The U.S. Department of Justice published a handbook for bankruptcy trustees, entitled

13 Handbook for Chapter 7 Trustees[8] in which the various fiduciary[9] duties and powers are discussed.

14 One basic guideline in the Ch. 7 Trustee's Handbook states, "The trustee must be familiar with the

15 definition of property of the estate as set forth in section 541. (Handbook for Chapter 7 Trustee's,

16 10/1/2012, page 4-2).  The Trustee and his counsel in this case either was not sufficiently familiar

17 with the definition of 'property of the estate,' or willfully turned a blind eye to this fundamental tenet

18 in pursuit of an unjust payout.[10]

19     **VI.**   **The Motion is Supported by Substantial Evidence.**

20     The Opposition suggests that Movant failed to present adequate evidence to support issuance

21

22

23     [8] https://www.justice.gov/ust/file/handbook_for_chapter_7_trustees.pdf/download

24     [9] The chapter 7 trustee is the representative of the estate. 11 U.S.C. § 323(a). The trustee is a fiduciary
charged with protecting the interests of all estate beneficiaries – namely, all classes of creditors, including
25 those holding secured, administrative, priority, and non-priority unsecured claims, as well as the debtor's
interest in exemptions and in any possible surplus property. The duties enumerated under section 704 are
26 specific, but not exhaustive. (Handbook for Chapter 7 Trustee's, 10/1/2012, page 4-2).

27     [10] The Trustee's Handbook also advises that, "A trustee who exceeds his or her granted authority, or is
guilty of a breach of his or her fiduciary duty, may be personally liable for any loss to the estate." (Handbook
28 for Chapter 7 Trustee's, 10/1/2012, page 4-30). This principle is addressed in the context of a Trustee's
operation of a debtor's business but should be applied equally apply to a Trustee's reckless pursuit of
frivolous adversary claims funded by hostile creditors with ulterior motives.

of sanctions.  However, the evidence demonstrating the appropriateness of sanctions is ample, and found largely within this Court's very own record, docket, and filings. Indeed, this Court commented in past hearings on the very deep dive it has already taken into the pleading and evidentiary record after reassignment.[11] This practical reality was also observed by the Rule 11 Advisory Committee:

> In many situations the judge's participation in the proceedings provides him with full knowledge of the relevant facts and little further inquiry will be necessary. (Advisory Committee Notes to 1983 Amendments).

The good reason for this principle was also recognized by the Rule 11 Advisory Committee:

> To assure that the efficiencies achieved through more effective operation of the pleading regimen will not be offset by the cost of satellite litigation over the imposition of sanctions, the court must to the extent possible limit the scope of sanction proceedings to the record. Thus, discovery should be conducted only by leave of the court, and then only in extraordinary circumstances. (Advisory Committee Notes to 1983 Amendments).

Unless the Court feels more discovery would be worthwhile, Movants submit this Court has more than enough evidence to make a finding that sanctions are appropriate under the Court's inherent powers.

## VII.  The Opposition Inappropriately Refers to Prior Mediation Activity.

The Opposition briefs repeatedly point to the fact that the parties participated in private mediation on three different occasions before Judge Goldberg (Ret.). **[See, for example, Declaration of Thomas Casey in Opposition, Dkt. 344, at ¶16** ("The parties actively pursued settlement negotiations through mediation with the Honorable Mitch Goldberg … it is safe to say that multiple sessions with Judge Goldberg resulted in steady progress toward a settlement.")].  They do this, presumably, to suggest that the underlying claims must have had some merit if the Steinmann's were willing to engage in settlement discussions.

The Opposition seems to argue that the Court should use the existence of alleged settlement

---

[11] THE COURT: The fact is that I've read everything, and not just the pleadings that are today, but that go back to 2017. I've made it a practice of trying to stay up on all of my cases, and when I inherited this case I realized that this and a few other cases would require my more direct attention. And I have taken the steps to familiarize myself with most everything that's been happening in this case. The orders, motions, the procedural issues that have gone up to the BAP and back. [**10/2/2020 Transcript of Proceedings on Hearing RE: Emergency Motion to Quash Subpoenas, Etc., 1:17-25**].

1  negotiations to infer that filing of the Adversary Complaint was somehow justified. However, the

2  very purpose of Federal Rule of Evidence 408 is to exclude the use of this type of evidence where

3  it's employed to infer or imply liability. If anything, here, the fact that mediation sessions occurred

4  should be more accurately viewed as supplementary evidence of the Plaintiffs' ongoing misuse of

5  the legal process in attempt to extort money.

6      Frankly, if the Opposition really wants to brandish the Steinmanns' participation in

7  mediation as a sword – perhaps the Court would also be interested to know exactly how the mediator

8  himself regarded the merits of these claims. Of course, such information is privileged, irrelevant, and

9  divulging it would violate basic notions of confidentiality, and the policy and spirit behind FRE 408.

10  So, Movants rhetorically ask, does the Opposition really think it would help them if this Court heard

11  about mediation or perhaps how Judge Goldberg (Ret.) truly viewed this case, or was their goal to

12  merely allude to it with a mocking wink at FRE 408? The law is clear that FRE 408 excludes

13  compromise evidence and, in alluding to the existence of ongoing settlement discussions at all, the

14  Opposition comes critically close to crossing that line.

15  **CONCLUSION**

16      The victims' attorneys' fees are one appropriate measure of sanctions, and this Court has

17  wide discretion under the circumstances. For the foregoing reasons, the Steinmanns respectfully

18  request the motion be granted and a hearing schedule be set for evidence and argument on the proper

19  amount of sanctions.

20

21  Dated:  August 26, 2021                    DIBENEDETTO, LAPCEVIC & DRAA LLP

22

23                                            By:_____
                                              Justin S. Draa, Attorney for Defendants
24                                            LORA RAE STEINMANN; HEINZ H.
                                              STEINMANN; ERIC STEINMANN,
25                                            SUSANNA STEINMANN WILSON; THOMAS
                                              STEINMANN; JOHN STEINMANN; MARY
26                                            STEINMANN SYPKENS; TERESA
                                              STEINMANN STAPLETON; KATY
27                                            STEINMANN BELKNAP; JEFF
                                              STEINMANN; and HEINZ J. STEINMANN
28

1    **Declaration of Justin S. Draa**

2    I, JUSTIN S. DRAA, declare as follows:

3    1.    I am an individual over 18 years of age and competent to make this Declaration. The

4 facts set forth below are true of my personal knowledge. If called upon to do so, I could and would

5 competently testify as to the facts set forth in this Declaration. I am an attorney at law duly admitted

6 to practice before this Court and all courts of the State of California. I am a partner in the law firm of

7 DiBenedetto Lapcevic & Draa, LLP, counsel for Movants.

8    2.    Attached hereto as **Exhibit "A"** are true and correct copies of a portion of Chapter 7

9 Trustee Thomas Casey's deposition taken on October 30, 2020.

10    I declare under penalty of perjury that the foregoing is true and correct. Executed on

11 August 26, 2021.

12

13    _____

14    JUSTIN S. DRAA

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 1101 Pacific Ave., #320, Santa Cruz, California 95060.

A true and correct copy of the foregoing document entitled (*specify*): **COMBINED REPLY TO OPPOSITIONS IN SUPPORT OF THE STEINMANNS' MOTION FOR SANCTIONS PURSUANT TO THE COURT'S INHERENT AUTHORITY; AND DECLARATION OF JUSTIN S. DRAA IN SUPPORT** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:
Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **August 26, 2021**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) **August        , 2021**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) **August        , 2021**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dated: August 26, 2021

RACHAEL SPENCER, Legal Secretary
*Printed Name*                                                              *Signature*

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                        **F 9013-3.1.PROOF.SERVICE**

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:

- Thomas H Casey (TR)    msilva@tomcaseylaw.com, thc@trustesolutions.net
- Beth Gaschen    bgaschen@wgllp.com,
  kadele@wgllp.com;vrosales@wgllp.com;cbmeeker@gmail.com;cyoshonis@wgllp.com
- Jeffrey I Golden    jgolden@wgllp.com,
  kadele@wgllp.com;vrosales@lwgfllp.com;cbmeeker@gmail.com
- Jeffrey M Goldman    goldmanj@pepperlaw.com, allenjs@pepperlaw.com
- Michael J Hauser    michael.hauser@usdoj.gov
- D Edward Hays    ehays@marshackhays.com, 8649808420@filings.docketbird.com
- Marshall J Hogan    mhogan@swlaw.com, semartinez@swlaw.com
- Gerald P Kennedy    gerald.kennedy@procopio.com,
  kristina.terlaga@procopio.com;calendaring@procopio.com;efile-bank@procopio.com
- Alan J Kessel    kessela@pepperlaw.com, philipsj@pepperlaw.com
- Kay S Kress    kressk@pepperlaw.com, henrys@pepperlaw.com
- Charity J Manee    charity@rmbklaw.com
- Laila Masud    lmasud@marshackhays.com, 8649808420@filings.docketbird.com
- Jennifer L Nassiri    jennifernassiri@quinnemanuel.com
- Aram Ordubegian    ordubegian.aram@arentfox.com
- Eric S Pezold    epezold@swlaw.com, scrisp@swlaw.com
- Hamid R Rafatjoo    hrafatjoo@raineslaw.com,
  bclark@raineslaw.com;cwilliams@raineslaw.com
- Faye C Rasch    frasch@wgllp.com, kadele@wgllp.com;tziemann@wgllp.com
- Daniel B Spitzer    dspitzer@spitzeresq.com
- Annie Y Stoops    annie.stoops@arentfox.com, yvonne.li@arentfox.com
- James E Till    jtill@btntlaw.com, maraki@btntlaw.com
- United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the
Central District of California.

*June 2012*                                                                    **F 9013-3.1.PROOF.SERVICE**

# EXHIBIT A

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION

| | |
|---|---|
| In re | ) |
| | ) |
| ANDREA STEINMANN DOWNS, | )     **CERTIFIED COPY** |
| | ) |
|     Debtor. | )    CASE No.: |
| _____ | )    8:16-bk-12589-SC |
| | ) |
| THOMAS H. CASEY, Chapter 7 Trustee | )    Chapter 7 |
| for the bankruptcy estate of Andrea | ) |
| Steinmann Downs, | )    Adv. No. |
| | )    8:18-ap-01168-SC |
|     Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| LORA RAE STEINMANN, HEINZ H. | ) |
| STEINMANN, ERIC STEINMANN, MARY | ) |
| (SYPKENS) STEINMANN, JOHN | ) |
| STEINMANN, TESSIE (STAPLETON) | ) |
| STEINMANN, KATY (BELKNAP) | ) |
| STEINMANN, HEINZ J. STEINMANN, | ) |
| JEFF STEINMANN, TOM STEINMANN, | ) |
| AND SUSIE (WILSON) STEINMANN, | ) |
| | ) |
|     Defendants. | ) |
| _____ | ) |

### DEPOSITION OF THOMAS H. CASEY

### VIA ZOOM

### OCTOBER 30, 2020

Reported by:
MELINDA TRAVIS, CSR No. 12094 (pages 1-88)
ELSA L. ORMES, CSR No. 8717 (pages 89-131)
No. 20-94629

**SG** THE SULLIVAN GROUP
OF COURT REPORTERS
SULLIVANCOURTREPORTERS.COM
PHONE 855.525.3860 | 323.938.8750

1          How long have you been an attorney, Mr. Casey?

2     A.   Since 1986.

3     Q.   And how long have you been a Chapter 7 panel

4  trustee?

5     A.   Since 1993.

6     Q.   And in your capacity as an attorney or a

7  trustee, tell us what you know about revocable trusts.

8          MR. GOLDEN:  Objection.  Calls for a legal

9  conclusion.  Irrelevant.

10         You can answer to the extent of your

11 understanding.

12         THE WITNESS:  Generally speaking, revocable

13 trusts are a device whereby a grantor will create a

14 legal instrument indicating to whom he holds -- he or

15 she holds assets in trust for.

16 BY MR. HAYS:

17    Q.   And the person that they're holding assets in

18 trust for, would that be a beneficiary?

19    A.   Yes.

20         MR. GOLDEN:  Objection.  Calls for a legal

21 conclusion.  Incomplete hypothetical.

22         You can answer to the extent of your

23 understanding.

24         THE WITNESS:  Yes.

25 ///

1  BY MR. HAYS:

2      Q.   Mr. Casey, you may have answered already, but

3  given that your attorney stated an objection, I didn't

4  hear if you did answer that.

5      A.   My answer is yes.

6      Q.   And tell us what you understand a revocable

7  trust allows a trustor to do.

8          MR. GOLDEN:  Objection.  Calls for a legal

9  conclusion.  Vague and ambiguous.  Incomplete

10 hypothetical.  He's not being deposed as a lawyer, and

11 he's certainly not a trust lawyer.

12         But to the extent you have an understanding,

13 you can -- if you understand the question, you can

14 answer it.

15         THE WITNESS:  Can you please explain what you

16 mean by the phrase "allows you to do"?

17 BY MR. HAYS:

18     Q.   Tell us what you understand in terms of the

19 rights of a trustor of a revocable trust to amend the

20 trust, to add or remove beneficiaries.  Do they have

21 that right?

22         MR. GOLDEN:  Same objection.  Compound.

23 Incomplete hypothetical.  Legal conclusion.

24         THE WITNESS:  Yes.

25 ///

1  BY MR. HAYS:

2      Q.   Have you ever had a case where you were the

3  trustee or counsel for a trustee where the debtor who

4  filed bankruptcy had created a revocable trust and

5  property that that person owned was in the revocable

6  trust on the day of bankruptcy?

7          MR. GOLDEN:  Objection.  Calls for a legal

8  conclusion.  Incomplete hypothetical.  Vague and

9  ambiguous.  Irrelevant.

10         THE WITNESS:  Can you please repeat the

11 question.

12         MR. HAYS:  Sure.

13 BY MR. HAYS:

14     Q.   In your capacity as a trustee or an attorney

15 for a trustee, have you ever had a case where the debtor

16 who filed bankruptcy had created a revocable trust and

17 the property that they had put in the trust was held in

18 the name of the trust on the day of bankruptcy?

19         MR. GOLDEN:  Same -- same objection.

20         If you understand it and you know, you can --

21 you can answer.

22         THE WITNESS:  Yes.

23 BY MR. HAYS:

24     Q.   And in such cases, have you ever taken the

25 position that the property held by the debtor as trustor

1    of a revocable trust was the property of the bankruptcy

2    estate?

3              MR. GOLDEN:   Objection.  Calls for a legal

4    conclusion.  Incomplete hypothetical.  Vague and

5    ambiguous.

6              THE WITNESS:  Yes.

7    BY MR. HAYS:

8        Q.   Did you prevail in those situations?

9              MR. GOLDEN:   Objection.  Calls for a legal

10   conclusion.  Vague and ambiguous with respect to the

11   word "prevail."  Irrelevant.

12             THE WITNESS:  I do not recall specifically each

13   case where that has taken place.

14   BY MR. HAYS:

15       Q.   Do you recall ever not prevailing in such a

16   situation?

17             MR. GOLDEN:  Same objections.

18             I just encourage the witness not to guess.

19             THE WITNESS:  I do not specifically recall.

20   BY MR. HAYS:

21       Q.   Do you recall a case called Jawa, J-a-w-a,

22   where you represented bankruptcy trustee Jason Rundle

23   [sic]?

24       A.   I did.

25       Q.   And does that refresh your memory that in the

```
1   Jawa case you did take that position, and you did

2   prevail that the property held by the debtor in trust

3   was property of the bankruptcy estate?

4           MR. GOLDEN:  Objection.  Calls for speculation.

5   Calls for a legal conclusion.  Irrelevant.

6           THE WITNESS:  I do not specifically recall if

7   that was an issue in the Jawa case.

8   BY MR. HAYS:

9       Q.   In your capacity as a trustee or an attorney

10  for a trustee, have you ever filed a motion to revoke a

11  revocable trust that had been established by the debtor

12  as trustor?

13          MR. GOLDEN:  Objection.  Calls for a legal

14  conclusion.  Irrelevant.  Incomplete hypothetical.

15          You can answer if you recall.

16          THE WITNESS:  Yes.

17  BY MR. HAYS:

18      Q.   And why did you file such motions?

19          MR. GOLDEN:  Objection.  May -- okay.  First of

20  all, calls for a legal conclusion, potentially.  Vague

21  and ambiguous.

22          And you can answer, except to the extent that

23  your knowledge stems from any attorney-client

24  relationship that may have existed with respect to

25  that -- in answer to that question, if you know.  If
```

```
 1   it's attorney-client, then I would instruct you not to

 2   answer.

 3           THE WITNESS:  Can you repeat the question,

 4   please.

 5   BY MR. HAYS:

 6       Q.   I think the question was:  Have you --

 7           MR. HAYS:  Let's just have the reporter read it

 8   back.  I don't want to jump two questions back.

 9           (Record was read by the reporter.)

10           MR. GOLDEN:  Same objections.

11           But go ahead.

12           THE WITNESS:  I do not recall in those cases if

13   an attorney-client privilege existed.

14   BY MR. HAYS:

15       Q.   Let me rephrase the question to you.

16           What was the stated purpose in the motion

17   asking the court to revoke the trust?

18           MR. GOLDEN:  Objection.  The document speaks

19   for itself.  You can show him the motion.  Calls for

20   speculation, legal conclusion.

21           You can answer, if you know.

22           THE WITNESS:  My general recollection of those

23   motions that I can recall at this time was to revoke the

24   trust.

25   ///
```

1    BY MR. HAYS:

2        Q.    My question was:  Why were you requesting the

3    court to revoke the trust?

4            MR. GOLDEN:  Objection.  Vague and ambiguous.

5    Calls for speculation, legal conclusion.  And to the

6    extent that it's attorney-client privileged information,

7    then I'm not --

8            I'm not instructing you not to answer, but you

9    can answer if you remember otherwise.

10           THE WITNESS:  My general recollection was to

11   recover the assets of the trust.

12   BY MR. HAYS:

13       Q.    Would one purpose also be to ensure that if the

14   debtor died, the beneficiaries would not make any claim

15   to the property?

16           MR. GOLDEN:  Objection.  Calls for speculation.

17   Calls for a legal conclusion.  May be protected by

18   attorney-client privilege.  Vague and ambiguous.

19           THE WITNESS:  I do not recall.

20   BY MR. HAYS:

21       Q.    Do you agree that a revocable beneficiary has

22   no property rights until the trustor dies?

23           MR. GOLDEN:  Objection.  Incomplete

24   hypothetical.  Calls for a legal conclusion.  And,

25   again, he does not have any experience of a trust -- as

1    a lawyer specializing in this matter.

2         But to the extent that you can answer the

3    question, you can.

4         THE WITNESS:  Please repeat the question.

5    BY MR. HAYS:

6    Q.   Do you agree that a revocable beneficiary has

7    no rights in trust property until the trustor dies?

8         MR. GOLDEN:  I'm going to add one more

9    objection.  Vague and ambiguous with respect to what a,

10   quote, revocable beneficiary is.

11   BY MR. HAYS:

12   Q.   Mr. Casey, did you answer the question?  If you

13   did, I didn't hear you.

14   A.   I did not answer the question.  I don't think I

15   understood the question.  That's why I have not answered

16   yet.

17        Could you please break it down.

18   Q.   Sure.

19        For example, if you have a debtor who is the

20   trustor of a trust and the debtor, let's say, is a

21   parent, the beneficiary of the revocable trust is the

22   child, the debtor files bankruptcy, and -- do you

23   believe -- and you have experience in this matter as

24   trustee and counsel for trustee.

25        Do you believe that the revocable beneficiary

```
 1   has any property rights or does that only come into

 2   existence when the trustor dies?

 3            MR. GOLDEN:  Objection.  Calls for a legal

 4   conclusion.  Incomplete hypothetical.  And may call for

 5   information protected by the attorney-client privilege

 6   regarding your knowledge on this area.

 7            But if you can answer the question from what

 8   was presented, then you can.

 9            THE WITNESS:  The answer is it depends.

10   BY MR. HAYS:

11       Q.  Can you elaborate on why the answer would be

12   "it depends."

13            MR. GOLDEN:  Same objections.

14            If -- if -- if you know.

15            Incomplete hypothetical.

16            THE WITNESS:  Dealing with a hypothetical

17   depends on facts of the case, the terms of the trust,

18   future determinations by a court, a number of matters.

19   BY MR. HAYS:

20       Q.  If the court determines a trust is revocable

21   and the trustor is still alive, do you have any

22   understanding whether the beneficiary of the revocable

23   trust has any rights to property?

24            MR. GOLDEN:  Objection.  Calls for a legal

25   conclusion.  Vague and ambiguous.  Incomplete
```

1   hypothetical.

2          And I'll instruct you not to answer to the

3   extent any of your knowledge is based upon

4   communications with a lawyer representing you.

5          THE WITNESS:  Please repeat the question.

6          MR. HAYS:  May I get the court reporter to

7   repeat the question, please.

8          (Record was read by the reporter.)

9          MR. GOLDEN:  Same -- same objections.

10          THE WITNESS:  In your question, are you using

11   the phrase revokable trust and not irrevokable [sic]

12   trust?

13          MR. HAYS:  Correct.  We're speaking only of

14   revokable trusts at this time.

15          MR. GOLDEN:  Same -- same objection

16   regarding -- well, as well as attorney-client privilege,

17   if it's applicable.

18          THE WITNESS:  I'm going to ask for a repeat of

19   the question because I heard both revokable and

20   irrevokable repeated in the question.

21          (Record was read by the reporter.)

22          MR. GOLDEN:  Same -- same set of objections.

23   Attorney-client privilege.  Calls for a legal

24   conclusion.  Incomplete hypothetical for the witness to

25   answer intelligently.

1          If you understand it, you can answer.

2          THE WITNESS:  Generally speaking, it depends on

3     the terms of the trust, the facts of the case, and a

4     determination by the court.

5     BY MR. HAYS:

6        Q.   As a trustee or an attorney for a trustee in a

7     case, have you ever lost an argument that the

8     debtor/trustor was not the full and complete owner of

9     property held in a revokable trust?

10         MR. GOLDEN:  Objection.  Calls for speculation.

11    Documents speak for themselves.  Calls for a legal

12    conclusion.

13         You can answer if you know, if you recall.

14         THE WITNESS:  I do not recall specific

15    instances.  My general recollection is that -- in the

16    cases where I have filed a motion to revoke the trust,

17    my general recollection is I have usually -- not always,

18    but usually have prevailed.

19    BY MR. HAYS:

20       Q.   When you say not always, can you think of any

21    specific instance where you did not prevail or you're

22    just not 100 percent you've always prevailed?

23         MR. GOLDEN:  Same objections, but compound.

24         THE WITNESS:  I cannot recall.

25    ///

1  STATE OF CALIFORNIA,

2  COUNTY OF FRESNO.

3          I, MELINDA TRAVIS, License 12094, a Certified

4  Shorthand Reporter of the State of California, do hereby

5  certify:

6          That the witness in the foregoing deposition

7  named was present at the time and place therein

8  specified;

9          That the said proceeding pages 1-88 was taken

10 before me as a Certified Shorthand Reporter in stenotype

11 and was thereafter transcribed with the use of

12 computer-assisted transcription under my direction and control;

13         That the foregoing transcript constitutes a

14 true record of the testimony given by the witness and of

15 all objections made at the time of the proceeding, to

16 the best of my ability;

17         That I am a disinterested person to the said

18 action.

19         IN WITNESS WHEREOF, I have hereunto

20 subscribed my hand this date, November 5, 2020.

21

22         _____
           Melinda Travis
23         CSR No. 12094

24

25

1        I, ELSA L. ORMES, a Certified Shorthand Reporter

2   of the State of California, do hereby certify:

3        That the foregoing proceedings pages 89-131 were

4   taken before me at the time and place herein set forth;

5   that any witness in the foregoing proceedings, prior to,

6   testifying, were administered an oath; that a record

7   of the proceedings was made by me using machine

8   shorthand which was thereafter transcribed under my

9   direction; that the foregoing transcript is a true

10  record of the testimony given.

11       Further, that if the foregoing pertains to

12  the original transcript of a deposition in a Federal

13  Case, before completion of the proceedings, review of

14  the transcript {X} was { } was not requested.

15       I further certify I am neither financially

16  interested in the action nor a relative or employee of

17  any attorney or any party to this action.

18       IN WITNESS WHEREOF, I have this day subscribed my

19  name.

20

21  Dated:  November 17, 2020

22                          _____
                            ELSA L. ORMES
23                          CSR Lic. No. 8717

24

25